```
                                             Pages 1 - 12

             UNITED STATES DISTRICT COURT

          NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Richard Seeborg, Judge

MAURO BOTTA,                     )
                                 )
          Plaintiff,             )
                                 )
   VS.                           )    NO. C 18-02615 RS
                                 )
PRICEWATERHOUSECOOPERS LLP,      )
LAURA BUSTAMANTE, TYE THORSON,   )
ROBERT HEATLEY, STIG             )
HAAVARDTUN, ERGUN GENC, TIMOTHY  )
CAREY and STEVE MCCANN,          )
                                 )
          Defendants.            )
                                 )

                             San Francisco, California
                             Thursday, September 20, 2018
```

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
> Derek Smith Law Group, PLLC
> One Penn Plaza, Suite 4905
> New York, NY  10119
> (212) 587-0760
> (212) 587-4169 (fax)
> **BY:  ALEXANDER GABRIEL CABECEIRAS**

For Defendants:
> Hueston Hennigan LLP
> 620 Newport Center Drive, Suite 1300
> Newport Beach, CA  92660
> (949) 226-6740
> **BY:  JOHN CHARLES HUESTON**

Reported By:  Lydia Zinn, CSR No. 9223, FCRR, Official Reporter

```
 1  Thursday - September 20, 2018                        1:31 p.m.
 2                       P R O C E E D I N G S
 3                              ---oOo---
 4       THE CLERK:  Calling Case C. 182615 Botta versus
 5  PricewaterhouseCoopers.  Counsel, please come forward and state
 6  your appearances.
 7       MR. CABECEIRAS:  On behalf of the plaintiff,
 8  Your Honor, Alex Cabeceiras, of the Derek Smith Law Group.
 9  Good morning.
10       THE COURT:  Good afternoon.
11       MR. HUESTON:  Good afternoon, Your Honor.  On behalf
12  of PricewaterhouseCoopers, John Hueston.
13       THE COURT:  Good afternoon.
14    I have had a chance to review what you submitted for me.
15  And let me just go through my tentative view on having read
16  what you submitted, and then I'll let you address it
17  accordingly.
18     With respect to the claims against the individual
19  defendants under the Sarbanes-Oxley retaliation theory, I am
20  inclined to grant the motion to dismiss.  I think there was
21  inadequate notice by way of the administrative claim.  I know
22  there was one against PwC, but I don't think that would be
23  sufficient.  So I'm inclined to grant the motion.
24     With respect to the individual defendants, the motion to
25  dismiss on wrongful termination state law retaliation, I'm
```

 1   inclined to grant that, but with leave to amend, to see if the

 2   plaintiff can flesh out how each of the named defendants

 3   qualifies as an employer for the requisite employer/employee

 4   relationship.

 5        On the defamation claim -- on that claim, I am inclined to

 6   grant, but again, with leave to amend.  There isn't, I think,

 7   an adequate averment at this point of actual malice that would

 8   defeat a common-interest privilege, but it could well be that

 9   it's possible to present that.

10        Just as an aside, you know, pleadings on information and

11   belief don't get you out from under the need to be able to

12   specifically identify what it is that you think, if it's, you

13   know, the need for discovery, what discovery is going to show

14   you.  So you can't just say "information and belief," and think

15   that takes care of it.

16        With respect to the breach-of-contract claim against

17   Defendant Carey, the individual defendant, I think that would

18   be subject to granting the motion without leave, because it

19   doesn't appear that he's a party to an employment contract.

20        So that's my initial read.

21        And why don't I look to the -- there's a little for

22   everyone in that tentative, but why don't, although you're not

23   the moving party, the plaintiffs start, in light of the fact

24   that most of it is granting, in one form or another.

25             **MR. CABECEIRAS:**  Sure, Your Honor.  Your Honor, we

1  would like the defamation claim to go through.  We feel that we
2  have articulated enough facts to plausibly put forth a claim of
3  defamation.  In this case, Mr. McCann --
4          **THE COURT:**  Do you agree that you do have -- what you
5  will ultimately have to demonstrate is actual malice?
6          **MR. CABECEIRAS:**  I agree.
7          **THE COURT:**  Okay.
8          **MR. CABECEIRAS:**  I think that we articulated facts
9  that suggest, Your Honor, that Mr. McCann really had no idea as
10 to Mr. Botta's professional capability.  We articulated facts
11 to suggest that Mr. Botta was told that he was terminated
12 because of a reduction in force; not because of his
13 professional capabilities.  And at this point my client is
14 still in the auditing --
15         **THE COURT:**  How isn't that just as consistent with
16 negligence or some other reason for a screw-up of some kind?
17 Why is that actual malice?
18         **MR. CABECEIRAS:**  I understand your point, Your Honor,
19 and from our perspective, we've articulated facts that will at
20 least plausibly show that malice can -- this can have been done
21 through a malicious intent to harm Mr. Botta's professional
22 career, because at this point, you know, PwC has a lot of
23 connections throughout the auditing world.  And my clients view
24 is that they're going to continue to call into question his
25 professional capabilities, and it's going to hurt his ability

1  to be an auditor.  And the fact that --

2         **THE COURT:**  Well, that may be, but you have to
3  demonstrate as part of your defamation claim not just that
4  they're saying bad things about him, but they're saying bad
5  things because they're -- these individuals who you've
6  identified are motivated to really destroy him; to maliciously
7  impact him.  And that's what I don't see in there.

8      I mean, these are-- again, we're talking about the -- the
9  motion is brought with respect to the individuals, I believe,
10 although maybe it's also --

11     Are you moving with respect to --

12     It's the individual defendants you're moving on.  Right?

13        **MR. HUESTON:**  Individual defendants, Your Honor.

14     And then with respect to PwC, just the defamation claim.

15        **THE COURT:**  Mm-hm.  Okay, but you are moving with
16 respect to PwC on that defamation claim?

17        **MR. HUESTON:**  Yes.

18        **THE COURT:**  All right.  Very good.  Go ahead.

19        **MR. CABECEIRAS:**  At this point, Your Honor, we've
20 alleged facts that suggest that Mr. Botta was terminated for a,
21 quote, "reduction in force."  And yet they -- "they," PwC --
22 and Defendant McCann are telling individuals he is incompetent.

23      So the two positions, to us, rise to that level of at
24 least an inference of malice or ill intent to hurt this man's
25 career, hence why we're bringing forward the defamation claim.

1  **THE COURT:**  Let me direct you to the claims for
2  relief, where I'm not inclined to give leave to amend, or ones
3  I assume you're most focused on.
4      The initial claim, the claim on Sarbanes-Oxley
5  retaliation -- it does seem to me that you do have to provide,
6  under the statutory scheme, notice of the administrative claim.
7  And while that's directed towards PwC, and PwC is not a moving
8  party here, I don't see how you can link in the individuals on
9  the administrative claim versus PwC.
10     Why am I mistaken about that?
11 **MR. CABECEIRAS:**  I understand your concern,
12 Your Honor.  And our position is that here, individuals that
13 worked closely with plaintiff throughout the years knew when
14 plaintiff opposed what he perceived to be unlawful auditing
15 practices.
16     Throughout the Amended Complaint we cite two times where
17 plaintiff tells named defendants, *I don't like what you're*
18 *doing.*
19     He then reports to the SEC.  These defendants are well
20 aware of the SEC proceedings; the investigation.  They
21 oversaw --
22 **THE COURT:**  But under Sarbanes-Oxley, is that enough?
23 I mean, is it just -- so it's -- you're sort of positing some
24 sort of constructive-notice concept that, you know, they're
25 aware of it; must have been aware of it, and therefore that is

```
 1  good enough.  Do you have any anything you can point me to that
 2  develops that concept under Sarbanes-Oxley theory?
 3          MR. CABECEIRAS:  Your Honor, you're absolutely
 4  correct we're positing a constructive-notice theory in this
 5  case.  And any other facts I can point out have already been
 6  mentioned in the Amended Complaint.
 7          THE COURT:  I recognize there's not a lot of law on
 8  Sarbanes-Oxley retaliation claims.
 9      Okay.  Anything I you want to say on the
10  breach-of-contract claim, or the --
11      As I say, in wrongful termination state law retaliation,
12  I'm inclined to give you another crack at it.
13          MR. CABECEIRAS:  Mm-hm.
14          THE COURT:  Anything more on breach of contract or --
15          MR. CABECEIRAS:  The common law.
16          THE COURT:  -- determination?
17          MR. CABECEIRAS:  Excuse me.
18          THE COURT:  Go ahead.
19          MR. CABECEIRAS:  The common-law Tameny claim,
20  Your Honor -- we concede that, you know, we can't bring claims
21  against individuals.  We didn't mention it in our opposition.
22          THE COURT:  Okay.
23          MR. CABECEIRAS:  So we concede that point.
24      As for the breach of contract, you know, Defendant Carey
25  was well aware of the contract obligations.  He sat down with
```

1   Mr. Botta, and terminated him.  He knew that he did not give
2   Mr. Botta adequate notice that was required under the contract.
3   He had carried out these activities in his official capacity.
4           **THE COURT:**  Okay.  Mr. Hueston.
5           **MR. HUESTON:**  Thank you, Your Honor.
6       So I'm going to address my points in light of the
7   tentative to why the claims should all be dismissed with
8   prejudice.
9       Going first to the defamation claim focused on Mr. McCann,
10  I think this oral argument illustrates the futility of allowing
11  yet another amendment.
12      One thing we did in our paperwork is we filed a redline
13  version of the Complaint before.  And we had filed our original
14  motion to dismiss, which, of course, was made moot by the newly
15  amended complaint; but it's appropriate for a Court to
16  consider:  Well, what changes have been made?
17      The plaintiffs have been on notice of all of these
18  arguments, and virtually no changes were made.  And here at
19  oral argument, counsel has effectively reargued the same points
20  in the paper.  And they're indicating no daylight, whatsoever,
21  for new facts that might come to the fore.
22          **THE COURT:**  Well, of course, if the order is with
23  leave to amend, there's always the cautionary language which I
24  include in most of the opinions that says, *So you have leave,*
25  *if, in good faith, you can present something you think*

1   *satisfies* -- and it doesn't make them file an amended
2   complaint.  It says, *if you have something new that you think*
3   *you could present.*
4        And I do sometimes wonder.  I mean, I've been in your
5   shoes on this.  But you know, sort of be careful what you wish
6   for.  If you feel very strongly you're ultimately going to
7   prevail on the notion that this claim cannot go forward, do you
8   really want to cut off one more chance for them to do it, and
9   face the potential more-learned folks on the Circuit saying,
10  *You've got to give them another chance if they ask for one*?
11       And there is a theoretical possibility that they could
12  come up with something; whereas I think, you know, on the first
13  claim for relief -- Sarbanes-Oxley retaliation claim -- they're
14  effectively telling you that they're not going to have
15  something new for me on the notice issue.  It rises or falls on
16  what we've got in front of us; and therefore, a call could be
17  made.
18       But Mr. Hueston, you really think you don't want me to
19  give them leave to amend?
20           **MR. HUESTON:**  Your Honor, I fully appreciate *Be*
21  *careful what you ask for*; it's something I often counsel my
22  attorneys at my firm on.
23       I think here it's unusual, in the sense that Your Honor
24  has pointed out the key language that plaintiff has been
25  relying on is couched in information and belief.  So the very

1  framing of that suggests it's speculation.  And I heard a
2  reflection of that in argument today.
3      And then, secondly, he's had a lot of time to consider and
4  to supplement facts.  And there have been no facts
5  supplemented.  So I feel very comfortable that, by way of the
6  factual allegations, as framed, and the chance given, very
7  comfortable that adequate process and time has been allowed,
8  and that a Court of Appeal would find that to be true.
9      You know, at bottom, Your Honor, the individuals really
10 don't belong in this case.  And, you know, we've tried to be
11 circumspect.  We didn't move to dismiss on everything.  With
12 respect to PwC, the case will go on.  We've challenged with
13 respect to the defamation claim.
14     And again, here I will point out, in asking for a
15 dismissal with prejudice there, that with respect to the
16 defamation allegations, those are purely on information and
17 belief.  I think of the over 100 paragraphs of the Complaint,
18 maybe 3 are addressed to defamation; and they're all on
19 information and belief, and so it was already hanging on a
20 thread.
21     There's nothing here to suggest there's another new fact.
22 And therefore, I think we should put that to bed, and just move
23 on with the rest of the case.
24          **THE COURT:**  Go ahead.
25          **MR. CABECEIRAS:**  Could I address a couple points?

1        **THE COURT:**  Yes.  Go ahead.

2        **MR. CABECEIRAS:**  The Amended Complaint did articulate
3    new facts that weren't included in the initial Complaint,
4    speaking to not only the defamation, but also the breach of
5    contract.  And the causes of action against specific individual
6    defendants were tailored, as a courtesy to the Court and
7    opposing counsel.  We concede its importance through that
8    mechanism.

9        As for the defamation claim, it should be noted that I was
10   involved somewhat in learning about the defamatory speech.  At
11   one point, PwC's prior counsel had informed me that PwC was
12   going to reach out to Mr. Botta -- my client's current employer
13   and, in sum and substance, said they cannot sign off because
14   they find him incompetent.

15       So, you know, information and belief -- I could interject
16   myself into this claim and amend it and say, *Counsel received a*
17   *call*, if that works, but you know, as it stands, it's what
18   happened.  So, you know, I understand the information and
19   belief.  We need to articulate more facts.  With leave to
20   amend, Your Honor, should we choose, I can certainly do that.

21       **THE COURT:**  Okay.  Anything further?

22       **MR. HUESTON:**  Nothing further, Your Honor.

23       **THE COURT:**  Okay.  I'll take the matter under
24   submission.

25       I'll just to advise you, depending upon how this comes

Case 3:18-cv-02615-AGT   Document 64   Filed 09/28/18   Page 12 of 12         12
PROCEEDINGS

```
 1  out, I suspect if there is any -- if I ultimately decide to
 2  give leave to amend, and there is a further round of this,
 3  probably would do it on the papers rather than have a hearing.
 4  I think we have enough now that I don't have to haul you back
 5  in here for that.  So that would be my operating assumption.
 6            MR. HUESTON:  Thank you, Your Honor.
 7            MR. CABECEIRAS:  Thank you very much, Your Honor.
 8            THE COURT:  All right.  Thank you.
 9       (At 1:45 p.m. the proceedings were adjourned.)
10  I certify that the foregoing is a correct transcript from the
11  record of proceedings in the above-entitled matter.
12
13  /s/ Lydia Zinn
14  _____        September 28, 2018
    Signature of Court Reporter/Transcriber  Date
15  Lydia Zinn
```