United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MAURO BOTTA,

Plaintiff,

v.

PRICEWATERHOUSECOOPERS LLP, et al.,

Defendants.

Case No. 18-cv-02615-RS

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT**

## I. INTRODUCTION

Plaintiff Mauro Botta, a former employee of the public accounting firm PricewaterhouseCoopersLLC ("PwC"), brings this lawsuit against PwC and seven former colleagues and supervisors (the "individual defendants") averring he was wrongfully terminated from his job as a Senior Manager and defamed in retaliation for complaints he made about PwC's auditing practices. He brings three retaliation claims under the Sarbanes-Oxley Act and California Labor Code §§ 1102.5 and 98.6, a defamation claim, a breach of contract claim, and a wrongful termination against public policy claim. Botta's defamation claim is brought against PwC and defendant McCann, his claim for breach of contract is against PwC and defendant Carey, and the remaining claims are brought against all defendants.

Defendants move to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The individual defendants move to dismiss the complaint in its entirety, arguing Botta cannot bring his claims against them as a matter of law and that he fails to aver facts showing any of the individual defendants engaged in actionable conduct. PwC moves to dismiss the defamation claim only, invoking California's common interest privilege. Botta's allegations are not sufficient to raise all his claims, as pleaded, beyond a speculative and conclusory level.

Accordingly, the motions to dismiss are granted.

**II. BACKGROUND[1]**

PwC hired Botta in 1999, and he began working in the San Jose, California Office of PwC in 2004. Around April 2013, he joined the audit team conducting a peer review for Company A when he learned he was inaccurately listed as the Leading Manager. Botta reported the error to Company A, to PwC's Human Resources, and to his Company A audit team supervisor, defendant Bustamante. No immediate action was taken.

In February 2015, Botta was working on the Company B engagement and discovered errors in the 2013, 2014, and 2015 audits of the company as well as information withheld by the company. Botta initially reported his findings to his supervisor on the engagement, defendant Thorson, and drafted a memorandum to him outlining Company B's material omissions and major control deficiencies. Several days later, Quality Review Partner, defendant Heatley, called Botta and reprimanded him for the memorandum he sent to Thorson. In May 2015, he raised the same issues with PwC's national office and was removed from his work with Company B at the demand of PwC and Company B's Chief Financial Officer.

In December 2015, Botta discovered issues with the audits of Company C in 2015 and previous years. Botta reported these issues to his supervisor on that project, defendant Haavardtun, and avers Haavardtun and defendant Genc disregarded his suggestion to review the company's contracts in light of the issues he discovered. Haavardtun told Botta to review 60 contracts to grasp the scope of the error. Botta believed this minimal review was unethical so he reported his concerns to the national office, who instructed him to review 400 contracts. Botta continued to communicate material weaknesses that he discovered in the process of the audit, but by April 2016 he was removed from working on the Company C audit.

Botta believes PwC and individual defendants stopped giving him work in retaliation for

---

[1] The factual background is based on the averments in the complaint, which are taken as true for purposes of a motion to dismiss, as well as on documents incorporated by reference in the complaint.

his reporting these and other auditing issues. In October 2016, a supervisor who is not a party to this lawsuit, as well as defendant Carey, another of his PwC supervisors, told Botta to stop speaking about his "situation" – presumably his declining utilization rate with PwC – to which Botta responded he felt he was being blacklisted. Shortly after this conversation, Botta's "utilization rate" continued dropping due to a lack of work. Botta brought in his own business with a consulting project for Company D, however, PwC ultimately staffed the project without him.

In November 2016, Botta filed a formal complaint with the United States Securities and Exchange Commission ("SEC") disclosing the issues he identified with audits while working at PwC. In January 2017, he met with staff for Senator Dianne Feinstein's office seeking assistance in communicating further with the SEC. Shortly thereafter, the SEC contacted Botta regarding his complaint.

In April 2017, PwC notified Botta of an SEC investigation into Company B's audit. Botta avers defendants had actual and constructive knowledge that he was the whistle-blower who tipped off the SEC about Company B's audit. In the following months of June and July 2017, PwC's in-house counsel interviewed Botta and other employees about the SEC investigation. Around the same time in June 2017, Botta was told to find a new job by defendant Carey and another non-party, and they represented to Botta that PwC was restructuring. He continued working at PwC until August 2017 when he was formally terminated.

In September and October 2017, Botta found a new job and filed an administrative claim against PwC averring whistleblower retaliation under Sarbanes-Oxley.[2] By January 2018, he met

[2] Defendants jointly request judicial notice of Botta's U.S. Department of Labor administrative claim and his employment agreement with PwC. *See* Request for Judicial Notice (Dkt. No. 51). Botta does not contest the accuracy or authenticity of these documents. Judicial notice is appropriate for records from an administrative proceeding. *See Aids Healthcare Found., Inc. v. City & Cty. of San Francisco*, 208 F. Supp. 3d 1095, 1098 (N.D. Cal. 2016) (taking judicial notice of administrative proceeding records). Incorporation-by-reference is more appropriate, however, for the employment agreement referenced in Botta's complaint. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (finding incorporation-by-reference appropriate when the document forms the basis of a claim). Accordingly, the request for judicial notice is granted for the administrative claim but denied for the employment agreement, which

again with Senator Dianne Feinstein's staff for an update on the SEC investigation of Company B. Botta avers PwC contacted his current employer in February 2018 to communicate that Botta was incompetent and demand he be removed from a project with the new employer since they could not sign off on any of his work product. Upon Botta's "information and belief," PwC supervisor, defendant McCann, labelled Botta as incompetent, and the other individual defendants defamed his professional abilities and black-listed him from the industry.

## III. LEGAL STANDARD

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Iqbal*, 556 U.S. at 678 ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory statements," are not taken as true).

## IV. DISCUSSION

### A. Sarbanes-Oxley Claim

The individual defendants contend Botta's Sarbanes-Oxley whistle-blower retaliation claim is deficient and untimely because he did not file an administrative claim against them within the required 180-day filing period and his claim against PwC did not provide fair notice to any individual defendants. *See* 18 U.S.C. §§ 1514A(b)(1)(A); (b)(2)(D). The contents of Botta's

---

instead will be considered as a record incorporated by reference in the complaint.

United States District Court
Northern District of California

administrative filing support the conclusion Botta failed to provide fair notice of his Sarbanes-Oxley claims to any individual defendants and therefore, the claims against each of them are untimely.

In *Wadler v. Bio-Rad Labs., Inc.*, 141 F. Supp. 3d 1005 (N.D. Cal. 2015), on which both parties rely, the court applied a liberal standard to administrative complaints and found an averment that plaintiff was "terminated from [his] employment at Bio-Rad by the CEO," provided fair notice of the charge and the defendant's likelihood to be named in subsequent litigation. Fair notice was established not only by formally naming individual defendants in the heading or caption, but by identifying specific conduct by the individuals accused of retaliation or that resulted in plaintiff's termination. *Id*. at 1021 (finding with respect to other defendants, "Wadler does not cite any specific conduct on the part of these individuals that would have put them on notice that he was accusing them of retaliatory conduct; nor does he state that his termination was a result of a vote by the Board of Directors.").

Here, Botta asserts his administrative claim provided fair notice to all individual defendants because they: (1) worked with Botta; (2) participated in what Botta avers are unlawful accounting practices; (3) were interviewed by internal investigators; (4) knew of the SEC investigation; and (5) knew or should have known about the Department of Labor investigation. None of these averments, however, are evident from the contents of the administrative claim itself. The administrative claim is dated October 25, 2017 and is addressed to PwC. It contains only one sentence implicating a supervisor, which we know from the amended complaint refers to defendant Thorson. The claim states the supervisor sent Botta a message after his termination, "Don't know if u had it your way -- but you did it ur way! [sic]." *See* Req. for Jud. Not.at Ex. B. ¶ 18. The reference to defendant Thorson's message after Botta was terminated, which Botta understood as a mean-spirited jab, would not put Thorson on notice he would be personally accused of any retaliatory conduct or named as a party in subsequent judicial proceedings against PwC. Botta does not directly attribute his termination to the message, which was sent after the fact, or attribute his termination to other actions by Thorson or the remaining individual

defendants. Because Botta did not provide the individual defendants with fair notice in his administrative claim and the 180-day period has passed, the Sarbanes-Oxley claims against the individual defendants are dismissed without leave to amend.

B. Additional State Law Wrongful Termination and Retaliation Claims

In addition to the Sarbanes-Oxley claim, the individual defendants move to dismiss the remaining wrongful termination and state law retaliation claims contending they do not apply to supervisors who are not employers. Botta disputes this as a matter of law.

Under California's whistle-blower statute, the state maintains a broad public policy interest in encouraging whistle-blowers to report unlawful actions without fear of retaliation. *See McVeigh v. Recology San Francisco*, 213 Cal. App. 4th 443, 468 (2013). In fact, as defendants assert, every district court in the state has interpreted § 1102.5 claims to apply only where there is an appropriate employer-employee relationship. *See, e.g.*, *Minor v. Fedex Office & Print Servs., Inc.*, 182 F. Supp. 3d 966, 989 (N.D. Cal. 2016) ("§ 1102.5 claims may only be brought against 'an employer.'"); *Vierria v. California Highway Patrol*, 644 F. Supp. 2d 1219, 1244 (E.D. Cal. 2009) ("violations under Section 1102.5 are predicated upon an employer/employee relationship."); *United States ex rel. Lupo v. Quality Assurance Servs., Inc.*, 242 F. Supp. 3d 1020, 1029 (S.D. Cal. 2017) (finding individual defendants were not liable for retaliation because "courts have since determined that the amendment [to § 1102.5] was meant only to broaden the category of employee eligible for whistleblower protection (to include contractors and agents), not to broaden the class of persons subject to liability under the provision."). California Labor Code § 98.6 is considered derivative of the § 1102.5 claim, and it would succeed or fail in this case based on the same employer-employee relationship required of § 1102.5. *See Couch v. Morgan Stanley & Co. Inc.*, 656 F. App'x 841, 843 (9th Cir. 2016) (finding § 98.6 claim derivative of the plaintiff's §§ 1101(a) and 1102 claims).

Similarly, California's whistle-blower statutes permit claims for wrongful termination in violation of its public policy against retaliation, also known as a *Tameny* claim. The exemplary state law case, *Lloyd v. Cty. of Los Angeles*, 172 Cal. App. 4th 320, 330 (2009), holds actions for

wrongful termination or retaliation in violation of California's public policy "can only be asserted against an employer," because supervisors are "necessarily exercising authority the employer conferred on" them when taking any retaliatory action. This district has reaffirmed *Lloyd*, finding it is clear these claims "can only be brought against an employer and not nonemployer individuals." *Robertson v. Cty. of Alameda*, No. 15-CV-03416-TEH, 2015 WL 6506966, at *3 (N.D. Cal. Oct. 28, 2015).

Botta does not contest the holding in cases preventing personal liability in California whistle-blower claims against individuals who are not employers. At the hearing, Botta conceded the *Tameny* claim presents no viable basis to proceed against the individual defendants. *See* Transcript of Proceeding at 7:19-23. Still, as pleaded, the amended complaint does not aver any of the individual defendants were Botta's employer, and the incorporated by reference employment agreement suggests they are not. There are no facts explaining the extent of each individual defendant's supervision and authority over Botta's performance of his employment duties. *See Hall v. Apartment Inv. & Mgmt. Co.*, 2011 WL 940185, at *5 n. 6 (N.D. Cal. Feb. 18, 2011) (adopting FEHA's definition of employer for California Labor Code allegations based on a totality of the circumstances analysis, "with emphasis upon the extent to which the defendant controls the plaintiff's performance of employment duties."). The motion to dismiss the state law wrongful termination and retaliation claims is granted without leave to amend because the individual defendants do not have an employer-employee relationship with Botta, and accordingly leave to amend would be futile.

C. Defamation Claim

Botta's defamation claim lacks sufficient factual averments to survive defendants' motions to dismiss. California recognizes a qualified "common interest" privilege protecting defamatory communications "reasonably calculated to further [the common] interest." *Cuenca v. Safeway S.F. Employees Fed. Credit Union*, 180 Cal. App. 3d 985, 995 (1986) (citation and internal quotations omitted); Cal. Civ. Code § 47(c). Specifically, when one interested party communicates information in a commercial setting concerning the conduct of an employee to

another interested party, the communication is covered within the qualified privilege. *Id*. at 997. PwC's alleged communications with Botta's new employer, concerning their opinion of his competency to perform tasks requiring defendant to "sign off on any work," would fall squarely in the common interest privilege. Amended Compl. ¶ 80.

Botta can still defeat the privilege, however, if he sufficiently avers the statements were made with actual malice, defined as "a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person." *Duste v. Chevron Prod. Co.*, 738 F. Supp. 2d 1027, 1043 (N.D. Cal. 2010) (citations and internal quotations omitted). Botta may also overcome the privilege if defendants lacked reasonable grounds to believe their statements were true. *See Inst. of Athletic Motivation v. Univ. of Ill.*, 114 Cal. App. 3d 1, 12 (1980) (holding "ordinarily the privilege is lost if defendant has no reasonable grounds for believing his statements to be true."); *see also Sutter Health v. UNITE HERE*, 186 Cal. App. 4th 1193, 1210 (2010) (stating a reckless disregard for the truth amounted to malice where there was a "high degree of awareness of [a statement's] probable falsity."). As pleaded, and making all inferences in the light favorable to Botta, there are still not enough allegations plausibly to find actual malice or a lack of good faith by PwC or defendant McCann.

*1. Defamation by PwC*

Botta avers PwC called his employer in February 2018, at which point PwC would have been aware of the October 2017 administrative claim he filed against the firm. If Botta was told he was terminated merely due to a restructuring of PwC's workforce rather than concern for his competence as an auditor, there would be less (if not any) basis to contact his new employer.[3] The amended complaint, however, recognizes multiple instances where PwC critiqued and poorly evaluated Botta in the timeframe before his termination, suggesting it could hold genuine concerns

[3] PwC is correct its own argument for firing Botta due to a reduction in its workforce cannot be relied on to satisfy Botta's burden of pleading actual malice in his complaint. This has no bearing, however, on Botta's well-pleaded averment that PwC told him he was terminated "due to a restructuring that the firm was doing." Amended Compl. ¶ 73.

United States District Court
Northern District of California

about his professional abilities. For instance, in early 2016 the Chief Accounting Officer at Company C expressed Botta needed a "better understanding of the procedures and controls," Amended Compl. ¶ 53, and in April 2016, PwC internally evaluated Botta as "Insufficient" and "Not operating at a Senior Manager Level." Amended Compl. ¶ 58. In this context, Botta has not averred how PwC lacked reasonable grounds for believing he was incompetent.

PwC requests dismissal without leave to amend because Botta's amended complaint did not make any changes to the defamation averments. Relatedly, PwC argues plaintiff's reliance on averring "information and belief" demonstrates his inability to satisfy his burden. *See, e.g.*, *Delphix Corp. v. Actifo, Inc.*, 13-cv-4613 RS, 2014 WL 4628490, at *2 (N.D. Cal. Mar. 19, 2014) ("Where, as here, some of the allegations are qualified with the phrase ["on information and belief"] and others are not, a reasonable inference arises that . . . plaintiff likely lacks knowledge of underlying facts to support the assertion, and is instead engaging in speculation to an undue degree."); *Vespa v. Singler-Ernster Inc.*, No. 16-cv-03723-RS, 2017 WL 1246863, at *1 (N.D. Cal. Apr. 5, 2017) ("While use of the phrase therefore can often be dismissed as mere surplusage, in some circumstances it gives rise to an inference that the pleader lacks knowledge of underlying facts to support the allegations made, and is instead engaging in speculation to an undue degree."). That said, as *Delphix* illustrated, "one further chance to amend is warranted" because Botta has "not previously been advised as to the consequences of [his] attempt to plead 'on information and belief.'" *Delphix Corp.*, 2014 WL 4628490, at *2.

*2. Defamation by McCann*

Botta's defamation claim against McCann also fails. The averments are based entirely on information and belief. As noted above, pleading "on information and belief" is not a recognized pleading device under the Federal Rules. The phrase is often considered surplusage that restates Rule 11(b) of the Federal Rules of Civil Procedure where there are other averments explaining the basis for information, but this is not necessarily true in circumstances where some allegations are qualified with that language and others are not. *Delphix Corp.*, 2014 WL 4628490, at *2. Here, Botta does not supplement his qualified pleading "on information and belief" about McCann with

United States District Court
Northern District of California

any additional detailed explanation. He states his conclusory belief McCann "found Plaintiff to be 'incompetent,'" and his belief other managers were instructing McCann to "continue to black-list Plaintiff in the industry," without any pleadings explaining how or why he holds those beliefs. Amended Compl. ¶¶ 81-82.

Botta's defamation claim must identify the substance of the allegedly defamatory statements in more detail, and it must expound on McCann's attitude toward the veracity of the statements. *See Maponics, LLC v. Wahl*, 2008 WL 2788282, at *4 (N.D. Cal. July 18, 2008) ("In order to adequately state a claim for defamation, the claimant must allege either the specific words or the substance of the statements…") (internal citation and quotations omitted); *Harkonen v. Fleming*, 880 F. Supp. 2d 1071, 1081 (N.D. Cal. 2012) ("The focus is thus on the defendant's attitude toward the truth or falsity of the material published ... [not] the defendant's attitude toward the plaintiff.") (internal citation and quotations omitted). The averment that McCann and the other individual defendants determined him to be "incompetent" is vague and lacks a foundation to sustain a defamatory meaning as opposed to merely opinion covered by the common interest privilege. *See Knievel v. ESPN*, 393 F.3d 1068, 1073-74 (9th Cir. 2005) (finding at the pleading stage, plaintiff must provide defamatory statements "reasonably capable of sustaining a defamatory meaning" and "not mere comment within the ambit of the First Amendment") (internal citations omitted).

Critically, the only averment shedding light on McCann's attitudes towards Botta or towards the truth defeats any suggestion of actual malice. Botta's claim that McCann made the statements even though he never worked with him supports that McCann was merely the messenger for PwC. It is more likely McCann had no reason to question, let alone believe, whether the information he communicated on behalf of PwC was false. As pleaded the factual averments do not plausibly reflect the "clear and convincing evidence" needed for defamation claims under California law. *Sutter Health*, 186 Cal. App. 4th at 1211 (2010). The claim against McCann is dismissed without leave to amend.

D. Breach of Contract Claim

United States District Court
Northern District of California

The individual defendants contend Botta's breach of contract claim fails as a matter of law because defendant Carey was not a party to the employment contract between Botta and PwC. Botta does not dispute this, and the employment agreement incorporated by reference in the complaint indicates he contracted with "the Firm," PwC, for the position of Senior Manager rather than any of the individual defendants. Nonetheless, Botta relies on *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 595 (1970), arguing Carey can incur personal liability since he "participate[d] in the wrong and authorize[d] or direct[ed] that it be done" when he informed Botta of his termination. His reliance is misplaced, however, because the case restates a principle of tort liability rather than contract law. Carey is evidently not a party to Botta's employment contract with PwC, and there is no breach of contract claim with respect to him. *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 (1994) ("Contract law exists to enforce legally binding agreements between parties..."). Accordingly, the breach of contract claim against Carey is dismissed without leave to amend.

**V. CONCLUSION**

For the foregoing reasons, the motions to dismiss are granted. The causes of action against the individual defendants are dismissed without leave to amend. The remaining defamation cause of action against PwC is dismissed with leave to amend. Any amended complaint shall be filed within 20 days of the date of this order.

**IT IS SO ORDERED**.

Dated: October 9, 2018

RICHARD SEEBORG
United States District Judge