**HUESTON HENNIGAN LLP**
John C. Hueston, State Bar No. 164921
jhueston@hueston.com
Joseph A. Reiter, State Bar No. 294976
jreiter@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:  (213) 788-4340
Facsimile:  (888) 775-0898

Attorneys for Defendant
PricewaterhouseCoopers LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURO BOTTA,<br><br>        Plaintiff,<br><br>vs.<br><br>PRICEWATERHOUSECOOPERS LLP,<br><br>        Defendant. | Case No. 3:18-CV-2615-RS<br><br>**DEFENDANT PRICEWATERHOUSECOOPERS LLP'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:            Hon. Richard Seeborg<br>Hearing Date:   March 7, 2019<br>Time:             1:30 p.m. |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 7, 2019 at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Richard Seeborg, United States District Judge, in Courtroom 3 of the United States District Court, Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California 94102, Defendant PricewaterhouseCoopers LLP ("PwC") will and hereby does move this Court pursuant to Fed. R. Civ. P. 56 for entry of an Order granting summary judgment, or, in the alternative, partial summary judgment, in favor of PwC on all remaining causes of action asserted by Plaintiff Mauro Botta ("Plaintiff") in the First Amended Complaint.

PwC's Motion for Summary Judgment is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed declarations of Joseph A. Reiter, Mark D. Simon, and Walter F. Brown, and supporting exhibits, all papers and records on file herein, and such other matters as may be presented to the Court at or before the hearing on this Motion.

Dated:  January 31, 2019                    Respectfully submitted,

                                            HUESTON HENNIGAN LLP


                                            By: */s/ John C. Hueston*
                                                John C. Hueston
                                                Attorneys for Defendant

- 1 -
PRICEWATERHOUSECOOPERS LLP'S MOTION FOR SUMMARY JUDGMENT
Case No. 3:18-cv-2615-RS

## TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

I. INTRODUCTION .................................................................................................... 1

II. FACTS ....................................................................................................................... 3

    A. Relevant Auditing Standards ......................................................................... 4

    B. Plaintiff was a Senior Manager in PwC's Assurance Practice ..................................................................................................... 4

    C. Plaintiff Admitted to Serious Misconduct and False Statements ..................................................................................................... 5

    D. Mr. Simon Terminated Plaintiff Due to His Admissions of Misconduct ..................................................................................................... 5

III. LEGAL STANDARD ............................................................................................... 7

IV. ARGUMENT ............................................................................................................. 7

    A. Mr. Simon Had No Knowledge of Plaintiff's SEC Whistleblowing ................................................................................................ 8

    B. Plaintiff Was Terminated for Non-Retaliatory Reasons ........................ 9

        1. There is Clear and Convincing Evidence that Plaintiff was Terminated for Misconduct .................................. 10

        2. Plaintiff Does Not Have "Specific and Substantial" Evidence that PwC's Reason for his Termination is Pretextual ................................................................................... 11

    C. Plaintiff's Breach of Contract Claim Fails .............................................. 12

V. CONCLUSION ....................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aguilera v. Pirelli Armstrong Tire Corp.*,
  223 F.3d 1010 (9th Cir. 2000) .................................................................................. 12

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................................... 7

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................................... 7

*Cooper v. Colvin*,
  2015 WL 4747279 (N.D. Cal. Aug. 11, 2015) .......................................................... 6

*DSAM Glob. Value Fund v. Altris Software, Inc.*,
  288 F.3d 385 (9th Cir. 2002) ..................................................................................... 8

*Guitron v. Wells Fargo Bank, NA*,
  619 F. App'x 590 (9th Cir. 2015) ......................................................................... 2, 11

*Horn v. Cushman & Wakefield W., Inc.*,
  72 Cal. App. 4th 798 (1999) .................................................................................... 12

*Kim v. Boeing Co.*,
  487 F. App'x 356 (9th Cir. 2012) ............................................................................ 11

*Mayes v. Kaiser Found. Hosps.*,
  2014 WL 2506195 (E.D. Cal. June 3, 2014) ........................................................... 12

*Morgan v. Regents of Univ. of Cal.*,
  88 Cal. App. 4th 52 (2000) ................................................................................ passim

*Nazif v. Computer Scis. Corp.*,
  2015 WL 3776892 (N.D. Cal. June 17, 2015) .......................................................... 8

*Patten v. Grant Joint Union High Sch. Dist.*,
  134 Cal. App. 4th 1378 (2005) ........................................................................ 7, 8, 10

*Raad v. Fairbanks N. Star Borough Sch. Dist.*,
  323 F.3d 1185 (9th Cir. 2003) ................................................................................... 8

*Rielly v. D.R. Horton, Inc.*,
  2008 WL 4330299 (C.D. Cal. Sept. 17, 2008) ................................................ 1, 2, 8, 9

*Weingand v. Harland Fin. Sols., Inc.*,
  2012 WL 3537035 (N.D. Cal. Aug. 14, 2012) .......................................................... 1

*Wiest v. Tyco Elecs. Corp.*,
  812 F.3d 319 (3d Cir. 2016) ................................................................................ 3, 11

TABLE OF AUTHORITIES (cont.)

Page(s)

**Statutes**

Cal. Labor Code § 98.6 ................................................................................................. 1

Cal. Labor Code § 1102.5 ......................................................................................... 1, 7

**Rules**

Fed. R. Civ. P. 56(a) ..................................................................................................... 7

**Regulations**

29 C.F.R. § 1980.104(e)(2) ................................................................................. 7, 8, 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

PricewaterhouseCoopers LLP ("PwC") terminated Plaintiff's at-will employment for cause because he engaged in serious misconduct, or otherwise lied to PwC when he admitted to doing so. Specifically, Plaintiff stated during two interviews PwC conducted in response to an inquiry from the Securities and Exchange Commission ("SEC") that he had fabricated an internal control and drafted false audit documentation in connection with the annual audit of a client's financial statements. Because PwC could no longer trust Plaintiff to perform his professional responsibilities, PwC ended Plaintiff's employment.

Plaintiff responded to his termination by initiating this lawsuit against PwC and seven of its current and former partners, claiming that his termination was in response to a whistleblower complaint he had submitted to the SEC some nine months prior.[1] Plaintiff's First Amended Complaint ("FAC") asserts four whistleblower retaliation claims under the Sarbanes-Oxley Act ("SOX"), California Labor Code § 1102.5, California Labor Code § 98.6, and for wrongful termination in violation of public policy,[2] as well as two peripheral claims for breach of contract and defamation. On October 9, 2018, this Court dismissed all claims against the individual defendants and Plaintiff's defamation claim against PwC. *See* Dkt. No. 67.

---

[1] The SEC declined to bring an enforcement action after investigating Plaintiff's meritless allegations. Declaration of Joseph A. Reiter, Ex. 1 at 118:25–119:7. After his termination, Plaintiff also submitted a similar complaint to the California Board of Accountancy ("CBA"). Like the SEC, the CBA also did not take any enforcement action. *Id.*, Ex. 6 at PLAINTIFF 0001955.

[2] Plaintiff's claims under Labor Code § 98.6 and wrongful termination are derivative of his SOX and Labor Code § 1102.5 claims. FAC ¶¶ 101, 113; *Weingand v. Harland Fin. Sols., Inc.*, 2012 WL 3537035, at *7 (N.D. Cal. Aug. 14, 2012) (noting that Labor Code § 98.6 "can be applied only to conduct protected by the Labor Code" and the plaintiff's § 98.6 claim was predicated on alleged "whistleblowing activity under § 1102.5"); *Rielly v. D.R. Horton, Inc.*, 2008 WL 4330299, at *6 (C.D. Cal. Sept. 17, 2008) ("Plaintiff's claim for wrongful termination violating SOX is essentially a whistleblower claim under SOX."). Accordingly, PwC refers to these claims collectively as Plaintiff's whistleblower retaliation claims.

1    PwC now seeks summary judgment on each of Plaintiff's remaining whistleblower and breach of contract claims for the following independent reasons:

*First*, Plaintiff cannot establish a causal connection between his termination and alleged whistleblowing because the person who made the termination decision—Mark Simon, the Managing Partner of PwC's Assurance Practice—did not know that Plaintiff had submitted an SEC complaint. Plaintiff's discovery responses do not even allege that Mr. Simon knew of Plaintiff's purported whistleblowing or retaliated against him, and Plaintiff has admitted that he did not discuss his whistleblowing allegations with Mr. Simon or know if anyone else had. In fact, Mr. Simon had never worked with or interacted with Plaintiff. Courts routinely dismiss whistleblower claims under identical circumstances. *See, e.g., Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 73 (2000) (affirming summary judgment where "all of the actual decision makers" "affirmatively stated in their declarations" that they had no knowledge of the plaintiff's protected activities); *Rielly v. D.R. Horton, Inc.*, 2008 WL 4330299, at *7 (C.D. Cal. Sept. 17, 2008) (dismissing SOX claim).

*Second*, the undisputed evidence demonstrates that Plaintiff was terminated for non-retaliatory reasons. Plaintiff told PwC's outside counsel, Walter Brown of Orrick, Herrington & Sutcliffe LLP, on two separate occasions during interviews conducted in response to an SEC inquiry that Plaintiff had fabricated an internal control and created false documentation in connection with the annual audit of a client's financial statements.

In light of Plaintiff's statements, Mr. Simon concluded that Plaintiff had necessarily engaged in misconduct requiring his termination. That is, Plaintiff had either (1) fabricated a client's internal control in violation of his professional, legal, and ethical duties or (2) lied when he told PwC's counsel that he had done so. Either way, PwC could no longer trust Plaintiff to perform his responsibilities in accordance with professional standards. *See Guitron v. Wells Fargo Bank, NA*, 619 F. App'x 590, 591 (9th Cir. 2015) (affirming summary judgment where the employer established a

legitimate reason for termination by pointing to misconduct the employee had engaged in); *Wiest v. Tyco Elecs. Corp.*, 812 F.3d 319, 333 (3d Cir. 2016) (affirming summary judgment where the employer terminated the plaintiff for misconduct and stating, "it is not our role to second-guess a human resources decision that followed a thorough investigation").

Critically, Plaintiff cannot dispute that he made these statements during his interviews. As explained below, Plaintiff made similar statements in the SEC complaint he submitted and a draft complaint he wrote. Moreover, Plaintiff has admitted in response to PwC's requests for admission that he cannot recall the statements he made during his interviews. *See Morgan*, 88 Cal. App. 4th at 68 ("An employee in this situation cannot simply show the employer's decision was wrong, mistaken, or unwise. Rather [he] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions . . . that a reasonable factfinder could rationally find them unworthy of credence.").

*Finally*, PwC is also entitled to summary judgment on Plaintiff's claim for breach of contract, which alleges that PwC did not provide three months of notice under Plaintiff's employment agreement before terminating him. As explained herein, no notice was due under the agreement because Plaintiff was terminated for misconduct.

## II.   FACTS

As an independent registered public accounting firm, PwC conducts integrated audits of public companies' financial statements and internal control over financial reporting. Registered public accounting firms are required to comply with all applicable auditing and related professional practice standards of the Public Company Accounting Oversight Board ("PCAOB"). *See* PCAOB Rule 3100.[3]

---

[3] *Available at* https://pcaobus.org//Rules/Documents/Section_3.pdf.

### A. Relevant Auditing Standards

Public company audits are governed by the PCAOB's Auditing Standards ("AS"). The auditor's objective in an audit of internal control over financial reporting is to obtain evidence that is sufficient to provide reasonable assurance about whether material weaknesses exist. *See* PCAOB AS 2201.3.[4]

Controls over financial reporting are designed and performed by a company to prevent or detect errors or fraud that could result in a misstatement to a company's financial statements. PCAOB AS 2201, App. A8. A deficiency in internal control over financial reporting occurs when a control does not exist, is not properly designed, or does not operate as designed. *Id*. at A3. A material weakness exists when it is reasonably possible a material misstatement in the financial statements will not be timely prevented or detected by the company. *Id*. at A7.

### B. Plaintiff was a Senior Manager in PwC's Assurance Practice

Plaintiff worked for a PwC network firm in Milan, Italy, before moving to the United States in 2004. *See* FAC ¶ 15. From 2010 to August 17, 2017, Plaintiff held the role of Senior Manager in PwC's Assurance Practice in San Jose, California. *Id.*; Declaration of Joseph A. Reiter ("Reiter Decl.") Ex. 1 at 29:3–15.

Senior Managers have an important role during audits. They are responsible for "assist[ing] in the design of the audit strategy and plan," "supervis[ing] its execution by the engagement team," "review[ing] the quality of fieldwork and its documentation," "determining that the audit documentation . . . has been prepared, reviewed, and archived in accordance with professional firm standards"; and ensuring the work performed and the supporting documentation is in accordance with professional and firm requirements. Reiter Decl., Ex. 5. Consequently, one of Plaintiff's responsibilities was to ensure that internal controls of the companies he audited, and any deficiencies in those controls, were properly evaluated and

---

[4] *Available at* https://pcaobus.org/Standards/Auditing/Pages/AS2201.aspx.

documented.

### C.     Plaintiff Admitted to Serious Misconduct and False Statements

In a letter dated April 28, 2017, the SEC informed PwC that it had initiated an investigation of two audits PwC conducted in 2013 and 2014. *Id.*, Ex. 9; Declaration of Walter F. Brown ("Brown Decl.") ¶ 2. PwC retained Orrick, Herrington & Sutcliffe LLP ("Orrick") to respond to the SEC's inquiry. Walter Brown, the Senior Partner of Orrick's global litigation practice, led the response.

Plaintiff served as the Senior Manager on the audits the SEC was investigating. Brown Decl. ¶ 3. As a result, Mr. Brown met with Plaintiff for two interviews, on June 14 and July 17, 2017. *Id.*

During these interviews, Plaintiff admitted that he had engaged in misconduct during the fiscal year 2014 audit of a PwC client. Specifically, Plaintiff stated that he had fabricated an internal control that did not exist. Plaintiff further stated that he had made false statements about the fabricated control in PwC's working papers. *Id.* ¶¶ 4–6.

Notably, Plaintiff made similar admissions in his SEC complaint and a draft complaint he had prepared. For example, Plaintiff's SEC complaint represented that the "control was ***created the night before the filing of the 10-K***," "was not noted during the walkthrough [of the client's controls]," and instead "constituted a documentation exercise." Reiter Decl., Ex. 1 at 253:5–255:19 (emphasis added). Plaintiff's draft complaint likewise explained that he "creat[ed] a control the day before the filing of the Form 10-K which was ***never documented nor discussed with the company***." *Id.* at 249:5–253:4 (emphasis added).

In short, the behavior described in Plaintiff's statements—if true—constituted serious misconduct. *See* Declaration of Mark D. Simon ("Simon Decl.") ¶ 6.

### D.     Mr. Simon Terminated Plaintiff Due to His Admissions of Misconduct

After the interviews were completed, PwC decided to terminate Plaintiff's at-

will employment for cause in light of the statements he had made.

The decision to terminate Plaintiff's employment was made by Mark Simon in his role as the Managing Partner of the Assurance Practice. Mr. Simon made the decision to terminate Plaintiff because Plaintiff had either (1) fabricated a client's internal control and made false statements in PwC's working papers or (2) lied that he had done so during the course of his interviews. Either is misconduct warranting termination of Plaintiff's employment. *Id.*

Based on the record, no reasonable jury could conclude that Mr. Simon's decision was pretextual or retaliatory. There is no disputing the fact that, when Mr. Simon made the decision to terminate Plaintiff, Mr. Simon did ***not know*** that Plaintiff had submitted his SEC complaint. *Id.* ¶ 7. Plaintiff has no evidence to contradict Mr. Simon's declaration on this point. *See Cooper v. Colvin*, 2015 WL 4747279, at *2 (N.D. Cal. Aug. 11, 2015) ("The non-moving party [on summary judgment] must . . . present actual evidence that might reasonably persuade a jury to find in its favor."). Plaintiff's interrogatory responses do ***not*** identify Mr. Simon as one of the individuals who allegedly knew of Plaintiff's whistleblowing or who purportedly retaliated against Plaintiff. Reiter Decl., Ex. 3 at 2–3. Plaintiff further admitted at his deposition that he never spoke to Mr. Simon about Plaintiff's alleged whistleblowing and did not know whether anyone else had. Reiter Decl., Ex. 1 at 255:20–256:16. In fact, Plaintiff indicated that he had never even met Mr. Simon. *Id.*

On August 17, 2017, Plaintiff received notice of his termination during a meeting with Kevin Baldwin (PwC's Vice Chairman for the West Region of the United States) and Shawna Hewitt (PwC's Assurance People Leader for the Pacific Northwest and Bay Area). *Id.* at 246:23–248:3. As Plaintiff has admitted, Mr. Baldwin and Ms. Hewitt told Plaintiff that the reason for his termination was the "misconduct that they noted in connection [with] the Cavium engagement." *Id.* More specifically, as Mr. Baldwin told Plaintiff, he had "represented . . . that he had falsified a control and audit documentation" and "was being terminated because he had done that or because he

had lied about it." Reiter Decl., Ex. 2 at 22:25–23:12; *see also id.* at 53:22–54:11. Plaintiff did not attempt to defend himself in response or otherwise dispute the factual basis provided as the reason for his termination. *Id.* at 61:2–4; Reiter Decl., Ex. 1 at 248:2–3.[5]

## III.   LEGAL STANDARD

Summary judgment is proper where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party need only show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the moving party meets its burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). Factual disputes that are irrelevant or unnecessary will not be counted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## IV.   ARGUMENT

To prevail on his whistleblower retaliation claims under SOX and California law, Plaintiff first bears the burden of establishing a *prima facie* case. Plaintiff must demonstrate that (i) he engaged in protected activity; (ii) he suffered an adverse employment action; (iii) the decision maker knew or suspected that Plaintiff had engaged in protected activity; and (iv) the circumstances are sufficient to raise an inference that the protected activity was a contributing factor in the adverse employment action. 29 C.F.R. § 1980.104(e)(2) (SOX); *see also Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal. App. 4th 1378, 1384 (2005) (Labor Code § 1102.5).

---

[5] Plaintiff subsequently asked if he could reapply for a different position at PwC and was informed that his misconduct precluded his re-hiring. Reiter Decl., Ex. 1 at 256:25–257:14.

If Plaintiff establishes these elements, the burden shifts to PwC to demonstrate that it terminated Plaintiff for non-retaliatory reasons. 29 C.F.R. § 1980.104(e)(4); *Patten*, 134. Cal. App. 4th at 1384.

Here, Plaintiff's whistleblower claims fail for two independent reasons:

*First*, even if Plaintiff could prove that he engaged in protected activity,[6] no reasonable jury could conclude on this record that the decision maker who terminated his employment—Mr. Simon—had knowledge of Plaintiff's protected activity.

*Second*, the undisputed evidence shows that PwC terminated Plaintiff not for any alleged whistleblowing, but for engaging in misconduct that compromised his integrity as an auditor.

### A.   Mr. Simon Had No Knowledge of Plaintiff's SEC Whistleblowing

The law is clear that Plaintiff bears the burden of proving that the person responsible for making the decision to terminate his employment—Mr. Simon—had knowledge of Plaintiff's purported protected activity. *Morgan*, 88 Cal. App. 4th at 70 ("Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity."); *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) (plaintiff-teacher could not prove retaliation with evidence that "most" principals knew of her protected activity without evidence that the "particular principals" who allegedly retaliated knew); *Rielly*, 2008 WL 4330299, at *7 ("[I]t is not enough that someone in the company was aware of Plaintiff's complaints. Instead, Plaintiff must make a showing that the person who actually made the decision to fire him knew.").

---

[6] To prove that he engaged in protected activity, Plaintiff must demonstrate he had an objectively reasonable belief that PwC engaged in actual shareholder fraud. *Nazif v. Computer Scis. Corp.*, 2015 WL 3776892, at *5 (N.D. Cal. June 17, 2015). Plaintiff cannot satisfy his burden by arguing that he identified mere violations of accounting standards, as he did in his SEC complaint. *See id.*, at *6 (granting summary judgment on SOX whistleblower claim predicated on GAAP violations); *DSAM Glob. Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 387, 390 (9th Cir. 2002) (dismissing securities fraud claims predicated on a "seriously botched audit" and failure to recognize GAAP violations).

Plaintiff cannot meet his burden here. At the time Mr. Simon decided to terminate Plaintiff, it is undisputed that Mr. Simon had no knowledge that Plaintiff had submitted an SEC complaint. Simon Decl. ¶ 7. As the Managing Partner of the Assurance Practice at PwC, Mr. Simon was far removed from Plaintiff on the leadership chain. Mr. Simon had never worked with or even interacted with Plaintiff. *Id*. In short, Mr. Simon acted as an isolated, independent decision maker who had no knowledge of Plaintiff's SEC whistleblowing.

Plaintiff has no evidence to show otherwise. Plaintiff's interrogatory responses do ***not*** identify Mr. Simon as one of the individuals who allegedly knew of Plaintiff's whistleblowing or who retaliated against him. Reiter Decl., Ex. 3 at 2–3. Plaintiff further admitted at his deposition that he had never spoken to Mr. Simon about his alleged whistleblowing and was unaware whether anyone else had. Reiter Decl., Ex. 1 at 255:20–256:16. In fact, Plaintiff indicated that he had never even met Mr. Simon. *Id*.

Under controlling law, these facts leave no doubt that Plaintiff cannot meet his burden. *Rielly*, 2008 WL 4330299, at *7 (dismissing SOX whistleblower claim because "[the decision maker] had no knowledge that Plaintiff had been complaining about the savings reports. Plaintiff cannot dispute this. Plaintiff does not allege that he ever made his complaints directly to [the decision maker]. Indeed, Plaintiff offers no evidence that [the decision maker] was aware of his complaints"); *Morgan*, 88 Cal. App. 4th at 73 ("In any event, and perhaps most importantly, all of the actual decision makers responsible for failing to rehire appellant in 1996 affirmatively stated in their declarations that they were not aware of appellant's grievance or past complaints of retaliation or discrimination.").

For these reasons, Plaintiff cannot establish a *prima facie* case of whistleblower retaliation.

### B. Plaintiff Was Terminated for Non-Retaliatory Reasons

Even assuming Plaintiff could establish a *prima facie* case (he cannot), summary judgment is also appropriate because it is indisputable that PwC terminated Plaintiff for non-retaliatory reasons. PwC's burden differs slightly under SOX and California law. Under SOX, PwC has the burden to demonstrate by clear and convincing evidence that it would have terminated Plaintiff in the absence of his alleged protected activity. 29 C.F.R. § 1980.104(e)(2).

Under California law, PwC must only articulate a legitimate, non-retaliatory reason for Plaintiff's termination. *Patten*, 134. Cal. App. 4th at 1384. The burden then shifts back to Plaintiff to demonstrate that PwC's reason is merely a pretext for retaliation. *Id.* Plaintiff must do so with "specific and substantial evidence of pretext." *Morgan*, 88 Cal. App. 4th at 75.

#### 1. There is Clear and Convincing Evidence that Plaintiff was Terminated for Misconduct

The evidence that PwC terminated Plaintiff for misconduct, and not for his purported whistleblowing, is not just "clear and convincing" but overwhelming and undisputed. On two separate occasions during PwC's interviews of Plaintiff in response to an SEC inquiry, Plaintiff stated that he had fabricated a non-existing internal control in connection with the annual audit of a client's financial statements. Brown Decl. ¶¶ 2–6. Moreover, Plaintiff admitted that he had edited a contemporaneous memorandum and made false statements therein describing the control. *Id.* ¶¶ 5–6.

In light of Plaintiff's statements regarding his fabrication of a non-existent control, Mr. Simon determined that Plaintiff had necessarily engaged in misconduct justifying his termination. If Plaintiff had, in fact, fabricated a control, he violated his legal, ethical, and professional obligations. Simon Decl. ¶ 6. If Plaintiff had not fabricated a control, he necessarily lied about doing so, as PwC's counsel gathered information to assist PwC in responding to an SEC inquiry. *Id.*; *see also* Brown Decl.

¶¶ 2–6. Under either scenario, PwC had a legitimate, non-retaliatory basis to terminate Plaintiff.

Plaintiff cannot dispute that he stated he had fabricated a control during his interviews with Mr. Brown. Plaintiff made similar admissions in the draft and final versions of the complaint he wrote and submitted to the SEC. Reiter Decl., Ex. 1 at 253:5–255:19 (stating that the "control was created the night before the filing of the 10-K," "was not noted during the walkthrough," and instead "constituted a documentation exercise"); *id.* at 249:5–253:4 (stating that he "creat[ed] a control the day before the filing of the Form 10-K which was never documented nor discussed with the company"). Moreover, Plaintiff has acknowledged in his responses to requests for admission that he cannot recall what he said during his interviews with Mr. Brown. Reiter Decl., Ex. 4 at 2.[7]

For these reasons, the undisputed evidence shows that PwC would have terminated Plaintiff even in the absence of his alleged whistleblowing; thus, Plaintiff's SOX claim fails as a matter of law and summary judgment is warranted. *See Guitron*, 619 F. App'x at 591 (affirming summary judgment; holding that the employer satisfied its burden to present clear and convincing evidence of a legitimate reason for termination by pointing to misconduct the employee had engaged in); *Kim v. Boeing Co.*, 487 F. App'x 356, 357 (9th Cir. 2012) (affirming summary judgment; holding, "Boeing presented clear and convincing evidence of its belief that Kim had been insubordinate and was subject to discharge on that basis"); *Wiest*, 812 F.3d at 333 (affirming summary judgment where the employer terminated the plaintiff for misconduct and stating "it is not our role to second-guess a human resources decision that followed a thorough investigation").

---

[7] Plaintiff denied requests asking him to admit he stated that he had fabricated a control, on the ground that he "does not recall the exact language used during the interview or the exact questions that [he] was asked." Reiter Decl., Ex. 4 at 2.

### 2. Plaintiff Does Not Have "Specific and Substantial" Evidence that PwC's Reason for his Termination is Pretextual

PwC's motion for summary judgment on Plaintiff's claims under California law is even stronger. Because PwC has established a non-retaliatory basis for Plaintiff's termination, Plaintiff must produce "specific and substantial" evidence of pretext. *Morgan*, 88 Cal. App. 4th at 68; *see also Horn v. Cushman & Wakefield W., Inc.*, 72 Cal. App. 4th 798, 817 (1999). He cannot meet this demanding burden.

Plaintiff cannot "simply show [that PwC's] decision was wrong, mistaken, or unwise. Rather, [he] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in PwC's reason that "a reasonable factfinder could rationally find them unworthy of credence." *Morgan*, 88 Cal. App. 4th at 75 (citations omitted); *see also Mayes v. Kaiser Found. Hosps.*, 2014 WL 2506195, at *11 (E.D. Cal. June 3, 2014) ("[C]ourts only require that an employer honestly believed its reason for action, even if its reason is foolish or trivial or even baseless." (citations omitted)).

For the reasons stated above, Plaintiff does not have any evidence, let alone "specific and substantial" evidence, to show that PwC's reason for terminating him is pretextual.

### C. Plaintiff's Breach of Contract Claim Fails

Plaintiff's breach of contract claim alleges that PwC did not provide three-months of notice before terminating Plaintiff. FAC ¶¶ 75, 108–11. Under Plaintiff's employment agreement, however, PwC was required to give notice only if the termination was "for reasons other than professional, legal, ethical, or Firm policy violations." Reiter Decl., Ex. 7 at ¶ 5(a). As explained above, no reasonable juror could conclude, based on this record, that Plaintiff was terminated for reasons other than professional, legal, ethical, or PwC policy violations. PwC therefore had no obligation to provide notice before terminating Plaintiff, and Plaintiff's claim fails.

Regardless, the evidence in the record makes clear that Plaintiff did not suffer

- 12 -
PRICEWATERHOUSECOOPERS LLP'S MOTION FOR SUMMARY JUDGMENT
Case No. 3:18-cv-2615-RS

any damages from the alleged breach because he had accepted a job offer almost two weeks *before* his termination occurred. Reiter Decl., Ex. 1 at 260:2–262:17; *see also id.*, Ex. 8. Accordingly, Plaintiff cannot prevail on his breach of contract claim as a matter of law. *See Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000) ("Under California law, a breach of contract claim requires a showing of appreciable and actual damage.").

## V. CONCLUSION

For the foregoing reasons, PwC respectfully requests that the Court grant summary judgment on all of Plaintiff's claims.

Dated: January 31, 2019                    HUESTON HENNIGAN LLP

                                           By: */s/ John C. Hueston*
                                               John C. Hueston
                                               Attorneys for Defendant