ALEXANDER G. CABECEIRAS, ESQ.
**DEREK SMITH LAW GROUP, PLLC**
One Penn Plaza, Suite 4905
New York, New York 10119
Phone: (212) 587-0760
Fax: (212) 587-4169
alexc@dereksmithlaw.com
*APPEARANCE PRO HACE VICE*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

-------------------------------------------------------X

MAURO BOTTA,

               Plaintiff,

   -against-


PRICEWATERHOUSECOOPERS LLP,


               Defendants.


-------------------------------------------------------X

Civil Case No: 3:18-cv-2615

**PLAINTIFF'S**
**OPPOSITION TO**
**DEFENDANT**
**PRICEWATERHOUSECO**
**OPERS LLP'S MOTION**
**FOR SUMMARY**
**JUDGMENT**

Judge: Hon. Richard Seeborg
Hearing Date: March 7, 2019
Time: 1:30 PM

**PLAINTIFF'S OPPOSITION TO DEFENDANT PRICEWATERHOUSECOOPERS**
**LLP'S MOTION FOR SUMMARY JUDGMENT**

## MEMORANDUM OF POINTS & AUTHORITIES

I.      **Introduction** …………………………………………………      *1*

II.     **Relevant Facts** ……………………………………………      *1*

III.    **Legal Standard** …………………………………………..      *5*

    a.  **SOX** ………………………………………………..      *5*

    b.  **California Whistleblower Law** …………………………..      *8*

        i.   **§1102.5 Standards** …………………………………      *8*

        ii.  **§California Labor Code § 98.6** …………………………...      *8*

        iii. **Wrongful Termination** ……………………………………      *9*

    c.  **Breach of Contract** ……………………………………..      *10*

IV.     **Argument** ………………………………………………      *10*

    a.  **Plaintiff Has Articulated a Prima Facie Case For Retaliation Under SOX** ……………………………………………….      *10*

    b.  **Plaintiff Has Articulated a Prima Facie Case For Retaliation Under CA Law** ……………………………………………      *23*

    c.  **Plaintiff Has Articulated a Case for Breach of Contract** ………      *23*

V.      **Alternative Argument** ……………………………………..      *24*

VI.     **Conclusion** ………………………………………………..      *24*

# TABLE OF AUTHORITIES

***Administrative Decisions***

Zinn v. American Commercial Lines Inc., DOL Ad. Rev. Bd. ARB CASE NO. 10-029; ALJ CASE NO. 2009-SOX-025, p. 12-13 (March 28, 2012) …………………………………….   *7*

***Cases***

*Cameron v. Craig,* 713 F.3d 1012, 1018 (9th Cir.2013) ……………………………………   *5*

*Casissa v. First Republic Bank,* No. 09–cv–4129, 2012 WL 3020193, at *9 (N.D.Cal. July 24, 2012) …………………………………………………………………………………...   *8*

*CGI Grp. Inc.*, 138 F. Supp. 3d 329, 340 (S.D.N.Y. 2015) …………………………......   *7*

*Cf. Delville v. Firmenich, Inc.,* No. 08 Civ. 10891, 920 F.Supp.2d 446, 458–59, 2013 WL 363391, at *9 (S.D.N.Y. Jan. 31, 2013) …………………………………………………….   *7*

*Collins v. Beazer Homes USA, Inc.*, 334 F. Supp. 2d 1365, 1378 (N.D. Ga. 2004) …….. *12, 16*

*Dauth v. Convenience Retailers, LLC,* No. C 13-00047 MEJ, 2013 WL 5340396, at *3 (N.D. Cal. Sept. 24, 2013) …………………………………………………………………...   *9*

*Day v. Staples, Inc.,* 555 F.3d 42, 53 (1st Cir.2009) …………………………………...   *6*

*Digital Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 200 L. Ed. 2d 15 (2018) ………......   *11*

*Erhart v. BofI Holding, Inc.,* 269 F. Supp. 3d 1059, 1071 (S.D. Cal. 2017) ……. *6, 7, 10, 12*

*Feldman v. Law Enf't Assocs. Corp.,* 752 F.3d 339, 348 (4th Cir. 2014) ……………...   *20*

*Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 666, 254 (1988) ……………………...   *9*

*Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66, 960 P.2d 1046 (1998) ……………………...   *9*

*Godwin v. Hunt Wesson, Inc.* 150 F.3d 1217, 1221 (9th Cir. 1998) …………………...   *7*

*Handgards, Inc. v. Johnson & Johnson* 413 F.Supp. 926, 929 (N.D.Cal.1976) ……......   *18*

*In re Grand Jury Proceedings*, 219 F.3d 175, 182–83 (2d Cir. 2000) …………………...   *18*

*JDS Uniphase Corp. v. Jennings*, 473 F. Supp. 2d 705, 712 (E.D. Va. 2007) ………......   *20*

PLAINTIFF'S OPPOSITION TO DEFENDANT PRICEWATERHOUSECOOPERS LLP'S MOTION FOR SUMMARY JUDGMENT

*Junger v. John V. Dinan Assocs., Inc.*, 164 A.D.3d 1428, 1430, 84 N.Y.S.3d 574, 577 (N.Y. App. Div. 2018) …………………………………………………........ *10*

*Kasperzyk v. Shetler Sec. Servs., Inc.,* No. C–13–3358 EMC/TEH, 2015 WL 1348503, at *6 (N.D.Cal. Mar. 25, 2015) ……………………………………………............ *5*

*Leshinsky v. Telvent GIT, S.A.,* 942 F. Supp. 2d 432, 441 (S.D.N.Y. 2013)  ……............  *6,7*

*Mokler v. County of Orange,* 157 Cal.App.4th 121, 138, 68 Cal.Rptr.3d 568 (2007) ……. *8*

*Muniz v. United Parcel Serv., Inc.,* 731 F. Supp. 2d 961, 969 (N.D. Cal. 2010)  ……........ *9*

*Nazif v. Computer Scis. Corp*., No. C-13-5498 EMC, 2015 WL 3776892, at *4 (N.D. Cal. June 17, 2015) ……………………………………………….......................................... *5, 8*

*Nielsen v. AECOM Tech. Corp.,* 762 F.3d 214, 220–21 (2d Cir.2014) .............................. *11*

*Patten v. Grant Joint Union High Sch. Dist.,* 134 Cal.App.4th 1378, 1384, 37 Cal.Rptr.3d 113 (2005) …………………………………………….................................................  *9*

*Phillips v. St. Mary Reg'l Med. Ctr.*, 96 Cal. App. 4th 218, 226, 116 Cal. Rptr. 2d 770, 775 (2002) ……………………………………………...............................................  *9*

*Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*, 2005 WL 1459555, at *4 (N.D. Cal. June 21, 2005) …………………………………........................................  *18*

*Rebh v. Lake George Ventures Inc.,* 241 A.D.2d 801, 803, 660 N.Y.S.2d 901, 902 (1997) .. *24*

*Recology. McVeigh v. Recology San Francisco*, 213 Cal. App. 4th 443, 464, 152 Cal. Rptr. 3d 595, 613 (2013) ……………………….......................................................  *11*

*Rhinehimer v. U.S. Bancorp Investments, Inc.,* 787 F.3d 797, 806 (6th Cir. 2015) ………. *10, 11*

*Rocheleau v. Microsemi Corp., Inc.*, 680 F. App'x 533, 535 (9th Cir.), *cert. denied*, 138 S. Ct. 166, 199 L. Ed. 2d 40 (2017) …………………….....................................................  *11*

*Smiley v. Hologic, Inc.,* No. 16CV158-WQH-MDD, 2017 WL 1354787, at *9 (S.D. Cal. Apr. 12, 2017) …………………………….......................................................  *8*

*Tameny v. Atlantic Richfield Co.,* 27 Cal.3d 167, 176–77 (1980) ........................................  *9*

*Tides v. The Boeing Co.,* 644 F.3d 809, 813 (9th Cir. 2011) ..................................................  *6*

*Transamerica Title Ins. Co. v. Superior Court*, 188 Cal. App. 3d 1047, 1053, 233 Cal. Rptr. 825, 829 (Ct. App. 1987) ……………….........................................................  *18*

PLAINTIFF'S OPPOSITION TO DEFENDANT PRICEWATERHOUSECOOPERS LLP'S
MOTION FOR SUMMARY JUDGMENT

*Van Asdale v. Int'l Game, Tech.*, 498 F. Supp. 2d 1321, 1334 (D. Nev. 2007), *rev'd and vacated on other grounds*, 577 F.3d 989 (9th Cir. 2009) ............................................... *16*

*Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 1003 (9th Cir. 2009) ...................... *7, 16, 17, 21*

*Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1065 (9th Cir.2002) .............................. *21*

*Wiest v. Lynch,* 710 F.3d 121, 131 (3rd Cir.2013) ............................................................... *11*

*Zulfer v. Playboy Enterprises, Inc.,* No. CV1208263MMMSHX, 2013 WL 12132075, at *8 (C.D. Cal. Apr. 24, 2013) …………………........................................................................... *12*

### Statutes

Fed R. Civ. P. 56(a) …………………........................................................................... *5*

18 U.S.C. § 1514A(a)(1) …………........................................................................ *6*

Cal. Labor Code § 1102.5(b) ………........................................................................ *5, 8, 9*

Labor Code. Cal. Lab. Code § 98.6 ........................................................................ *5, 8, 9*

Sections 4C(a)(2) of the Exchange Act and Rule 102(e)(1)(ii) ...................................... *23*

PCAOB Rule 3100 …………………........................................................................ *12*

## I.   __Introduction__

Plaintiff Mauro Botta—an employee at PricewaterhouseCoopers, LLP ("PwC") since 1999—was fired for complaining about perceived unlawful activity.

PwC assigned Mr. Botta to audit a company called Cavium, Inc. ("Cavium"). Almost immediately, Plaintiff took unprecedented steps internally to report perceived unlawful activities. In or around November of 2016, Plaintiff formally reported these improprieties to the Securities & Exchange Commission ("SEC"). On or about April 28, 2017, the SEC formally reached out to PwC seeking PwC preserve relevant documents related to Cavium. Almost immediately, Plaintiff was retaliated against. On or about June 21, 2017, PwC gave Plaintiff a downgraded review. On or about July 5, 2017, Plaintiff's counsel wrote a letter to PwC instructing them to cease retaliating against Mr. Botta for reporting unethical and illegal acts.

As a result of receiving a notice from the SEC, PwC interviewed Mr. Botta.

Thereafter, PwC terminated Mr. Botta while investigating unlawful activity that Mr. Botta himself had reported, both internally and externally.

## II.   __Relevant Facts__

Plaintiff has worked for PwC since 1999. (Cabeceiras Declaration [Cab. Decl.] Ex. 1 at 199:12-18). On or about July 1, 2010, Mr. Botta and PwC entered into an employment agreement. (Cab. Decl. ¶ 10).

Upon being terminated, Plaintiff worked as a Senior Manager in PwC's San Jose office. (Cab. Decl., Ex. 3 at 16:19-20). In or around 2012, PwC assigned Mr. Botta, along with other employees, to audit Cavium. (*Id.,* Ex. 2 at 41:1-8).

Tye Thorson was PwC's Engagement Partner assigned to the Cavium audits between 2011 and 2015. (*Id.,* Ex. 2 at 39:13-40:20). Throughout these years, PwC produced audit opinions on behalf of Cavium. (*Id.,* Ex. 2 at 72:1-18, 101). Mr. Thorson signed-off on these audit opinions on behalf of PwC. (*Id.,* Ex. 2 at 51:22-52:10).

In early 2015, Mr. Botta complained to Mr. Thorson, that, among other things, there was a lack of transparency between PwC and Cavium, there was evidence of incompetency from Cavium management, a lack of independence at PwC, and a lack of internal controls at Cavium. (*Id.,* Ex. 2 at 50:12-16; Ex. 1 at 172:6-174:6; Ex. 22; Botta Declaration [Botta Decl.] ¶ 2, 3).

On February 22, 2015, Mr. Botta e-mailed Mr. Thorson a memo, outlining all his concerns on the Cavium audits. (Cab. Decl., Ex. 21).  In turn, Mr. Thorson told Mr. Botta his complaint "had the potential of causing some issues with [Cavium] and the timing of their filing [with the SEC]." (*Id.*, Ex. 2 pp. 77:16-78:9). Mr. Botta's complaints were memorable—prior to Mr. Botta raising these issues, Mr. Thorson could not recall a time in which a manager or senior manager called into question the trustworthiness of a client or raised similar issues to the issues Mr. Botta raised. (*Id.*, Ex. 2 at 62:2-5). The same day, Mr. Thorson forwarded Mr. Botta's memo to PwC's Quality Review Partner Robert F. Heatley because Mr. Thorson was "concerned." (*Id.*, Ex. at 60:5-16). Additionally, Mr. Thorson reached out to PwC's Regional Risk Management Partner Timothy Scott via e-mail and by phone. (*Id.*, Ex. 2 at 70:5-7, 73:10-13; ¶ 22). In fact, the same Sunday evening that Mr. Botta sent Mr. Thorson his memo outlining all his complaints with respect to the Cavium matter, Mr. Thorson e-mailed Mr. Scott stating "[D]o you have time tomorrow to discuss **a rather urgent Cavium issue** with Heatley and I[?]" (*Id.*) (emphasis added). Thereafter, Mr. Botta's complaint was escalated to PwC's National Office. (*Id.*, Ex. 2 at 88:7-90-2; *Id.*, Ex. 4 at. 22:22-23:4).

PLAINTIFF'S OPPOSITION TO DEFENDANT PRICEWATERHOUSECOOPERS LLP'S MOTION FOR SUMMARY JUDGMENT

2

At all times material, Mr. Botta was the only PwC employee who raised issues regarding the Cavium audit. At no time did Mr. Heatley, Engagement Manager Mayank Gupta, the tax director on the Cavium audit, other staff auditors, directors, or administrators who worked on the Cavium engagement raise issues to managers, (*Id.*, Ex. 2 at 107:8-108:13).

In an act of retaliation, months after internally reporting perceived unlawful activity, PwC removed Mr. Botta from the Cavium engagement. (*Id.*, Ex. 2 at 112:8-13).

Throughout his employment, Plaintiff would complain to Human Resources Assurance Leader Traci Nelson about the Cavium engagement and his treatment after reporting the perceived unlawful activity. (*Id.*, Ex. 5 at 14:6-12; 24:9-25:23). PwC's Human Resources was aware Mr. Botta escalated his complaint regarding the Cavium engagement. (*Id.*).

After Plaintiff lodged internal complaints about Cavium, Defendant began to retaliate against Plaintiff in a myriad of ways and, ultimately, terminated Plaintiff. For example, in October of 2015, PwC assigned Mr. Botta to work on the Harmonic Inc. ("Harmonic") audit. (*Id.*, Ex. 6 at 25:19-22, 29:3-6). The Partner assigned to the Harmonic audit was Stig Haavardtun. (*Id.*, Ex. 7 at 21:22-22:3). After making internal complaints relating to Cavium, PwC removed Mr. Botta from the Harmonic audit in March of 2016. (*Id.*, Ex. 6 at 57:9-58:24). As a result, Mr. Botta's "utilization rate" began to drop. (*Id.*, Ex. 1., at 199:19-24). Prior to making complaints regarding the Cavium audit, Mr. Botta had never been removed from a job for performance related issues or alleged client complaints. (Botta Dec., ¶ 17). Mr. Botta specifically complained to PwC's Ethics Office that he was being kicked off the Harmonic engagement in retaliation for speaking up about auditing issues with the firm. (Cab. Decl., Ex. 15, 23).

PLAINTIFF'S OPPOSITION TO DEFENDANT PRICEWATERHOUSECOOPERS LLP'S MOTION FOR SUMMARY JUDGMENT

3

In or around October of 2016, Mr. Botta brought in Pacific Biosciences of California, Inc. ("Pacific BioScience") as a client for PwC. (Cab. Decl., Ex. 1 at 218:13-16; Ex. 5 at 19:4-17). It was custom that individuals who brought in clients were staffed on that client's engagement. (Botta Decl. ¶ 19). Ms. Nelson was aware that Mr. Botta was involved in bringing Pacific BioScience in as a client. (Cab. Decl., Ex. 5 at 19:4-17). Despite bringing in the client, PwC did not staff Mr. Botta on the Pacific BioScience engagement. Mr. Botta complained to Mr. Nelson about being removed from the Pacific BioScience engagement. (*Id.,* Ex. 5 at 22:6-9). At that time, Mr. Botta had the capacity to do more work, yet was still having projects taken away from him. (*Id.,* Ex. 5 at 23:12-23). Mr. Botta frequently objected to PwC's behavior and complained to Ms. Nelson. (*Id.,* Ex. 5 at 24:10-25).

On or about April 27, 2016, Plaintiff again spoke to Ms. Nelson about PwC retaliating against him and Ms. Nelson instructed Plaintiff to raise the retaliation issue to PwC's Ethics Office. (*Id.,* Ex. 23 at 1). Finally, after enduring PwC's continued retaliatory acts, Mr. Botta filed a TCR Form with the SEC, specifically complaining about his experiences with the Cavium engagement and retaliation as a result, among other things. (*Id.,* Ex. 12). Thereafter, the SEC opened an investigation against PwC and alerted PwC of such. (*Id.,* Ex. 20). On March 24, 2017, Plaintiff received negative feedback. (*Id.,* Ex. 17).

Thereafter, on or about June 14, 2017, PwC's attorneys Walter Brown, Paul Rugani, Anne-Marie Vitale, and A. Marie Mazour (hereinafter collectively referred to as "PwC Attorneys") interviewed Mr. Botta in connection with his SEC complaint. (Botta Decl, ¶ 23-25). On July 5, 2017, Plaintiff's counsel sent a letter to PwC's General Counsel Ms. Mazour complaining about the on-going retaliation as a result of internal complaints. (Cab. Dec, Ex. 8).

Thereafter, PwC Attorneys again interviewed Mr. Botta in response to Mr. Botta's SEC complaint. (Botta Decl, ¶ 23-25).

On August 17, 2017, PwC's Vice Chairman of the West Region Kevin Baldwin and PwC's Assurance People Leader For the Bay Area Northwest Market Shawna Hewitt terminated Mr. Botta. (Cab. Dec., Ex. 7 at 7:14-17; Ex. 3 at 21:24-22:1, 60:3-6). No other employees were disciplined related to the Cavium audits. (*Id,* Ex. 3 at 57:12-21, 59:16-60:2, 79:3-10; Ex. 7 at 14:7-10).

### III.   Legal Standard

Pursuant to Federal Rules of Civil Procedure 56(a) Defendant PwC seeks to dismiss Plaintiff's Sarbanes-Oxley ("SOX"), California Labor Code §1102.5, California Labor Code § 98.6, wrongful termination, and breach of contract claims.

The court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). The court must view the evidence, and draw all reasonable inferences therefrom, "in the light most favorable to the nonmoving party." *Cameron v. Craig,* 713 F.3d 1012, 1018 (9th Cir.2013). An issue of fact is material if it has the potential to "affect the outcome of the case." Nazif v. Computer Scis. Corp., No. C-13-5498 EMC, 2015 WL 3776892, at *4 (N.D. Cal. June 17, 2015) quoting *Kasperzyk v. Shetler Sec. Servs., Inc.,* No. C–13–3358 EMC/TEH, 2015 WL 1348503, at *6 (N.D.Cal. Mar. 25, 2015) (citations omitted).

### a.  SOX

"SOX's whistleblower provision, 18 U.S.C. § 1514A [Section 806 of SOX], protects employees of publicly-traded companies from discrimination in the terms and conditions of

their employment when they take certain actions to report conduct that they reasonably believe constitutes certain types of fraud or securities violations." *Tides v. The Boeing Co.,* 644 F.3d 809, 813 (9th Cir. 2011). Section 1514A prohibits publicly-traded companies from "discriminat[ing] against an employee in the terms and conditions of employment" for "provid[ing] information ... regarding any conduct which the employee reasonable believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders." 18 U.S.C. § 1514A(a)(1). It is uncontested that PwC is a public accounting firm, falling under Section 1514A.

To make out a prima facie case for a violation of section 1514A, a plaintiff must establish that: "(1) the plaintiff engaged in protected activity; (2) the plaintiff's employer knew, actually or constructively, of the protected activity; (3) the plaintiff suffered an unfavorable personnel action; and (4) the circumstances raise an inference that the protected activity was a contributing factor in the unfavorable action." *Erhart v. BofI Holding, Inc.,* 269 F. Supp. 3d 1059, 1071 (S.D. Cal. 2017). "Under [the] burden-shifting framework, the employee bears the initial burden of making a prima facie showing of retaliatory discrimination because of a specific act." *Leshinsky v. Telvent GIT, S.A.,* 942 F. Supp. 2d 432, 441 (S.D.N.Y. 2013) quoting *Day v. Staples, Inc.,* 555 F.3d 42, 53 (1st Cir.2009). "At the summary judgment stage, a plaintiff need only demonstrate that a rational factfinder could determine that [p]laintiff has made his *prima facie* case. Assuming a plaintiff does so, summary judgment is appropriate only when, construing all of the facts in the employee's favor, there is no genuine dispute that the record *clearly and convincingly* demonstrates that the adverse action would have been taken in the absence of the protected behavior. Thus, the defendant's burden under Section 806 is notably

PLAINTIFF'S OPPOSITION TO DEFENDANT PRICEWATERHOUSECOOPERS LLP'S
MOTION FOR SUMMARY JUDGMENT

6

more than under other federal employee protection statutes, thereby making summary judgment against plaintiffs in Sarbanes–Oxley retaliation cases a more difficult proposition." *Cf. Delville v. Firmenich, Inc.,* No. 08 Civ. 10891, 920 F.Supp.2d 446, 458–59, 2013 WL 363391, at *9 (S.D.N.Y. Jan. 31, 2013) See Also *Leshinsky v. Telvent GIT, S.A.*, 942 F. Supp. 2d 432, 441 (S.D.N.Y. 2013) "[A]n employer's burden under Section 806 is notably greater than the burden imposed by other federal employee protection statutes…"; *Ashmore v. CGI Grp. Inc.*, 138 F. Supp. 3d 329, 340 (S.D.N.Y. 2015); *Erhart*, 269 F. Supp. 3d 1059, 1071 (S.D. Cal. 2017), quoting *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996 (9th Cir. 2009)).

"To prevail on a complaint, the employee need not necessarily prove that the employer's reasons for the adverse action was pretext. While doing so *does* provide circumstantial evidence of the mindset of the employer, which may be sufficient to establish by a preponderance of the evidence that his or her protected activity contributed to the adverse action, such a showing is not required for a complainant to prevail under Section 806. Rather than assess any such pretext evidence as rebuttal evidence to [defendant's] nondiscriminatory reasons for firing [plaintiff], the ALJ must weigh the circumstantial evidence as a whole [which includes any 'pretext' evidence] to properly gauge the context of the adverse action in question." *Zinn v. American Commercial Lines Inc.*, DOL Ad. Rev. Bd. ARB CASE NO. 10-029; ALJ CASE NO. 2009-SOX-025, p. 12-13 (March 28, 2012) (internal quotes omitted and emphasis added) (*See* Cab. Dec. Ex. 10 at 12-13).

"When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Godwin v. Hunt Wesson, Inc.* 150 F.3d 1217, 1221 (9th Cir. 1998). "[W]here direct evidence is unavailable, however, the plaintiff may come forward with circumstantial evidence that tends to

show that the employer's proffered motives were not the actual motives because they are **inconsistent or otherwise not believable**. Such evidence of 'pretense' must be 'specific' and 'substantial' in order to create a triable issue." *Smiley v. Hologic, Inc.,* No. 16CV158-WQH-MDD, 2017 WL 1354787, at *8–9 (S.D. Cal. Apr. 12, 2017) (internal quotations omitted and emphasis added).

### b.  California Whistleblower Law

### i.    §1102.5 Standards

In order to establish a prima facie case for a labor code violation under § 1102.5, "a plaintiff must show (1) she engaged in a protected activity, (2) her employer subjected her to an adverse employment action, and (3) there is a causal link between the two." *Mokler v. County of Orange,* 157 Cal.App.4th 121, 138, 68 Cal.Rptr.3d 568 (2007); *Casissa v. First Republic Bank,* No. 09–cv–4129, 2012 WL 3020193, at *9 (N.D.Cal. July 24, 2012) (citing *Mokler v. Cnty. of Orange,* 157 Cal.App. 4th 121, 138 (2007); *Nazif v. Computer Scis. Corp.*, No. C-13-5498 EMC, 2015 WL 3776892, at *8 (N.D. Cal. June 17, 2015).

To constitute a protected activity pursuant to section 1102.5, a disclosure must be "to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance." Cal. Labor Code § 1102.5(b); *Smiley v. Hologic, Inc.,* No. 16CV158-WQH-MDD, 2017 WL 1354787, at *9 (S.D. Cal. Apr. 12, 2017).

### ii.   California Labor Code § 98.6

To establish a prima facie case of retaliation "a plaintiff must show (1) she engaged in a protected activity, (2) her employer subjected her to an adverse employment action, and (3) there is a causal link between the two.'" *Mokler v. County of Orange,* 157 Cal.App.4th 121,

138, 68 Cal.Rptr.3d 568 (2007) (quoting *Patten v. Grant Joint Union High Sch. Dist.,* 134 Cal.App.4th 1378, 1384, 37 Cal.Rptr.3d 113 (2005)). Protected activity that would support a Labor Code violation includes "the exercise by the employee ... on behalf of himself, herself, or others of any rights afforded him or her" under the Labor Code. Cal. Lab.Code § 98.6. Protected activity also encompasses "refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation." *Id.* § 1102.5(c). *Muniz v. United Parcel Serv., Inc.*, 731 F. Supp. 2d 961, 969 (N.D. Cal. 2010)

### iii.     Wrongful Termination

"Although an employment contract is generally terminable at either party's will, at-will employees may recover tort damages from their employers if they can show they were discharged in contravention of fundamental public policy." *Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66, 960 P.2d 1046 (1998).

"To support a wrongful discharge claim, the policy must be "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental." *Phillips v. St. Mary Reg'l Med. Ctr.*, 96 Cal. App. 4th 218, 226, 116 Cal. Rptr. 2d 770, 775 (2002). (See Generally *Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 666, 254 (1988);*Tameny v. Atlantic Richfield Co.,* 27 Cal.3d 167, 176–77 (1980); *Dauth v. Convenience Retailers, LLC*, No. C 13-00047 MEJ, 2013 WL 5340396, at *3 (N.D. Cal. Sept. 24, 2013).

//
//
//

### c.  Breach of Contract

"The essential elements of a cause of action to recover damages for a breach of contract are: (1) the existence of a contract, (2) the plaintiff's performance pursuant to the contract, (3) the defendant's breach of its contractual obligations, and (4) damages resulting from the breach." *Junger v. John V. Dinan Assocs., Inc.*, 164 A.D.3d 1428, 1430, 84 N.Y.S.3d 574, 577 (N.Y. App. Div. 2018). As per the parties contract, Plaintiff's contract is governed by New York law. (Cab. Decl., Ex. 9).

## IV.  Argument

### a.  Plaintiff Has Articulated a Prima Facie Case For Retaliation Under SOX

Plaintiff has established his *prima facie* case for retaliation under SOX in that, Plaintiff has engaged in a protected activity, PwC had actual or constructive knowledge of the protected activity, Plaintiff suffered an unfavorable personnel decision, and circumstances raise an inference that the protected activity was a contributing factor in the unfavorable action. *Erhart,* at 1071. Once established, the employer may then avoid liability if it proves "by clear and convincing evidence that the employer would have taken the same personnel action in the absence of the protected activity." *Rhinehimer v. U.S. Bancorp Investments, Inc.*, 787 F.3d 797, 805 (6th Cir. 2015). Defendants have failed to present clear and convincing evidence that it would have taken the same personnel action in the absence of the protected activity.

**First,** a reasonable jury could find that Mr. Botta engaged in a protected activity when he submitted a TCR Form to the SEC and made internal complaints.

An employee qualifies for protection under the whistleblower anti-retaliation provision of SOX when he or she provides information or assistance either to a federal regulatory or law

enforcement agency, Congress, or any person with supervisory authority over the employee. *Digital Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 200 L. Ed. 2d 15 (2018). Plaintiff submitted information and assistance to the SEC, a federal regulatory agency. (Cab. Decl., Ex. 12). Therefore, Plaintiff has engaged in protected activity under SOX.

Furthermore, in order for a plaintiff's reporting to constitute "protected activity," the plaintiff must have "(1) a subjective belief that the conduct being reported violated a listed law, and (2) this belief must be objectively reasonable." *Rocheleau v. Microsemi Corp., Inc.*, 680 F. App'x 533, 535 (9th Cir.), *cert. denied*, 138 S. Ct. 166, 199 L. Ed. 2d 40 (2017).

"The employee's reasonable belief is a simple factual question requiring no subset of findings that the employee had a justifiable belief as to each of the legally-defined elements of the suspected fraud. *See Rhinehimer v. U.S. Bancorp Investments, Inc.,* 787 F.3d 797, 806 (6th Cir. 2015); *Nielsen v. AECOM Tech. Corp.,* 762 F.3d 214, 220–21 (2d Cir.2014); *Wiest v. Lynch,* 710 F.3d 121, 131 (3rd Cir.2013).

Subjectively, Plaintiff held a genuine belief that the Cavium audit was improperly and fraudulently handled as highlighted by the fact that he (i) reported his beliefs internally; (ii) reported his beliefs to the SEC; and (iii) reported his beliefs to other governing bodies.  (Cab. Decl., Ex. 11, 12, 16, 21; Botta Decl. ¶ 2). (See Also *Recology. McVeigh v. Recology San Francisco*, 213 Cal. App. 4th 443, 464, 152 Cal. Rptr. 3d 595, 613 (2013) "For purposes of summary judgment, however, we must credit [plaintiff's] declaration that states he was concerned about fraud…"). Objectively, Plaintiff was raising concerns that PwC and Cavium were engaging in fraudulent conduct in violation of SEC regulations and the Public Company

Accountability and Oversight Board's ("PCAOB") rules.[1] (See Generally *Zulfer v. Playboy Enterprises, Inc.,* No. CV1208263MMMSHX, 2013 WL 12132075, at \*8 (C.D. Cal. Apr. 24, 2013) quoting *Collins v. Beazer Homes USA, Inc.*, 334 F. Supp. 2d 1365, 1377 (N.D. Ga. 2004) "[I]f Congress had intended to limit the protection of Sarbanes-Oxley to accountants, or to have required complainants to specifically identify the code section that they believe was being violated, it could have done so. It did not. Congress instead protected 'employees' and adopted the 'reasonable belief' standard for those who 'blow the whistle on fraud and protect investors'). It is undisputed that "As an independent registered public accounting firm, PwC conducts integrated audits of public companies' financial statements and internal control over financial reporting. Registered public accounting firms are required to comply with all applicable auditing and related professional practice standards of the Public Company Accounting Oversight Board ("PCAOB"). (*See* PCAOB Rule 3100; PwC's Motion for Summary Judgment, at 3; Cab. Decl. Ex. 2 at 20:16-21:9). Public companies, like Cavium, rely on PwC's professional opinions when filing with the SEC. (Cab. Decl., Ex. 2 at 57:16-22). Plaintiff lodged internal and external complaints that PwC violated PCAOB standards, thereby misleading public investors who may rely on Cavium's public statements. (*Id.*, Ex. 12). Additionally, Plaintiff was raising concerns regarding PwC's over-all ability to conduct truthful audits and, in turn, raising concerns regarding when publically traded companies rely on untruthful audit opinion. (*Id.*; Botta Decl. ¶ 2). Objective reasonableness is "evaluated based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee." *Erhart v. BofI Holding, Inc.,* 269 F. Supp.

---

[1] The SEC oversees PCAOB's regulations.

3d 1059 (S.D. Cal. 2017). A reasonable person in Mr. Botta's position could hold the same reasonable beliefs Mr. Botta held. The fact that PwC took Mr. Botta's concerns very seriously further highlights the objective reasonableness of Mr. Botta's complaints. For example, PwC's National Office, as well as PwC Partners, took Mauro's complaints regarding Cavium "serious" and thought the issues he raised required "urgent" attention. (Cab. Decl., Ex. 2 at 96:5-13, Ex. 22). In fact, seven PwC Partners reviewed Mr. Botta's memo in which he outlines his serious concerns. (*Id.,* Ex. 2 at 96:14-19).

**Second,** the record suggests a reasonable jury could find that PwC knew or constructively knew about Mr. Botta's protected activities.

PwC gained actual and/or constructive knowledge that Mr. Botta was the whistleblower on the Cavium audit because Mr. Botta blew the whistle to the SEC on the **same matters** he had been complaining about internally for years.  For example, on or about February 22, 2015, Plaintiff raised concerns with Mr. Thorson regarding the Cavium audit. (*Id.*, Ex. 21).  In turn, Mr. Thorson told Mr. Botta his complaint "had the potential of causing some issues with [Cavium] and the timing of their filing [with the SEC]" and was "rare." (*Id.*, Ex. 2 at 77:16-78:3).  Thereafter, Mr. Thorson forwarded Mr. Botta's concerns to Mr. Heatley, Mr. Scott, and other PwC employees. (*Id.*, Ex. 2 at 70:5-15; Ex. 22). In fact, the same Sunday evening Mr. Botta sent Mr. Thorson his memo outlining all his complaints with respect to the Cavium matter, Mr. Thorson e-mailed Mr. Scott stating "[D]o you have time tomorrow to discuss **a rather urgent Cavium issue** with Heatley and I." (*Id.,* Ex. 22). Thereafter, Mr. Botta's complaint was escalated to PwC's National Office. (*Id.*, Ex. 2 at 88:7-90:7; Ex. 4 at 22:22-23:4). As Mr. Botta's own HR File suggests, Mr. Botta's internal complaints regarding Cavium received a lot of attention, as PwC's Office of General Counsel was involved. (*Id.*, Ex. 23,

"HR/business heavily involved with OGC and many consults as it relates to Cavium last year – that got a lot of attn." [*sic*]).

PwC held constructive knowledge of Mr. Botta's protected activity as Mr. Botta was the **only** PwC employee who raised issues regarding the Cavium audit. At no time did Robert Heatley, Mayank Gupta, the tax director on the Cavium audit, other staff auditors, directors, or administrators who worked on the Cavium engagement raise issues to managers (*Id.*, Ex. 2 at 107:2-108:13). In sum, everyone from PwC's San Jose office to PwC's National Office to PwC's Office of General Counsel knew that Mr. Botta made a very rare and unique internal complaint regarding the Cavium audit, thereby making PwC constructively aware, when the **same issues were raised via an SEC whistleblower complaint**, that Mr. Botta was in fact the whistleblower.

On April 28, 2017, PwC was formally notified that an SEC investigation was being undertaken against them. (*Id.*, Ex. 20 at 4-9). The SEC requested documents exclusively with respect to the Cavium audits. (*Id.*). Thereafter, on or about June 14, 2017, PwC Attorneys interviewed Mr. Botta in connection with his SEC complaint. (Botta Decl., ¶ 23-25). Mr. Botta's personal attorney was present for this interview. (Cab. Decl., Ex. 19). During this interview, Mr. Botta was asked by PwC Attorneys about his internal complaints as they related to the Cavium matter. (Botta Decl., ¶¶ 23-25).  Mr. Botta shared with PwC Attorneys that he made internal complaints regarding the Cavium matter—a fact that PwC's Office of General Counsel already knew—putting all PwC Attorneys on notice of his internal opposition to the **same matters** they were investigating in response to the SEC investigation. (*Id.*)

Thereafter, on or about July 5, 2017, Plaintiff's counsel sent a letter to PwC's General Counsel Ms. Mazour stating "*Our client Mr. Botta informs us that he has been internally*

*reporting what he believes are significant unethical and illegal practices by PwC over the course of the past three years. He also informs us that during that time he has suffered numerous acts of retaliation. In the latest of these retaliatory actions, on June 21, 2017, he received a downgraded review. He was also given a pay cut (base pay plus bonus), and was told he should look for other work*." (Cab. Decl, Ex. 8). This letter went to one of the investigating attorneys, Ms. Mazour, who sat in on the interviews with Mr. Botta. (*Id.*, Ex. 8, 19).

Thereafter, PwC Attorneys **again** interviewed Mr. Botta in connection to Mr. Botta's SEC complaint. (Botta Decl., ¶ 23-25). This time, it is alleged by PwC, Mr. Botta stated he fabricated an internal control and drafted false audit documentation. (*See Generally,* Brown Declaration ¶ 4-6). Mr. Botta denies that there was any professional misconduct on his part or any lies he told while being interviewed by attorneys or otherwise. (Botta Decl. ¶ 15; Cab. Decl. Ex. 1 at 172:6-174:6). In fact, Mr. Botta spoke at length during his deposition how the control at issues was not simply made up the night before, as is alleged. (*Id.*).

Thereafter, it is further alleged that PwC's Attorneys took information learned while investigating Mr. Botta's SEC complaint—the contents of which Mr. Botta disputes—and relayed the information to Mr. Mark. D. Simon. (*See Generally,* Simon Declaration). Mr. Simon in turn, it is alleged, then decided to terminate Plaintiff. (*Id.*). Defendant presents self-serving statements from Mr. Brown and Mr. Simon and puts forward that information learned in a privileged conversation was the foundation for Mr. Botta's termination. Mr. Simon's self-serving testimony is far from a clear and convincing reason that PwC "would have taken the same personnel action in the absence of the protected activity." *Rhinehimer,* 787 F.3d 797, 805.

Defendants' chief point in their Motion for Summary Judgment is that because Mr. Botta did not directly complain to Mr. Simon, and because Mr. Simon now states he was

unaware of any protected activity, Mr. Botta cannot establish PwC had actual or constructive knowledge of the protected activity. This argument fails as **PwC cannot hide behind an alleged sole decision maker.** (See *Van Asdale v. Int'l Game, Tech.*, 498 F. Supp. 2d 1321, 1334 (D. Nev. 2007), *rev'd and vacated on other grounds*, 577 F.3d 989 (9th Cir. 2009) "The court does not agree that only complaints to those who actually made the termination decision can satisfy this prong."; See Also *Collins v. Beazer Homes USA, Inc.*, 334 F. Supp. 2d 1365, 1378 (N.D. Ga. 2004) "To permit an employer to simply bring in a manager to be the "sole decisionmaker" for the purpose of terminating a complainant would eviscerate the protection afforded to employees by Sarbanes-Oxley.") (emphasis added and internal citations omitted)). Defendant asserts an identical argument here to the argument in *Collins*—the only important difference is that Mr. Botta did not have access to the privileged conversations between Mr. Simon and PwC Attorneys to learn precisely what was discussed, shared, or learned. Nor did Mr. Botta have access to what PwC's Attorneys learned, if anything, in communications with *other* PwC employees. It is very likely, given that Mr. Botta explained to the attorneys he had blown the whistle internally on the same matter they were investigating; given that Mr. Botta had outside counsel complain of retaliation during the course of these investigations directly to one of the PwC Attorneys interviewing Mr. Botta; and given that other employees who worked on the Cavium audit were, assumingly, interviewed in the course of PwC's investigation, it is reasonably likely that a juror could find that Mr. Brown had actual knowledge that Mr. Botta was the whistleblower or, at a minimum, discussed Mr. Botta's protected activity with PwC's Attorneys.[2] Defendant has not presented clear and convincing evidence to the contrary.

---

[2] In the alternative to the arguments above, and because PwC is using attorney-client communication as both a sword and shield in this litigation, Plaintiff respectfully requests the ability to take the deposition of Mr. Walter, discussed *infra* or have PwC's use of attorney-client communication be fully estopped.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

For reasons emphasized in both *Collins* and *Van Asdale,* should the Court accept this fact pattern to support the contention that PwC *did not* have actual or constructive knowledge, protections under SOX would be eviscerated. Employers could simply hire counsel to interview known whistleblowers, fabricate a conversation or dig deep for after-acquired evidence, pass this privileged information along to a decision maker (who does not know the whistleblower whatsoever and has no connection to the unlawful activity)[3] and, under privilege, instruct said decision maker to terminate the whistleblower. This scheme would, in theory, absolve large organizations of any liability and turn the attorney-client privilege into a weapon used against whistleblowers.

Importantly, Plaintiff contends there was no professional misconduct on his part, any lies told, and that the reason for his termination was false and misleading. (Botta Decl. ¶ 6-15; Cab. Decl. Ex. 1 at 172:6-174:6, Ex. 19). Additionally, Mr. Botta explained to the PwC Attorneys that he proposed a solution for the Cavium engagement and that Mr. Thorson told him PwC's National Office approved. (Botta Decl., ¶ 25). Suspiciously, although PwC had this information, Mr. Thorson was never consulted regarding Mr. Botta's termination. (Cab. Decl, Ex 2 at 139:1-6). This, at minimum, raises another question of fact for a jury to determine.

Assuming *arguendo* the Court credits PwC's sole-decision-maker-defense, Plaintiff respectfully request to re-open fact discovery for the purposes of ascertaining documents used in the course of Mr. Botta's interviews with PwC's Attorneys and testimony regarding these privileged conversations. PwC now puts at issue and relies on attorney-client communication. PwC has waived any privilege by bringing forward testimony of an attorney. Therefore, Mr.

---

[3] Mr. Botta had no reason to believe Mr. Simon—who, upon information and belief works out of New Jersey—had anything to do with his termination. (Cab. Decl. ¶ 2, p. 255-256; Botta Decl. 20-22).

PLAINTIFF'S OPPOSITION TO DEFENDANT PRICEWATERHOUSECOOPERS LLP'S MOTION FOR SUMMARY JUDGMENT

17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

Botta seeks documents relating to attorney-client communications and testimony related to the same. There is no question the communication at issue is subject to the attorney-client privilege. See Generally *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*, 2005 WL 1459555, at *4 (N.D. Cal. June 21, 2005). Plaintiff believes PwC, by submitting Mr. Walter's affidavit and submitting Mr. Brown's affidavit which solely relied on PwC Attorney's counseling, has waived their privileges. Courts have recognized that "implied waiver [of attorney-client privilege] may be found where the privilege holder asserts a claim that *in fairness* requires examination of protected communications. We have stated … that fairness considerations arise when the party attempts to use the privilege both as 'a shield and a sword.' In other words, a party cannot partially disclose privileged communications or ***affirmatively rely on privileged communications to support its claim*** or defense and then shield the underlying communications from scrutiny by the opposing party." In re Grand Jury Proceedings, 219 F.3d 175, 182–83 (2d Cir. 2000). "Generally, implied waivers are limited to situations where the client has placed into issue the decisions, conclusions, and mental state of the attorney who will be called as a witness to prove such matters. Generally, too, the deliberate injection of the advice of counsel into a case waives the attorney-client privilege as to communications and documents relating to the advice. *Transamerica Title Ins. Co. v. Superior Court*, 188 Cal. App. 3d 1047, 1053, 233 Cal. Rptr. 825, 829 (Ct. App. 1987) (internal citations omitted). See Also *Handgards, Inc. v. Johnson & Johnson* (N.D.Cal.1976) 413 F.Supp. 926, 929.). Here, Defendant relies on privileged communication that Plaintiff did not receive during the course of discovery. Throughout the course of discovery, Defendant asserted this privilege when Plaintiff sought information regarding documents related to Mr. Botta's termination or

testimony relating to the same.[4] Furthermore, Defendant now relies on this privileged

information and asserts the information to support their defenses in this matter. Therefore, if

Plaintiff cannot re-open fact discovery to ascertain the extent of these conversations, notes

regarding these conversations, and other information regarding these conversations, Defendants

should be estopped from relying on them.

 **Third,** a reasonable jury could find that Mr. Botta suffered an unfavorable personnel

action in that Mr. Botta was terminated, kicked-off of jobs, and received negative performance

reviews, among other adverse employment actions.

 Plaintiff has put forward evidence he was terminated. (Cab. Dec., Ex. 7 at 7:14-17; Ex. 3

at 21:24-22:1, 60:3-6). Prior to Mr. Botta's ultimate termination, he suffered a litany of other

adverse employment actions and continues to suffer adverse employment actions to this day, as

discussed *supra*. Immediately after raising issues on the Cavium audit, Mr. Botta was retaliated

against. Months after internally reporting perceived unlawful activities, PwC removed Mr. Botta

from the Cavium audit. (Cab. Decl., Ex. 2 at 112:8-10). Mr. Botta complained of the retaliation

to PwC's Ethics Office and Ms. Traci Nelson. (*Id.*, Ex. 16, 23). Plaintiff was further penalized

in his evaluation ratings. (*Id.*, Ex. 17). Plaintiff was removed from other jobs. (*Id.*, Ex. 6 at

57:16-58:10). Plaintiff was not allowed to work on client matters he brought in for PwC,

although this was standard practice and Mr. Botta, at the time, was not being "fully-utilized."

---

[4] By way of example, Plaintiff's Request for Document Production No. 98 sought: "Any and all documents or communications suggesting or mentioning that Plaintiff was terminated for "misconduct."
In response PwC Stated: "PwC objects to this Request to the extent it seeks confidential information and documents protected by the attorney-client privilege, the attorney work product doctrine, the right of privacy, or any other privilege or immunity available under the United States Constitution, the Constitution of the State of California, any federal or state statute, or common law. [Remaining objection omitted]." (Cab. Decl. Ex. 13).

(Cab. Dec, Ex. 1 at 218:13-16; Ex. 5 at 19:1-17, 22:6-23:23; Botta Decl., ¶ 19). Plaintiff continues to be blacklisted in the auditing industry. (Cab. Dec, Ex. 18).

**Fourth**, a reasonable jury could find that the circumstances under which Mr. Botta was terminated raise an inference that the protected activity was a contributing factor to the unfavorable actions in that: (i) Mr. Botta was disciplined as a result of an investigation directly related to his protected activity; (ii) Mr. Botta was retaliated against within 1-3 months of the protected activity; (iii) and other similarly situated PwC employees were not terminated for similar issues.

"[A plaintiff] need not show that the activities were a primary or even a significant cause of his termination." Instead there is a "***light burden of showing by a preponderance of evidence that the activities tended to affect his termination in at least some way.***" Feldman v. Law Enf't Assocs. Corp., 752 F.3d 339, 348 (4th Cir. 2014) (emphasis added).

Mr. Botta was terminated after an investigation took place into the complaints that Mr. Botta spearheaded both internally and externally. Here, PwC has not proffered any legitimate intervening event that is separate and distinct from Mr. Botta's opposition to unlawful activity. (See Generally *Feldman v. Law Enf't Assocs. Corp.*, 752 F.3d 339, 349 (4th Cir. 2014) "[A]ccordingly, this legitimate intervening event… severs the causal connection." (parts omitted)). Likewise, PwC has not offered any reason *unrelated* to Mr. Botta's protected activity (See Generally *JDS Uniphase Corp. v. Jennings*, 473 F. Supp. 2d 705, 712 (E.D. Va. 2007). The reason offered by PwC for terminating Mr. Botta is directly intertwined with Mr. Botta's protected activities. (Cab. Decl., Ex. 20). Given these circumstances, and the fact that PwC has failed to offer any separate reason for terminating Mr. Botta, a reasonable jury could infer that

Mr. Botta's protected activity contributed to various adverse employment actions—including his termination.

Additionally, the temporal proximity alone raises an inference of a retaliatory motive. "Causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 1003 (9th Cir. 2009) quoting *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1065 (9th Cir.2002). In this case, Mr. Botta's termination occurred within <u>months</u> of PwC being notified of the SEC investigation into the Cavium audits. And, within a month of Mr. Botta's counsel writing a PwC Attorney and notifying them that Mr. Botta was being retaliated against, Mr. Botta was terminated. (Cab. Decl., Ex. 8, Ex. 7 at 7:14-17, Ex. 12).

Additionally, an inference of a retaliatory motive is made when comparing how other individuals were treated who worked on the Cavium audit. For example, no other PwC employee was terminated or otherwise disciplined for their role in the Cavium audit. (*Id.*, Ex. 3 at 57:12, 59:25-60:2, 79:3-9; Ex. 7 at 13:3-14:9).

The disparate treatment between Mr. Botta and Mr. Thorson raises an inference of a retaliatory motive. As discussed, as part of Cavium's 10-K filing, Cavium is required to file an audit opinion. (*Id.* Ex. 2 at 101:1-26). Said audit opinion is furnished by PwC (*Id.*). Mr. Thorson is responsible for the planning of the audit, the execution, as well as the completion of the audit. (*Id.* at 22:11-20). And, Mr. Thorson is responsible for issuing an opinion on the audit and ultimately signing off on the opinion. (*Id.* at 51:22-52:4). Mr. Thorson told Mr. Botta that the company would implement Mr. Botta's suggested control and that PwC's National Office approved of Mr. Botta's suggestions. (*Id.*, Ex. 1 at 248:22-24; Botta Decl. ¶¶ 7-10). Mr. Botta was comfortable using the control so long as the company did exactly what Mr. Botta

PLAINTIFF'S OPPOSITION TO DEFENDANT PRICEWATERHOUSECOOPERS LLP'S MOTION FOR SUMMARY JUDGMENT

recommended. (Botta Decl., ¶ 8; Cab. Decl., Ex. 1 at 172:6-177:22, "The proposal was a resolution, and I wrote it, based it on the reassurance from Mr. Thorson."). This was discussed in person and discussed via SameTime Chat. (Botta Decl., ¶ 8).[5] Mr. Thorson reassured Mr. Botta this would happen stating, among other things, "You got it." (*Id.*; Cab. Dec. ¶ Ex. 1 at 173:13-17). Mr. Thorson then signed-off and approved of everything in Mr. Botta's suggested edits. (Botta Decl. ¶ 16). Therefore, despite having information that Mr. Thorson knowingly signed an audit opinion he knew to be "false," PwC decided to terminate Mr. Botta—not Mr. Thorson. PwC decided to terminate the one individual who spoke out against unlawful activities—not the individual perpetrating it. This is strong comparative evidence that suggest PwC did not care about alleged falsified documents but that they cared about terminating Mr. Botta. In addition, Mr. Thorson was never consulted or asked about Mr. Botta's termination prior to terminating him. (Cab. Decl, Ex. 2 at 139:1-8). Meaning, despite PwC Attorneys having information that Mr. Botta was assured by Mr. Thorson that a specific control was approved by PwC's National Office, PwC Attorneys ignored critical pieces of information and rushed to terminated Mr. Botta without even so much as asking Mr. Thorson what had occurred.

Further comparative evidence suggest PwC's motives were retaliatory. For example, Mayank Gupta was a PwC Manager on the Cavium engagement. (*Id.,* Ex. 2 at 72:25-73:2). The

---

[5] Auditing companies are required to keep records for **seven years**. (Please see SEC 17 CFR Part 210, located at https://www.sec.gov/rules/final/*33*-8180.htm, in which the SEC declares, effective March 3, 2003, "*As mandated by section 802 of the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley Act" or "the Act"), we are amending Regulation S-X to require accountants who audit or review an issuer's financial statements to retain certain records relevant to that audit or review. These records include workpapers and other documents that form the basis of the audit or review, and memoranda, correspondence, communications, other documents, and records (including electronic records), which are created, sent or received in connection with the audit or review, and contain conclusions, opinions, analyses, or financial data related to the audit or review.*" Therefore, we ask the Court draw a negative inference against PwC for not complying with mandatory requirements and not allowing Plaintiff access to records that should have been preserved, not only for this litigation, but as is required by law. (*See* Cab. Decl., ¶ 14).

SEC recently found Gupta guilty of insider trading with respect to information learned on the Cavium audit. (*Id.,* ¶ 15). Gupta was never terminated by PwC for his work on the Cavium audit. (*Id.,* Ex. 7 at 13:23-14:1; Ex. 3 at 57:12-21, 79:3-9). Similarly, Mr. Adrian D. Beamish was found to have engaged in improper professional conduct pursuant to Sections 4C(a)(2) of the Exchange Act and Rule 102(e)(1)(ii) at PwC's San Jose office, yet it appears he still has a job at PwC. (Botta Decl. ¶ 26). These examples raise serious suspicions regarding the circumstances under which Mr. Botta was terminated.

For the aforementioned reasons, Plaintiff has established a *prima facie* case for retaliation under SOX. Defendant has failed to show by clear and convincing evidence that absent Mr. Botta's protected activity, they still would have terminated him.

### b.  Plaintiff Has Established a Prima Facie Case For Retaliation Under California Whistleblower Laws

Plaintiff repeats and realleges each and every reference of the record made in the above paragraphs, as if fully set forth herein.

### c.  Breach of Contract

Mr. Botta has established the existence of a contract (Cab. Decl, Ex. 9).[6] Mr. Botta, having worked for PwC since 1999, clearly performed his duties pursuant to the contract. The contract at issue reads "If your employment is terminated by the Firm for reasons other than professional, legal, ethical or Firm policy violations, subject to the Firm's Notice/Severance Policy for Certain Employees ("the Severance Plan"), you will be provided with… three months' notice, if you have been employed for five or more years." (*Id.*). PwC posits that

---

[6] The employment agreement at issue is governed "by the laws of the State of New Year regardless of [Plaintiff's] practice location and irrespective of the principles of conflicts of law." (*Id.*).

because Mr. Botta was terminated for professional, legal, ethical or Firm policy violations, they had no obligations under this agreement. As discussed, Mr. Botta has raised questions of fact as to the legitimacy of the termination. Whether PwC terminated Mr. Botta for reasons other than "professional, legal, ethical or Firm policy violations," is a question of fact for a jury.

With respect to damages, Plaintiff was terminated August 17, 2017. (Cab. Decl., Ex. 7 at 7; Exhibit 3 at 21-22; 60). Plaintiff began working September 11, 2017. (*Id.,* Ex. 1 at 261). Therefore, Mr. Botta lost almost a month's pay. "The damages payable for breach of an employment contract are measured, *prima facie,* by the wages that would have been paid during the remainder of the contract term…" *Rebh v. Lake George Ventures Inc.*, 241 A.D.2d 801, 803, 660 N.Y.S.2d 901, 902 (1997).

## V.   **ALTNERATIVE ARGUMENTS**

Plaintiff seeks PwC be estopped from using attorney-client communication or information learned from attorney-client communication to support this Motion for Summary Judgment or, and should the Court rely on PwC's Declarations from Mr. Simon and Mr. Walters and dismiss Plaintiff's Amended Complaint, Plaintiff seeks to re-open fact discovery with the Court's permission to take the depositions of PwC Attorneys and obtain documents relating to PwC Attorneys' communication with Mr. Botta and Mr. Simon.

## V.   **CONCLUSION**

For the aforementioned reasons Plaintiff respectfully urges this Court to DENY Defendant PwC's Motion for Summary Judgment. Alternatively, Plaintiff seeks to re-open fact discovery into privileged conversations put at issue in this lawsuit, or have Defendants estopped from use of privilege conversations and other information put at issue.

1

2

3

Date:   February 14, 2019
4          San Francisco, CA                    Respectfully Submitted,

5                                               **DEREK SMITH LAW GROUP, PLLC**

6

7                                               */s/ Alexander G. Cabeceiras*
                                                Alexander G. Cabeceiras, Esq.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

PLAINTIFF'S OPPOSITION TO DEFENDANT PRICEWATERHOUSECOOPERS LLP'S
MOTION FOR SUMMARY JUDGMENT