ALEXANDER G. CABECEIRAS, ESQ.
**DEREK SMITH LAW GROUP, PLLC**
One Penn Plaza, Suite 4905
New York, New York 10119
Phone: (212) 587-0760
Fax: (212) 587-4169
alexc@dereksmithlaw.com
*APPEARANCE PRO HACE VICE*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

-----------------------------------------------------------X

MAURO BOTTA,

                Plaintiff,

  -against-

PRICEWATERHOUSECOOPERS LLP,

                Defendants.

Civil Case No: 3:18-cv-2615

**DECLARATION OF MAURO BOTTA IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT PRICEWATERHOUSECOOPERS LLP'S MOTION FOR SUMMARY JUDGMENT**

Judge: Hon. Richard Seeborg
Hearing Date: March 7, 2019
Time: 1:30 p.m.

-----------------------------------------------------------X

**DECLARATION OF MAURO BOTTA IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT PRICEWATERHOUSECOOPERS LLP'S MOTION FOR SUMMARY JUDGMENT**

**DECLARATION OF MAURO BOTTA IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT PRICEWATERHOUSECOOPERS LLP'S MOTION FOR SUMMARY JUDGMENT**

# **DECLARATION OF MAURO BOTTA**

I, Mauro Botta, declare as follows:

1. I began to work on the Cavium, Inc. ("Cavium") audits in 2012.

2. Since 2012, I began to verbally discuss with Tye Thorson issues regarding Cavium. Specifically, I was raising concerns over a lack of transparency between PwC and Cavium, evidence of incompetency from Cavium management, a lack of independence at PwC, and a lack of internal controls at Cavium.

3. Finally, in February of 2015, Mr. Thorson instructed me to document my concerns in writing.

4. After documenting my concerns in writing, Robert Heatley stated to me "The document you sent to [Tye Thorson] is a big deal. You're putting us at risk. Now Risk Management is involved because this is unprecedented."

5. Mr. Thorson told me that my memo to him will cause Cavium issues and would delay their SEC filing. Mr. Thorson also told me PwC risked losing the Cavium account because of my memo.

6. The night before Cavium was planning to file its annual Form 10-K with the SEC, Mr. Thorson called me on my cell phone to tell me that PwC's National Office thought there was a Material Weakness related to one of Cavium's control deficiencies.

7. That night Mr. Thorson further told me that PwC's Chief Auditor "gave up" on finding a solution to the Material Weakness related to the control deficiencies. I told Mr. Thorson to send me PwC's National Office's memorandum so that I could review the comments from PwC's National Office, a true and correct copy of which is attached hereto as **Exhibit 1.**

**DECLARATION OF MAURO BOTTA IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT PRICEWATERHOUSECOOPERS LLP'S MOTION FOR SUMMARY JUDGMENT**

8. After reading PwC's National Office's memorandum and comments I messaged Mr. Thorson on SameTime and told him I thought I could fix the issue outlined in PwC's National Office's memorandum on the condition that he instruct Cavium to follow my precise instructions, to which he replied "you got it." I then proceeded to edit the memo with my proposed solution in track-changes-mode.

9. Thereafter, I sent the draft memorandum to Mr. Thorson that contained my suggestions. Mr. Thorson replied back on SameTime by stating "Wow, you did not think I'd have read it? You said the threshold was $7 million but you put $10." I then explained to Mr. Thorson that the proposed threshold should have been above the level of the error that Cavium originally missed. Mr. Thorson told me, in sum and substance, that he was going to run my proposed threshold by PwC's National Office for approval.

10. The following day Mr. Thorson told me PwC's National Office signed off on the memorandum. From that point on, I had no reason to suspect that Cavium would have neglected to implement such a control.

11. I had no involvement in the final memorandum and did not communication with PwC's National Office regarding the memorandum or the final version of the memorandum.

12. I had no communication with Cavium's management in regards to this matter. To my knowledge, Mr. Thorson was the sole person in contact with Cavium on behalf of PwC.

13. I remained on the Cavium audit until the Q1 2015 review. However, PwC removed me from the Cavium audit before PwC's walkthroughs for internal controls were performed for the 2015 Cavium Audit. Had I remained on the engagement for such process, I would have been able to ascertain if my suggested control threshold were actually implemented.

**DECLARATION OF MAURO BOTTA IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT PRICEWATERHOUSECOOPERS LLP'S MOTION FOR SUMMARY JUDGMENT**

14. Subsequently, PwC's internal inspectors conducted a full quality review on the 2014 Cavium engagement and did not find any exceptions on our control evaluation or documentation.

15. I did not "make up" an internal control. I suggested that this control should be implemented and, for all intents and purposes, was reassured it was implemented and operated efficiently.

16. At all times material, Mr. Thorson had final sign-off and approval on all audit opinions and corrections to previously issued audit opinions.

17. Prior to making internal complaints regarding the Cavium audit, PwC had never removed me because of a client request or alleged performance issues.

18. From 2012 till 2015, I believe Mr. Thorson and I were the only two continuous members assigned to the Cavium audits.

19. It was custom at PwC for managers who bring in their own clients to get staffed on that particular client matter.

20. I met Mr. Mark D. Simon once at a PwC panel in San Jose, California. I asked Mr. Simon one direct question.

21. I have never directly worked with Mr. Simon at PwC on any auditing matters.

22. To my knowledge, Mr. Simon has never reviewed my work at PwC.

23. In meetings with PwC Attorneys on June 14 and July 17, 2017, the PwC Attorneys asked me questions relating to my internal complaints regarding Cavium.

24. In meetings with PwC Attorneys on June 14 and July 17, 2017, the PwC Attorneys reviewed with me the memo I sent Mr. Thorson in which I outline all my complaints

**DECLARATION OF MAURO BOTTA IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT PRICEWATERHOUSECOOPERS LLP'S MOTION FOR SUMMARY JUDGMENT**

about the Cavium engagement, a true and correct copy of which is attached hereto as **Exhibit 2.**

25. In meetings with PwC Attorneys on June 14 and July 17, 2017, I explained to the PwC Attorneys that I proposed a solution for the Cavium engagement. I also explained that Mr. Thorson told me PwC's National Office approved.

26. PwC's San Jose office continues to employ Mr. Adrian D. Beamish, CPA. Despite being found to have engaged in improper professional conduct pursuant to Sections 4C(a)(2) of the Exchange Act and Rule 102(e)(1)(ii) of the Commission's Rules of Practice, Mr. Beamish continues to work for PwC. A true and correct copy of the public SEC Order against Mr. Beamish is attached here to as **Exhibit 3.**

I declare under penalty of perjury that the aforementioned statements are true and correct to the best of my knowledge.

Executed on this 14th day of February, 2019, in San Jose, California.

*/s/ Mauro Botta*
Mauro Botta

**DECLARATION OF MAURO BOTTA IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT PRICEWATERHOUSECOOPER'S NOTICE OF MOTION FOR SUMMARY JUDGMENT**