**HUESTON HENNIGAN LLP**
John C. Hueston, State Bar No. 164921
*jhueston@hueston.com*
Joseph A. Reiter, State Bar No. 294976
*jreiter@hueston.com*
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:   (213) 788-4340
Facsimile:    (888) 775-0898

Attorneys for Defendant
PricewaterhouseCoopers LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURO BOTTA, | Case No. 3:18-CV-2615-RS |
| Plaintiff, | **DEFENDANT PRICEWATERHOUSECOOPERS LLP'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| PRICEWATERHOUSECOOPERS LLP, | |
| Defendant. | Judge:            Hon. Richard Seeborg<br>Hearing Date:  March 7, 2019<br>Time:             1:30 p.m. |

5484464

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ............................................................................................. 1

II.     ARGUMENT ................................................................................................... 3

        A.      Plaintiff Has No Evidence that Mr. Simon Knew of His
                Alleged Whistleblowing ........................................................................ 3

        B.      Plaintiff Has No Evidence to Rebut the Non-Retaliatory
                Reasons for His Termination ................................................................. 6

                1.      The Evidence is Undisputed that Plaintiff Admitted
                        to Engaging in Misconduct During His Interviews .................... 6

                2.      Plaintiff's Temporal Proximity Argument Fails ......................... 9

                3.      Plaintiff's Disparate Treatment Argument Fails ........................ 9

        C.      Plaintiff's Breach of Contract Claim Fails ........................................... 12

        D.      Plaintiff's Request for Further Discovery Fails ................................... 12

                1.      Plaintiff Fails to Satisfy Any of the Rule 56(d)
                        Requirements ............................................................................ 12

                2.      Plaintiff's Privilege Waiver Arguments are Incorrect ............... 14

III.    CONCLUSION ............................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

## **Cases**

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ...................................................... 6, 8

*Chevron Corp. v. Pennzoil Co.*,
    974 F.2d 1156 (9th Cir. 1992) ...................................................... 14

*Cohen v. Fred Meyer, Inc.*,
    686 F.2d 793 (9th Cir. 1982) ........................................................ 4

*Collins v. Beazer Homes USA, Inc.*,
    334 F. Supp. 2d 1365 (N.D. Ga. 2004) .......................................... 5

*Cooper v. Colvin*,
    2015 WL 4747279 (N.D. Cal. Aug. 11, 2015) ................................ 3

*Cornwell v. Electra Cent. Credit Union*,
    439 F.3d 1018 (9th Cir. 2006) ............................................ 3, 13, 14

*Curley v. City of N. Las Vegas*,
    772 F.3d 629 (9th Cir. 2014) ........................................................ 9

*Day v. Sears Holding Corp.*,
    930 F. Supp. 2d 1146 (C.D. Cal. 2013) .......................... 2, 9, 10, 11

*Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*,
    525 F.3d 822 (9th Cir. 2008) ......................................... 2, 12, 13

*Ferretti v. Pfizer Inc.*,
    2013 WL 140088 (N.D. Cal. Jan. 10, 2013) .................................. 9

*Genentech, Inc. v. Insmed Inc.*,
    236 F.R.D. 466 (N.D. Cal. 2006) .................................................. 15

*Guitron v. Wells Fargo Bank, NA*,
    619 F. App'x 590 (9th Cir. 2015) ................................................ 11

*Hampshire Properties v. BTA Bldg. & Developing, Inc.*,
    996 N.Y.S.2d 129 (2014) ............................................................ 12

TABLE OF AUTHORITIES (cont.)

Page(s)

*Hernandez v. Tanninen*,
    604 F.3d 1095 (9th Cir. 2010)........................................................................ 14

*Intel Corp. v. VIA Techs., Inc.*,
    204 F.R.D. 450 (N.D. Cal. 2001) ................................................................ 1, 4

*Morgan v. Regents of Univ. of Cal.*,
    88 Cal. App. 4th 52 (2000)...................................................................... passim

*Moua v. Int'l Bus. Machines Corp.*,
    2012 WL 5373401 (N.D. Cal. Oct. 30, 2012)................................................ 13

*Raad v. Fairbanks N. Star Borough Sch. Dist.*,
    323 F.3d 1185 (9th Cir. 2003)...................................................................... 1, 4

*Radich v. Goode*,
    886 F.2d 1391 (3d Cir. 1989) ........................................................................ 13

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*,
    32 F.3d 851 (3d Cir. 1994) ............................................................................ 15

*Rielly v. D.R. Horton, Inc.*,
    2008 WL 4330299 (C.D. Cal. Sept. 17, 2008)............................................. 3, 4

*Sharma v. BMW of N. Am. LLC*,
    2016 WL 9180444 (N.D. Cal. Apr. 1, 2016) ........................................... 13, 14

*Tatum v. City & Cty. of San Francisco*,
    441 F.3d 1090 (9th Cir. 2006)........................................................................ 13

*Trans-Tec Asia v. M/V Harmony Container*,
    518 F.3d 1120 (9th Cir. 2008)........................................................................ 14

*Van Asdale v. Int'l Game, Tech.*,
    498 F. Supp. 2d 1321 (D. Nev. 2007) ............................................................. 5

*Van Asdale v. Int'l Game, Tech.*,
    577 F.3d 989 (9th Cir. 2009)............................................................................ 5

*Vasquez v. City of Los Angeles*,
    349 F.3d 634 (9th Cir. 2003)............................................................... 2, 10, 11

1

TABLE OF AUTHORITIES (cont.)

2

Page(s)

3

*Ward v. Procter & Gamble Paper Prod. Co.*,

4

    111 F.3d 558 (8th Cir. 1997)........................................................................... 10

5

*Wiest v. Tyco Elecs. Corp.*,

6

    812 F.3d 319 (3d Cir. 2016) ........................................................................... 11

7

**Statutes**

8

15 U.S.C. § 7262(a)–(b).................................................................................... 8

9

**Rules**

10

Fed. R. Evid. 502 ............................................................................................ 14

11

Fed. R. Civ. P. 56(d) ........................................................................... 2, 12, 13, 14

12

13

**Regulations**

14

17 C.F.R § 210.2–01(c)(4)................................................................................. 8

15

29 C.F.R. § 1980.104(e)(4)................................................................................ 6

16

17

18

19

20

21

22

23

24

25

26

27

28

PRICEWATERHOUSECOOPERS LLP'S REPLY ISO MSJ
Case No. 3:18-cv-2615-RS

5484464

# I.     INTRODUCTION

Plaintiff's Opposition demonstrates why summary judgment should be granted. Although Plaintiff makes strawman arguments and relies on inaccurate and unsupported allegations, he fails to produce any actual evidence necessary to establish two essential elements of his claims:

*First*, Plaintiff has no evidence that the person who terminated his employment—the Managing Partner of PwC's Assurance Practice, Mark Simon—had knowledge of Plaintiff's alleged whistleblowing.  While Plaintiff attacks Mr. Simon's declaration as "self-serving," Plaintiff chose not to depose Mr. Simon even though PwC disclosed over five months ago that Mr. Simon was involved in the termination. *See Intel Corp. v. VIA Techs., Inc.*, 204 F.R.D. 450, 452 (N.D. Cal. 2001).  In any event, courts routinely grant summary judgment based on similar declarations.  *See, e.g., Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 73 (2000).

Plaintiff's only other argument—that he can prevail on his claims without proving Mr. Simon's knowledge—is contrary to well-established law.  *See, e.g., Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) (holding that a plaintiff-teacher could not prove retaliation with evidence that "most" principals knew of her protected activity without evidence that the "particular principals" who allegedly retaliated knew).  In fact, the two cases Plaintiff cites do not support his argument.  In each case, the courts found that the actual decision makers had knowledge of the plaintiffs' whistleblowing.

*Second*, and relatedly, Plaintiff has no evidence to contradict Mr. Simon's reason for terminating Plaintiff: that he had admitted to PwC's outside counsel, Walter Brown, on two separate occasions during interviews conducted in response to an SEC inquiry, that Plaintiff had fabricated an internal control and audit documentation. Declaration of Mark D. Simon ISO PwC's MSJ ("Simon Decl.") ¶¶ 4–6.  Plaintiff does not offer any evidence to contradict Mr. Brown's declaration describing what Plaintiff said.  Declaration of Walter F. Brown ISO PwC's MSJ ("Brown Decl.") ¶¶ 4–6.  As a

1    result, Plaintiff did not rebut PwC's evidentiary showing of the non-retaliatory basis

2    for his termination.  Summary judgment should be granted for this reason alone.

3           Nor does Plaintiff offer evidence to show that he did not fabricate a control.  To

4    the contrary, Plaintiff's declaration admits that he "proposed" a non-existent control

5    "threshold" for one of PwC's clients to "implement" in order to avoid a finding that

6    the control was deficient.  Declaration of Mauro Botta ("Botta Decl.") ¶¶ 8–10, 15.  As

7    explained herein, designing or modifying a client's internal control to avoid a

8    deficiency finding is inconsistent with the central purpose of an external audit and

9    prohibited by professional, legal, and ethical standards.  Plaintiff's declaration is

10   therefore consistent with and corroborates Mr. Brown's and Mr. Simon's declarations.

11          While Plaintiff argues that PwC did not terminate or discipline other employees

12   or partners, he has not shown that any of those individuals (much less one in the same

13   position) admitted to fabricating an internal control and audit documentation.  *See Day*

14   *v. Sears Holding Corp.*, 930 F. Supp. 2d 1146, 1163 (C.D. Cal. 2013) ("Courts require

15   that the quantity and quality of the comparator's misconduct be nearly identical to

16   prevent courts from second-guessing employers' reasonable decisions and confusing

17   apples with oranges.") (citations omitted);  *Vasquez v. City of Los Angeles*, 349 F.3d

18   634, 641 (9th Cir. 2003) ("Employees in supervisory positions are generally deemed

19   not to be similarly situated to lower level employees.").

20          Unable to satisfy his burden, Plaintiff resorts to arguing that PwC waived

21   privilege and the Court should re-open discovery so Plaintiff can depose Mr. Brown

22   and seek unidentified documents.  Plaintiff's privilege waiver arguments are incorrect

23   for multiple reasons discussed below.  Moreover, Plaintiff's request fails to comply

24   with any of the requirements of Federal Rule of Civil Procedure 56(d).  Plaintiff did

25   not file a supporting affidavit, did not identify any "specific facts" or explain why they

26   "exist," and did not explain how further discovery is "essential to oppose summary

27   judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d

28   822, 827 (9th Cir. 2008).  Plaintiff also cannot show that he "diligently pursued

previous discovery opportunities" because Plaintiff never sought Mr. Brown's deposition during the discovery period.  *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1026 (9th Cir. 2006).

For these reasons and those discussed below, PwC respectfully requests that the Court grant summary judgment on Plaintiff's remaining claims.  Based on this record, no reasonable jury could conclude that Plaintiff was terminated in retaliation for his alleged whistleblowing.

## II.   ARGUMENT

### A.   Plaintiff Has No Evidence that Mr. Simon Knew of His Alleged Whistleblowing

Plaintiff did not submit any evidence to satisfy his burden of demonstrating that the person who terminated his employment—Mr. Simon—knew of Plaintiff's alleged whistleblowing.  *See Morgan*, 88 Cal. App. 4th at 73 ("In the absence of evidence that the individuals who denied appellant employment were aware of his past filing of a grievance, the causal link necessary for a claim of retaliation can not be established."); *Rielly v. D.R. Horton, Inc.*, 2008 WL 4330299, at *7 (C.D. Cal. Sept. 17, 2008) (same).

Plaintiff does not claim that he blew the whistle to Mr. Simon, and he submitted no evidence to show that Mr. Simon was otherwise aware of Plaintiff's whistleblowing allegations.  *See Cooper v. Colvin*, 2015 WL 4747279, at *2 (N.D. Cal. Aug. 11, 2015) ("The non-moving party [on summary judgment] must . . . present actual evidence that might reasonably persuade a jury to find in its favor.").  In fact, Plaintiff corroborates portions of Mr. Simon's declaration.  Plaintiff admits that he met Mr. Simon only "once," he has "never directly worked with Mr. Simon," and "Mr. Simon has never reviewed [his] work at PwC."  Botta Decl. ¶¶ 20–22.

Unable to contradict Mr. Simon's declaration, Plaintiff offers two incorrect arguments in an attempt to avoid summary judgment:

*First*, Plaintiff attacks Mr. Simon's declaration as "self-serving."  Opp. at 15:24–25.  But courts grant summary judgment on whistleblower retaliation claims

5484464

1   when presented with similar declarations.  *See, e.g.*, *Morgan*, 88 Cal. App. 4th at 73

2   (affirming summary judgment where "all of the actual decision makers" "affirmatively

3   stated in their declarations" that they had no knowledge of the plaintiff's alleged

4   whistleblowing); *Rielly*, 2008 WL 4330299, at *7 (granting summary judgment on

5   SOX claim where the decision maker "declare[d] that when he decided to fire the

6   Plaintiff, he had no knowledge" of the plaintiff's alleged whistleblowing).

7           Plaintiff's argument is all the more remarkable given that ***he chose not to depose***

8   ***Mr. Simon***.  PwC served initial disclosures in August 2018 that designated Mr. Simon

9   as a person "involved in terminating Plaintiff's employment," yet Plaintiff never

10  requested Mr. Simon's deposition and instead deposed seven other individuals.

11  Declaration of Joseph A. Reiter ISO PwC's Reply ("Reiter Decl. ISO Reply") ¶ 4,

12  Ex. 1 at 7:18–21.  Plaintiff presumably made a considered decision not to depose Mr.

13  Simon for tactical reasons.  Regardless, he cannot challenge Mr. Simon's declaration

14  under these circumstances.  *See Intel Corp.*, 204 F.R.D. at 452 (rejecting request to

15  strike a declaration where the moving party had failed to depose the declarant).

16          *Second*, Plaintiff incorrectly argues that he does not need to prove Mr. Simon

17  knew of his alleged whistleblowing.  Plaintiff contends that other PwC employees

18  must have known that he blew the whistle and PwC cannot "hide behind an alleged

19  sole decision maker."  Opp. at 16:2–3.

20          Plaintiff's argument is contrary to both Ninth Circuit and California case law.

21  A plaintiff alleging retaliation must demonstrate that the actual decision maker had

22  knowledge of the plaintiff's protected activity; evidence that other individuals knew is

23  insufficient.  *Raad*, 323 F.3d at 1197 (affirming summary judgment; holding that a

24  plaintiff-teacher could not prove retaliation with evidence that "most" principals knew

25  of her protected activity without evidence that the "particular principals" who

26  allegedly retaliated knew); *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796–97 (9th Cir.

27  1982) (finding no causal link where the decision maker did not know about the

28  protected activity, even though company vice president knew); *Rielly*, 2008 WL

5484464

4330299, at *7 (granting summary judgment; holding "it is not enough that someone in the company was aware of Plaintiff's complaints.  Instead, Plaintiff must make a showing that the person who actually made the decision to fire him knew."); *Morgan*, 88 Cal. App. 4th at 71–73 (affirming summary judgment; holding that the retaliatory motive of certain individuals was irrelevant where they were not the decision makers).

Plaintiff does not address this authority.  Instead, Plaintiff relies on an inapposite and non-binding case from the Northern District of Georgia—*Collins v. Beazer Homes USA, Inc.*, 334 F. Supp. 2d 1365 (N.D. Ga. 2004).  Contrary to Plaintiff's arguments, the facts in *Collins* were fundamentally different because it was undisputed that the decision maker (Marty Shaffer) had knowledge of the plaintiff's protected activity before she was terminated.  *Id.* at 1370 ("Jones informed Shaffer that Collins had made a series of complaints . . . Shaffer questioned Jones about the circumstances under which he could terminate Collins."); *see also id.* at 1378 ("Defendants do not contest that they were aware of Plaintiff's complaints.").

Plaintiff's reliance on *Van Asdale v. International Game, Technology*, 498 F. Supp. 2d 1321, 1334 (D. Nev. 2007), fails for the same reason.  The decision was reversed on appeal, and the Ninth Circuit expressly found that the plaintiffs had blown the whistle directly to the person who terminated their employment (David Johnson). 577 F.3d 989, 1000 (9th Cir. 2009) ("[T]aking the facts in the light most favorable to the Van Asdales, their meeting with Johnson involved disclosures 'definitively and specifically' related to shareholder fraud."); *id.* at 1002–03 ("[T]he Van Asdales engaged in protected activity during the November 24, 2003 meeting with Johnson.").

Neither case Plaintiff cites alters his burden of demonstrating that Mr. Simon had knowledge of his alleged whistleblowing.  Rather, the plaintiffs in *Collins* and *Van Asdale* presented exactly that type of evidence.  Plaintiff's failure to do the same is

1  fatal to his whistleblower retaliation claims.[1]

2  *Finally*, this is not a situation where, as Plaintiff suggests, PwC "simply hire[d]

3  counsel to interview [a] known whistleblower[], fabricate[d] a conversation or . . .

4  after-acquired evidence, [and] pass[ed] privileged information along to a decision

5  maker."  Opp. at 17:4–9.  PwC hired counsel because it received notice of an SEC

6  investigation.  Brown Decl. ¶ 2.  PwC then took the reasonable step of interviewing

7  Plaintiff because he served as the Senior Manager on the audits the SEC was

8  investigating.  During his interview, Plaintiff admitted he had engaged in misconduct.

9  *Id.* ¶¶ 3–4.  PwC then took the reasonable step of conducting a second interview, during

10  which Plaintiff again admitted to misconduct.  *Id.* ¶¶ 5–6.  Finally, the Managing

11  Director of PwC's Assurance Practice, Mr. Simon, terminated Plaintiff's employment

12  because of the admissions he made.  Simon Decl. ¶¶ 4–6.  These facts and

13  circumstances do not show that PwC somehow orchestrated Plaintiff's termination.

14  **B.     Plaintiff Has No Evidence to Rebut the Non-Retaliatory Reasons for**

15  **His Termination**

16  In his Opposition, Plaintiff "denies there was any professional misconduct on

17  his part or any lies he told while being interviewed by attorneys or otherwise."  Opp.

18  at 15:12–14.  But Plaintiff fails to produce any actual evidence to contradict Mr.

19  Simon's non-retaliatory reasons for terminating Plaintiff.  *See Cafasso, U.S. ex rel. v.*

20  *Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive

21  summary judgment, a plaintiff must set forth non-speculative evidence of specific

22  facts, not sweeping conclusory allegations.").

23  1.    The Evidence is Undisputed that Plaintiff Admitted to Engaging in

24  Misconduct During His Interviews

25  Mr. Simon terminated Plaintiff because Plaintiff told Mr. Brown during

26

---

27  [1] Even if Plaintiff could establish a *prima facie* case without evidence that Mr. Simon knew
of his alleged whistleblowing, Mr. Simon's lack of knowledge shows that PwC has met its

28  burden of demonstrating that it terminated Plaintiff for non-retaliatory reasons.  *See* 29 C.F.R.
§ 1980.104(e)(4); *Morgan*, 88 Cal. App. 4th at 68.

interviews conducted in response to an SEC inquiry that Plaintiff had fabricated a control and falsified audit documentation.  In light of Plaintiff's statements, Mr. Simon concluded that Plaintiff had either (1) fabricated a control in violation of his professional, legal, and ethical duties or (2) lied when he told Mr. Brown that he had done so.   Simon Decl. ¶¶ 4–6; Brown Decl. ¶¶ 4–6.   Both alternatives required termination of Mr. Botta's at-will employment.  Simon Decl. ¶ 6.

Fatal to Plaintiff's position, Plaintiff did not produce any evidence to contradict Mr. Brown's declaration describing what Plaintiff said during his interviews. Plaintiff's declaration merely states that he "explained to the PwC Attorneys that I proposed a solution for the Cavium engagement."  Botta Decl. ¶ 25.  Plaintiff does not attempt to describe what he specifically said during the interviews, nor could he. Plaintiff already admitted in his discovery responses that he cannot recall what he said. Declaration of Joseph A. Reiter ISO PwC's MSJ ("Reiter Decl.") Ex. 4 at 2.  Because Plaintiff has no evidence to contradict Mr. Brown's declaration, he cannot demonstrate a genuine issue of material fact as to the reason for his termination.

Instead, Plaintiff claims that he did not actually fabricate a control.  But whether Plaintiff fabricated a control is not the controlling question for purposes of summary judgment.  All that matters is Plaintiff told Mr. Brown that Plaintiff had fabricated a control and falsified audit documentation.   Based on those statements, Mr. Simon concluded that Plaintiff had either engaged in audit-related misconduct or lied during interviews in response to an SEC inquiry.   Either way, PwC could no longer trust Plaintiff to perform his responsibilities in accordance with professional standards. Simon Decl. ¶¶ 4–6.  Summary judgment is therefore appropriate.

In any event, Plaintiff's declaration effectively ***admits that he engaged in misconduct***, thus corroborating Mr. Brown's declaration.  Plaintiff states that PwC found a deficiency when evaluating the internal controls of a PwC client.  Botta Decl.

5484464

1    ¶ 6.[2]  In an attempt to avoid the deficiency finding, Plaintiff admits that he "proposed"

2    a control "threshold" for the client to "implement."  *Id.* ¶¶ 8–10, 15.  Plaintiff admits

3    he designed the threshold to be "above the level of the error" the client had "originally

4    missed."  *Id.* ¶ 9.[3]  Plaintiff further admits that he edited a memorandum to document

5    the control threshold that he designed.  *Id.* ¶ 8.  In short, Plaintiff admits he created

6    and documented a ***non-existent*** control threshold to avoid a deficiency finding.

7         While Plaintiff claims that he was "reassured [the control threshold] was

8    implemented and operated efficiently," that does not exculpate him.  *Id.* ¶ 15.  It is

9    well-established that external auditors are prohibited from designing or modifying a

10   client's internal controls to avoid a deficiency finding.  Indeed, the primary purpose of

11   an external audit is to assess the effectiveness of the client's existing controls.  15

12   U.S.C. § 7262(a)–(b); *see also* PCAOB AS 2201.03 ("The auditor's objective . . . is

13   to express an opinion on the effectiveness of the company's internal control over

14   financial reporting."); 17 C.F.R. § 210.2–01(c)(4) (prohibiting external auditors from

15   providing "non-audit services"); Simon Decl. ¶¶ 4–6.[4]

16        In light of the above, Plaintiff's declaration is ***consistent*** with and ***corroborates***

17   the declarations submitted by Mr. Brown and Mr. Simon.  *See* Brown Decl. ¶ 4 ("Mr.

18   Botta stated that he had fabricated a Cavium internal control that was not actually in

19   place at Cavium at the time, and that he drafted audit documentation describing the

20

21   ───────────────

22   [2] A deficiency in a company's internal control over financial reporting exists when a control does not exist, is not properly designed, or does not operate as designed.  PCAOB AS 2201, App. A3, *available at* https://pcaobus.org/Standards/Auditing /Pages/ AS2201.aspx.

23   [3] Plaintiff apparently intended to create a false impression that the error had not triggered the control and therefore the control had not failed to operate properly.

24   [4] Plaintiff's argument that PwC's National Office approved Plaintiff's edits to the memorandum is also misleading.  Plaintiff's edits did not explain to the National Office that he was proposing a non-existent control threshold.  Rather, Plaintiff wrote in the memorandum that the control threshold already existed, was being used by the client, and had been confirmed during discussions with the client.  Brown Decl., Ex. 1 at PwC_B00006243 ("The compensating control that ***the company performs*** operates at a higher level of precision.") (emphasis added); *id.* at PwC_B00006242.  Plaintiff made these representations despite admitting that he "had no communication with [the client's] management in regards to this matter."  Botta Decl. ¶ 12.

25

26

27

28

1   fabricated control that he understood others were relying on."); Simon Decl. ¶¶ 5–6.

2   Plaintiff's declaration is also consistent with the statements he made in his SEC

3   complaint and draft complaint.   Reiter Decl., Ex. 1 at 253:5–255:19 (stating the

4   "control was created the night before the filing of the 10-K") (emphasis added); *id.* at

5   249:5–253:4 (stating he "creat[ed] a control the day before the filing of the Form 10-

6   K which was never documented nor discussed with the company") (emphasis added).

7           2.     Plaintiff's Temporal Proximity Argument Fails

8           Plaintiff argues that he was terminated close in time to his alleged

9   whistleblowing. Opp. at 19:7–21:12. Plaintiff cannot prevail on his claims with mere

10  allegations of temporal proximity.  Because the statements Plaintiff made during his

11  interviews with Mr. Brown constitute an intervening cause, Plaintiff's alleged timing

12  of events "does nothing to refute" PwC's non-retaliatory explanation for Plaintiff's

13  termination. *See Curley v. City of N. Las Vegas*, 772 F.3d 629, 634 (9th Cir. 2014)

14  ("[N]ew information revealed by [an intervening] investigation defeats any causal

15  inference that might otherwise follow from the temporal proximity between . . .

16  protected activity and . . . termination.").[5]

17          3.     Plaintiff's Disparate Treatment Argument Fails

18          Because Plaintiff has no evidence to show that he did not engage in misconduct

19  or lie when he told PwC's counsel that he had done so, Plaintiff resorts to arguing that

20  PwC did not terminate any other employees or partners.  Plaintiff does not cite any

21  authority in support of his argument because it fails as a matter of law.

22          It is well-established that other individuals must have engaged in the same type

23  of misconduct to constitute disparate treatment.  "Courts require that the quantity and

24  quality of the comparator's misconduct be nearly identical to prevent courts from

25  second-guessing employers' reasonable decisions and confusing apples with oranges."

26  _____

27  [5] Plaintiff's argument that PwC's reason for terminating him arose out of an investigation
    prompted by his SEC complaint also fails. Opp. at 20:22–26. If Plaintiff's argument were

28  correct, employees could simply blow the whistle on their own behavior, admit misconduct
    to their employer, and then claim retaliation after being terminated or disciplined.

5484464

*Day*, 930 F. Supp. 2d at 1163 (citations omitted); *see also Ferretti v. Pfizer Inc.*, 2013 WL 140088, at *17 (N.D. Cal. Jan. 10, 2013) ("[T]he individuals with whom the plaintiff seeks to compare his/her treatment must have . . . engaged in the same conduct without such differentiating or mitigating circumstances."). In addition, "[e]mployees in supervisory positions are generally deemed not to be similarly situated to lower level employees." *Vasquez*, 349 F.3d at 641.

Courts reject disparate treatment allegations where these conditions are not met. For example, the defendants in *Day* terminated the plaintiff for breaching a confidentiality policy. 930 F. Supp. 2d at 1158. The court rejected the argument that another employee had violated the same policy and was still employed, holding that "even if Brooks did violate defendants' confidentiality policy, he was not similarly situated to Day, because he was an upper level manager while Day was a regional sales director, and their conduct was not sufficiently similar." *Id.* at 1165; *see also Vasquez*, 349 F.3d at 641 (rejecting disparate treatment allegations where the other employee was "not involved in the same type of offense" and held a supervisory position); *Ward v. Procter & Gamble Paper Prod. Co.*, 111 F.3d 558, 560 (8th Cir. 1997) (same).

Plaintiff's argument fails under this standard. Plaintiff claims that Tye Thorson was similarly situated, but Plaintiff has no evidence that Mr. Thorson engaged in the same acts that led to Plaintiff's termination. Unlike Plaintiff, there is no evidence in the record to show that Mr. Thorson, whom Plaintiff deposed in this case, told PwC's counsel that he had created a non-existent control. Brown Decl. ¶¶ 4–6. Nor is there any evidence in the record to show that Mr. Thorson told PwC's counsel that he had falsified audit documentation to describe the control. *Id.* In addition, Mr. Thorson is a Partner, not an at-will employee like Plaintiff. Declaration of Alexander G. Cabeceiras ("Cabeceiras Decl."), Ex. 2 at 21:10–16; Reiter Decl., Ex. 7 at ¶ 4. Plaintiff and Mr. Thorson are therefore not similarly situated.

Plaintiff's arguments regarding Mayank Gupta and Adrian Beamish likewise fail. Again, Plaintiff has no evidence to show that either individual admitted to PwC

1    that he had fabricated a control or falsified audit documentation.

2        Plaintiff argues that Mr. Gupta—who no longer works at PwC—engaged in

3    insider trading.  Opp. at 23:1.  But there is no evidence in the record that Mr. Gupta

4    admitted his misconduct to PwC while he was still an employee.  In fact, there is no

5    evidence in the record that PwC was aware of Mr. Gupta's misconduct while he was

6    an employee.  Plaintiff therefore has not shown that PwC even had an opportunity to

7    terminate Mr. Gupta.[6]

8        As for Mr. Beamish, there are multiple reasons why he is not similarly situated

9    to Plaintiff.  Unlike Plaintiff, Mr. Beamish is a Partner.  Mr. Beamish also did not

10   admit to engaging in misconduct.  As the SEC's Order makes clear, it is a settlement

11   agreement pursuant to which Mr. Beamish did not admit to any wrongdoing.  Botta

12   Decl., Ex. 3 at 2.  Moreover, the Order alleges that Mr. Beamish engaged in distinct

13   and far less egregious acts than Plaintiff's admissions of intentionally fabricating a

14   control and audit documentation.  Mr. Beamish was accused of failing to exercise

15   professional care during a separate audit of a private company that was not even

16   subject to PCAOB standards.  Botta Decl., Ex. 3 at 2, ¶ B.  Under these circumstances,

17   Plaintiff cannot create an issue of material fact based on PwC's treatment of Mr. Gupta

18   and Mr. Beamish.  *See Day*, 930 F. Supp. 2d at 1165; *Vasquez*, 349 F.3d at 641.

19       For the foregoing reasons, Plaintiff has not presented any evidence for a

20   reasonable jury to conclude that he was terminated for whistleblowing.  Rather, the

21   undisputed evidence shows that PwC terminated Plaintiff because he told PwC's

22   counsel that he had engaged in misconduct or lied about having done so.  PwC has met

23   its burden under SOX and California law to obtain summary judgment.  *See Guitron*

24   *v. Wells Fargo Bank, NA*, 619 F. App'x 590, 591 (9th Cir. 2015) (affirming summary

25   judgment; holding the employer demonstrated a non-retaliatory reason for termination

26   by pointing to the employee's misconduct; *Wiest v. Tyco Elecs. Corp.*, 812 F.3d 319,

27

28   [6] As the SEC's Order states, Mr. Gupta was barred from working as an accountant for a period
     of five years.  Cabeceiras Decl., Ex. 14 at 3.

1  333 (3d Cir. 2016) (affirming summary judgment; holding "it is not our role to second-

2  guess a human resources decision that followed a thorough investigation"); *Morgan*,

3  88 Cal. App. 4th at 69 (holding that plaintiffs must present "specific and substantial"

4  evidence to overcome summary judgment).

5  **C.     Plaintiff's Breach of Contract Claim Fails**

6  Because Plaintiff fails to present any evidence to rebut Mr. Brown or Mr.

7  Simon's declarations, no reasonable jury could conclude that Plaintiff was terminated

8  for reasons other than "professional, legal, ethical, or Firm policy violations."  Reiter

9  Decl., Ex. 7 at ¶ 5(a).  Plaintiff's breach of contract claim based on PwC's purported

10  failure to provide a three-month notice therefore fails.  *Id.*

11  Plaintiff also has not demonstrated that he suffered any damages as a result of

12  his termination.  *See Hampshire Properties v. BTA Bldg. & Developing, Inc.*, 996

13  N.Y.S.2d 129, 130 (2014) (explaining that damages is an "essential element" of a

14  breach of contract claim).  While Plaintiff argues that he did not start his new job until

15  a month after his termination from PwC, he has not shown that the start date was not

16  his own choice.   Plaintiff signed the offer letter ***before*** PwC terminated his

17  employment, and the letter stated that Plaintiff could begin working on August 7, 2017.

18  Reiter Decl., Ex. 8 at Armanino000046, Armanino000048.

19  **D.     Plaintiff's Request for Further Discovery Fails**

20  In light of his failure to demonstrate a triable issue of material fact, Plaintiff

21  argues instead that PwC should be "estopped" from relying on Mr. Brown's

22  declaration or the Court should re-open discovery to allow Plaintiff to take Mr.

23  Brown's deposition and request unidentified documents.  Opp. at 16:26 n.2, 24:15–21.

24  This argument fails for a number of procedural and substantive reasons:

25  1.     <u>Plaintiff Fails to Satisfy Any of the Rule 56(d) Requirements</u>

26  Plaintiff has not complied with the requirements of Federal Rule of Civil

27  Procedure 56(d).  Plaintiff must show that he "(1) has set forth in affidavit form the

28  specific facts [he] hopes to elicit from further discovery; (2) the facts sought exist; and

5484464

(3) the sought-after facts are essential to oppose summary judgment." *Family Home*, 525 F.3d at 827.  Plaintiff must also demonstrate that he "diligently pursued previous discovery opportunities." *Cornwell*, 439 F.3d at 1026.  Plaintiff has not satisfied any of these requirements:

*First*, Plaintiff did not submit an affidavit or declaration in support of his request.  *See* Fed. R. Civ. P. 56(d); *Radich v. Goode*, 886 F.2d 1391, 1394 (3d Cir. 1989) ("Rule 56[] clearly requires that an affidavit be filed. . . An unsworn memorandum opposing a party's motion for summary judgment is not an affidavit."); *Moua v. Int'l Bus. Machines Corp.*, 2012 WL 5373401, at *6 (N.D. Cal. Oct. 30, 2012) (denying Rule 56(d) request where party did not file an affidavit or declaration).

*Second*, Plaintiff did not identify any "specific facts [he] hopes to elicit from further discovery" or demonstrate that any such facts actually "exist." *Family Home*, 525 F.3d at 827.  Plaintiff merely argues that he should be allowed to "take the depositions of PwC Attorneys and obtain documents relating to PwC Attorneys' communication [sic] with Mr. Botta and Mr. Simon," without identifying any specific documents or explaining what facts he could obtain from a deposition.  Opp. at 24:19–21.  Courts routinely deny requests for further discovery under these circumstances. *See Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006); *Sharma v. BMW of N. Am. LLC*, 2016 WL 9180444, at *1 (N.D. Cal. Apr. 1, 2016).

*Third*, Plaintiff did not and cannot explain why taking Mr. Brown's deposition or discovery of unidentified documents is "essential to oppose summary judgment." *Family Home*, 525 F.3d at 827.  Plaintiff was terminated because he admitted to engaging in misconduct during his interviews with Mr. Brown.  No further discovery will change what Plaintiff said.  Plaintiff made nearly identical statements in his SEC complaint and draft complaint.  Reiter Decl., Ex. 1 at 253:5–255:19, 249:5–253:4. And even if Plaintiff could show that PwC somehow misunderstood what Plaintiff said, summary judgment is still warranted. *See Morgan*, 88 Cal. App. 4th at 75 ("An employee in this situation cannot simply show the employer's decision was wrong,

mistaken, or unwise."); *see also Family Home*, 525 F.3d at 827 (affirming denial of Rule 56(d) request where the moving party failed to show how the evidence is essential to oppose summary judgment); *Sharma*, 2016 WL 9180444, at *1 (same).

*Fourth*, Plaintiff did not "diligently pursue[] previous discovery opportunities." *Cornwell*, 439 F.3d at 1026. Plaintiff offers no explanation for not deposing Mr. Brown during the discovery period. Plaintiff knew he had been interviewed by Mr. Brown twice, and Plaintiff responded to discovery requests asking him to admit what he told Mr. Brown. Reiter Decl., Ex. 4. Plaintiff also admits he was informed on August 17, 2017, that the reason for his termination was the same misconduct he had disclosed to Mr. Brown. Reiter Decl., Ex. 1 at 247:12–248:1. And Mr. Brown was identified in PwC's disclosures as a person with knowledge. Reiter Decl. ISO Reply, Ex. 2. Despite this, Plaintiff chose not to depose Mr. Brown and instead took seven other depositions. *Id.* ¶ 4. Plaintiff's tactical discovery choices preclude his request. *See Cornwell*, 439 F.3d at 1026 (affirming denial of Rule 56(d) request where movant failed to take deposition during discovery period); *Trans-Tec Asia v. M/V Harmony Container*, 518 F.3d 1120, 1133 (9th Cir. 2008) (same).

## 2. Plaintiff's Privilege Waiver Arguments are Incorrect

Moreover, Plaintiff's argument that PwC broadly waived privilege as to all "documents relat[ing] to Mr. Botta's termination or testimony relating to the same" is wrong. Opp. at 18:28–19:1. "[A] voluntary disclosure in a federal proceeding . . . generally results in a waiver only of the communication or information disclosed." Fed. R. Evid. 502, advisory committee's notes (2011 Amends.). Here, the only privileged information that Mr. Brown's declaration discloses is Plaintiff's statements to Mr. Brown that Plaintiff fabricated a control. Brown Decl. ¶¶ 4–6. Mr. Brown's declaration did not waive privilege over any other portion of Plaintiff's interviews, PwC's investigation, or other privileged communications. *See Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (finding waiver was limited to documents a party disclosed to an auditor and not "every document or communication

5484464

1   that touched on the more general tax deferral question"); *Hernandez v. Tanninen*, 604

2   F.3d 1095, 1100 (9th Cir. 2010) ("Hernandez disclosed only his communications with

3   Ferguson about Tanninen, waiving attorney-client privilege only as to that matter.").

4         The same is true of Mr. Simon's declaration.  *See* Simon Decl. ¶¶ 4–5.  Even

5   assuming Plaintiff is correct that Mr. Simon learned of Plaintiff's inculpatory

6   statements during a privileged communication, that does not constitute a waiver.  It is

7   well-established that Mr. Simon can provide his factual basis for terminating Plaintiff

8   without waiving privilege.  *See Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32

9   F.3d 851, 864 (3d Cir. 1994) ("Facts are discoverable, the legal conclusions regarding

10  those facts are not.  A litigant cannot shield from discovery the knowledge it possessed

11  by claiming it has been communicated to a lawyer; nor can a litigant refuse to disclose

12  facts simply because that information came from a lawyer.").  Contrary to Plaintiff's

13  arguments, PwC also has not asserted and does not intend to assert an advice of counsel

14  defense.  *See Genentech, Inc. v. Insmed Inc.*, 236 F.R.D. 466, 469 (N.D. Cal. 2006)

15  ("Advice is not in issue merely because it is relevant, and does not necessarily become

16  in issue merely because the attorney's advice might affect the client's state of mind.").

17        Finally, this is not a situation where PwC has used the privilege to gain an unfair

18  advantage.  PwC cannot fully defend against Plaintiff's meritless claims without

19  disclosing the factual basis for his termination: that he admitted to fabricating a control

20  and audit documentation during his interviews with Mr. Brown.  PwC served requests

21  for admission in an attempt to avoid having to produce a declaration from Mr. Brown,

22  however Plaintiff denied the requests on the ground that he "do[es] not recall the exact

23  language used during the interview or the exact questions that [he] was asked."  Reiter

24  Decl., Ex. 4 at 2.  In short, Plaintiff's lawsuit and evasive discovery responses required

25  PwC to submit the Brown declaration attesting to Plaintiff's admissions.

26  ## III.   CONCLUSION

27        PwC respectfully requests that the Court grant summary judgment on all of

28  Plaintiff's remaining claims.

5484464

1    Dated:  February 21, 2019           HUESTON HENNIGAN LLP

2

3                                        By:  /s/  John C. Hueston

4                                             John C. Hueston
                                              Attorneys for Defendant
5                                             PricewaterhouseCoopers LLP

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PRICEWATERHOUSECOOPERS LLP'S REPLY ISO MSJ
Case No. 3:18-cv-2615-RS

5484464