United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MAURO BOTTA,

              Plaintiff,

    v.

PRICEWATERHOUSECOOPERS LLP, et al.,

              Defendants.

Case No.  18-cv-02615-RS

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Mario Botta was terminated from his job as a "Senior Manager" at defendant PricewaterhouseCoopersLLC ("PwC") on the asserted basis that he had either fabricated a "control" in connection with the audit of a PwC client, or that during a subsequent investigation, he lied when saying he had done so.[1] Botta, however, contends his termination resulted from the fact that he made a complaint to the Securities and Exchange Commission.

PwC seeks summary judgment based on its argument that the individual who made the determination to terminate Botta had no knowledge of the SEC complaint. Because PwC failed to

---

[1] By prior order, Botta's claims against individual defendants have been dismissed without leave to amend, as has his defamation claim against PwC. Botta's remaining claims for relief seek recovery under the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, California Labor Code §§ 1102.5 and 98.6, and state law breach of contract.

show no reasonable finder of fact could conclude Botta's termination was a result of his "whistleblowing," the motion must be denied.

## II. BACKGROUND

Botta worked for PwC in Italy starting in 1999, before moving to the United States in 2004. In July 2010, he began a new role as Senior Manager in PwC's Assurance Practice in San Jose. His responsibilities included ensuring internal controls were adequate in the companies PwC was auditing.

In 2012, Botta began working on a team assigned to audit a particular PwC client ("the Client"). PwC produced audit opinions on behalf of the Client that were approved by "Engagement Partner" Tye Thorson, one of Botta's immediate supervisors. Botta eventually complained to Thorson that there was a lack of transparency between PwC and the Client, a lack of independence on the part of PwC, and a lack of internal controls and/or competent management on the Client's part.

In February 2015, Botta emailed Thorson a memo outlining his concerns. Thorson responded that the memo "had the potential of causing some issues with [the Client] and the timing of their filing" with the SEC. Thorson then forwarded the memo to PwC's "Quality Review Partner" Robert Heatley. Thorson also contacted "Regional Risk Management Partner" Timothy Scott to discuss the issue. Some months later PwC removed Botta from that engagement.

Botta subsequently worked on audits of Harmonic, Inc. PwC then removed Botta from the Harmonic audit in March of 2016, and his "utilization rate" began to suffer. Botta complained to the PwC Ethics Office that this was retaliation for his prior complaints regarding auditing issues. Botta contends he had never before been removed from a job for performance related issues or alleged client complaints.

Around October 2016, Botta was responsible for soliciting Pacific Biosciences of California, Inc. to become a client of the firm. PwC, however, allegedly did not staff Botta on the engagement even though it was "his" client. Botta complained to PwC "Human Resources

CASE NO.  18-cv-02615-RS

1    Assurance Leader" Traci Nelson about the staffing. According to PwC, Botta frequently

2    complained to Nelson about various issues he had with PwC's behavior toward him.

3           Eventually Botta filed a complaint with the SEC concerning the Client. The SEC opened

4    an investigation and alerted PwC. Specifically, by letter dated April 28, 2017, the SEC informed

5    PwC the investigation related to two audits conducted in 2013 and 2014. PwC retained Walter

6    Brown as counsel to respond to the SEC investigation. Botta's counsel also sent a letter to PwC's

7    general counsel, Marie Mazour, on July 5, 2017 memorializing Botta's complaints about on-going

8    retaliation resulting from his internal complaints.

9           During the SEC investigation, Brown met with Botta for two interviews, on June 14 and

10   July 17, 2017. According to Brown's declaration, Botta admitted he had made false statements

11   about an internal control described in PwC's working papers. Botta had made similar statements

12   about the control in his SEC complaint, which represented the "control was created the night

13   before the filing of the 10-K," "was not noted during the walkthrough [of the client's controls],"

14   and was "a documentation exercise."

15          PwC Managing Partner of the Assurance Practice, Mark Simon, believed the allegations

16   regarding Botta's behavior showed serious misconduct if it proved to be true. According to Simon,

17   he decided to terminate Botta's at-will employment because (1) either the existence of the client

18   internal control had been fabricated and constituted a false statement in PwC's working papers, or

19   (2) Botta lied that he had verified the existence of the control in his interviews. Simon asserts he

20   did not know about the SEC complaint at the time he fired Botta.

21          Botta received his notice of termination on or around August 17, 2017.  Botta then applied

22   for a job with Armanino, LLP, which he was offered and accepted before his termination from

23   PwC became effective.

24                                      III. LEGAL STANDARD

25          A party is entitled to summary judgment when "there is no genuine dispute as to any

26   material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The

27   party who seeks summary judgment bears the initial responsibility of identifying an absence of a

28

United States District Court
Northern District of California

1    genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving

2    party satisfies this initial burden, the non-moving party must present specific facts showing that

3    there is a genuine issue for trial.  FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. "Only disputes

4    over facts that might affect the outcome of the suit under governing law" are material. *Anderson v.*

5    *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists if the non-moving party

6    presents evidence from which a reasonable fact-finder, viewing the evidence in the light most

7    favorable to that party, could resolve the material issue in his or her favor. *Id*. at 248-49.

8

9                                    IV. DISCUSSION

10         PwC does not contend, nor could it, that its employees and attorneys involved in

11    responding to the SEC inquiry would have lacked any basis to suspect Botta was the

12    "whistleblower" who triggered the investigation. The issues raised by the SEC closely mirrored

13    those Botta had been expressing internally. At a minimum there are at least triable issues on that

14    point.

15         PwC contends, however, Botta must show a person with supervisory authority over him

16    "knew or suspected, actually or constructively, that the [plaintiff] engaged in protected activity."

17    *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996 (9th Cir. 2009). PwC thus advances a sole-

18    decisionmaker theory, in which Botta "must make a showing that the person who actually made

19    the decision to fire him knew" of his protected activity to satisfy this element of a prima facie

20    case. *Rielly v. D.R. Horton, Inc.*, No. SACV 06-0867 AG(ANX), 2008 WL 4330299, at *7 (C.D.

21    Cal. Sept. 17, 2008). In contrast, Botta advances something of a "cat's paw" theory in which he

22    must establish a subordinate, "set[] in motion" his firing and "influenced or was involved in the

23    decision or decision-making process." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637

24    F.3d 1047, 1061 (9th Cir. 2011).

25         The record shows that Botta was fired by PwC Managing Partner of the Assurance

26    Practice, Mark Simon. As noted above, Simon declares he made the decision to fire Botta because

27    either Botta "violated his professional, legal, and ethical duties and PwC policy, which prohibit the

28

United States District Court
Northern District of California

fabrication of audit evidence or documentation," or he "lied about his conduct." Simon also insists he "was not aware that [Botta] submitted a complaint to the SEC," and "[t]o this day, . . . never even communicated with Mr. Botta."

Botta's failure to submit direct evidence contradicting Simon's declaration is not dispositive under the particular circumstance of this case. The relatively strong circumstantial evidence available to PwC that the SEC complaint may have been submitted by Botta weighs against concluding as a matter of law that the decisionmaker acted solely on other, legitimate, grounds. The context in which Botta was terminated also is not irrelevant—even assuming a fact finder may eventually determine that good cause existed, the stated reasons for the firing are intertwined with the alleged protected activity of reporting improprieties to the SEC.[2]

A fact finder may very well ultimately conclude Botta was terminated for legitimate reasons. PwC, however, has not shown that undisputed facts insulate it from liability merely because the ultimate termination decision may have been made by Simon.

## V.  CONCLUSION

The motion for summary judgment is denied. As discussed at the hearing, the various sealing motions filed in connection with summary judgment fail to establish good cause. While the parties were given the opportunity to establish a basis for sealing some subset of the information, they have not elected to do so. The sealing motions therefore are denied.

Plaintiff's motion for a continuance under Rule 56(d) of the Federal Rules of Civil Procedure arguably is not timely. It also is far from clear that plaintiff would have been entitled to the discovery requested in any event, both in light of questions regarding prior diligence and as to whether applicable privileges had been waived. Given the disposition of this order, however, the motion will merely be denied as moot.

---

[2]  Of course, an employee who reports his or her own wrongdoing likely would not be insulated from termination merely by claiming "whistleblower" status. Whether PwC might prevail on such an argument here, however, is not subject to summary judgment.

United States District Court
Northern District of California

CASE NO.  18-cv-02615-RS

**IT IS SO ORDERED**.

Dated:  June 27, 2019

_____

RICHARD SEEBORG
United States District Judge

United States District Court
Northern District of California