UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO COURTHOUSE

| | |
|---|---|
| MAURO BOTTA,<br><br>        Plaintiff,<br><br>    v.<br><br>PRICEWATERHOUSECOOPERS LLP, et al.<br><br>        Defendants. | Case No. 3:18-CV-2615-AGT<br><br>**JOINT    PRETRIAL    STATEMENT AND ORDER**<br><br>Hon. Alex G. Tse<br>Courtroom A – 15th Floor<br><br>Final Pretrial Conference: February 16, 2021 |

1   Plaintiff   Mauro   Botta   ("Plaintiff"   or   "Botta")   and   Defendant
2   PricewaterhouseCoopers LLP ("Defendant" or "PwC") respectfully submit this Joint
3   Pretrial Statement pursuant to the Court's Pretrial Scheduling Order (Dkt. 138).

4                                   **Substance of the Action**

5   **A.      Plaintiff's Brief Description of Claims**

6        Mauro Botta is a Certified Public Accountant.  He began working for Defendant
7   PwC in 2004 and entered into an employment agreement with Defendant on or about
8   July 1, 2010.  While at PwC, Mauro was assigned to various audits of publicly traded
9   or soon to be publicly traded companies. As an auditor, Mauro was meticulous, at
10  times demanding, and strived to uncover any potential issues. Mauro actively asked
11  questions of management of companies audited by PwC, sought documentation from
12  them, sought to audit their internal control when needed, and sought to adjust prior
13  audits if warranted. In short, Mauro did his job.

14       Mauro began working as a senior manager on the audit team of one of
15  Defendant's publicly traded client companies in 2012 and began to raise concerns with
16  his superiors over a lack of transparency between the company and Defendant and a
17  lack of internal controls.  Mauro was instructed by his superior to document his
18  concerns in writing, but after he followed those instructions, management insisted that
19  his act was "unprecedented" and "he was putting the firm at risk."  Botta Transcript
20  151:2-152:22. Mauro was given an ultimatum to withdraw his memorandum or face
21  the consequences, which Mauro understood as jeopardizing his ability to become a
22  partner at the firm. Botta Transcript 151:2-152:22. Mauro would have discussed his
23  findings regarding controls with the CFO or CAO at the client company but he did not
24  have contact with the national office of PwC or the company's management until the
25  audit was finished after which he was penalized because his superior informed
26  management of Mauro's concerns that there was a material weakness.Defendant
27  removed him from the company's audit team despite his request to continue the work.
28  Botta Transcript 178:20-179:11; 179:20-21

Mauro also acted as a senior manager on Defendant's audit team on another publicly traded company and identified numerous issues including control deficiencies and revenue recognition questions. Nelson Transcript 31:3-32:10; Botta Transcript 97:2-22; 104:20-105; Nelson Transcript 25:18-23.  Again, after Mauro brought this deficiency to the attention of his superiors, he was removed from the engagement and his utilization rate decreased significantly.  Haavardtun Transcript 28:23-29:2; Botta Transcript 199:19-201:23; 201:24-202:7.

Mauro's internal complaints regarding auditing deficiencies with respect to these two engagements and others prompted Defendant to retaliate against Mauro even though his concerns of possible violations of law constituted protected activity under California law. Nevertheless, in spite of – and because of – Mauro's protected activity in raising his concerns, PwC kicked Mauro off projects, threatened him, reduced his utilization rate, forced him to work under personnel he had filed an internal complaint against, refused to hire him onto new projects, including even on clients he brought into the firm, gave him much less work than assigned to his peers, told him that if he wanted to make partner he may have to perform work he did not believe was legal, and penalized his evaluation ratings, among other adverse employment actions. Botta Transcript 196:2-25; 197:1-21; 199:19-201:23; 201:24-202:7. Over time, the retaliatory actions increased, particularly after he told Defendant he might file (and subsequently did file) a whistleblower tip with the U.S. Securities & Exchange Commission ("SEC") since his superiors at PwC largely ignored and looked away from the deficiencies and misrepresentations he identified with respect to publicly trading company's SEC reports. Mauro had already been subjected to retaliatory measures and pejorative treatment by PwC previously for other and earlier concerns he had raised. Ultimately, PwC terminated him out of retaliatory animus against his pursuit of protected activity under the law.

These facts, and the evidence to be presented by Plaintiff at trial satisfy the burden Mauro bears of making a prima facie case that Defendant retaliated against

him for engaging in a protected act, namely reporting what he *believed to be* violations of the law. *Van Arsdale v. Int'l Game Technology, 577 F.3d 989, 996* (9th Cir. 2009) (to make a prima facie showing, the employee must show that "(a) the employee engaged in protected activity or conduct ; (2) [the employer] knew or suspected, **actually or constructively,** that the employee engaged in the protected activity;(3) the employee  suffered an unfavorable personnel action; and (4) the circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the unfavorable action")( emphasis added); *Tides v. The Boeing Co*., 644 F.3d 809, 813 (9th Cir. 2011)(same); *Casissa v. First Republic Bank*, No. 09-cv-4129, 2012 WL 3020193, at *9 (N.D. Cal. July 24, 2012) (similar showing under Cal. Labor Code Section 1102.5); *Mokler v. County of Orange*, 157 Cal.App.4th 121 (2007) (similar prima facie elements under Cal. Labor Code Section 98.6); *Green v. Ralee Eng'g Co*., 19 Cal.4th 66, 69 (1998)(wrongful termination against public policy).  The Ninth Circuit made clear in *Van Arsdale* that employees like Mauro are protected from wrongful retaliation under Sarbanes-Oxley where "they reasonably believed that there might have been fraud and were fired for even suggesting further inquiry." *Van Arsdale, supra*, 577 F.3d 1001-1002.  The facts in Mauro's case show that PwC wrongfully retaliated against Mauro under the Ninth Circuit's *Van Arsdale* test for employee protection against such retaliation.

It is undisputed that Mauro worked on Defendant's audit team for public companies covered by Sarbanes-Oxley.  The record reveals that Mauro raised concerns about the reporting and accounting practices of these publicly traded companies with his superiors. *See, inter alia,* Botta Transcript 196:2-25; 197:1-21; 199:19-201:23; 201:24-202:7 Nelson Transcript 25:18-23; Haavardtun Transcript 28:23-29:2.  It is undisputed that Mauro submitted a TCR to the SEC in November 2016.  The record shows, as Mauro will present at trial, that the allegations in that

1  TCR were substantially similar[1] to the concerns Mauro previously raised with his

2  superiors at PwC. Further, following the Ninth Circuit's test in *Van Arsdale*, Mauro

3  will present at trial evidence that Defendant "knew or suspected, **actually or**

4  **constructively"** that Mauro had informed the SEC of what he believed were

5  violations of the law.  Mauro will show at trial, as his PwC personnel records attest,

6  that Defendant began to retaliate against him for this protected activity.  Mauro will

7  show at trial that by April-May 2017, Defendant was aware Mauro had engaged in

8  protected activity.  It is undisputed that Defendant terminated Mauro's employment

9  on August 17, 2017. The close interval between Defendant's knowledge of the

10 protected activity and Mauro's termination is evidence of Defendant's retaliatory

11 motive. *See Morgan v. Regents of the Univ. of California,* 88 Cal.App.4th 52, 69

12 (2000) ("[t]he retaliatory motive is 'proved by showing that plaintiff engaged in

13 protected activities, that his employer was aware of the protected activities, and that

14 the adverse action followed within a relatively short time thereafter'").  In *Morgan*,

15 the evidence was circumstantial; here, Mauro will present evidence of PwC's actual

16 knowledge of his protected activity.

17       Mauro thus meets the "**light burden of showing by a preponderance of**

18 **evidence**" that his protected activities "**tended to affect his termination in at least**

19 **some way**." *Feldman v. Law Enforcement Assocs. Corp.*, 752 F.3d 339, 348 (4th

20 Cir. 2014) (emphasis added).  This preponderance standard is the lowest evidentiary

21 standard for civil disputes requiring only that Mauro prove the existence of a fact (his

22 protected activity was a contributing factor to his termination) is more probable than

23 not.  After Mauro satisfies this modest burden, the burden of proof then shifts to the

24 Defendant to demonstrate by the much higher standard of "**clear and convincing**

25 **evidence** that it would have taken the same adverse employment action in the

26

27 ———————————
[1] In denying Defendant's motion for summary judgment, Judge Seeborg noted that
28 "The issues raised by the SEC closely mirrored those Botta had been expressing internally."  Dkt 107 at 4.

absence of [Mauro's] protected activity." *Van Arsdale, supra,* 577 F.3d at 996
(emphasis added).  Defendant bears a much heavier burden of proof: "clear and
convincing" requires a "a finding of high probability" with evidence "sufficiently
strong to command the unhesitating assent of every reasonable mind." *In re Angelia
P.*, 28 Cal.3d 908, 919 (1981).

Conversely, the record will reveal that Defendant cannot meet its significantly
higher burden of "clear and convincing" evidence that PwC would have taken the same
actions absent Defendant's awareness of Mauro's protected activity.   Even "the stated
reasons for [Mauro's] firing are intertwined with the alleged protected activity of
reporting" as Judge Seeborg observed in denying summary judgment for Defendant.
Dkt. 107 at 5. Mauro's internal complaints and concerns were the same issues he
ultimately reported to the SEC. Nelson Transcript 31:3-32:10; Botta Transcript 97:2-
22; 104:20-105; Nelson Transcript 25:18-23; Haavardtun Transcript 28:23-29:2; Botta
Transcript 199:19-201:23; 201:24-202:7.

Contrary to Defendant's contention, the fact that the individual who actually
fired Mauro (Mark Simon) was not aware that Mauro had submitted a complaint to
the SEC is not determinative. As Judge Seeborg noted in denying Defendant's
motion for summary judgment, Simon's proferred explanation for the termination "is
not dispositive under the particular circumstance of this case; the "relatively strong
circumstantial evidence available to PwC that the SEC complaint may have been
submitted by [Mauro] weighs against concluding as a matter of law that the
decisionmaker acted on" other grounds.  Dkt. 107 at 5. That was based on the
evidence presented on the summary judgment motion.  At trial, direct evidence will
show that Mauro's protected activity was a contributing factor to his termination.
*Van Arsdale, supra,* 577 F.3d at 996. in fact, that Mauro's protected activity was a
contributing factor to his termination is clear in the context of what transpired:
Mauro reported both to his superiors and to the SEC a number of illegal actions.
When the SEC informed Defendant that it had opened an investigation in April-May

2017 the issues tracked those which Mauro had raised internally; within a few months thereafter Mauro's employment was terminated.

Finally, it is immaterial that the SEC ultimately resolved not to prosecute based on Mauro's complaint.  The Ninth Circuit rule is clear that Mauro does not have to allege **actual** illegal activity, only that he reasonably believed an illegal activity occurred.  *Van Arsdale, supra*, at 997-998.  Plaintiff will show at trial that he reasonably believed illegal activities were occurring and that he had voiced his concerns to his superiors and then to the SEC when nothing was done. Botta Transcript 196:2-25; 197:1-21; 199:19-201:23; 201:24-202:7. Defendant's arguments based on the SEC's ultimate disposition of Mauro's complaint are thus unavailing. The Ninth Circuit does not require proof of actual fraud by the employee who has rightfully acted (i.e., engaged in protected activity) based on his reasonable beliefs, *Van Arsdale, supra*, 577 F,3d at 997-998.  At trial, Mauro will demonstrate the reasonableness of his own belief.  The reasonableness test in the Ninth Circuit is a demonstrably low bar: Mauro must show only that his belief that illegal conduct occurred (prompting his report to the SEC) "at least approximate[s]" the basic elements of a legal violation.  *Van Arsdale, supra*, 577 F.3d at 1001.  Mauro will testify that his beliefs were reasonable under the Ninth Circuit *Van Arsdale* standard.

## B.    PwC's Brief Description of Defenses

Plaintiff is not a bona fide whistleblower, and PwC never retaliated against him. PwC terminated Plaintiff's employment for cause because he admitted—twice—that he had engaged in serious misconduct. During two separate interviews with PwC's outside counsel, Plaintiff said he had fabricated a client's control and falsified related audit documentation in violation of his professional and ethical duties. Dkt. 100-4. Because PwC could no longer trust Plaintiff to perform audits in accordance with professional standards, PwC's obligation to maintain the integrity of its audits required it to terminate Plaintiff's at-will employment. Dkt. 100-3.

PwC had experienced issues with Plaintiff's performance long before the misconduct that resulted in his termination. Although Plaintiff had progressed as an auditor, he struggled to meet the expected and needed capabilities that came with his promotion to Senior Manager. Even *before* Plaintiff's alleged whistleblowing: (1) PwC partners, staff, and clients had commented on his lack of communication, judgment, and leadership skills, and (2) PwC had determined, and Plaintiff had acknowledged, that he would not make Partner at PwC.

Refusing to accept responsibility for his actions, and consistent with his history of volatile emotional responses to his performance issues, Plaintiff lashed out at PwC and its clients. In early 2016, Plaintiff informed a friend that he had initiated a "war." Shortly thereafter, Plaintiff hired an attorney and filed a whistleblower complaint with the SEC, accusing certain PwC clients of "incompetence" and questioning PwC's independence. After investigating Plaintiff's claims, the SEC declined to bring an enforcement action.[2]

---

[2] Botta Depo. Tr. at 118:24–119:7. Plaintiff then unsuccessfully appealed to the SEC Office of Inspector General. Following his termination from PwC, Plaintiff also made complaints to the Public Company Accounting Oversight Board, California Board of Accountancy, Federal Bureau of Investigations, County of Santa Clara District Attorney, California Department of Justice, California Department of Fair Employment and Housing, U.S. Department of Labor, U.S. Senator Elizabeth Warren's Office, U.S. Senator Diane Feinstein's Office, and U.S. Senator Kamala
(Continued...)

1    Undeterred, Plaintiff initiated this action against PwC and seven of its Partners.[3]
2    The story that Plaintiff tells now badly mischaracterizes the facts. Although Plaintiff
3    alleges that he raised accounting and auditing questions in connection with certain
4    audits, that was *Plaintiff's job* and something PwC *encouraged* him to do. PwC
5    requires its auditors to "speak up" and has detailed protocols to evaluate, document,
6    and address questions or disagreements among an engagement team. Nobody ever
7    gave Plaintiff an ultimatum, pressured him to withdraw concerns, or threatened his
8    career prospects. To the contrary, PwC dutifully followed its protocols and fully
9    addressed each issue Plaintiff had raised to his *express* satisfaction. Indeed, prior to
10   the conclusion of each audit at issue, Plaintiff affirmatively and voluntarily represented
11   in signed writings that PwC's work had been appropriately conducted, PwC's
12   conclusions were supported by sufficient audit evidence and documented, and the
13   issues Plaintiff now complains of did not exist.[4] If Plaintiff had a different view, he
14   knew that he had an ethical and professional obligation to document his disagreement
15   in PwC's audit work papers or remove himself from the audits.[5] He never did so.
16   Plaintiff's actions are fundamentally inconsistent with his allegations.

17   Nor did Plaintiff experience any retaliation. While Plaintiff complains PwC
18   removed him from working on two audits, he fails to mention the complaints—both
19   internally and from PwC's clients—about Plaintiff's communication and behavioral
20   issues.[6] As just one of many examples, Plaintiff caused a client's employee to walk
21   out of a meeting crying and resign.[7] Because effective communication and issues

22   _____

23   Harris's Office.  Like the SEC, none of these entities took any enforcement action against PwC based on Plaintiff's allegations.
24
25   [3] The Court granted the individual defendants' motion to dismiss with prejudice. Dkt. 67.

26   [4] Botta Depo. Tr. at 55:19–59:16; 61:5–9, 108:16–109:3; 110:22–111:5, 126:15–128:8, 137:11–18, 161:24–168:24.

27   [5] *Id.* at 36:7–38:3, 42:24–45:11, 98:24–99:2, 184:9–19, 185:18–186:5.

28   [6] Haavardtun Depo. Tr. at 55:1–61:15.
     [7] *See* Botta Depo. Tr. at 209:1–211:5.

management are essential for quality audits, PwC had to replace Plaintiff as the Senior Manager. PwC also had to assign additional auditors to help Plaintiff complete his work because of his poor time and project management skills.

Despite his performance and emotional issues, PwC tried and devoted substantial resources to help Plaintiff succeed. PwC assigned Plaintiff an executive coach and both PwC Partners and Human Resources professionals met with Plaintiff continually to provide counseling. During the same period of time when Plaintiff now claims PwC refused to staff him, PwC offered Plaintiff the opportunity to lead an important project, but he refused to engage. And when PwC staffed Plaintiff on a new audit, Plaintiff asserted—incredibly—that the same work a PwC Partner performed was somehow beneath Plaintiff. Indeed, the evidence in this case shows the opposite of retaliation—when Plaintiff resigned from PwC *after* his alleged whistleblowing, multiple PwC partners met with him and encouraged him to *stay* at the firm.[8]

The only time PwC stopped helping Plaintiff is when it had to. Plaintiff asserted that he had violated his professional and ethical obligations during two separate interviews with PwC's outside counsel (the then-head of Orrick's White Collar Criminal Defense practice, Walter Brown) and representatives of PwC's Office of General Counsel. During the first interview on June 14, 2017, Plaintiff asserted, unprovoked, that he had fabricated a client's internal control and falsified audit documentation to describe that control. When Mr. Brown interviewed Plaintiff again on July 21, 2017, Plaintiff repeated the same assertions and identified portions of audit work papers that he claimed to have fabricated. Dkt. 100-4. Plaintiff cannot dispute this admission as Plaintiff admitted in his discovery responses in this case that he cannot recall what he said during his interviews with Mr. Brown. Dkt. 100-2 at 58.

Because of the severity of what Plaintiff had said, PwC elevated his assertions to the Managing Partner of its U.S. Assurance Practice, Mark Simon—who

---

[8] *See* Botta Depo. Tr. at 258:12–260:1.

immediately terminated Plaintiff's employment effective August 17, 2017. As Mr. Simon will testify, he made the decision to terminate Plaintiff based solely on what he said. Plaintiff had either (1) fabricated a control in violation of his professional and ethical duties as an auditor or (2) made false statements that he had done so during an internal investigation. Either way, PwC could no longer trust or rely on Plaintiff. Dkt. 100-3.

For the reasons stated and based on the evidence to be presented at trial, Plaintiff cannot carry his burden of proof on any of his remaining claims.

Plaintiff's whistleblower claims[9] fail for multiple and independent reasons:

*First*, the overwhelming and uncontested evidence proves that PwC terminated Plaintiff for non-retaliatory reasons. While Plaintiff points to weak circumstantial evidence, such as temporal proximity, he does not attempt to address his assertions during his interviews with Mr. Brown. Nor could he. There is no question that Plaintiff's repeated assertions that he had violated his professional and ethical obligations warranted his termination. *See, e.g.*, *Guitron v. Wells Fargo Bank, NA*, 619 F. App'x 590, 591 (9th Cir. 2015) (affirming judgment against SOX whistleblower claim; finding employee's misconduct satisfied defendants' burden of presenting clear and convincing evidence of a non-retaliatory termination); *Kim v. Boeing Co.*, 487 F. App'x 356, 357 (9th Cir. 2012) ("Boeing presented clear and convincing evidence of its belief that Kim had been insubordinate and was subject to discharge on that basis.").

Plaintiff's selective quotations from Judge Seeborg's summary judgment order are similarly unavailing. At that stage, Judge Seeborg had to analyze the limited evidence presented in the light most favorable to Plaintiff. Judge Seeborg made no finding that Plaintiff would prevail at trial. To the contrary, Judge Seeborg observed that "a fact finder may very well ultimately conclude Botta was terminated for

---

[9] Plaintiff has four whistleblower retaliation claims under the Sarbanes-Oxley Act ("SOX"), California Labor Code § 1102.5, California Labor Code § 98.6, and for wrongful termination in violation of public policy.

1    legitimate reasons." Dkt. 107 at 5:11–12. That is what the evidence presented at trial
2    will prove.

3        *Second*, when Mr. Simon made the decision to terminate Plaintiff, it is
4    undisputed that Mr. Simon had no knowledge of Plaintiff's alleged whistleblowing to
5    the SEC. Mr. Simon had never worked with or interacted with Plaintiff, and Plaintiff
6    has admitted that he did not discuss his allegations with Mr. Simon or know if anyone
7    else had.[10] No retaliation claim can succeed under these circumstances. *See, e.g., Rielly*
8    *v. D.R. Horton, Inc*., 2008 WL 4330299, at *1 (C.D. Cal. Sept. 17, 2008) ("[I]t is not
9    enough that someone in the company was aware of Plaintiff's complaints. Instead,
10   Plaintiff must make a showing that the person who actually made the decision to fire
11   him knew.").

12       *Third*, to prevail on any of his whistleblower claims, Plaintiff must show that he
13   had both an objectively and subjectively reasonable belief that PwC engaged in
14   shareholder fraud (SOX claim) or violated some other law (Labor Code § 1102.5
15   claim). *See* 18 U.S.C. 1514A(a)(1); Labor Code § 1102.5(b); *Erhart v. BofI Holding,*
16   *Inc.*, 269 F. Supp. 3d 1059, 1072 (S.D. Cal. 2017). Plaintiff's own actions show that
17   he never held such a belief. Plaintiff affirmatively signed off on the audits underlying
18   his allegations, demonstrating that he believed the audits had been appropriately
19   conducted and PwC violated no law. *See Nance v. Time Warner Cable, Inc.*, 433 F.
20   App'x 502, 504 (9th Cir. 2011) (affirming dismissal of SOX claim where plaintiff
21   certified in a letter that "he did not believe [] there had been any fraudulent activity").

22       PwC also did not breach Plaintiff's employment contract. Plaintiff claims that
23   PwC terminated him without providing three months' notice. But under the terms of
24   Plaintiff's contract, no notice was required, because PwC terminated Plaintiff for
25   "professional, legal, ethical, or Firm policy violations."

26

27

28   ─────────────
     [10] Botta Depo. Tr. at 255:20–256:16.

Plaintiff is not entitled to the remedies he seeks. Even if Plaintiff could prove liability (he cannot), Plaintiff cannot show that he is entitled to any remedies. Plaintiff's request for economic damages fails because he lost no wages from his termination. Plaintiff accepted a new job offer on August 4, 2017—*before* PwC terminated his employment on August 17, 2017. Moreover, Plaintiff made the same salary and earned the same benefits at that job and others that he has held since working at PwC.

Nor has Plaintiff suffered any cognizable emotional distress that could form the basis for damages in this case. Plaintiff relies on nothing more than his self-serving and conclusory testimony, which is contradicted by his own medical records. *Costa v. Nat'l Action Fin. Servs*., 634 F. Supp. 2d 1069, 1078 (E.D. Cal. 2007) (holding that a plaintiff seeking damages for emotional distress "must demonstrate more than transitory symptoms . . .  and unsupported self-serving testimony").

Finally, Plaintiff is not entitled to the equitable remedy of reinstatement. PwC simply cannot trust and cannot employ an auditor who claimed to have fabricated a client's control and falsified audit documentation. Moreover, as numerous emails, diary entries, and messages show, Plaintiff has harbored significant hostility and antagonism toward PwC and its Partners. *See Teutscher v. Woodson*, 835 F.3d 936, 951 (9th Cir. 2016) ("The factors that determine whether a reinstatement award is appropriate include whether excessive hostility or antagonism between the parties renders reinstatement practically infeasible.").

## **Relief Prayed**

**A.      Plaintiff Mauro Botta seeks the following relief:**

> 1.      Reinstatement with the same seniority status that Mauro would have had, but for the unlawful termination;
>
> 2.      A money judgment for mental pain, anguish, emotional distress, and injury to reputation;
>
> 3.      All civil penalties available;

4.      Compensation for litigation costs and attorneys' fees;

5.      Prejudgment and post-judgement interest at the maximum allowable legal rate;

6.      Lost wages, front and back pay, and loss of earning capacity;

7.      Punitive damages; and

8.      Such other and further relief as the Court may deem just and proper.

**B.      Defendant seeks the following relief:**

1.      Defendant shall have judgment against Plaintiff on all claims;

2.      Plaintiff shall take nothing;

3.      Defendant shall recover its litigation costs incurred herein; and

4.      Such other and further relief as the Court may deem just and proper.

## Undisputed Facts

The following facts are not disputed:

1.      In 2004, Mauro began working at PwC's San Jose, CA office as a Senior Associate in PwC's Assurance Practice.

2.      On or around July 1, 2010, Mauro became a Senior Manager in PwC's Assurance Practice.

3.      On August 17, 2017, PwC terminated Mauro's employment.

4.      PwC is a duly registered public accounting firm.

5.      At times, PwC serves as an independent external auditor to some companies covered by the Sarbanes-Oxley Act.

6.      In November 2016, Mauro filed a confidential Tip, Complaint, or Referral ("TCR") with the United States Securities and Exchange Commission ("SEC Complaint").

7.      On October 25, 2017, Mauro filed a "Charge of Whistleblower Retaliation Under 18 U.S. Code § 1514A" against PricewaterhouseCoopers LLP with the Department of Labor.

1

**Disputed Factual Issues**

2

**From Plaintiff's View:**

3     Whether Mauro's engaging in protected activity was a contributing factor to

4 certain adverse employment actions and whether PwC breached their contractual

5 obligations when they failed to give Mauro three (3) months' notice prior to

6 terminating him; whether, because of these adverse actions and contractual breaches,

7 Mauro suffered damages; and whether Mauro is entitled to punitive damages,

8 reinstatement, and other relief against Defendant.

9 **Defendants' Position on the Disputed Factual Issues:**

10 **A.    Sarbanes Oxley Act, 18 U.S.C. § 1514A(a) ("SOX")**

11     1.    Whether Plaintiff engaged in protected activity under SOX.

12     2.    Whether Plaintiff suffered an unfavorable personnel action under SOX.

13         a.    PwC does not dispute that Plaintiff's termination constitutes an

14                 unfavorable personnel action under SOX. However, PwC disputes

15                 that the other alleged acts underlying Plaintiff's claim constitute an

16                 unfavorable personnel action.

17     3.    Whether PwC took the unfavorable personnel action because of

18 Plaintiff's protected activity.

19     4.    Whether PwC would have taken the unfavorable personnel action in the

20 absence of Plaintiff's protected activity.

21 **B.    California Labor Code §§ 1102.5, 98.6**

22     1.    Whether Plaintiff engaged in protected activity under Labor Code

23 § 1102.5.

24     2.    Whether Plaintiff suffered an adverse employment action under Labor

25 Code § 1102.5.

26         a.    PwC does not dispute that Plaintiff's termination constitutes an

27                 unfavorable personnel action under Labor Code § 1102.5.

28                 However, PwC disputes that the other alleged acts underlying

Plaintiff's claim constitute an adverse employment action.

3.    Whether PwC took the adverse employment action because of Plaintiff's protected activity.

4.    Whether PwC would have taken the adverse employment action in the absence of Plaintiff's protected activity.

**C.    Wrongful Termination in Violation of Public Policy**

1.    Whether Plaintiff engaged in protected activity under SOX or Labor Code § 1102.5.

2.    Whether PwC terminated Plaintiff's employment because he engaged in protected activity.

3.    Whether PwC would have terminated Plaintiff in the absence of Plaintiff's protected activity.

**D.    Breach of Contract**

1.    Whether PwC terminated Plaintiff without first giving him three months of notice.

2.    Whether PwC terminated Plaintiff for reasons other than professional, legal, ethical, or PwC policy violations.

3.    Whether Plaintiff was harmed.

4.    Whether Plaintiff was harmed because PwC terminated him without first giving three months of notice.

**E.    Unclean Hands**

1.    Whether Plaintiff engaged in misconduct or failed to fulfill his duties.

2.    Whether it would be unfair to allow Plaintiff to prevail on his claims in light of his actions.

**F.    Remedies**

1.    Whether Plaintiff lost wages because PwC violated SOX, Cal. Labor Code § 1102.5, or Cal. Labor Code § 98.6; PwC wrongfully terminated Plaintiff in violation of public policy; or PwC breached Plaintiff's contract.

2.      Whether Plaintiff satisfied his burden of mitigating his lost wages.

3.      Whether Plaintiff suffered severe emotional pain and suffering because PwC violated Cal. Labor Code § 1102.5 or Cal. Labor Code § 98.6; or PwC wrongfully terminated Plaintiff in violation of public policy.

4.      Whether Plaintiff is entitled to the equitable remedy of reinstatement.

5.      Whether Plaintiff is entitled to punitive damages on his Labor Code § § 1102.5, 98.6, or wrongful termination in violation of public policy claims.

6.      Whether Plaintiff is entitled to civil penalties, litigation costs and attorneys' fees, or prejudgment and post-judgment interest.

## Agreed Statement

Neither all nor part of this action can be presented upon an agreed statement of facts.

## Stipulations

1.      All documents previously produced and exchanged between parties are authenticated and there shall be no need to call various custodians in order to authentic documents previously produced and exchanged between the parties.

## Witnesses to be Called

Mauro's Witness List is attached as Appendix A and PwC's Witness List is attached as Appendix B.

## Exhibits, Schedules, and Summaries

The parties Joint Exhibit List is attached hereto as Appendix C. Mauro's Exhibit List is attached as Appendix D and PwC's Exhibit List is attached as Appendix E.

## Pending Motions or Matters

The following law and motion matters and motions *in limine* are currently pending or contemplated:

**a.      Plaintiff:** Plaintiff will be filing motions in limine.

**b.**     **Defendant:**

    i.     PwC's Motion in Limine No. 1 to Exclude Evidence of Irrelevant PwC Audits and Conduct.

    ii.     PwC's Motion in Limine No. 2 to Exclude Evidence of Covad Peer Review.

    iii.     PwC's Motion in Limine No. 3 to Exclude Evidence of Dismissed Defamation Allegations.

    iv.     PwC's Motion to Require Plaintiff to Narrow His Witness List.

    v.     PwC's Motion to Exclude Deposition Designations for Live Witnesses.

## **Bifurcation, Separate Trials of Issues**

Neither a bifurcation nor separate trial of specific issues is requested by either party.

## **Estimate Trial Time**

Trial is estimated and set for nine days (February 22–25, March 1–4, 8).

## **Miscellaneous**

None.

1   Dated: February 1, 2021

2

3

By: /s/ Ingrid M. Evans                          By: /s/ John C. Hueston

4

5

6   Ingrid M. Evans (SBN 179094)          John C. Hueston, State Bar No. 164921
    EVANS LAW FIRM                         jhueston@hueston.com
7   3053 Fillmore Street #236              HUESTON HENNIGAN LLP
8   San Francisco, California 94123        620 Newport Center Drive, Suite 1300
    Telephone (415) 441-8669               Newport Beach, California 92660
9   Facsimile (415) 928-1294               (949) 229-8640
                                           (888) 775-0898
10  Alexander G. Cabeceiras, Esq.
11  DEREK SMITH LAW GROUP, PLLC            Moez M. Kaba, State Bar No. 257456
    One Penn Plaza, Suite 4905             mkaba@hueston.com
12  New York, New York 10119               Joseph A. Reiter, State Bar No. 294976
    Phone: (212) 587-0760                  jreiter@hueston.com
13  Fax: (212) 587-4169                    HUESTON HENNIGAN LLP
    alexc@dereksmithlaw.com                523 West 6th Street, Suite 400
14  Appearance *Pro Hace Vice*             Los Angeles, CA 90014
                                           Telephone:  (213) 788-4340
15  *Attorneys for Plaintiff*              Facsimile:  (888) 775-0898
16
                                           *Attorneys for Defendant*
17                                         PricewaterhouseCoopers LLP

18

19
           Pursuant to Civil Local Rule 5–1 (i)(3), the filer attests that concurrence in
20
    the filing of this document has been obtained from each of the above signatories.
21

22

23

24

25

26

27

28

1   Dated: _____        _____

2                                              Hon. Alex G. Tse

3                                          United States Magistrate Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28