John C. Hueston, State Bar No. 164921
jhueston@hueston.com
Moez M. Kaba, State Bar No. 257456
mkaba@hueston.com
Joseph A. Reiter, State Bar No. 294976
jreiter@hueston.com
HUESTON HENNIGAN LLP
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 775-0898

Attorneys for Defendant
PricewaterhouseCoopers LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURO BOTTA,<br><br>    Plaintiff,<br><br>    v.<br><br>PRICEWATERHOUSECOOPERS LLP,<br><br>    Defendant. | Case No. 3:18-CV-2615-AGT<br><br>**DEFENDANT PWC'S MOTION *IN LIMINE* NO. 3 TO EXCLUDE EVIDENCE OF DISMISSED DEFAMATION ALLEGATIONS**<br><br>Judge: Hon. Alex G. Tse<br>Date: February 16, 2021<br>Time: 2:00 p.m. |

## DEFENDANT PWC'S MOTION *IN LIMINE* NO. 3

PLEASE TAKE NOTICE that on February 16, 2021 at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable Alex G. Tse, United States Magistrate Judge, in Courtroom A of the United States District Court, Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California 94102, Defendant PricewaterhouseCoopers LLP will and hereby does move this Court for an order pursuant to Rules 402 and 403 of the Federal Rules of Evidence ("FRE") and Rule 26 of the Federal Rules of Civil Procedure excluding any and all evidence by testimony, exhibits, references, or argument, relating to Plaintiff Mauro Botta's allegations of defamation, including the proposed testimony of Christopher Ludwig, which the Court has already dismissed and recognized as barred by the common interest privilege. (Dkt. 67.)

This motion is based on this notice of motion, the memorandum of points and authorities served and filed herewith, the Declaration of Joseph A. Reiter, the pleadings and records on file herein, and upon such other and further argument as may be presented to the Court at the hearing of this matter.

Dated: February 1, 2021                                   **HUESTON HENNIGAN LLP**

By: /s/ *John C. Hueston*
John C. Hueston
Attorneys for Defendant

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant PricewaterhouseCoopers LLP ("PwC") respectfully requests an order excluding all evidence, argument, or reference to Plaintiff Mauro Botta's allegations of defamation. Dkt. 46 ¶¶ 81–83.

The Court dismissed Plaintiff's defamation claim more than two years ago. Dkt. 67. It is black-letter law that evidence related to that dismissed claim is now irrelevant and should be excluded.

Moreover, in dismissing Plaintiff's defamation claim, the Court recognized that Plaintiff's allegations against PwC fell "squarely in the common interest privilege." *Id.* at 8. Because PwC's conduct is protected by privilege, that conduct cannot serve as the basis for liability or damages at trial. Plaintiff's defamation allegations therefore cannot—as a matter of law—make a material fact more or less likely. *See* FRE 401.

Regardless, Plaintiff's defamation allegations should be excluded because they are based on inadmissible hearsay, speculation, and information provided to Plaintiff by his lead trial counsel. These issues will waste judicial resources by requiring various complex evidentiary rulings, factual determinations, and rebuttal witnesses – exactly what Federal Rule of Evidence 403 is designed to avoid.

Plaintiff also violated the disclosure requirements by failing to identify his primary defamation witness before the close of fact discovery. Because of Plaintiff's belated disclosure, PwC was unable to depose this witness or seek discovery from him. To avoid unfair prejudice to PwC, the Court should exclude testimony from this late-disclosed witness.

In short, Plaintiff's defamation allegations should be excluded for multiple and independent reasons.

## I. RELEVANT BACKGROUND

PwC is a leading professional services firm. One of the many services PwC provides is audits of the financial statements of publicly traded companies that report

to the SEC. Given the importance of this task, PwC auditors are held to high standards of ethics, competence, and independence. The professional standards governing auditors such as PwC are codified by statute, SEC rules and regulations, PCAOB standards, and PwC's own Code of Conduct.

PwC previously employed Plaintiff as a Senior Manager in the Assurance Practice in San Jose. Dkt. 46 ¶¶ 14–15. In August 2017, PwC fired Plaintiff for cause after Plaintiff admitted that he had engaged in serious misconduct. Dkt. 85-5 ¶ 6. Specifically, during an internal investigation conducted by outside counsel, Plaintiff twice stated that he had fabricated a client's internal control and falsified audit documentation in connection with the client's annual audit. *Id.* ¶ 4. As an external auditor, Plaintiff was responsible for evaluating—not creating—the controls used by PwC's clients.

Given Plaintiff's admissions of wrongdoing, PwC concluded that it could no longer employ Plaintiff. *Id.* ¶ 6. Plaintiff had either: (a) fabricated audit evidence and documentation; or (b) lied about his conduct during an internal investigation. Either way, what Plaintiff said he had done is an unmistakable and gross violation of his professional and ethical obligations, and PwC could no longer employ him or otherwise trust him as an auditor. *Id.*

After his termination, Plaintiff bounced from job to job. Plaintiff first worked at Armanino LLP (another public accounting firm) but abruptly resigned after four months, declaring that he was "one man against an entire system," and that he had "bl[own] up Armanino in less than 2 months." Reiter Decl. Ex. 7 at 2.[1]

Plaintiff then joined SOAProjects, Inc., an accounting and advisory firm. Dkt. 47 ¶ 81. SOAProjects performs internal audit services for companies, among other

---

[1] Plaintiff's goal of "blowing up" Armanino is consistent with Plaintiff's "crusade," which he planned and initiated while working at PwC, to take down the entire Silicon Valley auditing industry. Reiter Decl. Ex. 7 at 1.

services.² Those services are intended to be relied on by those clients' external auditors, such as PwC. But before an auditor like PwC can rely on internal audit work done by a third-party like SOAProjects, the auditor is required to "assess the competence and objectivity of the persons whose work the auditor plans to use." (PCAOB Auditing Standard 2201.18³ (Nov. 15, 2007).)

Shortly after arriving at SOAProjects, Plaintiff began working as an internal auditor on an engagement, the results of which were intended to be relied upon by PwC as part of its audit of the client's financial statements. Reiter Decl. Ex. 8. PwC therefore had a professional obligation to evaluate Plaintiff's competence and objectivity. (PCAOB Auditing Standard 2201.18.) PwC takes its obligations seriously. In light of Plaintiff's serious misconduct while working at PwC, PwC did not believe it could rely on his work in accordance with the governing professional standards. Reiter Decl. Ex. 8.

As a courtesy to Plaintiff, PwC did everything it could to avoid expressing its concerns directly to SOAProjects. Instead, through counsel, PwC asked Plaintiff to remove himself from SOAProjects' assignments where PwC is the external auditor. *Id*. PwC told Plaintiff's counsel that it did "not want to say anything to this client or to any client about [Plaintiff]" and had "absolutely no desire to threaten [Plaintiff's] job security or reputation." *Id.* at 4.

Plaintiff refused. *Id.* at 1–2. As a result, according to Plaintiff, PwC partner Steven McCann told SOAProjects that PwC "could not 'sign off on any work' Plaintiff does." Dkt. 46 ¶ 81–83. Based on these allegations, which were pleaded largely on "information and belief," Plaintiff asserted a cause of action for defamation against PwC and Mr. McCann. *Id.* ¶¶ 104–07.

---

² *See* SOAProjects, *Services: Internal Audit Services*, available at https://soaprojects.com/internal-audit-services/.

³ *Available at* PCAOB, AS 2201: An Audit of Internal Control Over Financial Reporting That Is Integrated with An Audit of Financial Statements, https://pcaobus.org/oversight/standards/auditing-standards/details/AS2201.

1    The Court dismissed Plaintiff's claim.  Even accepting Plaintiff's allegations as true, "PwC's alleged communications with Botta's new employer, concerning their opinion of his competency to perform tasks requiring defendant to 'sign off on any work,' would fall squarely within the common interest privilege."  Dkt. 67 at 8; *see also id.* at 7–8 ("Specifically, when one interested party communicates information in a commercial setting concerning the conduct of an employee to another interested party, the communication is covered within the qualified privilege." (citing *Cuenca v. Safeway S.F. Employees Fed. Credit Union*, 180 Cal. App. 3d 985, 995 (1986).)  And because Plaintiff's own complaint showed that PwC "could hold genuine concerns about [Plaintiff's] professional abilities," Plaintiff had failed to show the "actual malice" required to overcome the common interest privilege.  *Id.*

   Plaintiff did not amend his complaint to add allegations related to actual malice.  In fact, at the hearing on PwC's motion to dismiss, Plaintiff's trial counsel admitted that he would need to rely on his own knowledge as a percipient witness to amend.  Counsel explained that "it should be noted that I was involved somewhat in learning about the defamatory speech."  Reiter Decl. Ex. 10 at 11.  Counsel suggested that he "could interject [himself] into this claim and amend it to say, *Counsel received a call*."  *Id*. Despite this suggestion, Plaintiff did not attempt to amend his defamation claim.

   After their dismissal, Plaintiff did not raise his defamation allegations for nearly 18 months.  Then, on February 19, 2020—more than a year *after* fact discovery closed, Dkt. 67—Plaintiff served "supplemental" initial disclosures identifying additional witnesses. Reiter Decl. Ex. 9.  One of those witnesses is Christopher Ludwig, a former SOAProjects employee, whom Plaintiff's February 19, 2020 disclosure claimed had "knowledge relating to the facts concerning the claims at issue in this lawsuit including, but not limited to, Plaintiff's efforts to mitigate his lost wages."  *Id.* at 1. Even though Plaintiff's untimely disclosure of Mr. Ludwig violated Fed. R. Civ. Proc. 26(a)(1), and contrary to his prior representations about Mr. Ludwig's purported knowledge, Plaintiff now seeks to offer Mr. Ludwig at trial to testify about Plaintiff's

1  dismissed defamation allegations. Reiter Decl. Ex. 12 at 3 (claiming that Mr. Ludwig
2  has "[k]nowledge of PwC harming Plaintiff's professional reputation").

## I. ARGUMENT

Evidence is irrelevant unless it has a tendency to make a fact of consequence in the action more or less probable. FRE 401. Irrelevant evidence is not admissible at trial. FRE 402. Even relevant evidence should be excluded if its probative value is outweighed by a danger of wasting time or confusing the issues. FRE 403.

### A. Plaintiff's Defamation Allegations are Factually Irrelevant Because The Court Previously Dismissed Them

If a claim has been dismissed before trial, evidence related to that claim is irrelevant and should be excluded from trial. *See, e.g.*, *Guillory v. Tilton*, 2012 WL 2358591, at *2 (E.D. Cal. June 20, 2012 ("[T]estimony regarding dismissed claims . . . is irrelevant to the claims proceeding to trial and will be excluded."); *Van v. Language Line Servs., Inc.*, 2016 WL 3566980, at *5 (N.D. Cal. June 30, 2016) ("[E]vidence of claims resolved at summary judgment in Defendants' favor is irrelevant."); *Stop Staring! Designs v. Tatyana, LLC*, 2011 WL 13124123, at *1 (C.D. Cal. Aug. 11, 2011) (limiting testimony to "claims that are still in the case" because testimony about "dismissed claims is irrelevant").

Plaintiff's defamation allegations squarely implicate this rule. Because the defamation claim is not at issue at trial, evidence related to that claim cannot "make a fact at issue more or less likely" and is thus "irrelevant and should be excluded." *Surface v. Conklin*, 2018 WL 6257984, at *6 (S.D. Ohio Nov. 30, 2018); *Sturm v. Hedges*, 2017 WL 11001656, at *5 (S.D. Ind. June 21, 2017) (granting defendants' motion to exclude "evidence and argument regarding . . . dismissed claims" because those issues were "irrelevant to the issues at trial").

### B. Plaintiff's Defamation Allegations are Irrelevant as a Matter of Law Because They Are Based on Protected Activity

If conduct is protected by the common interest privilege, that conduct cannot be the basis for liability or damages on *any* claim. *See Terry v. Davis Community Church,* 131 Cal. App. 4th 534, 1556 (2005) (applying common interest privilege to bar various tort claims because "California permits *no cause of action*" based on conduct "which is itself privileged"); *see also Copp v. Paxton*, 45 Cal. App. 4th 829, 848 (1996) (recognizing that "alternate theories" of liability based on "communications . . . found to be statutorily [protected]" are "barred on the same grounds"); *Young v. Tri-City Healthcare Dist.*, 210 Cal. App. 4th 35, 57 (2012) ("Damages could not be awarded on the basis of such protected activity.").

Thus, even if Plaintiff tries to shoehorn his defamation allegations into one of his remaining causes of action, such an attempt would be foreclosed. Because PwC's privileged conduct cannot be the basis for *any* liability or damages, evidence related to that conduct should be excluded. *See, e.g.*, *West v. Vill. Green Mgmt. Co.*, 2013 WL 1103697, at *7 (N.D. Ill. Mar. 15, 2013) (granting motion in limine to exclude evidence that was "irrelevant to liability or damages").

### C. Plaintiff's Defamation Allegations Will Waste Time and Resources

Plaintiff's defamation allegations are factually and legally irrelevant for the reasons discussed above. In addition, Plaintiff's defamation allegations will introduce numerous time-consuming and unnecessary evidentiary and factual issues into trial.

"Under Rule 403, the evidence, even if admissible, must not be time-consuming or introduce extraneous complex evidentiary issues into the case." *United States v. Reinhardt*, 347 F. Supp. 2d 222, 224 (D. Md. 2004). That is what Plaintiff's defamation allegations would do here if they are admitted:

- Plaintiff would need to make an additional factual showing by "clear and convincing evidence" that PwC acted with "actual malice." Dkt. 67. This issue alone will create an unnecessary trial within a trial. *See, e.g.*, *Davis*

*v. Costa-Gavras*, 650 F. Supp. 153, 156 (S.D.N.Y. 1986) (ordering an "evidentiary hearing" to determine if plaintiff could show actual malice "by clear and convincing affirmative").

- Plaintiff's trial counsel has admitted he was involved in the underlying facts and would need to "interject [himself] into this claim" to substantiate Plaintiff's allegations. Reiter Decl. Ex. 10 at 11. Given that trial counsel has admitted he is a fact witness to these allegations, and that Plaintiff is trying to put these allegations at issue, PwC would likely need to examine trial counsel on this topic. This dynamic could lead to a motion to disqualify counsel. *See, e.g.*, *United States v. Prantil*, 764 F.2d 548, 552–53 (9th Cir. 1985) ("The advocate-witness rule prohibits an attorney from appearing as both a witness and an advocate in the same litigation."); *see also Rizzuto v. De Blasio*, 2019 WL 1433067, at *9 (E.D.N.Y. Mar. 29, 2019) (disqualifying counsel due to his "status as a necessary witness" and noting that a "bench trial would obviously not cure the issues" associated with the advocate-witness rule).

- Plaintiff's defamation allegations are based entirely on alleged third-party statements. Dkt. 88-22 at 3. Plaintiff's testimony on this topic will therefore constitute inadmissible hearsay. *See, e.g.*, *Spinnenweber v. Laducer*, 2019 WL 6649847, at *2 (N.D. Ind. Dec. 5, 2019) (granting motion in limine "to preclude Plaintiff from testifying as to what he was told by non-testifying healthcare professionals").

- If Plaintiff's allegations are not excluded, PwC will be forced to call otherwise unnecessary witnesses to rebut Plaintiff's speculative allegations and explain the propriety of its conduct. *See Hill v. Goodfellow Top Grade*, 2019 WL 4194277, at *2 (N.D. Cal. Sept. 4, 2019) (granting motion in limine to exclude evidence of alleged misconduct, where "Defendant would be forced to present evidence

rebutting these allegations, which have virtually no similarity" to the allegations at issue).

In sum, Plaintiff's defamation allegations not only have no probative value, but will derail trial by requiring significant time and resources be spent on ancillary and irrelevant issues. Those allegations should be excluded. *See* FRE 403.

### D. Plaintiff Did Not Timely Disclose Mr. Ludwig

Even if the Federal Rules of Evidence did not prohibit Plaintiff from presenting his defamation allegations at trial, the Federal Rules of Civil Procedure would.

"The purpose of Rule 26 disclosures is to identify those witnesses that a party intends to use at trial." *Vieste, LLC v. Hill Redwood Dev.*, 2011 WL 2181200, at *3 (N.D. Cal. June 3, 2011). Rule 26 requires that initial disclosures identify "each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1). "This enables the opposing party to plan its discovery, including depositions, based on the disclosures." *Vieste*, 2011 WL 2181200, at *3. Failure to comply with Rule 26 means that witness is barred from supplying evidence at a trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Plaintiff did not disclose Mr. Ludwig as a witness until more than a year after fact discovery closed. Reiter Decl. Ex. 9. Even then, Plaintiff disclosed only that Mr. Ludwig had knowledge of Plaintiff's mitigation efforts, not his defamation allegations. *Id*. Given Plaintiff's late Rule 26 disclosure of Mr. Ludwig, PwC could not have deposed or sought discovery from Mr. Ludwig. *Id*.; *see also* Dkt. 68 (setting discovery deadlines). In these circumstances, the Court should exclude Mr. Ludwig's testimony to avoid unfair prejudice to PwC. *See, e.g.*, *Bal Seal Eng'g, Inc v. Nelson Prod., Inc*, 2019 WL 7865198, at *4 (C.D. Cal. Oct. 17, 2019) (excluding witnesses disclosed four to six "months after the close of fact discovery" and noting the "obvious prejudice to defendant caused by plaintiff's late disclosure" (citation omitted)); *Reed v. Washington*

*Area Metro. Transit Auth.*, 2014 WL 2967920, at *4 (E.D. Va. July 1, 2014) (granting motion to exclude witnesses disclosed "two days before the close of discovery" and noting that "a party's ability to order its discovery and select its witnesses for deposition is prejudiced by another party's failure to make sufficient Rule 26(a)(1) disclosures").

### III.   CONCLUSION

The Court dismissed Plaintiff's defamation claim over two years ago, making any evidence related to such claim both factually and legally irrelevant. Plaintiff cannot undermine the Court's dismissal of those claims by bringing that same evidence in through the backdoor. Nor should Plaintiff be permitted to introduce unnecessary and time-consuming factual and legal issues into this case—especially when those issues were not properly disclosed during discovery.

The Court should therefore exclude any evidence, argument, or reference to Plaintiff's defamation allegations, including the proposed testimony of Mr. Ludwig.

Dated: February 1, 2021                                      **HUESTON HENNIGAN LLP**

By: /s/ *John C. Hueston*
John C. Hueston
Attorneys for Defendant