# EXHIBIT 2



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
San Francisco Regional Office
44 Montgomery Street, Suite 2800
San Francisco, CA 94104

**DIVISION OF ENFORCEMENT**

John Roscigno
415-705-8135

April 28, 2017

**Via UPS & EMAIL (ted.senger@us.pwc.com)**

PricewaterhouseCoopers LLP
c/o Theodore Senger
Three Embarcadero Center
San Francisco, CA 94111-4004

Re:   In the Matter of Certain PricewaterhouseCoopers Audits (MSF-4149)

Dear Mr. Senger:

The staff of the United States Securities and Exchange Commission is conducting an investigation relating to the above-referenced matter to determine if violations of the federal securities laws have occurred. In connection with this investigation, the staff requests that PricewaterhouseCoopers LLP ("PwC") immediately preserve, and voluntarily provide us with, the information and documents set forth in Attachment A by 5:00 p.m., May 12, 2017.

Please send the materials to:

ENF-CPU
U.S. Securities and Exchange Commission
100 F St., N.E., Mailstop 5973
Washington, DC 20549-5973

Please carefully read this letter, the enclosed Form 1662, and Attachment A. Attachment A contains, among other things, important instructions related to the manner of producing documents. In particular, if PwC prefers to send us copies of original documents, **the staff requests that PwC scan and produce hard copy documents, as well as electronic documents, in an electronic format consistent with the SEC Data Delivery Standards attached hereto. All electronic documents responsive to the document request, including all metadata, should also be produced in their native software format.** If you have any questions concerning the production of documents in an electronic format, please contact me as soon as possible and in any event before producing documents.

Please also email a copy of the cover letter accompanying the production to John Roscigno.

Confidential

PricewaterhouseCoopers LLP
April 28, 2017
Page 2

In your cover letter(s) accompanying the production of responsive documents, please enclose a list briefly describing each item you send. The list should state to which paragraph(s) in the attachment each item responds. Please also state in the cover letter(s) whether PwC has met its obligations under the document request by searching carefully and thoroughly for everything called for by the request, and sending it all to us.

Please also provide a narrative description describing what was done to identify and collect documents responsive to the request. At a minimum, the narrative should describe:

- who searched for documents;
- who reviewed documents found to determine whether they were responsive;
- which custodians were searched;
- what sources were searched (e.g., computer files, CDs, DVDs, thumb drives, flash drives, online storage media, hard copy files, diaries, datebooks, planners, filing cabinets, storage facilities, home offices, work offices, voice mails, home email, webmail, work email, backup tapes or other media);
- what search terms, if any, were employed to identify responsive documents;
- what firms and/or persons, if any, assisted in analyzing the data collected;
- what third parties, if any, were contacted to obtain responsive documents (e.g., phone companies for phone records, brokerage firms for brokerage records); and
- where the original electronic and hardcopy documents are maintained and by whom.

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

This investigation is a non-public, fact-finding inquiry. The investigation does not mean that we have concluded that you or anyone else has violated the law. Also, the investigation does not mean that we have a negative opinion of any person, entity, or security. Enclosed is a copy of the Commission's Form 1662 entitled "Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena." Form 1662 explains how we may use the information you provide to the Commission and has other important information for you.

PwC_B00006081

PricewaterhouseCoopers LLP
April 28, 2017
Page 3


Thank you in advance for your anticipated cooperation.  If you have any questions or would like to discuss this matter, you may call me at 415-705-8135.

Sincerely,

John Roscigno
Senior Accountant
Division of Enforcement


Enclosures:    Attachment A
               SEC Data Delivery Standards
               SEC Form 1662

Confidential

PwC_B00006082

**ATTACHMENT A FOR PRICEWATERHOUSECOOPERS LLP**
**April 28, 2017**
In the Matter of Certain PricewaterhouseCoopers Audits (MSF-4149)

## A. Definitions and Instructions

1. The terms "PwC", "you" or "your" mean PricewaterhouseCoopers LLP and all of its U.S. and non-U.S. parents, subsidiaries, divisions, affiliates, predecessors, successors, officers, directors, partners, limited partners, employees, agents, independent contractors, and individuals and entities used by PwC in the performance of any services to its audit clients, as well as aliases, code names, trade names, or business names used by, or formerly used by, any of the foregoing. This includes any affiliated and unaffiliated outside firms, foreign offices, and individuals used by PwC in the performance of any services to its audit clients, or that participated in the performance of these services, or whose work was relied upon by PwC in the performance of these services.

2. The term "Cavium" means Cavium, Inc. and all of its agents, representatives, divisions, groups, parents, subsidiaries, consolidated Variable-Interest Entities, subdivisions, predecessors, successors, and affiliated entities, and the present and former officers, directors, employees, partners, principals, representatives, and agents of any of the foregoing entities.

3. The term "document" includes, but is not limited to, all records, materials and other tangible forms of expression in your possession or custody, or under your control, whether originals, copies, annotated copies, drafts or final versions, and however created, produced, stored or maintained, including, but not limited to, working papers, audit documentation, charts, lists, logs, spreadsheets, financial information or analyses, books, papers, files, notes, memoranda, letters, reports, schedules, charts, lists, transcriptions, correspondence, telegrams, telexes, wire messages, telephone messages, calendars, diaries, budgets, invoices, audio and video recordings, email (including attachments and linked documents), instant messages, text messages, electronic data compilations, computer disks (or hard copy of the data contained on such disks), and other electronic media, microfilm, microfiche, and storage devices.

4. The term "working papers" includes manual and electronic audit documentation, top files, financial statement files, planning files, correspondence files, administrative files, internal control files, SEC-related files, desk files, permanent files, indices or legends that outline the contents of or describe the referencing system and abbreviations used in the working papers, and all documents relied upon in order for PwC to render its audit or attestation reports regarding Cavium, including all audit reports of affiliated or non-affiliated accounting firms.

    a. Audit documentation includes records of the planning and performance of the audit or review work, the procedures performed, evidence obtained and conclusions reached by PwC;

1

PwC_B00006083

b.      Top files include all summary or completion memoranda, matters for the attention of the partner, "To Do" lists, review notes, point sheets, problems memoranda, partner's memoranda, supervisor's memoranda, senior's memoranda, quality control review notes and all other writings or memoranda that summarize, evaluate, highlight or analyze subjects, problems or issues that arose during the engagement;

c.      Financial statement files include all files supporting Cavium's balance sheet, income statement, statement of cash flows, statement of shareholders equity, accompanying footnotes and supplementary schedules.  Also included are all drafts of financial statements with accompanying footnotes and auditor's reports, as originally drafted, as revised and finalized, and consolidated statements with consolidating and eliminating entries;

d.      Planning files include all planning memoranda, audit programs, materiality assessments, risk assessments, group instructions issued to audits of subsidiaries, representation letters, agendas, client request lists and all internal audit guides or manuals relating to PwC's procedures or interpretations regarding accounting principles or auditing standards;

e.      Correspondence files include all proposals, offer letters, engagement letters, contracts, agreements, or other documents that define the nature, scope and terms of any service, including audit services, audit related services and non-audit services, contemplated or performed by PwC or independent contractors, confirmation files, management representation letters, legal opinions, and business intelligence reports.  All email correspondence includes all attachments;

f.      Administrative files include, budget documents, travel documents and documents identifying the budgeted and actual hours for Cavium engagements, including, but not limited to, hours reports from internal billing system.  Travel documents include documents related to travel by any member of PwC (as defined above) to any premises in connection with any audit or review services provided to Cavium;

g.      Internal control files include any audit, evaluation, or assessment of Cavium's internal control systems including, but not limited to, attestations under Section 404 of Sarbanes-Oxley and related communications;

h.      SEC-related files include any SEC filings of Cavium that were provided to PwC for its review, comments, or information including all drafts and the final version of these filings, and all comments and revisions made by PwC on these filings;

2

PwC_B00006084

i.      Desk files include all documents relating to audit, review or other services performed for Cavium that were not recorded or maintained within the working papers; and

j.      Permanent files include all general, permanent, legal, carry forward, bulk or other files representing documents of an on-going relevance from one year to another, including, but not limited to, contracts, leases and bylaws.

5.      Reference to a person shall also include that person's trusts, affiliates, employees, agents, partners, and independent contractors, as well as aliases, code names, trade names, or business names used by, or formerly used by, any of the foregoing.

6.      Reference to an entity shall also include that entity's parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, partners, and independent contractors, as well as aliases, code names, trade names, or business names used by, or formerly used by, any of the foregoing.

7.      The disjunctive ("or") shall be deemed to include the conjunctive ("and"), and the conjunctive ("and") shall be deemed to include the disjunctive ("or"); and each of the functional words "each," "every," "any" and "all" shall be deemed to include each of the other functional words.

8.      The term "communication" includes any transmittal or receipt of information, whether by chance or prearranged, formal or informal, oral, written or electronic, and includes without limitation:  conversations, meetings and discussions in person; conversations, meetings and discussions by telephone; and written correspondence through the use of the mails, courier services, electronic media (such as email and instant messages), and telephone lines and wires.

9.      A communication or document "concerning," "involving," "relating," "related," or "which relates" to any given subject means any communication or document that constitutes, contains, discusses, embodies, evidences, reflects, identifies, states, refers to, deals with, bears upon, or is in any way pertinent to that subject, including documents concerning the preparation of other documents.

10.     Documents produced pursuant to this attachment shall be produced in the order in which they appear in your files and shall not be shuffled or otherwise rearranged. Documents that in their original condition were stapled, clipped, or otherwise fastened together shall be produced in that form.

11.     Email produced pursuant to this attachment shall be provided in its original electronic format on a CD-ROM disk with a label clearly identifying the disk as containing material responsive to this attachment and indicating the request to which the documents are responsive.  For the time being, you need not provide hard copies of electronic mail messages that are produced in electronic format.

3

PwC_B00006085

12.     Provide a list of the documents you produce, indicating in each instance the request to which the document is responsive.  Also, identify and generally describe all requested documents that you do not produce and indicate the location of each such document and your reason for not producing it.

13.     If you withhold any document based on a claim of privilege, please provide the following information as to each such document:  (a) the author(s); (b) the date the document was created; (c) each person who received a copy of the document or was informed of its contents; (d) the person who now has the document or was last known to have it; (e) the general subject matter of the document; and (f) the privilege asserted.

14.     If any documents responsive to this subpoena were in your possession, custody, or control at some time in the past, but are no longer available, provide a list of such documents, indicating in each instance the request to which the document was responsive. Please provide the following information with respect to each such document:  (a) the author(s); (b) the date the document was created; (c) each person who received a copy of the document or was informed of its contents; (d) the person who now has the document or was last known to have it; (e) the general subject matter of the document; (f) a detailed description of the document; and (g) a detailed and complete explanation of why such document is no longer in your possession, custody, or control.

15.     No agreement by the Securities and Exchange Commission or its staff purporting to modify, limit, or otherwise vary this subpoena is binding on the Commission or its staff unless confirmed or acknowledged in writing by the Commission or its staff.

## B.     **Production of Documents**

Unless otherwise specified, the time period applicable to these requests is the first date on which PwC performed any work or consultation related to any audit or interim review pertaining to Cavium's financial statements for fiscal year 2013 to the last date on which PwC performed any work or consultation related to the Cavium 2014 year-end audit.

Please produce all documents in your possession, custody, or control that are responsive to the following requests.

1.     Documents identifying all services provided by PwC to Cavium, including, but not limited to, time-sheets, invoices/bills, payment history, and other documents reflecting fees charged by for audit, interim review, audit related, consulting, and other non-audit services.  Documents should identify the amount of fees for each audit and review billed to and/or paid by Cavium to all affiliated and unaffiliated outside firms, foreign offices, or individuals.

2.     All documents relating to the audits and interim reviews of Cavium financial

4

statements for the fiscal years 2013 through 2014.  Include all documents prepared by, reviewed by, that relate to, or that otherwise concern all affiliated and unaffiliated outside audit firms, individuals or specialists.  Also include documents reflecting PwC's document retention, alteration, destruction, storage and archiving policies and practices.

3.    All working papers, including drafts thereof, relating to audits and interim reviews for the fiscal years 2013 through 2014.  *Electronic working papers should be produced in native format organized by how the files were originally maintained and with all electronic links intact.*  Documents requested include, but are not limited to:

    a.    All audit documentation, top files, financial statement files, internal controls files, SEC-related files, planning files, correspondence files, administrative files and permanent files, including documents necessary to identify individuals who prepared, reviewed, approved, signed off, or accessed the items listed above, including but not limited to, manual or electronic sign offs and archiving logs;

    b.    All documents reflecting PwC's client acceptance procedures for Cavium, including auditor independence evaluations;

    c.    All documents that summarize, evaluate, highlight, and analyze subjects, problems, or issues that arose during the engagement.  Include documents that reflect information provided to Cavium's management and/or Board of Directors, Audit Committee or any special committee including spreadsheets, presentations, reports, memoranda or other materials;

    d.    All proposed adjusting journal entries, actual adjusting journal entries, and waived adjusting journal entries, summaries of unresolved differences and all proposed and/or accepted reclassification or consolidation entries;

    e.    All documents concerning any allegation, investigation, audit, inquiry or examination concerning any potential or actual accounting irregularity, error or violation of the U.S. securities laws;

    f.    All documents concerning any restatement or contemplated restatement, of Cavium's financial statements; and

    g.    All documents relating to any potential irregularity, impropriety, or material error involving Cavium's books and records, financial statements or internal accounting controls.

4.    To the extent not already produced under correspondence files, all documents reflecting communications about the audits or interim reviews, including but not limited to:

5

PwC_B00006087

a.  All documents concerning communications with predecessor and successor auditors including, but not limited to, copies of predecessor auditor working papers and notes related to reviews of such documents;

b.  All communications between or among the audit engagement team including any affiliated or unaffiliated outside firm or individual.  Include documents relating to or memorializing any meetings, telephone conversations or communications with Cavium's management, employees, directors, Board of Directors, or any committee of the Board of Directors;

c.  All documents concerning all communications with PwC's national, technical, professional practice or other firm advisory personnel or with other affiliated or non-affiliated offices or accounting firms;

d.  All communications between or among PwC and Cavium, and/or any officer, director, employee, or agent of Cavium; and

e.  All communications between or among PwC and any third party concerning the audits or interim reviews, including audit confirmation requests and responses, business intelligence reports, investigative reports, or similar documents.

## C.  **Document Preservation Request**

Unless otherwise specified, the time period applicable to these requests is the first date on which PwC performed any work or consultation related to any audit or interim review pertaining to Cavium's financial statements for fiscal year 2013 to the last date on which PwC performed any work or consultation related to the Cavium 2014 year-end audit.

Please preserve until further notice all documents in your possession, custody, or control that are responsive to the following requests.

1.  All personal and desk files of persons working on the audits and interim reviews concerning Cavium.  Please also produce all diaries, calendars or other organization or scheduling logs of members of the engagement team that relate to meetings, contacts, and conversations concerning Cavium.

2.  All documents concerning the job performance of any person employed by PwC who performed work on behalf of Cavium, including all personnel files and performance evaluations.

Confidential

PwC_B00006088



# U.S. Securities and Exchange Commission

## Data Delivery Standards

This document describes the technical requirements for paper and electronic document productions to the U.S. Securities and Exchange Commission (SEC).   ***Any questions or proposed file formats other than those described below must be discussed with the legal and technical staff of the SEC Division of Enforcement prior to submission.***

General Instructions.................................................................................................................................1

Delivery Formats....................................................................................................................................2

   I.  *Concordance®* Imaged Productions...............................................................................................2

      1. Images ...........................................................................................................................2

      2. *Concordance Image®* or Opticon Cross-Reference File ...............................................2

      3. *Concordance®* Data File .................................................................................................3

      4. Text ...............................................................................................................................3

      5. Linked Native Files ......................................................................................................3

   II.  Native File Productions without Load Files............................................................................3

   III.  Adobe PDF File Productions………………………………………………………………3

   IV.  Audio Files ............................................................................................................................4

   V.  Video Files.............................................................................................................................4

   VI.  Electronic Trade and Bank Records ......................................................................................4

   VII. Electronic Phone Records .....................................................................................................4

   VIII. Audit Workpapers ………………………………………………………………………5

**General Instructions**

Electronic files must be produced in their native format, i.e. the format in which they are ordinarily used and maintained during the normal course of business. For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet. *(Note:  An Adobe PDF file is __not__ considered a native file unless the document was initially created as a PDF.)*

In the event produced files require the use of proprietary software not commonly found in the workplace, the SEC will explore other format options with the producing party.

The proposed use of file de-duplication methodologies or *computer-assisted review* or *technology-assisted review* (TAR) during the processing of documents must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF). If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name, and, 2) make that unique metadata part of your production to the SEC.

Rev 07/2016

Confidential

PwC_B00006089

General requirements for **ALL** document productions are:

1. A cover letter should be included with each production and include the following:
   a. A list of each piece of media included in the production with its unique production volume number
   b. A list of custodians, identifying the Bates range for each custodian.
   c. The time zone in which the emails were standardized during conversion.
2. Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:
   a. Case number
   b. Production date
   c. Producing party
   d. Bates range
3. All submissions must be organized by **custodian** unless otherwise instructed.
4. All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.
5. All load-ready collections should include only one data load file and one image pointer file.
6. All load-ready text must be produced as separate text files.
7. All load-ready collections should account for custodians in the custodian field.
8. Audio files should be separated from data files if both are included in the production.
9. Only alphanumeric characters and the underscore character are permitted in file names and folder names. Special characters are not permitted.
10. All electronic productions submitted on media must be produced using industry standard self-extracting encryption software.
11. Electronic productions may be submitted via Secure File Transfer. The SEC **cannot** accept productions made using file sharing sites.
12. Productions containing BSA or SARs material must be delivered on encrypted physical media. The SEC **cannot** accept electronic transmission of BSA or SARs material. Any BSA or SARs material produced should be segregated and appropriately marked as BSA or SARs material, or should be produced separately from other case related material.
13. Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately either via email or in a separate cover letter from the media.
14. All electronic productions should be produced free of computer viruses.
15. Additional technical descriptions can be found in the addendum to this document.

   *Please note that productions sent to the SEC via United States Postal Service are subject to Mail Irradiation, and as a result electronic productions may be damaged.*

**Delivery Formats**

**I.**   *Concordance®* Imaged **Productions**
   The SEC prefers that all documents and data be produced in a structured format prepared for Concordance. All scanned paper and electronic file collections should be converted to TIFF files, Bates numbered, and include fully searchable text files.

   **1.   Images**
      a. Black and white images must be 300 DPI Group IV single-page TIFF files.
      b. Color images must be produced in JPEG format.
      c. File names cannot contain embedded spaces or special characters (including the comma).
      d. Folder names cannot contain embedded spaces or special characters (including the comma).
      e. All TIFF image files must have a unique file name, i.e. Bates number.
      f. Images must be endorsed with sequential Bates numbers in the lower right corner of each image.
      g. The number of TIFF files per folder should not exceed 500 files.
      h. Excel spreadsheets should have a placeholder image named by the Bates number of the file.
      i. AUTOCAD/photograph files should be produced as a single page JPEG file.

Rev 07/2016

Confidential

PwC_B00006090

2. ***Concordance Image® OR Opticon  Cross-Reference File***

The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:

*ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

3. ***Concordance® Data File***

The data file (.DAT) contains all of the fielded information that will be loaded into the *Concordance®* database.

   a.   The first line of the .DAT file must be a header row identifying the field names.
   b.   The .DAT file must use the following *Concordance®* default delimiters:
        Comma ¶ ASCII character (020)
        Quote þ ASCII character (254)
   c.   Date fields should be provided in the format: mm/dd/yyyy
   d.   Date and time fields must be two separate fields.
   e.   If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments.
   f.   An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media.  The text file must be named after the FIRSTBATES.  Do not include the text in the .DAT file.
   g.   For productions with native files, a LINK field must be included to provide the file path and name of the native file on the produced storage media. The native file must be named after the FIRSTBATES.
   h.   BEGATTACH and ENDATTACH fields must be two separate fields.
   i.   A complete list of metadata fields is available in **Addendum A** to this document.

4. **Text**

Text must be produced as separate text files, not as fields within the .DAT file. The full path to the text file (OCRPATH) should be included in the .DAT file.  We require document level ANSI text files, named per the FIRSTBATES/Image Key. Please note in the cover letter if any non-ANSI text files are included in the production. Extracted text files must be in a separate folder, and the number of text files per folder should not exceed 1,000 files. There should be no special characters (including commas in the folder names). For redacted documents, provide the full text for the redacted version.

5. **Linked Native Files**

Copies of original email and native file documents/attachments must be included for all electronic productions.
   a.   Native file documents must be named per the FIRSTBATES number.
   b.   The full path of the native file must be provided in the .DAT file for the LINK field.
   c.   The number of native files per folder should not exceed 1,000 files.

II.   **Native File Production without Load Files**

With prior approval, native files may be produced without load files. The native files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. When approved, Outlook (.PST) and Lotus Notes (.NSF) email files may be produced in native file format.  A separate folder should be provided for each custodian.

III.   **Adobe PDF File Production**

With prior approval, Adobe PDF files may be produced in native file format.
   1.   PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
   2.   All PDFs must be unitized at the document level, i.e., each PDF must represent a discrete document.
   3.   All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
   4.   If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

Rev 07/2016

Confidential

PwC_B00006091

## IV.   Audio Files

Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

1) Caller Name:          Caller's name or account/identification number
2) Originating Number:   Caller's phone number
3) Called Party Name:    Called party's name
4) Terminating Number:   Called party's phone number
5) Date:                 Date of call
6) Time:                 Time of call
7) Filename:             Filename of audio file

## V.   Video Files

Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

## VI.   Electronic Trade and Bank Records

When producing electronic trade and bank records, provide the files in one of the following formats:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2. Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

## VII.   Electronic Phone Records

When producing electronic phone records, provide the files in the following format:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.  Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).
   a. The metadata that must be included is outlined in **Addendum B** of this document. Each field of data must be loaded into a separate column.  For example, Date and Start_Time must be produced in separate columns and not combined into a single column containing both pieces of information.  Any fields of data that are provided in addition to those listed in **Addendum B** must also be loaded into separate columns.

## VIII.   Audit Workpapers

The SEC prefers for workpapers to be produced in two formats: (1) With Bates numbers in accordance with the SEC Data Delivery Standards; and (2) in native format or if proprietary software was used, on a standalone laptop with the appropriate software loaded so that the workpapers may be reviewed as they would have been maintained in the ordinary course of business. When possible, the laptop should be configured to enable a Virtual Machine (VM) environment.

4

Rev 07/2016

Confidential

U.S. Securities and Exchange Commission
Data Delivery Standards

## ADDENDUM A

The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email **The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email **This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments **The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender Native: Author(s) of document **semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s) **semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s) **semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s) **semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent Native: (empty) |
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion. Native: (empty) **This data must be a separate field and cannot be combined with the DATE_SENT field |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion. Email: Time zone Native: (empty) |

5

Rev 07/2016

Confidential

PwC_B00006093

U.S. Securities and Exchange Commission
Data Delivery Standards

| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document **The linked file must be named per the FIRSTBATES number |
|------|------------------------|------------------------------------------------------------------|
| MIME_TYPE | MSG | The content type of an Email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the Email or native file document; will vary depending on the email format |
| AUTHOR | John Smith | Email: (empty) Native: Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty) Native: Date the document was created |
| TIME_CREATED | 10:25 AM | Email: (empty) Native: Time the document was created **This data must be a separate field and cannot be combined with the DATE_CREATED field |
| DATE_MOD | 10/12/2010 | Email: (empty) Native: Date the document was last modified |
| TIME_MOD | 07:00 PM | Email: (empty) Native: Time the document was last modified **This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty) Native: Date the document was last accessed |
| TIME_ACCESSD | 07:00 PM | Email: (empty) Native: Time the document was last accessed **This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| PRINTED_DATE | 10/12/2010 | Email: (empty) Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty) Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name. Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb8306d1@MSN> | Email: Unique Message ID Native: (empty) |
| MD5HASH | d131dd02c5e6eec4693d9a0698aff95c 2fcab58712467eab4004583eb8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

Sample Image Cross-Reference File:

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000004.TIF,Y,,,
IMG0000005,,E:\001\IMG0000005.TIF,Y,,,
IMG0000006,,E:\001\IMG0000006.TIF,,,,
```

6

Rev 07/2016

Confidential                                                                                    PwC_B00006094

## ADDENDUM B

For Electronic Phone Records, include the following fields in separate columns:

For Calls:

1) Account Number
2) Connection Date – Date the call was received or made
3) Connection Time – Time call was received or made
4) Seizure Time – Time it took for the call to be placed in seconds
5) Originating Number – Phone that placed the call
6) Terminating Number – Phone that received the call
7) Elapsed Time – The length of time the call lasted, preferably in seconds
8) End Time – The time the call ended
9) Number Dialed – Actual number dialed
10) IMEI Originating – Unique id to phone used to make call
11) IMEI Terminating– Unique id to phone used to receive call
12) IMSI Originating – Unique id to phone used to make call
13) IMSI Terminating- Unique id to phone used to receive call
14) Call Codes – Identify call direction or other routing information
15) Time Zone – Time Zone in which the call was received or placed, if applicable


For Text messages:

1) Account Number
2) Connection Date – Date the text was received or made
3) Connection Time – Time text was received or made
4) Originating Number – Who placed the text
5) Terminating Number – Who received the text
6) IMEI Originating – Unique id to phone used to make text
7) IMEI Terminating– Unique id to phone used to receive text
8) IMSI Originating - Unique id to phone used to make text
9) IMSI Terminating- Unique id to phone used to receive text
10) Text Code – Identify text direction, or other text routing information
11) Text Type Code – Type of text message (sent SMS, MMS, or other)
12) Time Zone – Time Zone in which the call was received or placed, if applicable


For Mobile Data Usage:

1) Account Number
2) Connection Date – Date the data was received or made
3) Connection Time – Time data was received or made
4) Originating number – Number that used data
5) IMEI Originating – Unique id of phone that used data
6) IMSI Originating - Unique id of phone that used data
7) Data or Data codes – Identify data direction, or other data routing information
8) Time Zone – Time Zone in which the call was received or placed, if applicable

Rev 07/2016

Confidential

PwC_B00006095

**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

**Supplemental Information for Persons Requested to Supply
Information Voluntarily or Directed to Supply Information
Pursuant to a Commission Subpoena**

**A.  False Statements and Documents**

Section 1001 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
> (1)  falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2)  makes any materially false, fictitious, or fraudulent statement or representation; or
> (3)  makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

Section 1519 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . ., or in relation to or contemplation of any such matter.

**B.  Testimony**

If your testimony is taken, you should be aware of the following:

1.  *Record*.  Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2.  *Counsel*.  You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3.  *Transcript Availability*.  Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however*, That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4.  *Perjury*.  Section 1621 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever--
>
> (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify

SEC 1662 (08-16)

PwC_B00006096

truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true.

5.    *Fifth Amendment and Voluntary Testimony.* Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.    *Formal Order Availability.* If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C.  Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D.  Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

Confidential

PwC_B00006097

### E.  Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena.* The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily.* One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

### F.  Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena.* If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, Section 21(c) of the Securities Exchange Act of 1934, Section 42(c) of the Investment Company Act of 1940, and Section 209(c) of the Investment Advisers Act of 1940 provide that fines and terms of imprisonment may be imposed upon any person who shall, without just cause, fail or refuse to attend and testify or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena.

*Persons Requested to Supply Information Voluntarily.* There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

### G.  Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

### H.  Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1.  To appropriate agencies, entities, and persons when (a) it is suspected or confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the SEC has determined that, as a result of the suspected or confirmed compromise, there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the SEC or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

2.  To other federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3.  To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4.  By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the federal securities laws.

5.  In any proceeding where the federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

Confidential

PwC_B00006098

6.  In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7.  To a bar association, state accountancy board, or other federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8.  To a federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9.  To a federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10.  To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11.  To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 – 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100-1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12.  To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13.  To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14.  In reports published by the Commission pursuant to authority granted in the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15.  To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16.  To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 to 200.735-18, and who assists in the investigation by the Commission of possible violations of the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the federal securities laws.

17.  To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18.  To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19.  To prepare and publish information relating to violations of the federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20.  To respond to subpoenas in any litigation or other proceeding.

21.  To a trustee in bankruptcy.

4

PwC_B00006099

22.  To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

\* \* \* \* \*

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities regulations as they affect small businesses, please contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.

Confidential

PwC_B00006100