# EXHIBIT 10

Pages 1 - 12

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Richard Seeborg, Judge

```
MAURO BOTTA,                        )
                                    )
            Plaintiff,              )
                                    )
   VS.                              )    NO. C 18-02615 RS
                                    )
PRICEWATERHOUSECOOPERS LLP,         )
LAURA BUSTAMANTE, TYE THORSON,      )
ROBERT HEATLEY, STIG                )
HAAVARDTUN, ERGUN GENC, TIMOTHY)
CAREY and STEVE MCCANN,             )
                                    )
            Defendants.             )
_____)
```

San Francisco, California
Thursday, September 20, 2018

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:

    Derek Smith Law Group, PLLC
    One Penn Plaza, Suite 4905
    New York, NY  10119
    (212) 587-0760
    (212) 587-4169 (fax)
  **BY:  ALEXANDER GABRIEL CABECEIRAS**

For Defendants:

    Hueston Hennigan LLP
    620 Newport Center Drive, Suite 1300
    Newport Beach, CA  92660
    (949) 226-6740
  **BY:  JOHN CHARLES HUESTON**

Reported By:  Lydia Zinn, CSR No. 9223, FCRR, Official Reporter

1  **Thursday - September 20, 2018**                    **1:31 p.m.**

2                          **P R O C E E D I N G S**

3                            **---oOo---**

4          **THE CLERK:**  Calling Case C. 182615 Botta versus

5  PricewaterhouseCoopers.  Counsel, please come forward and state

6  your appearances.

7          **MR. CABECEIRAS:**  On behalf of the plaintiff,

8  Your Honor, Alex Cabeceiras, of the Derek Smith Law Group.

9  Good morning.

10          **THE COURT:**  Good afternoon.

11          **MR. HUESTON:**  Good afternoon, Your Honor.  On behalf

12  of PricewaterhouseCoopers, John Hueston.

13          **THE COURT:**  Good afternoon.

14      I have had a chance to review what you submitted for me.

15  And let me just go through my tentative view on having read

16  what you submitted, and then I'll let you address it

17  accordingly.

18      With respect to the claims against the individual

19  defendants under the Sarbanes-Oxley retaliation theory, I am

20  inclined to grant the motion to dismiss.  I think there was

21  inadequate notice by way of the administrative claim.  I know

22  there was one against PwC, but I don't think that would be

23  sufficient.  So I'm inclined to grant the motion.

24      With respect to the individual defendants, the motion to

25  dismiss on wrongful termination state law retaliation, I'm

**PROCEEDINGS**

1   inclined to grant that, but with leave to amend, to see if the

2   plaintiff can flesh out how each of the named defendants

3   qualifies as an employer for the requisite employer/employee

4   relationship.

5       On the defamation claim -- on that claim, I am inclined to

6   grant, but again, with leave to amend.  There isn't, I think,

7   an adequate averment at this point of actual malice that would

8   defeat a common-interest privilege, but it could well be that

9   it's possible to present that.

10      Just as an aside, you know, pleadings on information and

11  belief don't get you out from under the need to be able to

12  specifically identify what it is that you think, if it's, you

13  know, the need for discovery, what discovery is going to show

14  you.  So you can't just say "information and belief," and think

15  that takes care of it.

16      With respect to the breach-of-contract claim against

17  Defendant Carey, the individual defendant, I think that would

18  be subject to granting the motion without leave, because it

19  doesn't appear that he's a party to an employment contract.

20      So that's my initial read.

21      And why don't I look to the -- there's a little for

22  everyone in that tentative, but why don't, although you're not

23  the moving party, the plaintiffs start, in light of the fact

24  that most of it is granting, in one form or another.

25          **MR. CABECEIRAS:**  Sure, Your Honor.  Your Honor, we

 1  would like the defamation claim to go through.  We feel that we

 2  have articulated enough facts to plausibly put forth a claim of

 3  defamation.  In this case, Mr. McCann --

 4          **THE COURT:**  Do you agree that you do have -- what you

 5  will ultimately have to demonstrate is actual malice?

 6          **MR. CABECEIRAS:**  I agree.

 7          **THE COURT:**  Okay.

 8          **MR. CABECEIRAS:**  I think that we articulated facts

 9  that suggest, Your Honor, that Mr. McCann really had no idea as

10  to Mr. Botta's professional capability.  We articulated facts

11  to suggest that Mr. Botta was told that he was terminated

12  because of a reduction in force; not because of his

13  professional capabilities.  And at this point my client is

14  still in the auditing --

15          **THE COURT:**  How isn't that just as consistent with

16  negligence or some other reason for a screw-up of some kind?

17  Why is that actual malice?

18          **MR. CABECEIRAS:**  I understand your point, Your Honor,

19  and from our perspective, we've articulated facts that will at

20  least plausibly show that malice can -- this can have been done

21  through a malicious intent to harm Mr. Botta's professional

22  career, because at this point, you know, PwC has a lot of

23  connections throughout the auditing world.  And my clients view

24  is that they're going to continue to call into question his

25  professional capabilities, and it's going to hurt his ability

**PROCEEDINGS**

1  to be an auditor.  And the fact that --

2       THE COURT:  Well, that may be, but you have to

3  demonstrate as part of your defamation claim not just that

4  they're saying bad things about him, but they're saying bad

5  things because they're -- these individuals who you've

6  identified are motivated to really destroy him; to maliciously

7  impact him.  And that's what I don't see in there.

8       I mean, these are-- again, we're talking about the -- the

9  motion is brought with respect to the individuals, I believe,

10  although maybe it's also --

11       Are you moving with respect to --

12       It's the individual defendants you're moving on.  Right?

13       MR. HUESTON:  Individual defendants, Your Honor.

14       And then with respect to PwC, just the defamation claim.

15       THE COURT:  Mm-hm.  Okay, but you are moving with

16  respect to PwC on that defamation claim?

17       MR. HUESTON:  Yes.

18       THE COURT:  All right.  Very good.  Go ahead.

19       MR. CABECEIRAS:  At this point, Your Honor, we've

20  alleged facts that suggest that Mr. Botta was terminated for a,

21  quote, "reduction in force."  And yet they -- "they," PwC --

22  and Defendant McCann are telling individuals he is incompetent.

23       So the two positions, to us, rise to that level of at

24  least an inference of malice or ill intent to hurt this man's

25  career, hence why we're bringing forward the defamation claim.

**PROCEEDINGS**

1      **THE COURT:**  Let me direct you to the claims for

2   relief, where I'm not inclined to give leave to amend, or ones

3   I assume you're most focused on.

4      The initial claim, the claim on Sarbanes-Oxley

5   retaliation -- it does seem to me that you do have to provide,

6   under the statutory scheme, notice of the administrative claim.

7   And while that's directed towards PwC, and PwC is not a moving

8   party here, I don't see how you can link in the individuals on

9   the administrative claim versus PwC.

10      Why am I mistaken about that?

11      **MR. CABECEIRAS:**  I understand your concern,

12   Your Honor.  And our position is that here, individuals that

13   worked closely with plaintiff throughout the years knew when

14   plaintiff opposed what he perceived to be unlawful auditing

15   practices.

16      Throughout the Amended Complaint we cite two times where

17   plaintiff tells named defendants, *I don't like what you're*

18   *doing.*

19      He then reports to the SEC.  These defendants are well

20   aware of the SEC proceedings; the investigation.  They

21   oversaw --

22      **THE COURT:**  But under Sarbanes-Oxley, is that enough?

23   I mean, is it just -- so it's -- you're sort of positing some

24   sort of constructive-notice concept that, you know, they're

25   aware of it; must have been aware of it, and therefore that is

1  good enough.  Do you have any anything you can point me to that

2  develops that concept under Sarbanes-Oxley theory?

3          **MR. CABECEIRAS:**  Your Honor, you're absolutely

4  correct we're positing a constructive-notice theory in this

5  case.  And any other facts I can point out have already been

6  mentioned in the Amended Complaint.

7          **THE COURT:**  I recognize there's not a lot of law on

8  Sarbanes-Oxley retaliation claims.

9      Okay.  Anything I you want to say on the

10  breach-of-contract claim, or the --

11      As I say, in wrongful termination state law retaliation,

12  I'm inclined to give you another crack at it.

13          **MR. CABECEIRAS:**  Mm-hm.

14          **THE COURT:**  Anything more on breach of contract or --

15          **MR. CABECEIRAS:**  The common law.

16          **THE COURT:**  -- determination?

17          **MR. CABECEIRAS:**  Excuse me.

18          **THE COURT:**  Go ahead.

19          **MR. CABECEIRAS:**  The common-law *Tameny* claim,

20  Your Honor -- we concede that, you know, we can't bring claims

21  against individuals.  We didn't mention it in our opposition.

22          **THE COURT:**  Okay.

23          **MR. CABECEIRAS:**  So we concede that point.

24      As for the breach of contract, you know, Defendant Carey

25  was well aware of the contract obligations.  He sat down with

1  Mr. Botta, and terminated him.  He knew that he did not give

2  Mr. Botta adequate notice that was required under the contract.

3  He had carried out these activities in his official capacity.

4          **THE COURT:**  Okay.  Mr. Hueston.

5          **MR. HUESTON:**  Thank you, Your Honor.

6      So I'm going to address my points in light of the

7  tentative to why the claims should all be dismissed with

8  prejudice.

9      Going first to the defamation claim focused on Mr. McCann,

10  I think this oral argument illustrates the futility of allowing

11  yet another amendment.

12      One thing we did in our paperwork is we filed a redline

13  version of the Complaint before.  And we had filed our original

14  motion to dismiss, which, of course, was made moot by the newly

15  amended complaint; but it's appropriate for a Court to

16  consider:  Well, what changes have been made?

17      The plaintiffs have been on notice of all of these

18  arguments, and virtually no changes were made.  And here at

19  oral argument, counsel has effectively reargued the same points

20  in the paper.  And they're indicating no daylight, whatsoever,

21  for new facts that might come to the fore.

22          **THE COURT:**  Well, of course, if the order is with

23  leave to amend, there's always the cautionary language which I

24  include in most of the opinions that says, *So you have leave,*

25  *if, in good faith, you can present something you think*

1    *satisfies* -- and it doesn't make them file an amended

2    complaint.  It says, *if you have something new that you think*

3    *you could present.*

4         And I do sometimes wonder.  I mean, I've been in your

5    shoes on this.  But you know, sort of be careful what you wish

6    for.  If you feel very strongly you're ultimately going to

7    prevail on the notion that this claim cannot go forward, do you

8    really want to cut off one more chance for them to do it, and

9    face the potential more-learned folks on the Circuit saying,

10   *You've got to give them another chance if they ask for one*?

11        And there is a theoretical possibility that they could

12   come up with something; whereas I think, you know, on the first

13   claim for relief -- Sarbanes-Oxley retaliation claim -- they're

14   effectively telling you that they're not going to have

15   something new for me on the notice issue.  It rises or falls on

16   what we've got in front of us; and therefore, a call could be

17   made.

18        But Mr. Hueston, you really think you don't want me to

19   give them leave to amend?

20        **MR. HUESTON:**  Your Honor, I fully appreciate *Be*

21   *careful what you ask for*; it's something I often counsel my

22   attorneys at my firm on.

23        I think here it's unusual, in the sense that Your Honor

24   has pointed out the key language that plaintiff has been

25   relying on is couched in information and belief.  So the very

**PROCEEDINGS**

1   framing of that suggests it's speculation.  And I heard a

2   reflection of that in argument today.

3        And then, secondly, he's had a lot of time to consider and

4   to supplement facts.  And there have been no facts

5   supplemented.  So I feel very comfortable that, by way of the

6   factual allegations, as framed, and the chance given, very

7   comfortable that adequate process and time has been allowed,

8   and that a Court of Appeal would find that to be true.

9        You know, at bottom, Your Honor, the individuals really

10  don't belong in this case.  And, you know, we've tried to be

11  circumspect.  We didn't move to dismiss on everything.  With

12  respect to PwC, the case will go on.  We've challenged with

13  respect to the defamation claim.

14       And again, here I will point out, in asking for a

15  dismissal with prejudice there, that with respect to the

16  defamation allegations, those are purely on information and

17  belief.  I think of the over 100 paragraphs of the Complaint,

18  maybe 3 are addressed to defamation; and they're all on

19  information and belief, and so it was already hanging on a

20  thread.

21       There's nothing here to suggest there's another new fact.

22  And therefore, I think we should put that to bed, and just move

23  on with the rest of the case.

24            **THE COURT:**  Go ahead.

25            **MR. CABECEIRAS:**  Could I address a couple points?

1        THE COURT:  Yes.  Go ahead.

2        MR. CABECEIRAS:  The Amended Complaint did articulate

3   new facts that weren't included in the initial Complaint,

4   speaking to not only the defamation, but also the breach of

5   contract.  And the causes of action against specific individual

6   defendants were tailored, as a courtesy to the Court and

7   opposing counsel.  We concede its importance through that

8   mechanism.

9        As for the defamation claim, it should be noted that I was

10  involved somewhat in learning about the defamatory speech.  At

11  one point, PwC's prior counsel had informed me that PwC was

12  going to reach out to Mr. Botta -- my client's current employer

13  and, in sum and substance, said they cannot sign off because

14  they find him incompetent.

15       So, you know, information and belief -- I could interject

16  myself into this claim and amend it and say, *Counsel received a*

17  *call*, if that works, but you know, as it stands, it's what

18  happened.  So, you know, I understand the information and

19  belief.  We need to articulate more facts.  With leave to

20  amend, Your Honor, should we choose, I can certainly do that.

21       THE COURT:  Okay.  Anything further?

22       MR. HUESTON:  Nothing further, Your Honor.

23       THE COURT:  Okay.  I'll take the matter under

24  submission.

25       I'll just to advise you, depending upon how this comes

**PROCEEDINGS**

 1  out, I suspect if there is any -- if I ultimately decide to

 2  give leave to amend, and there is a further round of this,

 3  probably would do it on the papers rather than have a hearing.

 4  I think we have enough now that I don't have to haul you back

 5  in here for that.  So that would be my operating assumption.

 6          **MR. HUESTON:**  Thank you, Your Honor.

 7          **MR. CABECEIRAS:**  Thank you very much, Your Honor.

 8          **THE COURT:**  All right.  Thank you.

 9      (At 1:45 p.m. the proceedings were adjourned.)

10  I certify that the foregoing is a correct transcript from the

11  record of proceedings in the above-entitled matter.

12

13  *Lydia Zinn*

14  _____     September 28, 2018
    Signature of Court Reporter/Transcriber   Date
15  Lydia Zinn

16

17

18

19

20

21

22

23

24

25