INGRID M. EVANS (SBN 179094)
**EVANS LAW FIRM, INC.**
3053 Fillmore Street #236
San Francisco, California 94123
Telephone (415) 441-8669
Facsimile (415) 928-1294

ALEXANDER G.CABECEIRAS, ESQ.
**DEREK SMITH LAW GROUP, PLLC**
One Penn Plaza, Suite 4905
New York, New York 10119
Phone: (212) 587-0760
Fax: (212) 587-4169
alexc@dereksmithlaw.com
APPEARANCE *PRO HACE VICE*

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| MAURO BOTTA, | Case No.  3:18-cv-02615-AGT |
| Plaintiff, | **PLAINTIFF MAURO BOTTA'S TRIAL BRIEF** |
| vs. | |
| PRICE WATERHOUS COOPERS LLP, | Trial Date:   February 22, 2021 |
| Defendants. | Time:          8:30AM |
| | Courtroom:  Courtroom A, 15th Floor, United States District Courthouse, 450 Golden Gate Ave., San Francisco, CA 94102 |
| | Judge:         The Hon. Alex G. Tse |

EVANS LAW FIRM, INC.

EVANS LAW FIRM, INC.

**TABLE OF CONTENTS**

I.   INTRODUCTION…………………………………………………………..1

II.  STATEMENT OF FACT        …………………………………...……………………2

III. LEGAL ARGUMENTS……...………………………………………………..5

   A.STANDARDS OF REVIEW AT TRIAL ………………………...………………..…..…..5

      **1.** SARBANES-OXLEY ACT, 18 U.S.C. §1514A………………………………..5

      **2.** CALIFORNIA LABOR CODE SECTIONS 1105.2 98.6………….……...……………......10

      **3.** WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY …………………10

      **4.** BREACH OF CONTRACT …………….………………………………….………..…….12

IV. USE OF DEPOSITION TESTIMONY AT TRIAL………………………………..…………...13

      **1.** PARTNERS STIG HAAVARDTUN, TYE THORSON AND TIMOTHY CAREY………...14

      **2.** SHAWNA HEWITT…………………………………………………....15

V.  DAMAGES…………………………………………………………….16

VI. CONCLUSION…………………………………………………………..18

**TABLE OF AUTHORITIES**

**Statutes**

18 U.S.C. § 1514A……………………………………………..……………….6n,7

18 U.S.C. § 1514A(a)(1)……………………………………………………..5

29 C.F.R. § 1980.104……………………………………………………….6n,7

Cal. Corporations Code § 15904.02(a)………………………………………14

Cal. Labor Code Section 1102.5………………………………………………10

Cal. Labor Code § 1102.5(b)……………………………………………………10

Fed. R. Civ. P. 32(a)(3)……………………………………………………...13,14,16?

1

EVANS LAW FIRM, INC.

N.Y. Partnership Law § 20(1) (McKinney 2014)……………………………………………14

**Cases**

*Alamo v. Practice Management Information Corp*., 219 Cal.App.4th 466, 479 (2013)……………...11

*Allen v. Admin. Review Bd.*, 514 F.3d 468, 476 n.3 (5th Cir. 2008)…………………………………………7

*Araujo v. New Jersey Transit Rail Operations, Inc*., 708 F.3d 152, 158 (3d Cir. 2013)…………………7

*Casissa v. First Republic Bank*, No. 09-cv-4129, 2012 WL 3020193, at *9 (N.D. Cal. July 24, 2012)...10

*Consolidated World Investments, Inc. v. Lido Preferred Ltd*., 9 Cal.App.4th 373, 380 (1992)…………12

*Digital Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 778, 200 L. Ed. 2d 15 (2018)…………………..……5

*Erhart v. BofI Holding, Inc*., 269 F. Supp. 3d 1059, 1072 (S.D. Cal. 2017)…………………………….....7

*Feldman v. Law Enforcement Assocs. Corp*., 752 F.3d 339, 348 (4th Cir. 2014)……………………7,10

*Halliburton, Inc. v. Admin. Review Bd*., 771 F.3d 254, 263 (5th Cir. 2014)……………..….…….....7

*Haney v. Aramark Uniform Services, Inc*., 121 Cal.App.4th 623, 641 (2014)……………………..….11

*Harris v. City of Santa Monica*, 56 Cal.4th 203, 232 (2013)…………………………………………….11

*Hyndix Semiconductor Inc. v. Rambus Inc.*, 2008 U.S. Dist. LEXIS 11767 (N.D. Cal. Feb. 2, 2008)……………………………………………………………………………..……13,14, 15

*In re Angelia P*., 28 Cal.3d 908, 919 (1981)…………………………………………………9

*Junger v. John V. Dinan Assocs., Inc.*, 164 A.D.3d 1428, 1430, 84 N.Y.S.3d 574, 577 (N.Y. App. Div. 2018)…………………………………………………………………………………...12

*Lockheed Martin Corp. v. Admin. Review Bd*., 717 F.3d 1121, 1136 (10th Cir. 2013)…………………...7

*MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 574 (2017)……..13-15

*Morgan v. Regents of the Univ. of California*, 88 Cal.App.4th 52, 69 (2000)………………………….8,9

*Richman v. Hartley*, 224 Cal.App.4th 1182, 1186 (2014)…………………………………………12

*Smiley v. Hologic, Inc.*, No. 16CV158-WQH-MDD, 2017 WL 1354787, at *9 (S.D. Cal. Apr. 12, 2017)………………………………………………………………………10

*Tides v. The Boeing Co*., 644 F.3d 809, 813 (9th Cir. 2011)……………………………..……6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EVANS LAW FIRM, INC.

*Troyk v. Farmers Group, Inc*., 171 Cal.App.4th 1305, 1352 (2009)……………………………………13

*U.S. Ecology, Inc. v. State of California*, 129 Cal.App.4th 887, 909 (2005)………………………......13

*Van Arsdale v. Int'l Game Technology, 577 F.3d 989, 996* (9th Cir. 2009)………….…....………*passim*

*Yau v. Allen*, 229 Cal.App.4th 144, 154 (2014)……………………………………………….…11

*Young v. Associates Public Relations, L.L.C. v. Delta Air Lines, Inc.,* 216 F.R.D. 521, 523-24 (D. Utah 2003)………………………………………………………………………………..……………15

**Other Authorities**

1 Witkin, Summary of California Law (10th ed. 2005) Contracts, § 847………………………....1

1 Wrongful Employment Termination Practice (Cont. Ed. Bar 2d ed.)…………………………11

CACI 303…………………………………………………………………………………12, 13

CACI 2430………………………………………………………………………………….....11

CACI 2507……………………………………………………………………………………11

CACI No. 4603…………………………………………………………………………………10

California Civil Practice: Employment Litigation, §§ 2:20-2:21, 2.61-2.65, 2.87, 2.75 (Thomson Reuters)……………………………………………………………………………………………11

TABLE OF CONTENTS AND TABLE OF AUTHORITIES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

EVANS LAW FIRM, INC.

## I.      INTRODUCTION

Mauro Botta is the victim of a great professional endemic within the auditing industry. An epidemic widely recognized by scholars and regulators.[1] Other nations have tried to address the endemic while the U.S. lags behind.[2]  The problem at PricewaterhouseCoopers (PwC)—and the auditing industry as a whole—lies in a simple conflict of interest: on the one hand, PwC needs to provide a sound, honest, and reliable public service when auditing publicly traded companies; on the other hand, PwC is a profit driven international enterprise, which needs to keep customers coming back.

Mauro is a Certified Public Accountant. While at PwC, Mauro was assigned to various audits of publicly traded or soon to be publicly traded companies. As an auditor, Mauro was meticulous, at times demanding, and strived to uncover any potential issues. Mauro actively asked questions of PwC's clients, sought documentation from them, sought to reconcile unaccounted for profits or losses, and sought to adjust prior audits if warranted. In short, Mauro did his job.

Mauro's actions upset certain management of companies PwC was auditing and therefore, endangered PwC's bottom line.  To protect itself, PWC simply rolled Mauro off audits where is honest questions jeopardized a profitable relationship. As he raised questions internally about the accounting practices of the firm's publicly traded company clients. Mauro was met with swift retribution; PwC kicked him off projects, refused to hire him onto new projects, and let his "utilization rate" plummet.

---

[1] "*Our study provides empirical support suggesting that the market for audit services penalizes auditors when they do their job but communicate information to the public that is critical of management (i.e., issue ICMWs). Our findings show that, on average, audit offices experience a decline in future growth following the issuance of an ICMW, suggesting that clients avoid auditors that have a history of disclosing items that make their clients look bad to the market*." Cowle, Elizabeth N. and Rowe, Stephen P., Don't Make Me Look Bad: How the Audit Market Penalizes Auditors for Doing Their Job (September 10, 2019). Available at SSRN: https://ssrn.com/abstract=3228321 or http://dx.doi.org/10.2139/ssrn.3228321 [Last Accessed January 13, 2021].

[2] "*The move is meant to ensure that audit practices are focused on 'delivery of high-quality audits in the public interest*.'" https://www.cnn.com/2020/07/06/business/uk-big-4-accountancy-firms-frc/index.html [Last Accessed January 13, 2021].

Case No. 3:18-cv-02615-AGT              PLAINTIFF MAURO BOTTA PRE-TRIAL BRIEF

The more serious the issues raised by Mauro the greater the pushback.  PwC largely ignore Mauro's findings or declined to take action due to business concerns.  Mauro reasonably believed there were violations of law at stake and after being ignored by his employer, he submitted his claims to the U.S. Securities and Exchange Commission.  Once PwC found out he had done so, retaliation was swift and drastic - within a few short months Mauro was fired despite years of exemplary performance, probity, and thoroughness on the job.  The discharge was personally devastating and violated federal and State statutes and common law principles protecting employees like Mauro from acts of retaliation for doing just what the law's protections encourage them to do. Mauro is entitled to all the relief permitted under those laws and case law principles for the injuries he suffered.

II.     **STATEMENT OF FACT**

Mauro began working for PwC in 1999, first for its affiliate firm in Italy and then the United States. Botta Transcript 199:12-18.  In 2004, Mauro began working at PwC's San Jose, CA office as a Senior Associate in PwC's Assurance Practice. *See* Undisputed Fact No.1 in stipulated Joint Pre-Trial Statement and Order dated February 1, 2021 (Dkt. 141).   On or about July 26, 2010, Mauro and PwC entered into an employment agreement. JX 1 (7/26/2010 EMPLOYMENT AGREEMENT).

On or about July 1, 2010, Mauro became a Senior Manager in the PwC's Assurance Practice. *See* Undisputed Fact No. 2, Dkt. 141.

In or around 2012, PwC assigned Mauro, along with other employees, to audit publicly traded Company B. Thorson Transcript 25:24-26-26:6; 41:1-25.

Tye Thorson was PwC's Engagement Partner assigned to the Company B between 2011 and 2015. Thorson Transcript 39:13-40:20. Throughout these years, PwC produced audit opinions on behalf of Cavium. Thorson Transcript 72:1-18, 101. Mr. Thorson signed-off on these audit opinions on behalf of PwC. Thorson Transcript 22:1-24:4; 39:10-21; 51:22-52:10.

EVANS LAW FIRM, INC.

In early 2015, Mauro discussed important concerns with Mr. Thorson, that, among other things, there was a lack of transparency between PwC and Cavium, there was evidence of incompetency from Cavium management, a lack of independence at PwC, and a lack of internal controls at Cavium. Thorson Transcript 50:12-16; Botta Transcript 172:6-174:6

On February 22, 2015, Mauro e-mailed Mr. Thorson a memo, outlining all his concerns on the Cavium audits. JX10 (2/22/2015 Email from M. Botta to T. Thorson).  In turn, Mr. Thorson told Mauro his complaint "had the potential of causing some issues with [Cavium] and the timing of their filing [with the SEC]." Thorson Transcript 78:1-3.  Mr. Thorson forwarded Mauro's memo to PwC's Quality Review Partner Robert F. Heatley because Mr. Thorson was "concerned." JX 8 and 9; JX27; PX125 2/14/2015 Memo re Cavium; Thorson Transcript 73:10-13. Additionally, Mr. Thorson reached out to PwC's Regional Risk Management Partner Timothy Scott via e-mail and by phone. Thorson Transcript 73:10-13. In fact, the same Sunday evening that Mauro sent Mr. Thorson his memo outlining all his complaints with respect to the Cavium matter, Mr. Thorson e-mailed Mr. Scott stating "[D]o you have time tomorrow to discuss **a rather urgent Cavium issue** with Heatley and I[?]" (*Id.*) (emphasis added). JX8 and 9 (Thorson forwarding Mauro's email to Messrs. Scott and Heatley); Thorson Transcript 73:10-13. Thereafter, Mauro's complaint was escalated to PwC's National Office. Thorson Transcript 88:7-18.

In an act of retaliation, months after internally reporting perceived unlawful activity, PwC removed Mauro from the Cavium engagement. Thorson Transcript 112:8-13.

After Mauro lodged internal complaints about Cavium, Defendant began to retaliate against Mauro in a myriad of ways and, ultimately, terminated his employment.  *See* Undisputed Fact No. 3 ("On August 17, 2017 PwC terminated Mauro's employment.") For example, in October of 2015, PwC assigned Mauro to work on the Harmonic Inc. ("Harmonic") audit. Haavardtun Transcript 23:22-25;

EVANS LAW FIRM, INC.

25:10-22. The Partner assigned to the Harmonic audit was Stig Haavardtun. *Id.*  After making internal complaints relating to Harmonic, PwC removed Mauro from the Harmonic audit in March of 2016. Haavardtun Transcript 28:23-29:2; 64:8-18; 65:2-9. As a result, Mauro's "utilization rate" began to drop. See Mauro's Utilization Rates for 2015, 2016 and 2017 at PX 178-180.Prior to making complaints regarding the Cavium audit, Mauro will testify that he had never been removed from a job for performance related issues or alleged client complaints. Mauro specifically complained to PwC's Ethics Office that he was being kicked off the Harmonic engagement in retaliation for speaking up about auditing issues with the firm. PX143 (April 26, 2016 Mauro's Retaliation Complaint.

In or around October of 2016, Mauro brought in Pacific Biosciences of California, Inc. ("Pacific BioScience") as a client for PwC. Carey Transcript 39:1-11. Mauro and other witnesses will testify at trial that it was customary that individuals who brought in clients were staffed on that client's engagement. Despite bringing in the client, Mauro will testify at trial that PwC did not staff him on the Pacific BioScience engagement.

On or about April 27, 2016, Mauro again spoke to Ms. Nelson about PwC retaliating against him and Ms. Nelson instructed him to raise the retaliation issue to PwC's Ethics Office. Mauro did so. See PX143 (Mauro's April 26, 2016 Retaliation Complaint). Finally, after enduring PwC's continued retaliatory acts, Mauro filed a TCR Form with the SEC, specifically complaining about his experiences with the Cavium engagement and retaliation as a result, among other things. *See* Undisputed Fact No. 6 and JX4 (TCR SEC Complaint Submitted – Ref. No. TCR1478218903573.  Thereafter, the SEC opened an investigation against PwC and alerted PwC of such. See JX20 (April 28, 2017 Letter from SEC to PwC re In the Matter of Certain PricewaterhouseCoopers Audits (MSF-4149).

Thereafter, on or about June 14, 2017, PwC's outside counsel Walter Brown and Paul Rugani, , and in-house counsel A. Marie Mazour (hereinafter collectively referred to as "PwC Attorneys") and

- 4 -

Anne-Marie Vitale, a non-attorney member of the Office of General Counsel at PwC, interviewed Mauro in connection with his SEC complaint. Mauro will testify that PwC Attorneys again interviewed Mauro in response to his SEC complaint.

On August 17, 2017, PwC's Vice Chairman of the West Region Kevin Baldwin and PwC's Assurance People Leader For the Bay Area Northwest Market Shawna Hewitt terminated Mauro's employment. See Undisputed Fact No. 3, Dkt. 141 ("On August 17, 2017, PwC terminated Mauro's employment); JX5 (letter from S. Hewitt to Botta re termination). Mauro will demonstrate through testimony at trial that no other employees were disciplined related to the Cavium audits. (*Id,* Ex. 3 at 57:12-21, 59:16-60:2, 79:3-10; Ex. 7 at 14:7-10)

## III.   LEGAL ARGUMENTS

### A.  STANDARDS OF REVIEW AT TRIAL (Verdict Forms for each count are attached as Attachment A.)

#### 1.  SARBANES-OXLEY ACT, 18 U.S.C. §1514A

When enacting Sarbanes–Oxley's ("SOX") whistleblower regime, Congress had a reaching objective: "**It sought to disturb the 'corporate code of silence' that 'discourage[d] employees from reporting fraudulent behavior not only to the proper authorities, such as the FBI and the SEC, but even internally.'**" *Lawson,* 571 U.S., at ——, 134 S.Ct., at 1162 (internal quotation marks omitted; emphasis added). "The Sarbanes–Oxley anti-retaliation provision covers employees who report fraud not only to the SEC, but also to any other federal agency, Congress, or an internal supervisor." See 18 U.S.C. § 1514A(a)(1); *See* Digital Realty Tr., Inc. v. Somers, 138 S. Ct. 767, 778, 200 L. Ed. 2d 15 (2018).

The applicable provision of SOX requires in relevant part that:

"No publicly traded company or an officer of such a company may discharge an employee because of any lawful act done by the employee—
(1) to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a

EVANS LAW FIRM, INC.

violation of section 1348 [securities fraud], or any rule or regulation of the Securities and Exchange Commission, when the information or assistance is provided to or the investigation is conducted by—
(A) a person with supervisory authority over the employee."

Plaintiff seeks damages against PwC retaliation in violation of the Sarbanes-Oxley Act. Plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1. Plaintiff engaged in activity protected by the Sarbanes-Oxley Act;

2. PwC knew or suspected that Mauro engaged in this protected activity;

3. The circumstances were sufficient to raise an inference that the protected activity was a "**contributing factor**" to an unfavorable personnel action.[3]

*Van Arsdale v. Int'l Game Technology, 577 F.3d 989, 996* (9th Cir. 2009) (to make a prima facie showing, the employee must show that "(a) the employee engaged in protected activity or conduct ; (2) [the employer] knew or suspected, **actually or constructively,** that the employee engaged in the protected activity;(3) the employee  suffered an unfavorable personnel action; and (4) the circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the unfavorable action")( emphasis added); *Tides v. The Boeing Co*., 644 F.3d 809, 813 (9th Cir. 2011) (same).

A "**contributing factor**" is "any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision. To be a "contributing factor," the factor need not be the only factor affecting or influencing the decision, nor must it be a significant, substantial, primary, or

---

[3] 18 U.S.C. § 1514A; 29 C.F.R. § 1980.104 (Stating that 18 U.S.C. §1514A requires that a plaintiff present sufficient evidence "to give rise to an inference that the respondent knew or suspected that the employee engaged in protected activity and that the protected activity was a *contributing factor* in the adverse action." (emphasis added).)
*See also Van Asdale v. Int'l Game Tech*., 577 F.3d 989, 1003 (9th Cir. 2009) ("The final element of a prima facie case under § 1514A is that "[t]he circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the unfavorable action.") (citing 29 C.F.R. § 1980.104(b)(1)(iv)).

predominant factor. (*see* 18 U.S.C. § 1514A; 29 C.F.R. § 1980.104; *Van Arsdale v. Int'l Game Technology,* 577 F.3d 989, 996 (9th Cir. 2009) *applying* 29 C.F.R. § 1980.104(b)(1)(iv)("[t]he circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the adverse decision"). *see also Lockheed Martin Corp. v. Admin. Review Bd*., 717 F.3d 1121, 1136 (10th Cir. 2013) "This element is broad and forgiving: the Board has defined a 'contributing factor' as 'any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision.' . . . "[T]he contributing factor standard was 'intended to overrule existing case law, which requires a whistleblower to prove that his protected conduct was a 'significant,' 'motivating,' 'substantial,' or 'predominant' factor in a personnel action in order to overturn that action.'" (Citations omitted, collecting cases); *Halliburton, Inc. v. Admin. Review Bd*., 771 F.3d 254, 263 (5th Cir. 2014); *Allen v. Admin. Review Bd.*, 514 F.3d 468, 476 n.3 (5th Cir. 2008); *Feldman v. Law Enf't Associates Corp*., 752 F.3d 339, 348 (4th Cir. 2014); *Araujo v. New Jersey Transit Rail Operations, Inc*., 708 F.3d 152, 158 (3d Cir. 2013).

An employee engages in protected activity under the Sarbanes Oxley-Act if he:

1.  makes a disclosure regarding conduct that he reasonably believes constitutes a violation of any rule or regulation of the Securities and Exchange Commission, and

2.  that disclosures is made to a person working for the employer who had the authority to investigate, discover, or terminate any potential misconduct.

It is not necessary that there actually be any violation of any rule or regulation of the Securities and Exchange Commission. Indeed, the Ninth Circuit recognized protected activity where the employee's beliefs fail to "approximate" what would be required to actually prove the fraud claims at trial. *Erhart v. BofI Holding, Inc*., 269 F. Supp. 3d 1059, 1072 (S.D. Cal. 2017) ("[t]he plaintiff, therefore, 'can have an objectively reasonable belief of a violation' even if the plaintiff 'fails to allege, prove, or approximate specific elements of fraud, which would be required under a fraud claim against the

EVANS LAW FIRM, INC.

defrauder directly''). Plaintiff will show at trial that he reasonably believed illegal activities were occurring and that he had voiced his concerns to his superiors and then to the SEC when nothing was done. Botta Transcript 196:2-25; 197:1-21; 199:19-201:23; 201:24-202:7.

That reasonable belief is sufficient to protect Plaintiff from retaliation. Van Arsdale, supra, 577 F.3d 1001-1002. It is irrelevant that there was no fraud in actuality.   In fact, the Ninth Circuit protects employees who only "just suggest" that there might be a violation of law.  Van Arsdale, supra, 577 F.3d 1001-1002. The record reveals that Mauro raised concerns about the reporting and accounting practices of these publicly traded companies with his superiors. See, inter alia, Botta Transcript 196:2-25; 197:1-21; 199:19-201:23; 201:24-202:7 Nelson Transcript 25:18-23; Haavardtun Transcript 28:23-29:2.  It is undisputed that Mauro submitted a TCR to the SEC in November 2016.  The record shows, as Mauro will present at trial, that the allegations in that TCR were substantially similar[4] to the concerns Mauro previously raised with his superiors at PwC.

Further, following the Ninth Circuit's test in Van Arsdale, Mauro will present at trial evidence that Defendant "knew or suspected, actually or constructively" that Mauro had informed the SEC of what he believed were violations of the law.  Mauro will show at trial, as his PwC personnel records attest, that Defendant began to retaliate against him for this protected activity.  Mauro will show at trial that by April-May 2017, Defendant was aware Mauro had engaged in protected activity.  It is undisputed that Defendant terminated Mauro's employment on August 17, 2017. The close interval between Defendant's knowledge of the protected activity and Mauro's termination is evidence of Defendant's retaliatory motive. See Morgan v. Regents of the Univ. of California, 88 Cal.App.4th 52, 69 (2000) ("[t]he retaliatory motive is 'proved by showing that plaintiff engaged in protected activities,

---

[4] In denying Defendant's motion for summary judgment, Judge Seeborg noted that "The issues raised by the SEC closely mirrored those Botta had been expressing internally."  Dkt 107 at 4.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

EVANS LAW FIRM, INC.

that his employer was aware of the protected activities, and that the adverse action followed within a relatively short time thereafter'"). In *Morgan*, the evidence was circumstantial; here, Mauro will present evidence of PwC's actual or constructive knowledge of his protected activity. PX 148, PwC B00005930 (05-03-2016 HR Notes); PwC B00005937 (05-13-2016 MR Notes); JX 20 (SEC April 27, 2016 Letter to PwC); PX109 (5/9/2017 Preservation Notice and Email to Plaintiff). See also Thorson Transcript 53:13-54:23, 56:15-58:12; Carey Transcript 49:17-50:6.

Mauro thus meets the "light burden of showing by a preponderance of evidence" that his protected activities "tended to affect his termination in at least some way." Feldman v. Law Enforcement Assocs. Corp., 752 F.3d 339, 348 (4th Cir. 2014) (emphasis added). This preponderance standard is the lowest evidentiary standard for civil disputes requiring only that Mauro prove the existence of a fact (his protected activity was a contributing factor to his termination) is more probable than not. The evidence will show that Mauro meets this burden. PX 148, PwC B00005930 (05-03-2016 HR Notes); PwC B00005937 (05-13-2016 HR Notes); JX 20 (SEC April 27, 2016 Letter to PwC); PX109 (5/9/2017 Preservation Notice and Email to Plaintiff). See also Thorson Transcript 53:13-54:23, 56:15-58:12; Carey Transcript 49:17-50:6. After Mauro satisfies this modest burden, the burden of proof then shifts to the Defendant to demonstrate by the much higher standard of "clear and convincing evidence that it would have taken the same adverse employment action in the absence of [Mauro's] protected activity." Van Arsdale, supra, 577 F.3d at 996 (emphasis added). Defendant bears a much heavier burden of proof: "clear and convincing" requires a "a finding of high probability" with evidence "sufficiently strong to command the unhesitating assent of every reasonable mind." In re Angelia P., 28 Cal.3d 908, 919 (1981).

- 9 -

### 2.  CALIFORNIA LABOR CODE SECTIONS 1105.2 & 98.6

"To constitute a protected activity pursuant to section 1102.5, a disclosure must be "to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance." Cal. Labor Code § 1102.5(b); *Smiley v. Hologic, Inc.,* No. 16CV158-WQH-MDD, 2017 WL 1354787, at *9 (S.D. Cal. Apr. 12, 2017).

To establish a claim, Mauro has to show that: (1) he was a an employee at PwC; (2) Mauro disclosed to the and to an employee with authority to investigate, discover, or correct legal violations or noncompliance about client's auditing practices or PwC's auditing practices ("protected activity"); (3) Mauro reasonable cause to believe that the information he disclosed was a possible violation of law, rule, or regulation; (4) PwC terminated Mauro, removed Mauro from audits, or forbid Mauro from practicing on audits (collectively "adverse action"); (5) Mauro suffered these adverse actions because, at least in part, due to his protected activity; and (6) Mauro was harmed and PwC's conduct was a substantial fact in causing his harm. *Casissa v. First Republic Bank*, No. 09-cv-4129, 2012 WL 3020193, at *9 (N.D. Cal. July 24, 2012) (similar showing under Cal. Labor Code Section 1102.5); (See Generally CACI No. 4603) Mauro will demonstrate that the evidence satisfies his burden under a preponderance standard.  PX 148,  PwC B00005930 (05-03-2016 HR Notes); PwC B00005937 (05-13-2016 MR Notes); JX 20 (SEC April 27, 2016 Letter to PwC); PX109 (5/9/2017 Preservation Notice and Email to Plaintiff). See also Thorson Transcript 53:13-54:23, 56:15-58:12; Carey Transcript 49:17-50:6.

### 3.  WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

The elements of a claim for wrongful discharge in violation of public policy are "(1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused

EVANS LAW FIRM, INC.

the plaintiff harm." *Haney v. Aramark Uniform Services, Inc*., 121 Cal.App.4th 623, 641 (2014); Yau

v. Allen, 229 Cal. App. 4th 144, 154 (2014). There is irrefutable evidence that Mauro and PwC were in

an employer-employee relationship. See JX1 (Employment Agreement dated July 26,2010) and the

parties stipulated to Mauro's termination. See JPTS, Undisputed Fact No.3. Mauro will satisfy the harm

element at trial by showing the economic and non-economic damages and other injury he sustained as a

result of the discharge.  *See also* Medical Records at PX204; Botta Transcript 270:6-271:13, Sarrett

Transcript 15:3-14,

As to the third element - motivation for his discharge - Mauro will demonstrate that

circumstances show that his protected activity was a "substantial motivating reason" for his discharge

under *Harris v. City of Santa Monica*, 56 Cal.4th 203, 232 (2013) (plaintiff need not show "but for"

specific causation for termination); *Yau v. Allen*, 229 Cal.App.4th 144, 154 (2014), and *Alamo v.*

*Practice Management Information Corp*., 219 Cal.App.4th 466, 479 (2013).  *See also* 1 Wrongful

Employment Termination Practice (Cont. Ed. Bar 2d ed.) Discrimination Claims, §§2.61-2.65, 2.87;

California Civil Practice: Employment Litigation, §§ 2:20-2:21, 2.75 (Thomson Reuters); CACI 2430

and 2507. The California Supreme Court has recognized that a "substantial motivating reason" does not

have to be the sole motivation for a discharge and may be demonstrated by an employee "even if other

factors would have led the employer to make the same decision at the time." *Harris v. City of Santa*

*Monica,* 56 Cal.4th 203, 232 (2013).  The circumstances here show that within a very short time of PwC

learning of the SEC investigation against it prompted by Mauro's November 2016 tip to the SEC,

Mauro was fired.  PX 148,  PwC B00005930 (05-03-2016 HR Notes); PwC B00005937 (05-13-2016

HR Dept. Notes); Joint Exhibit 20 (SEC April 27, 2016 Letter to PwC); PX109 (5/9/2017 Preservation

Notice and Email to Plaintiff).

**4.  BREACH OF CONTRACT**

Plaintiff satisfies the elements of a breach of contract claim by showing:

a.  Defendant and Plaintiff entered into a contract on or about July 26, 2010.  *Richman v. Hartley*, 224 Cal.App.4th 1182, 1186 (2014); CACI 303; *Junger v. John V. Dinan Assocs., Inc.*, 164 A.D.3d 1428, 1430, 84 N.Y.S.3d 574, 577 (N.Y. App. Div. 2018). JX1 EMPLOYMENT AGREEMENT dated July 26, 2010. The existence of a contract between Plaintiff and Defendant is irrefutable.

b.  Plaintiff performed his contractual duties under the contract. *Richman v. Hartley*, 224 Cal.App.4th 1182, 1186 (2014); *Consolidated World Investments, Inc. v. Lido Preferred Ltd*., 9 Cal.App.4th 373, 380 (1992); *Junger v. John V. Dinan Assocs., Inc.*, 164 A.D.3d 1428, 1430, 84 N.Y.S.3d 574, 577 (N.Y. App. Div. 2018). CACI 303.  The record is replete with evidence that Mauro was good at raising questions on audits and had knowledge of accounting and methodology. Haavardtun Transcript 54:22-55:13; Px105 (Job Evaluations of Mauro, PLAINTIFF 109-124, 619-620, 758-773).

c.  Defendant breached the contract by, among other things terminating Plaintiff's employment in a way that violated the contract including but not limited to failing to give Plaintiff three months' notice of termination and severance as specified in Section 5a of the Employment Agreement.  *Richman v. Hartley,* 224 Cal.App.4th 1182, 1186 (2014); 1 Witkin, Summary of California Law (10th ed. 2005) Contracts, § 847; CACI 303: JX1 EMPLOYMENT AGREEMENT dated July 26, 2010. STIPULATED: PLAINTIFF'S EMPLOYMENT WAS TERMINATED ON AUGUST 27, 2017. PX89 PwC1443-1445 08-27-2017 Termination Letter.

d.  Plaintiff was harmed as a result of Defendant's breach(es) in an amount which will be shown at trial in an amount which will be shown at trial and includes but is not limited to lost wages,

EVANS LAW FIRM, INC.

- 12 -

Evans Law Firm, Inc.

front and back pay with interest, reinstatement with the same seniority, lost earning capacity, civil

penalties for wrongful termination, punitive damages, attorneys' fees and expenses and a money

judgment for mental pain, anguish, emotional distress and injury to reputation.  *Troyk v. Farmers*

*Group, Inc.*, 171 Cal.App.4th 1305, 1352 (2009); *U.S. Ecology, Inc. v. State of California*, 129

Cal.App.4th 887, 909 (2005); CACI 303.

> e.  Defendant's breach was a substantial factor in causing that harm. *U.S. Ecology, Inc.*
*v. State of California*, 129 Cal.App.4th 887, 909 (2005)("A proximate cause of loss or damage is

something that is a substantial factor in bringing about that loss or damages.

## IV.  USE OF DEPOSITION TESTIMONY AT TRIAL

As raised by the Court at the February 4 hearing, Plaintiff has the right to use the deposition

testimony of  PwC Partners Tye Thorson, Stig Haavardtun, and Timothy Carey, and Shawna Hewitt for

any purpose at trial because each of these individuals falls is a person whose deposition testimony may

be used by an adverse party for any purpose at trial.  Fed. R. Civ. P. 32(a)(3) reads in pertinent part:

> (3) Deposition of Party, Agent, or Designee.  An adverse party may use **for any purpose** the deposition of a party or anyone whom when deposed, was the party's **officer, director, managing agent**, or designee under Rule 30(b)(6) or 31(a)(4). (emphasis added)

In the Ninth Circuit, a person's job title is not determinative of whether he or she is an "officer,

director," or "managing agent" under Fed. R. Civ. P. 32(a)(3). *Hyndix Semiconductor Inc. v. Rambus*

*Inc.,* 2008 U.S. Dist. LEXIS 11767 (N.D. Cal. Feb. 2, 2008) at *17 (emphasis added).  Outside of the

Ninth Circuit, the Rule is also broadly interpreted, including in cases where accounting partners are the

deponents in question.  *See, e.g., MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F.

Supp. 3d 558, 574 (2017) ("The Court does not…read Rule 32(a)(3) to be so narrow as to apply only to

the equivalent of an officer or director of a corporation, as PwC urges. 'The test for a managing agent is

not formulaic.'"). Rather than the "formulaic" or particular title a deponent has, courts instead consider

whether the persons "***have the capability to bind the corporations with their actions***" **at the time of their deposition.**  *Hyndix Semiconductor Inc. v. Rambus Inc.,* 2008 U.S. Dist. LEXIS 11767 (N.D. Cal. Feb. 2, 2008) at \*17 (emphasis added).  Each of the four individuals had the capability of binding PwC when they were disposed and fall under Fed. R. Civ. P. 32(a)(3).  Plaintiff accordingly has the right to introduce deposition testimony of each of them for any purpose at trial:

### 1.  Partners Stig Haavardtun, Tye Thorson and Timothy Carey

Partners by definition have the right to bind the partnership of which they are partners.  Cal. Corporations Code § 15904.02(a)("Each general partner is an agent of the limited partnership for the purposes of its activities."); N.Y. Partnership Law § 20(1) (McKinney 2014) ("Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership").  Thorson, Haavardtun and Carey were PwC partners and under the laws of both California and New York had the authority to act on behalf of PwC and thus are similar to "managing agents" under Rule 32. *Hyndix Semiconductor Inc. v. Rambus Inc.,* 2008 U.S. Dist. LEXIS 11767 (N.D. Cal. Feb. 2, 2008) at \*17 (emphasis added).

Courts specifically recognize that Rule 32 treats **accounting partners** as "managing agents" where those partners (like the three here) have a lead role in the accounting engagements at issue in a case.  In *MF Global*, the Southern District of New York allowed the use of videotaped deposition testimony of two PwC partners even though the partners would be testifying at trial.  *MF Global, supra*, 232 F. Supp. 3d at 574. The two PwC partners in that case had taken lead positions in the audit engagements before the court and thus the court reasoned,

> McGowan was the lead audit partner for fiscal years 2006–2010 and Gallagher was the lead audit partner for fiscal years 2011 and 2012. As such, **it is unlikely that there are any other PwC employees who are invested with more judgment or who can more appropriately be considered PwC's representatives for the topics of the audit of MF Global for those fiscal**

Evans Law Firm, Inc.

**years**. The Plan Administrator may therefore play the designated deposition testimony of those individuals.

*MF Global, supra*, 232 F. Supp. 3d at 574(emphasis added).  The expansive view holds in the Ninth Circuit as well.  As the court in *Hyndix Semiconductor* recognized, the term "managing agent" is "flexible" and the test is *whether the individual has "some authority to act on behalf of the corporation or answer for it." Id.  Accord Young v. Associates Public Relations, L.L.C. v. Delta Air Lines, Inc.,* 216 F.R.D. 521, 523-24 (D. Utah 2003).  PwC Partners Tye Thorson, Stig Haavardtun and Timothy Carey clearly had significant authority to act on behalf of PwC. Thorson Transcript 89:8-12 (made decisions regarding Cavium engagement), 96:14-25 (reviewed Mauro's memo and led discussions with other PwC partners about it), 100:12-24 (signed PwC's name to the Cavium Form 10-K); Haavardtun Transcript 23:22-25(led the Harmonic engagement as partner), 39:8-13, 39:17-23(reviewed and approved the Harmonic SAB99), 50:21-51:18 (made the final determination at PwC re what were considered Harmonic's control deficiencies), 54:22-55:13(reviewed and made final evaluations of Mauro's work on Harmonic engagement); Carey Transcript 36:21-37:4 (exercised authority over all Human Resources complaints and issues within San Jose office), 37:19-38:2(made decisions with his partner Thorson regarding SEC filing deadlines),40:22-41:20 and 43:4-21(authority to make personnel decisions in San Jose office). Under the *Hyndix Semiconductor* standard, Fed. R. Civ. P. 32 clearly allows the use of their deposition testimony by Plaintiff for any purpose at trial.  They also fall within the exception as construed in MF Global's case against PwC: these three were not only partners, they were the leads in the respective areas before the Court:  Thorson (Company B audit leader), Haavardtun (Company C audit leader), and Carey (San Jose Office Leader).

### 2.  Shawna Hewitt

Ms. Hewitt at the time of her deposition was the Market Human Resources Leader for PwC's Pacific Northwest Division.  Hewitt transcript 12:19-25.  Ms. Hewitt testified that she was "in charge"

- 15 -

EVANS LAW FIRM, INC.

of Human Resources foal l lines of PwC's business in the Pacific Northwest Market, which included the San Jose office, and had a team of 20 persons reporting to her. Hewitt Transcript 13:22-25.  Given the scope of Ms. Hewitt's authority her position as the HR Leader for PwC in the Pacific Northwest is the equivalent of an officer or director position at PwC (which does not appear to have either officers or directors *per se*, since it is a partnership).  The Ninth Circuit test is to look at what Ms. Hewitt "actually did" at PwC and under that test her deposition may be used under Fed. R. Civ. P. 32(a)(3).  Clearly, Ms. Hewitt had the authority to bind PwC: ***she signed the letter terminating Mauro's employment and employment agreement with PwC***.  *See* JX5 (August 27, 2017 PwC termination letter).


### V. __DAMAGES__   (Verdict Forms are attached hereto as Attachment A.)


**Categories of Economic Damages for Retaliation Claims:**

1.  Lost Wages/Back Pay 18 U.S.C. § 1514A(c)(2)(B) (2017-2021)     **$    723,264.00**
    (4 yrs.@ $180,816 per annum)

2.  Lost Bonuses ($15,472.59 x 4)                                       **61,890.36**

3.  Interest on back pay and bonuses (10% per annum)                   **117,773.16**

4.  Retirement plan/401k contributions

       a. Mauro contributions                                           **46,560.00**

       b. PwC Contributions                                             **11,640.00**

4.  Lost earnings capacity/Blacklisting                      **$   4,940,000.00**
    (*see* Plaintiff Resp Defendant Interrogatory No. 15)
    (approx.. $190,000/yr for period 2017 until retirement year 2043 (age 66))

5.  Lost opportunity as PwC Partner (est.)                   **$   9,600,000.00**
    (*see* Plaintiff Resp Def. Interrogatory No. 13)
    $400,000/yr[5] for period 2019 (expected yr of partnership) until
    retirement year 2043 (age 66)

---

[5] The estimated income for a partner in YR 1 would be significantly less than in YR 20.  Using a static figure states the loss here very conservatively.

EVANS LAW FIRM, INC.

**Contractual Damages** (Three months severance (Section 5a)      **$45,205.00**

**Interest on Unpaid Severance**                                  **18,081.60**

Breach of Contract Damages under Cal. Civil Code Section 3300

**Out of Pocket Expenses**
    1.  Medical and therapeutic care                         **$12,600.00**

**Statutory Penalties**
    **Cal. Labor Code § 1102.5**                              **$10,000.00**

    **Cal. Labor Code § 98.6**                                **$10,000.00**

        **TOTAL ECONOMIC DAMAGES**      **$  15,597,013.50**

**Categories of Special/Noneconomic Damages (pain and suffering)(18 U.S.C. § 1514A(c)(2)(C) (see Plaintiff Responses to Defendant Interrogatories including but not limited to Nos. 7-11). See CACI 3905 (Items of Noneconomic Damages Instructions)**

| | | |
|---|---|---|
| 1. | Inconvenience ($10/day for 1271 days 8/17/2017-2/8/2021) | $ 12,701.00 |
| 2. | Mental suffering | TBD BY FACT FINDER |
| 3. | Emotional Distress | TBD BY FACT FINDER |
| 4. | Injury to Reputation and Humiliation | TBD BY FACT FINDER |
| 5. | Depression[6] | TBD BY FACT FINDER |
| 6. | Insomnia[7] | TBD BY FACT FINDER |
| 7. | Physical Pain | TBD BY FACT FINDER |
| 8. | Loss of enjoyment of life | TBD BY FACT FINDER |
| 9. | Physical impairment | TBD BY FACT FINDER |
| 10. | Anxiety | TBD BY FACT FINDER |

**Attorneys' Fees and Costs, 18 U.S.C. § 1514A(c)(2)(C)[8]**

---

[6]  One possible way to calculate damages for depression would be on a daily basis: ($200/day x 1271 days)                        $ 254,200.00
[7] One possible measure of damages for insomnia would also be on a daily basis:  ($50/ day x 1271 days)  $ 63,550.00
[8] If appropriate, any attorneys' fees and expenses will be determined following a Motion.

Evans Law Firm, Inc.

1

2   **VI. CONCLUSION**

3       Your Honor will, based on the facts within this brief and the facts presented at trial, be able to

4   conclude that PwC subjected Mauro to a myriad of unlawful, retaliatory, adverse employment actions

5   and breached Mauro's employment contract and award Mauro reinstatement and money to make him

6   whole.

7   Dated:  February 8, 2021

8                                                          Respectfully Submitted,

9

10                                                         _Ingrid M. Evans_
                                                          _____
11                                                         Ingrid M. Evans, Esq. (SBN 179094)
                                                          **EVANS LAW FIRM, INC.**
12                                                         3053 Fillmore Street #236
                                                          San Francisco, CA 94123
13                                                         Phone: (415) 441-8669

14                                                         Alexander G. Cabeceiras, Esq.
                                                          **DEREK SMITH LAW GROUP, PLLC**
15                                                         *PRO HAC VICE*
                                                          *alexc@dereksmithlaw.com*
16                                                         1 Penn Plaza, Suite 4905
                                                          New York, New York 10119
17                                                         Phone: (212) 587-0760

18                                                         *Attorneys for Plaintiff*

19

20

21

22

23

24

25

26

27

Case No. 3:18-cv-02615-AGT                PLAINTIFF MAURO BOTTA PRE-TRIAL BRIEF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Evans Law Firm, Inc.

# ATTACHMENT A

EVANS LAW FIRM, INC.

**ATTACHMENT A – VERDICT FORMS**

**A. RETALIATION IN VIOLATION OF THE SARBANES-OXLEY AND DODD-FRANK ACTS**

1.  Did Mauro Botta engage in protected activity under the Sarbanes Oxley Act?
    Answer: _____ Yes _____ No

    If your answer to Question 1 is "yes," proceed to Question 2. If your answer to Question 1 is "no," go to Question 5.

2.  Did PwC know or suspect that Mauro Botta engaged in this activity?
    Answer: _____ Yes _____ No

    If your answer to Question 2 is "yes," proceed to Question 3. If your answer to Question 2 is "no," go to Question 5.

3.  Were the circumstances sufficient to raise an inference that Mauro Botta engaging in this activity was a contributing factor in Defendant PwC's termination of Mr. Botta?

    Answer: _____ Yes _____ No

    If your answer to Question 3 is "yes," proceed to Question 4. If your answer to Question 3 is "no," go to Question 5.

4.  Did PwC prove by clear and convincing evidence that they would have terminated Mauro Botta at the same time based on wholly legitimate reasons even if Mauro Botta had not engaged in protected activity?

    Answer: _____ Yes _____ No Proceed to Question 5.


**B. WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY**

5.  Was any of the following a substantial motivating reason for PwC's discharge of Mauro Botta:

    a. Mauro reporting PwC to the SEC;

6.  Was any of the following a substantial motivating reason for PwC to remove Mauro Botta from working on the Harmonic audit:'

7.  Was any of the following a substantial motiving reason for PwC to remove Mauro from working on the Cavium audit:

## C.  WRONGFUL DISCHARGE IN VIOLATION OF CALIFORNIA LABOR CODE §§ 1102.5 AND 98.6

**8.**  Did Mauro Botta engage in protected activity under CLC § 98.6?

Answer: _____ Yes _____ No

If your answer to Question 1 is "yes," proceed to Question 2. If your answer to Question 1 is "no," go to Question 5.

**9.**  Did PwC know or suspect that Mauro Botta engaged in this activity?

Answer: _____ Yes _____ No

If your answer to Question 2 is "yes," proceed to Question 3. If your answer to Question 2 is "no," go to Question 5.

10. Were the circumstances sufficient to raise an inference that Mauro Botta engaging in this activity was a contributing factor in PwC's termination, removing Mauro from audits, or otherwise subjecting Mauro to adverse employment actions?

Answer: _____ Yes _____ No

If your answer to Question 10 is "yes," proceed to Question 11. If your answer to Question 3 is "no," go to Question 5.

11. Did PwC prove by clear and convincing evidence that they would have terminated or otherwise subject Mauro to an adverse employment action if Mauro Botta at the same time based on wholly legitimate reasons even if Mauro Botta had not engaged in protected activity?

Answer: _____ Yes _____ No Proceed to Question 5.

12. Did Mauro offer enough circumstantial, rebuttal, or comparative evidence to cast doubt on PwC's reason for terminating or otherwise subject Mauro to adverse actions?

## D.  BREACH OF CONTRACT

1.  Did Plaintiff and Defendant enter into a contract?

2.  Did Plaintiff do all, or substantially all, of the significant things the contract required?

3.  Was Plaintiff excused from having to do all, or substantially all, of the significant things that the contract required him to do?

EVANS LAW FIRM, INC.

4.  Did all the conditions that were required for Defendant's performance occur?

5.  Did Defendant fail to do something that the contract required Defendant to do?

6.  Was Plaintiff harmed by the breach of contract?

7.  What are Plaintiff's damages?

## E.  DAMAGES

1.  What are Mr. Botta's damages for past economic loss as a result of his termination? Answer: $_____ Proceed to Question 8.

2.  What are Mr. Botta's damages for future economic loss as a result of his termination? Answer: $_____ Proceed to Question 9.

3.  What are Mr. Botta's damages for mental suffering, loss of enjoyment of life, inconvenience, grief, anxiety, humiliation, and emotional distress

    Answer: $_____ Proceed to Question 10.

4.  What are Mr. Botta's damages for his professional reputation harm?

    Answer: $_____ Proceed to Question 10.

5.  Do you find that Mr. Botta failed to mitigate his damages? Answer: _____ Yes _____ No If your answer to Question 10 is "yes," proceed to Question 11. If your answer to Question 10 is "no," proceed to Question 12.

6.  How much could Mr. Wadler have earned from other employment if he had mitigated his damages?

    Answer: $_____ Proceed to Question 12

7.  Should Mauro Botta be reinstatement at PwC with his same seniority level and pay?

    Answer: _____ Yes _____ No

8.  Did Defendant PwC engage in the conduct upon which you base your wrongful termination in violation of public policy claim with malice, oppression, or fraud?

    Answer: _____ Yes _____ No If your answer to Question 12 is "yes," then answer Question 13.

- 22 -

Evans Law Firm, Inc.

If you answered "no," stop here, answer no further questions, and have the jury foreperson sign and date this verdict form.

9.   What amount of punitive damages do you award against PwC as a result of his termination?

Answer: $\$$_____

# CERTIFICATE OF SERVICE

I, the undersigned, am a citizen of the United States, over the age of eighteen years, and not a party to the within action.  My business address is 3053 Fillmore Street, #236, San Francisco, CA  94123.

On February 8, 2021 I served with following documents(s) by the method indicated below:

**PLAINTIFF MAURO BOTTA'S TRIAL BRIEF**

**THIS CERTIFICATE OF SERVICE**

☒    by **email or electronic transmission**.  I caused the documents to be sent to the person at the email addresses listed below, **as a courtesy copy by agreement**.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States that the above is true and correct. Executed on February 8, 2021 at San Francisco, California.

*Mark Rennie*
_____
Mark Rennie

## SERVICE LIST

**VIA EMAIL**
John C. Hueston, Esq.
jhueston@huston.com
Moez M. Kaba, Esq.
mkaba@hueston.com
Joseph A. Reiter, Esq.
jreiter@hueston.com
Emily Griffin
egriffin@hueston.com
Ervin Upton
eupton@hueston.com

**ATTORNEYS FOR DEFENDANT PRICEWATERHOUSECOOPERS LLP**

Evans Law Firm, Inc.