**HUESTON HENNIGAN LLP**
John C. Hueston, State Bar No. 164921
*jhueston@hueston.com*
Moez M. Kaba, State Bar No. 257456
*mkaba@hueston.com*
Joseph A. Reiter, State Bar No. 294976
*jreiter@hueston.com*
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:   (213) 788-4340
Facsimile:   (888) 775-0898
Attorneys for Defendant
PricewaterhouseCoopers LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURO BOTTA,<br><br>      Plaintiff,<br><br>   v.<br><br>PRICEWATERHOUSECOOPERS LLP,<br><br>      Defendant. | Case No. 3:18-CV-2615-AGT<br><br>**DEFENDANT PRICEWATERHOUSECOOPERS LLP'S OPPOSITIONS TO PLAINTIFF'S MOTIONS *IN LIMINE***<br><br>Judge:  Hon. Alex Tse<br>Date:   February 16, 2021<br>Time:  2:00 p.m. |

# **TABLE OF CONTENTS**

Page(s)

I.      INTRODUCTION ................................................................................... 1

II.     DISCUSSION........................................................................................ 6

      A.      MIL No. 1:  Plaintiff's Complaints to Government Entities
              About PwC are Relevant to His Claims and Credibility ....................... 6

      B.      MIL No. 2:  The SEC's Decision Not to Take Action
              Against PwC After a Thorough Investigation Undermines
              Plaintiff's Claims ....................................................................... 9

      C.      MIL No. 3: Evidence of Plaintiff's Conduct at His
              Subsequent Employers is Relevant to his Alleged Damages
              and Credibility....................................................................... 11

      D.      MIL No. 4:  Plaintiff's "Personal Writings" About PwC are
              Relevant to His Claims and Credibility ................................ 14

      E.      MIL No. 6: Evidence Concerning PwC's Friends of the
              Firm Program Is Relevant to Plaintiff's Alleged Damages
              and Claims....................................................................... 16

      F.      MIL No. 7: Jason S. Flemmons's Expert Testimony
              Demonstrates that Plaintiff Did Not Engage in Protected
              Activity....................................................................... 18

III.    CONCLUSION ................................................................................. 20

1

# <u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

<u>Cases</u>

4

5    *Abrams v. Van Kampen Funds, Inc.*,
     2005 WL 88973 (N.D. Ill. Jan. 13, 2005) ........................................................... 4, 10
6

7    *Cantu v. United States*,
     2015 WL 4720580 (C.D. Cal. Aug. 7, 2015) ............................................................ 17
8

9    *Carter v. United States Dep't of Justice*,
     2018 WL 4181904 (N.D. Cal. Aug. 31, 2018) ............................................................ 3
10

11   *Cooper v. Nevada ex rel. Dep't of Transportation*,
     2011 WL 13305449 (D. Nev. Nov. 4, 2011) ........................................................... 2, 7
12

13   *Day v. Staples, Inc.*,
     555 F.3d 42 (1st Cir. 2009) ................................................................................... 6, 19
14

15   *Erhart v. BofI Holding, Inc.*,
     269 F. Supp. 3d 1059 (S.D. Cal. 2017) ..................................................................... 18
16

17   *Ernst v. HB Aspen, Inc.*,
     2008 WL 11337009 (C.D. Cal. Feb. 4, 2008) ............................................................ 14
18

19   *Evanow v. M/V Neptune*,
     163 F.3d 1108 (9th Cir. 1998) .................................................................................... 5
20

21   *Fox v. De Long*,
     2016 WL 6088371 (E.D. Cal. Jan. 8, 2016) ............................................................... 1
22

23   *Frazier v. Bed Bath & Beyond, Inc.*,
     2011 WL 5854601 (N.D. Cal. Nov. 21, 2011) .................................................. 5, 13, 15
24

25   *Gragossian v. Cardinal Health Inc.*,
     2008 WL 11387063 (S.D. Cal. July 21, 2008) ........................................................... 12
26

27   *Gulf States Utilities Co. v. Ecodyne Corp.*,
     635 F.2d 517 (5th Cir. 1981) ...................................................................................... 1
28

*Heyne v. Caruso,*
  69 F.3d 1475 (9th Cir. 1995)....................................................................................... 10

*In Re First Franklin Fin. Corp. Litig.,*
  2010 WL 961649 (N.D. Cal. Mar. 16, 2010)................................................................ 3

*In re Homestore.com, Inc.,*
  2011 WL 291176 (C.D. Cal. Jan. 25, 2011) ................................................................. 2

*J & J Sports Prods., Inc. v. Jernegan,*
  2013 WL 450382 (N.D. Cal. Feb. 5, 2013)................................................................... 3

*Kellgren v. Petco Animal Supplies, Inc.,*
  2015 WL 11237636 (S.D. Cal. Apr. 10, 2015)........................................................... 13

*McDowell v. Seaboard Farms of Athens, Inc.,*
  1996 WL 684140 (M.D. Fla. Nov. 4, 1996) ........................................................... 5, 15

*Nance v. Time Warner Cable, Inc.,*
  433 Fed. Appx. 502 (9th Cir. 2011) ........................................................................... 19

*Nazif v. Computer Scis. Corp.,*
  2015 WL 3776892 (N.D. Cal. June 17, 2015) ................................................. 8, 10, 18

*Paolitto v. Brown E.&C. Inc.,*
  151 F.3d 60 (2d Cir. 1998)...................................................................................... 9, 10

*Plummer v. W. Int'l Hotels Co.,*
  656 F.2d 502 (9th Cir. 1981)...................................................................................... 10

*Schultz v. Butcher,*
  24 F.3d 626 (4th Cir. 1994)........................................................................................... 1

*Shaw v. Citimortgage.,*
  2016 WL 1659973 (D. Nev. Apr. 26, 2016) ................................................................ 1

*Smilovits v. First Solar*, Inc.,
  2019 WL 6698199 (D. Ariz. Dec. 9, 2019) ..................................................... 4, 8, 10

*Smith v. Safeway Corp.,*
  1999 WL 778202 (N.D. Cal. Sept. 27, 1999) ........................................................... 11

*Stanchfield v. Hamer Toyota Inc.*,
37 Cal. App. 4th 1495 (1995)...........................................................................4, 12

*Tate v. City of Chicago*,
2020 WL 4437853 (N.D. Ill. Aug. 3, 2020)..........................................................3, 8

*Teutscher v. Woodson*,
835 F.3d 936 (9th Cir. 2016)......................................................................................9

*United States v. Amirnazmi*,
648 F. Supp. 2d 718 (E.D. Pa. 2009) .....................................................................14

*United States v. Brown*,
415 F.3d 1257 (11th Cir. 2005).................................................................................1

*United States v. De Anda*,
2019 WL 2863602 (N.D. Cal. July 2, 2019)............................................................9

*United States v. Dillon*,
2008 WL 11357991 (C.D. Cal. Nov. 18, 2008)..............................................2, 8, 14

*United States v. Endacott*,
479 Fed. Appx. 779 (9th Cir. 2012) .......................................................................15

*United States v. Gluk*,
831 F.3d 608 (5th Cir. 2016)..........................................................................4, 8, 10

*United States v. Heller*,
551 F.3d 1108 (9th Cir. 2009).................................................................................1

*Westawski v. Merck & Co.*,
215 F. Supp. 3d 412 (E.D. Pa. 2016) .....................................................................18

**Statutes**

18 U.S.C. 1514A(a)(1)..............................................................................................17

**Rules**

Fed. R. Civ. P. 16(c) ...................................................................................................2
Fed. R. Civ. P. 16(f) ...................................................................................................3
Fed. R. Evid. 404(b)...................................................................................................8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Fed. R. Evid. 406 .................................................................................................... 8, 13

Fed. R. Evid. 801 ....................................................................................................... 14

Fed. R. Evid. 801(d) .................................................................................................... 5

PWC'S OPPOSITIONS TO PLAINTIFF'S MOTIONS IN LIMINE
Case No. 3:18-CV-2615-AGT

# I.    INTRODUCTION

Seeking to preclude this Court from considering all pertinent facts, Plaintiff Mauro Botta has filed seven motions *in limine* to exclude broad categories of relevant evidence that undermine his credibility, disprove his claims, and debunk his alleged damages.  Although each of Plaintiff's motions fails for individual reasons discussed below, all seven suffer from the following global deficiencies:

*First,* Plaintiff premises virtually all of his motions solely on the argument that PwC's evidence will "confuse" and "prejudice the factfinder."  Dkt. 143 at 15.  But this is a *bench* trial where Your Honor "can hear relevant evidence, weigh its probative value and reject any improper inferences."  *Fox v. De Long*, 2016 WL 6088371, at *12 (E.D. Cal. Jan. 8, 2016).  Plaintiff's arguments are categorically inapposite in this context.  *See Shaw v. Citimortgage.,* 2016 WL 1659973, at *3 (D. Nev. Apr. 26, 2016) ("Generally, a motion *in limine* based solely on relevance or unfair prejudice is improper when the matter is set for a bench trial."); *Gulf States Utilities Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981) ("Rule 403 has no logical application to bench trials."); *United States v. Heller*, 551 F.3d 1108, 1112 (9th Cir. 2009) ("Because the judge rules on this evidentiary motion, in the case of a bench trial, a threshold ruling is generally superfluous."); *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005) ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself."); *Schultz v. Butcher*, 24 F.3d 626 (4th Cir. 1994) ("In the context of a bench trial, evidence should not be excluded under 403 on the ground that it is unfairly prejudicial.").

*Second*, Plaintiff does not attach any exhibits to contextualize his requests, nor does he identify specific documents or testimony he seeks to exclude.  Plaintiff refers only vaguely to broad categories of evidence—such as "any personal diary, book, novel, journal, and/or other personal [sic] kept by Plaintiff Mauro Botta"—and then asserts in conclusory fashion that all evidence falling within those categories "ha[s] no relevance."  *See, e.g.*, Dkt. 143 at 12-13.  Plaintiff's approach cannot satisfy his

"burden of establishing [that] the evidence" he seeks to exclude "is not admissible for any purpose." *Cooper v. Nevada ex rel. Dep't of Transportation*, 2011 WL 13305449, at *1 (D. Nev. Nov. 4, 2011); *see also In re Homestore.com, Inc*., 2011 WL 291176, at *2 (C.D. Cal. Jan. 25, 2011) (denying motion *in limine* as "over-broad and vague," and noting that "motions *in limine* should rarely seek to exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial"); *United States v. Dillon*, 2008 WL 11357991, at *5 (C.D. Cal. Nov. 18, 2008) (denying motion *in limine* for "not provid[ing] the Court with sufficient context to evaluate" the evidence).

*Third*, Plaintiff deliberately refused to meet and confer and violated professional standards.  Although the Court ordered the parties to meet and confer regarding the contents of the Joint Pretrial Statement and Order—which necessarily required the parties to discuss any evidence they seek to exclude from trial, *see* Fed. R. Civ. P. 16(c)—Plaintiff never mentioned his motions *in limine*.  Rather, on February 1, 2021—the same day the parties' Joint Pretrial Statement and motions *in limine* were due—Plaintiff's counsel, Ingrid Evans, informed PwC for the first time that Plaintiff would be filing motions *in limine* later that day.  Reiter Decl., Ex. A.  When PwC's counsel noted Plaintiff's failure to meet and confer and asked Ms. Evans to at least generally describe what evidence Plaintiff was seeking to exclude, Ms. Evans refused and accused PwC of not meeting and conferring on its own motions.  *Id.*  After PwC's counsel responded, attaching email chains demonstrating that PwC had met and conferred at length, Plaintiff's lead counsel, Alex Cabeceiras, wrote to Ms. Evans, "***Don't even answer.  F\*ck this guy***."[1]  *Id.*  (emphasis added).

Had Plaintiff met and conferred, the parties could have narrowed or potentially avoided several motions altogether, such as Plaintiff's Motions No. 5 and 6.[2]  But as

---

[1] Mr. Cabeceiras inadvertently sent this message to PwC's counsel.

[2] PwC does not oppose Plaintiff's Motion *In Limine* No. 5, to the extent it seeks to (Continued...)

1   Mr. Cabeceiras's email shows, Plaintiff intentionally refused to do so.  The Court has

2   discretion to impose sanctions, including denying Plaintiff's motions, under these

3   circumstances.  *See* Fed. R. Civ. P. 16(f); *J & J Sports Prods., Inc. v. Jernegan*, 2013

4   WL 450382, at *1 (N.D. Cal. Feb. 5, 2013) (denying motion for failure to meet and

5   confer); *In Re First Franklin Fin. Corp. Litig.*, 2010 WL 961649, at *1 (N.D. Cal. Mar.

6   16, 2010) ("[P]laintiffs' failure to meet and confer before filing the instant motion is

7   sufficient grounds to deny their motion to compel."); *Carter v. United States Dep't of

8   Justice*, 2018 WL 4181904, at *2 (N.D. Cal. Aug. 31, 2018) ("[T]he meet-and-confer

9   requirement is essential to ensure that there is, in fact, a dispute requiring judicial

10  intervention, and to conserve the limited time and resources of the Court and the parties

11  by obviating the filing of unnecessary motions.").

12      In any event, even if Plaintiff could overcome the above deficiencies, each of

13  his motions would still fail for numerous additional reasons:

14      <u>MIL No. 1</u>.  Plaintiff seeks to exclude reference to the numerous complaints

15  against PwC that Plaintiff lodged with various investigative bodies and watch-dog

16  agencies.  But Plaintiff's complaints include the same allegations he asserts now in

17  this litigation.  *See Tate v. City of Chicago*, 2020 WL 4437853, at *3 (N.D. Ill. Aug.

18  3, 2020) (plaintiff's statements "about the subject matter that is at the very heart of this

19  litigation [are] clearly relevant to the claims and defenses in this case").  Moreover,

20  Plaintiff's complaints and his dogged pursuit of them evidence his true motivations

21  and the origins of his lawsuit—a self-described retaliatory "crusade" against the entire

22  auditing industry and express desire to "blow up" auditing firms like PwC.  And the

23  fact that *none* of these entities—including the Securities and Exchange Commission

24

25  _____

26  prevent PwC from introducing evidence for the purpose of establishing Plaintiff's
    support for and affiliation with former President Donald J. Trump.  PwC reserves the

27  right, however, to introduce evidence that mentions Plaintiff's affiliation with
    President Trump but is nonetheless relevant for a different, legitimate purpose.  In

28  addition, as discussed further below, PwC proposes a stipulation to resolve Plaintiff's
    Motion *In Limine* No. 6.

("SEC"), Public Company Accounting Oversight Board ("PCAOB"), or California Board of Accountancy—took any action against PwC is highly relevant to show that Plaintiff's allegations are not objectively reasonable. *See, e.g.*, *Smilovits v. First Solar, Inc.*, 2019 WL 6698199, at *3 (D. Ariz. Dec. 9, 2019) (holding jury could consider lack of SEC enforcement action "in deciding whether Defendants made material misstatements").

MIL No. 2.  Plaintiff seeks to exclude evidence that the SEC, after a thorough investigation of Plaintiff's complaint, did not take enforcement action against PwC. But the SEC's independent review and lack of enforcement action are relevant to show that Plaintiff's whistleblower allegations were not objectively reasonable, which he concedes is an element of his whistleblower claims.  *See, e.g.*, *id.*; *United States v. Gluk*, 831 F.3d 608, 616 (5th Cir. 2016) ("The jury was entitled to know that the SEC conducted an investigation . . . [and] that, after conducting this investigation, the SEC chose to 'not allege that [defendants] participated in the wrongful conduct."); *Abrams v. Van Kampen Funds, Inc.*, 2005 WL 88973, at *21 (N.D. Ill. Jan. 13, 2005) ("The SEC letters are analogous to having another expert's testimony regarding such ultimate issues, but an expert who is not biased by being connected to a particular party."); Dkt. 143 at 5:27–6:1.  Moreover, to the extent Plaintiff argues, as he did at summary judgment, that PwC should have taken action besides terminating him (*e.g.*, disciplined other employees), the SEC's lack of enforcement action is relevant to PwC's decision-making process.

MIL No. 3.  After PwC terminated his employment, Plaintiff bounced from one auditing firm to the next.  Plaintiff now seeks to exclude evidence regarding his conduct while working at these other firms, including his performance, alleged complaints he made, and the very reasons why his employment ended.  All such evidence, however, is directly relevant to Plaintiff's failure to mitigate his alleged damages (lost wages in particular). *Stanchfield v. Hamer Toyota Inc.*, 37 Cal. App. 4th 1495, 1502–03 (1995) ("[I]t is manifest that a jury, in deciding the reasonableness

- 4 -

of a wrongfully discharged employee's efforts to mitigate damages, may properly take into account that employee's failure to retain comparable employment once it has been secured."). Plaintiff's complaints about his subsequent employers are also relevant to his credibility and his motive and plan to "blow up" the industry. *See Frazier v. Bed Bath & Beyond, Inc*., 2011 WL 5854601, at *1 (N.D. Cal. Nov. 21, 2011) (evidence regarding the plaintiff's conduct at his subsequent employers could be relevant to the plaintiff's "motive, opportunity, intent, preparation, plan, knowledge").

MIL No. 4. Plaintiff seeks to exclude broadly all reference to his "personal writing[s] (in any form)." Dkt. 143 at 12. But the Federal Rules of Evidence provide for the exact opposite result: a party's personal writings constitute admissions and are presumptively *admissible*. *See* Fed. R. Evid. 801(d). Here, Plaintiff's writings exhaustively catalogue his "battles" with PwC, his animosity toward PwC, and his "personal project" to destroy PwC. *See, e.g.*, DX 1630-37. Because these writings evidence Plaintiff's motives and undermine his credibility they are relevant and admissible. *See, e.g., McDowell v. Seaboard Farms of Athens, Inc.*, 1996 WL 684140, at *8 (M.D. Fla. Nov. 4, 1996) ("In both civil and criminal cases, courts have found diary entries to be admissible evidence.").

MIL No. 6. Before terminating Plaintiff for misconduct, PwC implemented its "Friends of the Firm" program, pursuant to which PwC informed Plaintiff and over 140 other Senior Managers that they would not make partner and encouraged them to find new employment. Plaintiff now seeks to exclude all evidence concerning that program and his inclusion in it. But Plaintiff previously sought lost wages in this case based on his speculative assumption that he would have made partner at PwC (*i.e.*, the difference between a PwC partner salary and his current salary). *See Evanow v. M/V Neptune*, 163 F.3d 1108, 1117 (9th Cir. 1998) (holding that a district court did not err in admitting evidence relevant to damages). Plaintiff has also argued that PwC retaliated against him in ways other than his termination, including negative performance reviews. Plaintiff cannot have it both ways. If he seeks damages based

- 5 -

on a partner salary or argues that PwC retaliated against him for reasons related to his performance, PwC is entitled to demonstrate Plaintiff's standing at the firm and his future career prospects, which the Friends of the Firm Program addressed. Accordingly, PwC will agree to exclude evidence of the Friends of the Firm Program if Plaintiff agrees that (1) he will not seek any damages (economic or non-economic) based on his inclusion in the Friends of the Firm Program; (2) he will not seek any damages based on his assertions that he would have received a promotion at PwC but for his termination, and (3) his termination from PwC is the only alleged adverse employment action at issue in this case.

MIL No. 7.  Plaintiff asks the Court to exclude all expert testimony from Jason S. Flemmons, the former Deputy Chief Accountant of the SEC's Division of Enforcement.  Plaintiff does not challenge Mr. Flemmons's methodology or qualifications, but instead argues that his expert opinions are not relevant to any issue in this case.  Plaintiff concedes, however, that he cannot prevail on any of his whistleblower claims unless he proves that he had an objectively reasonable belief that PwC violated some law.  Dkt. 143 at 5:27–6:1.  Mr. Flemmons's testimony will address this exact element and establish, among other things, that Plaintiff's asserted beliefs were not objectively reasonable.  *See Day v. Staples, Inc.*, 555 F.3d 42, 57 (1st Cir. 2009) (dismissing a SOX whistleblower claim because the plaintiff's belief of a legal violation was not "objectively unreasonable"); DX 1701.

For these reasons, and those discussed below, the Court should deny all of Plaintiff's motions.

## II.   DISCUSSION

### A.   MIL No. 1:  Plaintiff's Complaints to Government Entities About PwC are Relevant to His Claims and Credibility

In a November 2016 whistleblower complaint to the SEC, Plaintiff accused PwC of unethical conduct in connection with certain audits.  After conducting a full investigation of Plaintiff's allegations—including reviewing audit documentation and

interviewing witnesses—the SEC brought no enforcement action.  Plaintiff appealed this decision to the SEC Office of Inspector General, but the SEC declined to pursue the matter further.

Plaintiff then submitted numerous complaints concerning the same issues to the FBI, the PCAOB, the County of Santa Clara District Attorney, the California Department of Fair Employment and Housing, the California Department of Justice, the U.S. Department of Labor, U.S. Senator Elizabeth Warren's Office, U.S. Senator Dianne Feinstein's Office, and former U.S. Senator Kamala Harris's Office.[3]  Plaintiff doggedly pursued these complaints, sending frequent follow up-emails, suggestions, and critiques to the investigators.  Despite Plaintiff's persistence, none of these entities has taken any actions against PwC.

All of these complaints and efforts to malign PwC were a part of Plaintiff's self-described "crusade" against PwC and the auditing industry at large.  DX 1539, 1692. Plaintiff continued his crusade after his termination from PwC, writing to his friends that the entire auditing industry is corrupt, that he is "one man against an entire system," and that his goal is to "blow up" auditing firms in the Silicon Valley.  DX 1539; DX 1692-3–4; DX 1649 at 278:16–25.

Plaintiff now seeks to exclude broadly any reference to his "interactions" with these regulators and government entities.  Dkt. 143 at 9.  Plaintiff's contentions fail for three independent reasons.

*First*, Plaintiff's basis for excluding this evidence—that it will "confuse the factfinder," Dkt. 143 at 9—is inapplicable in the context of a bench trial.  *Supra* at 1.

*Second*, Plaintiff has not come close to meeting his burden of establishing that the evidence at issue "is not admissible for any purpose."  *Cooper*, 2011 WL 13305449, at *1.  Plaintiff neither provides any detail about his "interactions" with the

---

[3] Plaintiff also petitioned to testify before Congress about his beliefs regarding widespread regulatory failings and corruption.

government entities discussed above, nor identifies the specific evidence he seeks to exclude.   Dkt. 143 at 8–9.   Plaintiff has thus failed to "provide[] the Court with sufficient context to evaluate" his request.  *Dillon*, 2008 WL 11357991, at *5.

*Third*, Plaintiff's "communications, reports, and/or complaints regarding [PwC]," Dkt. 143 at 8, are highly probative of the issues that the Court will  decide at trial:

- Plaintiff's "complaints" are "about the subject matter that is at the very heart of this litigation [and are] clearly relevant to the claims and defenses in this case." *Tate v. City of Chicago*, 2020 WL 4437853, at *3 (N.D. Ill. Aug. 3, 2020).

- Plaintiff's obsessive pursuit of PwC illustrates his retaliatory "crusade" against PwC and the auditing industry at large. *See* Dkt. 148-7 at 2–3 ("my crusade [is] killing me . . . how many firms must I blow up before someone listens to me").  Plaintiff's crusade demonstrates his true motivations for this lawsuit and that he is not a *bona fide* whistleblower, but rather someone who seeks to "blow up" the auditing industry. *See* Fed. R. Evid. 404(b).

- Plaintiff's refusal to accept the decisions of the regulators he complained to evidences his habitual inability to accept a decision he does not agree with.  *See* Fed. R. Evid. 406.  PwC will show at trial that this same proclivity plagued Plaintiff's tenure at PwC. *See* PwC's Proposed Findings of Fact and Conclusions of Law ("PFFCL") at 11–14.

- To prove his whistleblower claims, Plaintiff must show that he held an objectively reasonable belief that PwC engaged in illegal conduct. *Nazif v. Computer Scis. Corp.*, 2015 WL 3776892, at *5 (N.D. Cal. June 17, 2015). After Plaintiff complained to these various entities, *none* took action against PwC.  This unanimous rejection of Plaintiff's complaints is relevant to show that his allegations are not objectively reasonable. *See, e.g., Smilovits v. First Solar, Inc.*, 2019 WL 6698199, at *3 (D. Ariz. Dec. 9,

2019) (holding jury could consider lack of SEC enforcement action "in deciding whether Defendants made material misstatements").; *United States v. Gluk*, 831 F.3d 608, 616 (5th Cir. 2016) ("The jury was entitled to know that the SEC conducted an investigation . . . [and]  that, after conducting this investigation, the SEC chose to 'not allege that [defendants] participated in the wrongful conduct.").

- One of the remedies Plaintiff requests in this action is reinstatement to his former position at PwC.  But courts do not award reinstatement when "hostility [and] antagonism between the parties renders [it] practically infeasible." *Teutscher v. Woodson*, 835 F.3d 936, 951 (9th Cir. 2016).  Plaintiff's numerous, meritless complaints against PwC evidences such hostility and antagonism, rendering reinstatement improper.

For all these reasons, Plaintiff's complaints about PwC are relevant and admissible at trial.

## B.    MIL No. 2:  The SEC's Decision Not to Take Action Against PwC After a Thorough Investigation Undermines Plaintiff's Claims

Plaintiff seeks to exclude any reference to the SEC's decision not to bring an enforcement action against PwC after investigating Plaintiff's claims.  Critically, Plaintiff does not dispute that the SEC's investigation is relevant.  Instead, he contends that "inclusion of the actual findings of the SEC investigation would produce a substantial threat of confusion and would severely prejudice the Mauro [sic], as contemplated by Federal Rule of Civil Procedure [sic] 403."   Dkt. 143 at 10.  For the reasons discussed above, this is not an appropriate ground for excluding evidence at a bench trial. *See supra* at 1; *United States v. De Anda*, 2019 WL 2863602, at *4 (N.D. Cal. July 2, 2019) ("[E]xcluding relevant evidence on the basis of unfair prejudice has no logical application to bench trials and is a useless procedure.").

1    Regardless, evidence regarding the SEC's investigation and ultimate decision is
2    admissible under governing precedent.  Contrary to the cases Plaintiff cites,[4] the Ninth
3    Circuit has explained that decisions made "by professional investigators on behalf of
4    an impartial agency [are] a highly probative evaluation of an individual's
5    discrimination complaint."  *Plummer v. W. Int'l Hotels Co.*, 656 F.2d 502, 505 (9th
6    Cir. 1981).  In fact, the Ninth Circuit has held that it is "*reversible error*" to exclude
7    such decisions.  *Heyne v. Caruso*, 69 F.3d 1475, 1483 (9th Cir. 1995) (emphasis
8    added).

9    In response, Plaintiff contends that the SEC's decision is inadmissible because
10   he does not need to prove that his complaint was "substantiated by the findings of an
11   investigative agency."  Dkt. 143 at 10.  That argument misses the point.  Although
12   Plaintiff may not need to prove that PwC violated the law, even he concedes that he
13   must have had an "objectively reasonable" belief that PwC's conduct was illegal.  Dkt.
14   143 at 5:27–6:1; *see also Nazif*, 2015 WL 3776892, at *5.  The SEC is the independent
15   expert agency charged with investigating the allegations that Plaintiff made in his
16   complaint.  The SEC's independent, expert determination not to take enforcement
17   action after thoroughly investigating Plaintiff's allegations is probative evidence of
18   whether Plaintiff's allegations are objectively reasonable.  *See, e.g.*, *Smilovits*, 2019
19   WL 6698199, at *3; *Gluk*, 831 F.3d at 616; *Abrams v. Van Kampen Funds, Inc.*, 2005
20   WL 88973, at *21 (N.D. Ill. Jan. 13, 2005) ("The SEC letters are analogous to having
21   another expert's testimony regarding such ultimate issues, but an expert who is not
22   biased by being connected to a particular party.").

23

24

25   [4] For example, Plaintiff cites *Paolitto v. Brown E.&C. Inc.*, 151 F.3d 60 (2d Cir. 1998)
26   for the proposition that "[f]ederal courts routinely exclude investigative findings and
     determinations of administrative bodies as more prejudicial than probative."  Dkt. 143
27   at 10.  But in *Paolitto*, the Second Circuit explicitly declined to follow "decisions of
     the . . . Ninth Circuit[.]"  151 F. 3d at 65.  In any event, *Paolitto* recognizes the
28   probative value of administrative investigations, and merely found that the district
     court had not abused its discretion in excluding such a report.  *Id.* at 65–66.

Separately, the SEC's lack of enforcement action is factually relevant for other reasons.  PwC terminated Plaintiff's employment because he admitted twice that he had fabricated a control and falsified audit documentation in connection with PwC's audit of Cavium, Inc.  Dkt. 100-3.  At summary judgment, Plaintiff requested "an inference of retaliatory motive" because "no other PwC employee was terminated or otherwise disciplined for their role in the Cavium audit."  Dkt. 88-32 at 23.  But the SEC exhaustively investigated the Cavium audit and did not take any action against PwC or any PwC employees.  *See* PFFCL at 24.  As PwC will explain more fully at trial, the SEC's closure of its investigation is relevant to PwC's decision making with respect to other employees, and the undisputed fact that PwC had no evidence any other employee had engaged in the same type of misconduct as Plaintiff.  *See Smith v. Safeway Corp.*, 1999 WL 778202, *4 (N.D. Cal. Sept. 27, 1999) (rejecting plaintiff's disparate-treatment argument because the employer's "investigator concluded that [the employees who were not terminated] had not engaged in the [same] type" of misconduct as plaintiff).

## C.    MIL No. 3: Evidence of Plaintiff's Conduct at His Subsequent Employers is Relevant to his Alleged Damages and Credibility

Shortly before PwC terminated Plaintiff for misconduct, he accepted an offer to join another auditing firm, Armanino LLP, where he earned the same salary as at PwC, received the same benefits, and had a full opportunity to mitigate all of his alleged economic damages. DX 1047-11–13.  Nevertheless, Plaintiff abruptly resigned from Armanino only four months after starting his new job, after alleging that his co-workers had engaged in unethical behavior.  DX 1649 at 264:16–19.  As Plaintiff told his friends, he resigned because his "idea of audit is probably too utopia to find it in reality," "had [he] kept going [he would] have be (sic) always unhappy," and that he "blew up Armanino in less than two months."  DX 1539; DX 1692-3–4.  Consistent with his conduct at PwC, Plaintiff also filed a complaint against Armanino with the California Board of Accountancy.  DX 1631.

1    After leaving Armanino, Plaintiff joined an accounting and advisory firm named

2  SOAProjects, Inc.  On May 23, 2019, Plaintiff's employment at SOAProjects ended

3  after the firm evaluated his performance and concluded that he had a number of

4  behavioral and interpersonal issues, which, just like Plaintiff's performance issues

5  documented at PwC, had an "adverse effect on the overall [] work environment,"

6  "resulted in a noticeable loss of trust with team members," and "irreparably harmed

7  the collaborative work environment."  DX 1583; DX 1584.  Such issues were due, at

8  least in part, to Plaintiff continuing the pattern he began at PwC of labeling those who

9  disagreed with him as "incompetent" or unethical.  As Plaintiff admitted in his

10  deposition, for example, Plaintiff thought that his supervisor at SOAProjects was

11  "incompetent" and "[un]able to review [his] work."[5]  DX 1649 at 286:4-287:23.

12    Plaintiff now seeks to exclude all evidence pertaining to his conduct at his

13  subsequent employers because, according to him, it "would only confuse the

14  factfinder" and is otherwise irrelevant.  These contentions are meritless.

15    *First*, as discussed above, Plaintiff's objection that PwC's evidence would

16  "confuse the factfinder" is inapplicable in a bench trial.  *Supra at* 1.

17    *Second*, evidence concerning Plaintiff's departures from his subsequent

18  employers, and the reasons for those departures, is directly relevant to rebut Plaintiff's

19  claim that PwC's termination of his employment caused him economic damages.

20  Indeed, because Plaintiff failed to maintain employment at Armanino and

21  SOAProjects due to his own actions—and not anything PwC did—he cannot recover

22  any economic damages.  *See, e.g.*, *Gragossian v. Cardinal Health Inc.*, 2008 WL

23  11387063, at *4 (S.D. Cal. July 21, 2008) ("Plaintiff's claim for economic damages

24  places records reflecting her . . . wages, benefits, duties, attendance records,

---

[5]  After Plaintiff's departure from SOAProjects, he obtained employment at an accounting and advisory services firm named RoseRyan, which he left less than a year later.  Plaintiff now works as an "Accounting/Controller" at a company called Engine Room Services, Inc.

performance evaluations and records of disciplinary action at issue."); *Stanchfield v. Hamer Toyota Inc.*, 37 Cal. App. 4th 1495, 1502–03 (1995) ("[I]t is manifest that a jury, in deciding the reasonableness of a wrongfully discharged employee's efforts to mitigate damages, may properly take into account that employee's failure to retain comparable employment once it has been secured.").

*Third*, Plaintiff's conduct at his subsequent employers shows that he is not a *bona fide* whistleblower.  The fact that Plaintiff continued the "crusade" discussed above at Armanino and SOAProjects shows that his complaints about PwC were not legitimate and were instead part of the same motive and plan to "blow up" all auditing firms in the Silicon Valley, apparently due to his frustrations with the industry.  *See, e.g.*, *Frazier v. Bed Bath & Beyond, Inc.*, 2011 WL 5854601, at *1 (N.D. Cal. Nov. 21, 2011) (holding in an employment case where the plaintiff made similar discrimination claims against multiple employers that personnel files from those employers were relevant to the plaintiff's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident").  The evidence presented at trial will demonstrate that Plaintiff is the problem—not his employers.

*Fourth*, Plaintiff's conduct at his subsequent employers evidences his habitual tendency to label those who disagree with him as "incompetent."  Evidence of this habit undermines Plaintiff's central claim that PwC failed to document material weaknesses in the internal controls of its clients based on the purported "incompetence" of those clients accounting departments.  *See* PFFCL at 16–21; *see Frazier*, 2011 WL 5854601, at *1 (holding that evidence of habit in the personnel files of a subsequent employer is relevant); *see also* Fed. R. Evid. 406 (evidence of habit is admissible).

*Fifth*, evidence concerning Plaintiff's performance issues at his subsequent employers is relevant to Plaintiff's credibility.  It is undisputed that PwC gave Plaintiff negative performance reviews and removed him from multiple audits.  Despite this, Plaintiff claims that he had no performance issues while working at PwC.   Evidence

that Plaintiff exhibited the same behavioral problems at Armanino and SOAProjects as those that PwC documented rebuts his allegation.  *Kellgren v. Petco Animal Supplies, Inc.*, 2015 WL 11237636, at *3 (S.D. Cal. Apr. 10, 2015) (holding in an employment case against a former employer that performance evaluations and disciplinary records from the plaintiff's current employer were relevant to the employee's credibility).[6]

*Finally*, the evidence at issue is relevant to rebut Plaintiff's allegations of emotional distress.  As PwC will show at trial, Plaintiff has experienced no cognizable emotional distress as a result of his termination from PwC.  *See* PFFCL at 26.   To the extent Plaintiff suffered any distress, it was due to his "crusade" against the auditing industry—including Armanino and SOAProjects—and not any actions PwC took against him.  In fact, Plaintiff has admitted in writing that his "crusade" is "killing [him]," that he is "going insane," and that he feels "very totally empty" as a result.  DX 1641.

### D.      MIL No. 4:  Plaintiff's "Personal Writings" About PwC are Relevant to His Claims and Credibility

Plaintiff seeks to exclude all references to his "personal diary, books, novel, journals, or other personal writing (in any form)."  Dkt. 143 at 12.  Plaintiff does not specifically identify the "personal writings" that he contends are irrelevant.  *Id.*  Nor does he otherwise describe the contents of these "personal writings."  *Id.*  Because

---

[6] Plaintiff cites *Ernst v. HB Aspen, Inc.*, 2008 WL 11337009, at *5 (C.D. Cal. Feb. 4, 2008), for the proposition that evidence concerning his performance issues at his subsequent employers is irrelevant.  However, the court in *Ernst admitted* the very evidence Plaintiff seeks to exclude because of its relevance to the employee's damages claims.  *Ernst*, 2008 WL 11337009, at *6-7.  And although the court noted that the evidence would not be admissible for the purpose of showing that the employee exhibited the same behavioral issues while employed for the defendant, it based its reasoning, in large part, on the danger that "later conduct might well confuse the jury and prejudice [the plaintiff] by inviting the jury to draw improper conclusions."  *Id.* at *5–6.  As already explained, such dangers are indisputably not present here.

Plaintiff fails to provide any context for his sweeping request, Plaintiff cannot carry his burden on this motion. *See supra* at 1; *Dillon*, 2008 WL 11357991, at *5.

Regardless, under the Federal Rules of Evidence, a party's personal writings are presumptively *admissible*. *See* Fed. R. Evid. 801, advisory committee notes ("A party's own statement is the classic example of an admission.").  And the fact that these documents reflect Plaintiff's "own words" makes them only more probative. *See, e.g., United States v. Amirnazmi*, 648 F. Supp. 2d 718, 725 (E.D. Pa. 2009) ("[T]he probative value of this letter was magnified . . . especially given that the letter is in Defendant's own words.")  Indeed, courts recognize that journals and diaries—written contemporaneously and with no filter—are admissible on numerous grounds. *See McDowell v. Seaboard Farms of Athens, Inc.*, 1996 WL 684140, at *8 (M.D. Fla. Nov. 4, 1996) (listing cases and noting that "Plaintiff's diary evidence" was "central to his allegations of racial discrimination" and "theoretically could be admitted in accordance with various Federal Rules of Evidence"); *see also United States v. Endacott*, 479 Fed. Appx. 779, 780 (9th Cir. 2012) (affirming decision to admit party's "journal entries" "because they were probative of [his] state of mind").

Here, Plaintiff's personal writings provide a contemporaneous, first-hand account of his tenure at PwC and describe many of the events central to this litigation. In fact, Plaintiff produced a *40-page* document compiling "Section[s] of Plaintiff's Draft Book in which [PwC is] mentioned, alluded, or referred to."  DX 1630.  In his draft "book," Plaintiff explained his reasons for filing his SEC complaint.  Referring to PwC as a "mafia," Plaintiff wrote about his "battles" against PwC.  DX 1630-37. "In an effort to find a solution to" his "problems," Plaintiff developed a "personal project [he] baptized as 'Genesis' in *Star Trek's* honor."  *Id*.  "Project Genesis" apparently refers to a *Star Trek* device capable of causing a "genetic explosion that would reduce the surface of a planet to its elementary particles."[7]  At the time Plaintiff

[7]  *See* http://www.startrek.com/database_article/project-genesis.

1  was drafting the SEC Complaint, he admitted in writing that "Project Genesis," *i.e.*,

2  his desire to destroy PwC, was his "only reason" for continuing to work at PwC.

3  Ex. 1.

4       All of these "personal writings" about PwC are highly relevant to Plaintiff's

5  credibility, motivation, and state of mind.  Plaintiff's motion should be denied.  *See*

6  *Frazier*, 2011 WL 5854601, at *1.

7       **E.**    **MIL No. 6: Evidence Concerning PwC's Friends of the Firm**

8                **Program Is Relevant to Plaintiff's Alleged Damages and Claims**

9       On June 21, 2017, less than two months before PwC terminated Plaintiff for

10  serious misconduct, *see* PFFCL at 21–23, PwC informed Plaintiff that he would not

11  make partner at the firm.  PwC did so pursuant to its "Friends of the Firm" program,

12  which identified more than 140 Senior Managers with at least five years of experience

13  who were "not in the partner pipeline." Ex. 2 at 27:6–15; DX 1200.  The

14  underperforming Senior Managers who PwC included in the program—including

15  Plaintiff—were encouraged to find new employment, but the timing was flexible.  Ex.

16  2 at 29:23–30:18; Ex. 3 at 71:5–73:19.

17       PwC had determined that Plaintiff would not make partner long before his

18  inclusion in the Friends of the Firm program.  In 2011, Plaintiff admitted that his career

19  coach said Plaintiff had "no chance of becoming a partner."  DX 1107 (stating that

20  Plaintiff needed to improve in several areas before being considered for partner).

21  Plaintiff later acknowledged in March 2013 that his chances at partnership had "pretty

22  much been discounted at this point."  DX 1052.  And in October 2014, PwC updated

23  Plaintiff's internal employment file to specify that Plaintiff was not and never had been

24  in PwC's partnership pipeline.  DX 1590-7 (updated to "Non pipeline").

25       Plaintiff now argues that because he was ultimately terminated for his

26  misconduct, and not pursuant to the Friends of the Firm program, evidence concerning

27  his inclusion in that program "would confuse the issue for the finder of fact, would be

28

irrelevant to PwC's defense, and will unfairly prejudice [him]." Dkt. 143 at 11. Plaintiff's contention fails for three reasons.

*First*, Plaintiff cannot prevail on arguments that this evidence would purportedly "confuse" this Court or "unfairly prejudice" Plaintiff. *Supra* at 1.

*Second*, Plaintiff has claimed damages based on his inclusion in the Friends of the Firm program and the theory that he would have made partner at PwC but for his termination. DX 1595-6 (stating that Plaintiff began suffering emotional distress in June 2017). Evidence concerning the Friends of Firm program will squarely rebut these contentions, including by demonstrating that Plaintiff's inclusion in the program had nothing to do with his alleged whistleblowing and that Plaintiff was never a candidate for PwC partner. *See Cantu v. United States*, 2015 WL 4720580, at *35 (C.D. Cal. Aug. 7, 2015) (declining to award damages for future lost wages after a bench trial because "[the plaintiff's] assertions that he has 'missed out on th[e] opportunity' for elevation to foreman status because of his injuries from the accident . . . are speculative and not properly awarded as damages"). This evidence is relevant for this reason alone.

*Third*, Plaintiff has alleged that PwC retaliated against him not only by terminating him but also by giving him negative performance reviews and taking him off audits. Dkt. 141 at 3:8–17. Evidence regarding the reasons for Plaintiff's inclusion in its Friends of the Firm program will show that these allegations are false. Indeed, PwC gave Plaintiff negative feedback and removed him from multiple audits because of his pervasive performance issues and behavioral problems that PwC had documented well before Plaintiff's alleged whistleblowing.

Although the Friends of the Firm program is unquestionably relevant to Plaintiff's alleged damages and retaliation claims, PwC can agree to exclude it from trial as long as Plaintiff stipulates that (1) he will not seek any damages (economic or non-economic) based on his inclusion in the Friends of the Firm Program; (2) he will not seek any damages based on a theory that he would have received a promotion but

for his termination from PwC; and (3) his termination is the only alleged adverse employment action or unfavorable personnel action at issue in this case.

**F.     MIL No. 7: Jason S. Flemmons's Expert Testimony Demonstrates that Plaintiff Did Not Engage in Protected Activity**

As Plaintiff himself recognizes, to prevail on any of his whistleblower claims, he must show that he reasonably believed PwC violated some law.  *See* Dkt. 143 at 13-14; *see also* 18 U.S.C. 1514A(a)(1); Labor Code § 1102.5(b).  Plaintiff's burden is particularly high on his SOX claim, as it requires a reasonable belief that PwC engaged in shareholder fraud.  *Nazif v. Computer Scis. Corp.*, 2015 WL 3776892, at *5–6 (N.D. Cal. June 17, 2015).   Because this standard has both subjective and objective components, Plaintiff must prove that (i) he, in fact, believed that PwC engaged in illegal activity and (ii) "a reasonable person in the same factual circumstances with the same training and experience" would have believed the same.  *Erhart v. BofI Holding, Inc.*, 269 F. Supp. 3d 1059, 1072 (S.D. Cal. 2017).

Although Plaintiff has not identified the law or regulation that he supposedly believed PwC violated, he appears to claim that PwC failed to comply with some unidentified auditing and accounting standards in connection with the audits described in his complaint.  At trial, PwC will demonstrate that these allegations are false because (i) Plaintiff did not actually believe PwC violated any professional standards since he contemporaneously signed off on all of the audits at issue, and (ii) no reasonable auditor would have believed that PwC did anything wrong.  *See* PFFCL at 16–21.  To support both of these contentions, PwC will present the expert testimony of the former Deputy Chief Accountant of the SEC's Division of Enforcement, Jason S. Flemmons. *See* DX 1701.

Plaintiff now seeks to exclude Mr. Flemmons's testimony on relevance grounds. Although Plaintiff's logic is difficult to follow, he appears to claim that because he is not required to show that his alleged reasonable belief of securities fraud was correct,

Mr. Flemmons's testimony will not add any probative value to any element of his claim.  Plaintiff is incorrect for two reasons.

*First*, Mr. Flemmons will demonstrate that no reasonable auditor with Plaintiff's training and experience could have concluded that PwC violated any auditing or accounting standards in connection with the audits at issue (let alone engaged in shareholder fraud).  *See* DX 1701.  For this reason alone, Mr. Flemmons's testimony is directly relevant to rebut Plaintiff's whistleblower claims.  *See, e.g.*, *Westawski v. Merck & Co.*, 215 F. Supp. 3d 412, 429 (E.D. Pa. 2016) (dismissing a SOX whistleblower claim because "[e]ven if the Plaintiff had a subjective belief that Merck's conduct constituted wire fraud, such a belief was not objectively reasonable and it is not protected under the Act"); *Day v. Staples, Inc.*, 555 F.3d 42, 57 (1st Cir. 2009) (dismissing a SOX whistleblower claim because the plaintiff's belief of a legal violation was not "objectively unreasonable").

*Second*, Mr. Flemmons's testimony will help establish that Plaintiff did not subjectively believe that PwC did anything wrong because he had signed off on all of the audits that he now challenges as improper.  As Mr. Flemmons will explain, professional auditing standards required Plaintiff to document any concerns he may have had regarding PwC's audits and prohibited him from signing off on those audits if he actually believed there was any non-compliance with the law.  *See* DX 1701. Given these requirements, Plaintiff's express agreement with the conclusions of the audits demonstrates that he is not a good-faith whistleblower.  *See, e.g.*, *Nance v. Time Warner Cable, Inc.*, 433 Fed. Appx. 502, 504 (9th Cir. 2011) (affirming dismissal of SOX claim where plaintiff certified in a letter that "he did not believe [] there had been any fraudulent activity").

For these reasons, Mr. Flemmons's testimony is relevant to one the most central issues in this case and is therefore admissible.

## III.    CONCLUSION

All of Plaintiff's motions *in limine* should be denied because they rest on objections that have no place in a bench trial, are not sufficiently tailored to specific evidence, and were filed in disregard of the Court's meet-and-confer requirements. Regardless, Plaintiff's motions fail because they seek to exclude evidence directly relevant to Plaintiff's liability claims, credibility, and alleged damages.

Dated: February 8, 2021                    HUESTON HENNIGAN LLP


By:   */s/ John C. Hueston*
John C. Hueston
Moez M. Kaba
Joseph A. Reiter
Attorneys for Defendant