# DX1047

| | |
|---|---|
| **Message** | |
| **From**: | mauro.x.botta@us.pwc.com [mauro.x.botta@us.pwc.com] |
| **Sent**: | 8/8/2017 1:09:29 PM |
| **To**: | siskodlg@gmail.com |
| **Subject**: | Fw: HP MFP Scan to Email |
| **Attachments**: | _.png |

**Mauro Botta**

PwC | Senior Manager
Office: +1 408 464 5438
Email: mauro.x.botta@us.pwc.com
PricewaterhouseCoopers LLP
488 Almaden blvd suite 1800 San Jose CA 95110
http://www.pwc.com/us


----- Forwarded by Mauro Botta/US/ABAS/PwC on 08/08/2017 10:09 AM -----

From: "Message Server" <messageserver@uatlksmtpsmp001.nam.pwcinternal.com>
To: Mauro Botta/US/ABAS/PwC@Americas-US
Date: 08/08/2017 10:07 AM
Subject: HP MFP Scan to Email



ScannedDocument.PDF

The attached file was processed as requested.

Confidential
PwC_B00000264

**DX1047-1**

PROPRIETARY INFORMATION AND INVENTIONS AGREEMENT

As an employee of **Armanino LLP** ("Company"), and in consideration of my offer of employment and compensation previously and hereafter paid to me, I agree to the following:

1. MAINTAIN CONFIDENTIAL INFORMATION

(a) <u>Company Information</u>. During my employment, I will have access to, will acquaint and become acquainted with various trade secrets, confidential and proprietary information relating to the Company's business, and business of its subsidiaries, parent company, affiliates, successors or assigns (together "Affiliated Entities"), including but not limited to: customer, supplier, and distributor lists, contacts, addresses, training manuals and procedures, recruitment method and procedures, recruitment and distribution techniques, business plans and projections, employee handbooks, information about customers and suppliers, price lists, marketing, costs and expenses, documents, budgets, proposals, financial information, inventions, patterns, processes, formulas, data bases, know how, ideas, developments, experiments, improvements, computer programs, software, technology, manufacturing, engineering processes, designs, drawings, blue prints, specifications, tapes, and compilations of information, all of which are owned by the Company or its Affiliated Entities, other parties with which the Company or its Affiliated Entities do business ("Third Parties") or customers of the Company or its Affiliated Entities, and which are used in the operation of the Company's, Affiliated Entities', Third Parties' and/or a customer's business. I agree at all times during the term of my employment and thereafter to hold in strictest confidence, and not to use, except for the benefit of the Company, or to disclose directly or indirectly to any person, firm or corporation without written authorization of the Managing Partner of the Company, any trade secrets or confidential information. In addition, I understand "trade secret" or "confidential information" to mean all information concerning the Company, Affiliated Entities, Third Parties and/or customers (including but not limited to information regarding the particularities, preferences and manner of doing business) that is (i) not generally known to the public and (ii) cannot be discovered or replicated by a third party without substantial expense and effort. I understand that in the course of my employment, I will have access to confidential customer information that constitutes a trade secret as defined by law. I further understand that I can only use such confidential customer information for the benefit of the Company, and not for any other purpose, and if I misappropriate such confidential customer information, the Company may pursue legal action against me under any applicable laws.

(b) <u>Former Employer Information</u>. I agree that I will not and have not, during my employment with the Company, use or disclose any proprietary information or trade secrets of my former or concurrent employers or companies, if any, and that I will not bring onto the premises of the Company any unpublished documents or any property belonging to my former or concurrent employers or companies, if any, unless consented to in writing by such employers or companies.

(c) <u>Third Party Information</u>. I recognize that the Company and its Affiliated Entities have received and in the future will receive from Third Parties and customers their confidential or proprietary information subject to a duty on the Company and Affiliated Entities' part to maintain the confidentiality of such information and to use it only for certain limited purposes. I agree that I owe the Company, Affiliated Entities, and such Third Parties and customers, during the term of my employment and thereafter, a duty to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation (except as necessary in carrying out my work for the Company consistent with the Company's agreement with such third party) or to use it for the benefit of anyone other than for the Company, Affiliated Entity, or such Third Party or customer (consistent with the Company's agreement with such Third Party or customer) without the express written authorization of the **[President]** of the Company.

2.  ASSIGNING INVENTIONS AND ORIGINAL WORKS

(a) <u>Inventions And Original Works Retained and Licensed to The Company</u>. I have attached hereto as Exhibit A, a list describing all inventions, discoveries, original works of authorship, developments, improvements, and trade secrets which were conceived in whole or in part by me prior to my employment with the Company to which I have any right, title or interest, and which relate to the Company's proposed business, products, or research and development ("Excluded Inventions"); or, if no such list is attached, I represent and warrant that there are no such Excluded Inventions. Furthermore, I represent and warrant that the inclusion of any Excluded Inventions on Exhibit A of this Agreement will not materially affect my ability to perform all obligations under this Agreement. If, in the course of my employment with the Company, I incorporate into or use in connection with any product, process, service, technology or other work by or on behalf of Company and Excluded Invention, I hereby grant to the Company a nonexclusive, royalty-free, fully paid-up, irrevocable, perpetual, worldwide license, with the right to grant and authorize sublicenses, to make, have made, modify, use, import, offer for sale, and sell such Excluded Invention as part of or in connection with such product, process, service, technology or other work and to practice any method related thereto.

(b) <u>Inventions And Original Works Assigned To The Company</u>. I agree that I will promptly make full written disclosure to the Company, I will hold in trust for the sole right and benefit of the Company, and I hereby assign and transfer to the Company, or its designee, all my worldwide right, title, and interest in and to (1) any and all inventions, original works of authorship, developments, concepts, improvements, designs, discoveries, know-how, ideas, software, compositions of matter and trade secrets, whether or not patentable or registrable under patent, copyright or similar laws, which I may solely or jointly conceive, create, develop, reduce to practice or otherwise make (or cause to be conceived, created, developed, reduced to practice or made), during the entire period of time I am in the employ of the Company (including during my off-duty hours), or with the use of Company's equipment, supplies, facilities, or Company confidential information (collectively referred to as "Inventions"); (2) any and all trade secrets, patent rights, copyrights, moral rights, and other intellectual property rights anywhere in the world (collectively referred to as "Intellectual Property Rights") embodied in or related to such Inventions, except only the Excluded Inventions pursuant to Section 2(f) below. I further acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope of and during the period of my employment with the Company and which are protectable by copyright are "works made for hire," as that term is defined in the United States Copyright Act, and the Company will be considered the author and owner of such works. I understand and agree that the decision whether or not to commercialize or market any Inventions is within the Company's sole discretion and for the Company's sole benefit and that no royalty or other consideration will be due to me as a result of the Company's efforts to commercialize or market any such Inventions. Notwithstanding the above, I recognize that Section 2870 of the California Labor Code, as set forth in Exhibit B hereto, exempts from this provision any invention as to which I can prove the following:

(i) It was developed entirely on my own time; and

(ii) No equipment, supplies, facility or trade secret of the Company or Affiliated Entities was used in its development; and

(iii) It neither:

(1) relates at the time of its conception or reduction to practice to the business of the Company or to the Company's actual or demonstrably anticipated research and development; nor

    (2)  results from any work performed by me for the Company.

  (c)  Moral Rights. I assign to the Company all "moral rights" I may have in any Inventions, except as provided in 3(f) below. If and to the extent an assignment or transfer of any Moral Rights is not valid or enforceable under any applicable law, I grant the Company a worldwide, unlimited, royalty-free right and license in and to, and I hereby forever waive and agree never to assert, any and all Moral Rights I may have in or with respect to any Inventions even after termination of my employment or work on behalf of the Company, to the extent permitted under applicable law. "**Moral Rights**" mean any rights to attribution or claim authorship of a work of authorship, to object to or prevent the modification of any work of authorship, or to withdraw from circulation or control the publication or distribution of any work, and any similar right, existing under judicial or statutory law of any country or jurisdiction in the work, or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right."

  (d)  Maintenance of Records. I agree to keep and maintain adequate, accurate and current written records of all Inventions made by me (solely or jointly with others) during the term of my employment with the Company. The records will be in the form of notes, sketches, drawings, electronic files, reports and any other format that may be specified by the Company. Such records are and will be available to and remain the sole property of the Company at all times.

  (e)  Patent And Copyright Registrations. I agree to assist the Company, or its designee, and the Company's expense, in every proper way to secure the Company's rights in the Inventions and any rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which the Company shall deem proper or necessary in order to apply for, register, obtain, maintain, defend, and enforce such rights and in order to assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions and any rights relating thereto. I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of my employment. If the Company is unable because of my mental or physical incapacity or for any other reason to secure my signature with respect to any Inventions including, without limitation, to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering such Inventions, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any papers, oaths and to do all other lawfully permitted acts with respect to such Inventions with the same legal force and effect as if executed by me.

  (f)  Exception to Assignments. I understand that the provisions of this Agreement requiring assignment to the Company do not apply to any invention which qualifies fully under the provisions of Section 2870 of the California Labor Code, a copy of which is attached hereto as Exhibit B. I will advise the Company promptly in writing of any inventions, original works of authorship, developments, improvements or trade secrets that I believe meet the criteria in Subparagraphs 2(b)(i), (ii), and (iii) above; and I will at that time provide to the Company in writing all evidence necessary to substantiate that belief. I understand that the Company will keep in confidence and will not disclose to third parties without my consent any confidential information disclosed in writing to the Company relating to inventions that qualify fully under the provisions of Section 2870 of the California Labor Code.

  (g)  Immunity From Liability For Confidential Disclosure Of Trade Secret(s). Pursuant to the Defend Trade Secrets Act of 2016 (18 U.S.C. 1833(b)), I shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that is made in confidence either directly or indirectly to a Federal, State, or local government official, or to an attorney, solely for the purpose

Confidential                                      PwC_B00000267

**DX1047-4**

Federal or State trade secret law for the disclosure of a trade secret made in a complaint, or other document filed in a lawsuit or other proceeding, if such filing is made under seal. If I file a lawsuit alleging retaliation by the company for reporting a suspected violation of the law, I may disclose the trade secret to my attorney and use the trade secret in the court proceeding, so long as any document containing the trade secret is filed under seal and does not disclose the trade secret, except pursuant to court order. This paragraph will govern to the extent it may conflict with any other provision of this Agreement.

3. **CONFLICTING EMPLOYMENT**

I agree that, during my employment with the Company, I will devote full time to the business of the Company and will not directly or indirectly, engage, individually or as an officer, director, employee, consultant, advisor, partner or co-venturer, or as a stockholder or other proprietor owning more than a five percent (5%) interest in any firm, corporation, partnership or other organization (in case of any such ownership or participation) in the business of manufacturing, selling or distributing products in competition with the products and/or services of the Company or Affiliated Entities. I shall furnish to the Company a detailed statement of any outside employment or consulting services in which I seek to engage or invest, and, as from time to time requested by said Board, resubmit for approval a detailed statement thereof. In the event the Company determines in good faith that such violation or conflict exists, I shall refrain from such employment, consulting services or investment. It is intended and agreed that during the term of my employment, I will knowingly perform no act which may confer any competitive benefit or advantage upon any enterprise competing with the Company or Affiliated Entities.

4. **EMPLOYEE, AGENT, CONSULTANT OR CLIENT NONSOLICITATION**

I agree that during my employment and for a period of one (1) year after the termination of my employment for any reason, and where the Company has offices, I shall not induce or attempt to induce any employee, agent or consultant of the Company or Affiliated Entities to terminate his or her association with the Company or Affiliated Entities; and (ii) except as necessary to carry out my job duties while employed by the Company, I shall not directly call upon or solicit any of the clients of the Company or any Affiliated Entities that were or became clients or potential clients, and with whom I know of or developed a relationship during my employment with the Company (as used herein, "customer" shall mean any person or company as listed as such on the books of the Company or Affiliated Entities). The Company and I agree that the provisions of this Section 4 contain restrictions that are not greater than necessary to protect the interests of the Company. In the event of the breach or threatened breach by me of this Section 4, the parties, in addition to all other remedies available to it at law or in equity, will be entitled to seek injunctive relief and/or specific performance to enforce this Section 4.

5. **NO BREACH OF DUTY**

I represent that my performance of all the terms of this Agreement and as an employee of the Company does not, and to the best of my present knowledge and belief, will not breach any agreement or duty to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by the Company. I have not entered into, and I agree I will not enter into, any agreement either written or oral in conflict herewith. I am not at the present time restricted from being employed by the Company or entering into this Agreement. I further agree that if I have signed a confidentiality agreement or similar type of agreement with any former employer or other entity, I will comply with the terms of any such agreement to the extent that its terms are lawful under applicable law. I represent and warrant that after undertaking a careful search (including searches of my computers, cell phones, electronic devices and documents), I have returned all property and confidential information belonging to all prior employers.

6.   **RETURNING COMPANY DOCUMENTS**

I agree that, at the time of leaving the employ of the Company or on demand by the Company during employment, I will deliver to the Company (and will not keep in my possession or deliver to anyone else) any and all originals and copies of confidential information, devices, records, software, data, notes, reports, proposals, lists, and sources of customers, lists of employees, proposals to customers, drafts of proposals, business plans and projections, reports, job notes, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, or any other documents or property obtained by me in the course of my employment with the Company, including materials from Affiliated Entities, Third Parties, or any customer of the Company or Affiliated Entities. In the event of the termination of my employment, I agree to an exit interview to confirm my compliance with this Agreement, and to sign and deliver the "Termination Certification" attached hereto as Exhibit C.

7.   **NOTIFICATION OF NEW EMPLOYER**

In the event that I leave the employ of the Company, I hereby grant consent to notification by the Company to my new employer about my obligations under this Agreement. I also agree to keep the Company advised of my home and business address for a period of three (3) years after termination of my employment with the Company, so that the Company can contact me or my new employers regarding my continuing obligations provided by the Agreement.

8.   **NO EMPLOYMENT AGREEMENT**

Nothing in this Agreement changes my status as an express at-will employee. I agree that unless specifically provided in another writing signed by me and the Managing Partner of the Company, my employment by the Company is not for a definite period of time. Rather, my employment relationship with the Company is one of employment at will and may be terminated by either myself or the Company at any time, with or without cause or prior notice. In addition, the Company has the right to change my compensation, duties, assignments, responsibilities, location of my position and any other terms and conditions of my employment at any time, with or without cause or notice.

9.   **GENERAL PROVISIONS**

(a)   <u>California Law</u>. This Agreement will be governed by the laws of the State of California without reference to its choice of law rules.

(b)   <u>Entire Agreement</u>. This Agreement, together with my Offer Letter, sets forth the entire agreement and understanding between the Company and me relating to the subject matter herein and supersedes all prior discussions between us, written or oral. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by both an officer of the Company and myself. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

(c)   <u>Severability</u>. If one or more of the provisions in this Agreement are deemed void by law, then the remaining provisions will continue in full force and effect.

(d)   <u>Successors And Assigns</u>. This Agreement and my obligations hereunder will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

Confidential PwC_B00000269

(e) <u>Remedies</u>. By virtue of the duties and responsibilities attendant with my engagement by the Company, I understand that great loss and irreparable damage would be suffered by the Company if I should breach any of the terms of this Agreement. I acknowledge that each such term is reasonably necessary to protect and preserve the interests of the Company. Therefore, in addition to all other remedies available to the Company at law or in equity, the Company shall be entitled to, without posting a bond, specific performance, a temporary restraining order and a permanent injunction to prevent a breach or the continuation of a breach of any of the terms of this Agreement.

(f) <u>Waiver</u>. Waiver by the Company of a breach of any provision of this Agreement will not operate as a waiver of any other or subsequent breach.

(g) <u>Survivorship</u>. My obligations under this Agreement, and the rights of the Company hereunder, will survive termination of my employment with the Company.

(h) <u>Agreement Read, Understood and Fair</u>. I have carefully read and considered the provisions of this Agreement and agree that all of the restrictions set forth are fair and reasonable and are reasonably required for the protection of the interests of the Company. The Company acknowledges that the goodwill and value of the Company is enhanced by these provisions and that said enhancement is desired by me.

(i) <u>Effective Date</u>. The Agreement shall be deemed effective the first day of my employment by the Company.

Date: 08/04/2017

MAURO BOTTA
Mauro Botta
_____
Signature

ACCEPTED AND AGREED TO:

Date:_____

Armanino LLP

By:_____

Title:_____

**EXHIBIT A**

LIST OF EXCLUDED INVENTIONS AND ORIGINAL WORKS OF AUTHORSHIP

| TITLE | DATE | IDENTIFYING NUMBER OR BRIEF DESCRIPTION |
|---|---|---|

EXHIBIT B

CALIFORNIA LABOR CODE SECTION 2870

EMPLOYMENT AGREEMENTS, ASSIGNMENT OF RIGHTS

California Labor Code § 2870. Invention on Own Time - Exemption from Agreement.

(a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer.

(2) Result from any work performed by the employee for the employer.

(b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.

EXHIBIT C

ARMANINO

TERMINATION CERTIFICATION

This is to certify that I do not have in my possession, nor have I failed to return, any devices, records, software, data, notes, reports, proposals, lists, and sources of customers, lists of employees, proposals to customers, drafts of proposals, business plans and projections, reports, job notes, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items belonging to Armanino, its parent, subsidiaries, affiliates, successors or assigns (together "Affiliated Entities").

I further certify that I have complied with all terms of the Company's Proprietary Information and Inventions Agreement signed by me, including the reporting of any inventions and original works of authorship (as defined therein) conceived or made by me (solely or jointly with others) covered by that Agreement.

I further agree that, in compliance with the Proprietary Information and Inventions Agreement, I will preserve as confidential all Company Information as defined in that Agreement, including but not limited to trade secrets, confidential knowledge, data or other proprietary information relating to products, processes, know-how, designs, formulas, developmental or experimental work, computer programs, data bases, other original works of authorship, customer lists, business plans, financial information or other subject matter pertaining to any business of the Company and Affiliated Entities, and their customers, consultants or licensees.

Date: _____

_____
**Mauro Botta**

_____
Signature

Confidential                                                                                                               PwC_B00000273

**DX1047-10**

50 West San Fernando Street
Suite 500
San Jose, CA 95113-2438
408 494 1255   main
408 494 1219   fax
armaninoLLP.com

**armanino˜**

July 28, 2017

Mauro Botta
Via E-Mail (*mauro_botta@libero.it*)

## EMPLOYMENT OFFER

Dear Mauro,

I am delighted to extend you an offer to join Armanino LLP as a Senior Manager within our Audit Department. You will be based in Armanino's San Jose office located at 50 West San Fernando Street, Suite 500. This offer of employment with Armanino is conditioned upon your acceptance, in writing, of the terms and conditions as enumerated below.

1. **Compensation:** Commencing on your Start Date, your salary will be $7,916.66 semi-monthly ($190,000 per annum), less deductions required or permitted by law. The compensation will be paid in accordance with Armanino's standard payroll policies (subject to applicable withholding taxes as required by law).

2. **Bonus**: As a Senior Manager, you will be eligible for an annual bonus of up to $13,000 per the 30-Day Issuance Financial Statement Bonus Plan, in addition to the Manager Bonus Plan, both paid on a quarterly basis.

3. **Benefits**: You will be eligible to participate in the Armanino benefit programs: Medical, Dental, Vision, Life/AD&D, STD, LTD and LTC in accordance with their terms, subject to the usual eligibility restrictions. The Firm offers a Profit Sharing Plan to which the firm may make a discretionary contribution. You will begin accruing five (5) weeks of Personal Time Off (PTO) per year (16.6 hours per month) upon date of hire. You will be eligible to participate in our 401k plan immediately following your first pay period.

4. **General Duties**: During the term of your employment, you agree that at all times and to the best of your ability you will loyally and conscientiously perform all of the duties and obligations required of you in your job and by Armanino. You further agree that you will not, without the prior written consent of Armanino, directly or indirectly engage in or participate in any business that is competitive in any manner with the business of Armanino during the time of your employment with Armanino. You also agree to comply with any and all policies of Armanino as in effect from time to time.

5. **Start Date:** If you accept our offer, we would like for you to start on Monday, Monday, August 7, 2017 or Monday, September 25, 2017. This offer is contingent upon adequate reference and background check results and will expire on August 2, 2017. The date you actually start working at Armanino is referred to as your "Start Date".

6. **Proof of Work:** In compliance with the Immigration Reform and Control Act of 1986, you will be required to provide to Armanino documentary evidence of your identity and eligibility for employment in the United States. Such documentation must be provided within three (3) business days of your date of hire. Your failure to meet this condition could result in termination of your employment with Armanino.

7. **Proprietary Information and Invention Agreement:** Your acceptance of this offer and commencement of your employment with Armanino is contingent upon your execution of Armanino's Proprietary Information and Invention Agreement (the "PIIA), a copy of which is enclosed for your review. An executed copy of the PIIA must be delivered to Armanino's Human Resources Department on or before your Start Date. The

Confidential
PwC_B00000274

**DX1047-11**

8. **Dispute Resolution and Agreement to Arbitration of Disputes (in lieu of litigation)**. Both parties agree that for any and all legal disputes or claims, including all contract, tort, discrimination, common law or statutory disputes or claims between you and Armanino and/or its agents, arising under or relating to your employment or termination of employment with Armanino, the parties will try in good faith to resolve any dispute or claim by negotiation and consultation between themselves. If the parties cannot resolve the dispute or claim for any reason, either party may commence binding arbitration in accordance with the provisions of this Agreement to Arbitration of Disputes.

This Agreement to Arbitrate Disputes shall be governed by and construed and enforced in accordance with the laws of the State of California. You and Armanino agree that any and all disputes or claims, including all contract, tort, discrimination, common law or statutory disputes or claims between you and Armanino and/or any of its related entities, holding companies, parents, subsidiaries, divisions, officers, shareholders, directors, teammates, employees, agents, insurers, predecessors, successors, and assigns, arising under or relating to your employment or termination of your employment with Armanino ("Arbitrable Claims") shall be resolved exclusively by final and binding arbitration. The sole exceptions are claims under applicable workers' compensation law, disputes solely before government agencies (including but not limited to the Equal Employment Opportunity Commission, the U.S. Department of Labor, or the National Labor Relations Board), state disability insurance, unemployment insurance claims or employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act, actions seeking provisional remedies pursuant to Code of California Civil Procedure section 1281.8, and other claims expressly prohibited by law from being subject to binding arbitration. Further, nothing in this Agreement excuses either party from bringing an administrative claim before a state or federal agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

For all Arbitrable Claims, you and Armanino mutually agree that arbitration shall be exclusive, final and binding remedy. You, Armanino and its agents hereby waive any rights each may have to a jury trial in regard to the Arbitrable Claims. You also agree that any Arbitrable Claims shall by resolved on an individual basis, and you agree to waive your right, to the extent allowed by applicable law, to consolidate any Arbitrable Claims with the claims of any other person in a class, representative, or collective action. The arbitration will be conducted by a single neutral arbitrator and administered by JAMS, Inc. ("JAMS"), in Contra Costa County, California (or other mutually agreed upon city), pursuant to its Employment Arbitration Rules & Procedures effective July 1, 2014. These rules can be found at http://www.jamsadr.com/rules-employment-arbitration/. If you are unable to access or print the JAMS rules, you may obtain a printout of the rules from the office by asking Human Resources. In arbitration, the parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses. Any disputes in this regard shall be resolved by the Arbitrator, provided, however, that to the extent discovery and presentation of witnesses and evidence would be limited or unavailable under applicable law if the dispute were brought in court, such limitations shall also apply in arbitration. Armanino shall be responsible for all costs of JAMS to administer the arbitration and the costs for the arbitrator less those amounts you would otherwise be required to pay were the claims litigated in a court of law. The Arbitrator may award any party any remedy to which that party is entitled under applicable law, including an award of attorneys' fees, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator. No remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Agreement. Notwithstanding the foregoing, in no event shall an arbitration proceed on a class, collective, or joint or multiple plaintiff/claimant basis. After the arbitration, the Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law, to allow for judicial review. The promises by the Armanino and by you to arbitrate differences, rather than litigate them before courts or other bodies, provide consideration for each other.

If any provision of this Agreement to Arbitrate Disputes is adjudged to be void or otherwise unenforceable, in whole or in part, it shall be severed. Severing of any provision of the Agreement shall not affect the validity of the remainder of the Agreement. All other provisions shall remain in full force and effect based on the parties' mutual intent to create a binding agreement to arbitrate their disputes. Notwithstanding the foregoing, in no event shall an arbitration proceed on a class, collective, representative or joint or multiple plaintiff/claimant basis. If you have any questions regarding the foregoing provision or any provision of this letter, please contact the undersigned.

*M D*

Confidential

PwC_B00000275

You may opt-out of this Agreement to Arbitrate Disputes by signing the Arbitration Opt-Out form enclosed with this offer letter within 30 days of the date of this offer letter and returning it to HRTeam@armaninollp.com. Your decision to opt out or not opt out will not be used as a basis for Armanino to take any adverse employment action against you.

9. <u>Non-Engagement in Conflicting Employment.</u> This position is a full time job with the understanding that during your employment you will not engage in outside consulting activities, whether compensated or not, which materially interfere with the performance of your job duties with Armanino or create a conflict of interest, nor will you establish a competing business during your employment with Armanino.

10. <u>Pre-Existing Agreements and Trade Secrets.</u> You confirm that you are not bound by any other agreement with any prior or current employer, person or entity that would prevent you from fully performing your duties with Armanino, and that you will not during your employment with Armanino, or have not during the pre-hire process, use or disclose any proprietary or confidential information, or trade secrets, of your former or concurrent employers or companies.

11. <u>At-Will Employment.</u> This offer of employment is not for any specific period of time; instead your employment is at all times "at will." This means that you may terminate your employment with or without cause or prior notice, and Armanino has the same right. In addition, Armanino may change your compensation, benefits, duties, assignments, and responsibilities, location of your position, or any other terms and conditions of your employment, at any time to adjust to the changing needs of our dynamic company. These provisions expressly supersede any previous representations, oral or written. Your at-will employment status cannot be modified unless it is written and signed by both you and the President of Armanino.

12. <u>Severability.</u> This Agreement will be enforced to the fullest extent permitted by applicable law. If any provision of this Agreement is held to be invalid or unenforceable to any extent, then the remainder of this Agreement will have full force and effect and such provision will be interpreted, construed or reformed to the extent reasonably required to render the same valid, enforceable and consistent with the original intent underlying such provision.

Mauro, we are excited at the prospect of having you join our team and look forward to this being a rewarding relationship.

Thank you again and we look forward to your reply.

Best regards,

*[signature]*

Scott Copeland, Partner
ARMANINO LLP

**ACKNOWLEDGMENTS & ACCEPTANCE**

I accept this employment offer with the understanding that it is not a contract for a fixed term or specified period of time. I understand that my employment is voluntary, ("At Will"), and can be terminated either by me or by Armanino at any time, with or without notice and with or without cause. The provisions stated above supersede all prior representations or agreements, whether written or oral. This offer letter may be amended or modified only in writing, signed by Armanino and me.

The terms and conditions above are hereby agreed and accepted:

Signed: *[signature]*     Date: 08/04/2017
Mauro Botta

Confidential                                              PwC_B00000276

## ARBITRATION OPT-OUT FORM

**[SIGN ONLY IF YOU ELECT TO OPT OUT OF THE AGREEMENT TO ARBITRATION OF DISPUTES]**

I am exercising my right to opt out of the Agreement to Arbitration of Disputes contained in Section 8 of my offer letter. By opting out within 30 days of receipt of this offer letter, I agree that I am no longer entitled to participate, or utilize the procedures outlined in the Agreement to Arbitrate Disputes.

Signed:_____      Date:_____
         Mauro Botta

Confidential                                                              PwC_B00000277

**DX1047-14**