# DX1592



May 15, 2020

Mauro Botta

**Re:     Offer of Employment**

Dear Mauro,

Engine Room Consulting Services, Inc. (the "Company") is pleased to offer you the position of Technical Accountant/Controller, subject to the following terms:

**1.     At-Will.** This is an at-will position, meaning that either you or the Company may terminate your employment at any time, for any reason or no reason, with or without cause and with or without notice. Regular employment at the Company is for no specified period of time and the Company makes no guarantee or contract of continued employment. Although your job duties, title, compensation, and benefits, as well as the Company's personnel policies, may change from time to time, the "at will" nature of your employment may not be changed except in an express written agreement signed by you and the President of the Company. This offer of employment sets forth the terms of employment and in no way constitutes a promise of continued employment or employment for any specific length of time.

**2.     Exempt.** This position is exempt, which means that you may not be entitled to overtime pursuant to applicable state and federal laws.

**3.     Employment and Duties.** The Company's main headquarters are located at 4725 First Street, Suite 250, Pleasanton, CA 94566, which is also its mailing address. The Company can be reached at (925) 246-5854. Your position with the Company will be as a Technical Accountant/Controller, in the Company's offices in Pleasanton, California. This position is full-time. In this position you will perform Technical Accountant/Controller duties and you will report to Carole-Lynn Glass. Your position, duties, and responsibilities may be modified from time to time at the sole discretion of the Company.

**4.     Effective Date.** Your employment with the Company will begin on June 1, 2020.

**5.     Compensation.** You will be paid an annual in the amount of $180,000 to be paid semi-monthly, on the 7th and 22nd of each month and in accordance with the Company's normal payroll practices and applicable wage laws. Overtime rates, if applicable, will be paid in accordance with the Company's normal payroll practices and applicable wage laws. All compensation paid to you will be subject to the usual, required federal, state, and local tax withholdings, employment tax withholdings, and other lawful deductions.

**6.     Benefits.** As a full-time employee, you will be eligible to receive benefits and paid time off in accordance with the Company's policies. Additional information will be provided to you.

PLAINTIFF 002981

**ENGINE ROOM**

7.    **Administration of Wages and Benefits**. The Company has engaged TriNet as its Professional Employer Organization ("PEO") to administer wages and benefits to its personnel. As such, your direct employment, benefits and tax filing will be under the TriNet name.  You will be given access to TriNet's employee portal for all wage and employment related actions and activities.  TriNet may be reached directly at 1-800-638-0461

8.    **Documents & Eligibility.** Once you accept employment with the Company you will receive a welcome message from TriNet via email.  That message will contain a link to the TriNet employee portal where you will be required to perform time sensitive activities such as I-9 certification, direct deposit enrollment, and other orientation actions such as reviewing the TriNet handbook and Company's policy addendum.  Please review these carefully and follow the instructions to indicate you have read all the required material.  Also, this offer is conditioned on your providing satisfactory proof of your identity and legal authority to work in the United States, a satisfactory background and credit check and signing the Company's Confidentiality and Proprietary Rights Agreement

9.    **Equal Opportunity Employer.** The Company is an equal opportunity employer and makes employment decisions on the basis of merit.  The Company does not discriminate against qualified applicants or employees based on race, color, national origin, ancestry, sex, gender, gender identity, gender expression, sexual orientation, age, religion, physical or mental disability, medical condition, pregnancy, marital status, citizenship status, military or veteran status, genetic information, or any other consideration basis protected by law.  When necessary, the Company will reasonably accommodate applicants and employees with disabilities if the person is otherwise qualified to safely perform all essential functions of the position.

Please respond to this offer within three (3) days.  If you accept the offer, please sign a copy of this letter, acknowledging your acceptance, and present it to me.  This offer of employment supersedes and replaces any and all other written or verbal agreements or representations concerning your employment.

We all look forward to your joining the Company.  Please feel free to contact me should you have any questions and/or concerns.

Sincerely,

*Michael Rose*

Michael Rose

I acknowledge receipt of the above and have read and accept this employment offer.

May 20, 2020

Dated

*Mauro Botta*
Mauro Botta (May 20, 2020 13:00 PDT)

Mauro Botta

PLAINTIFF 002982



# CONSULTANT APPLICATION

Please complete each part of the application as accurately as possible. This information is critical for future placements and will be used for interview discussion purposes as well as a source for our candidate database.

| | |
|---|---|
| NAME: | Mauro Botta |
| STREET ADDRESS: | 88 East San Fernando Street, Unit 1308 |
| CITY, STATE, ZIP | San Jose, CA, 95113 |
| HOME PHONE: | 4082824959 |
| MOBILE | 4084645438 |
| EMAIL: | siskodlg@gmail.com |

ARE YOU ELIGIBLE/AUTHORIZED TO WORK IN THE US?   YES ☑   NO ☐

REFERRAL SOURCE: Sheryl Andersen

AVAILABLE IMMEDIATELY:   YES ☐   NO ☐   IF NO, DATE AVAILABLE: 10/26/1977

AVAILABLE:   FULL-TIME ☐   PART-TIME ☐

| | |
|---|---|
| IF CPA, CERTIFICATE NO. & STATE | 99608 |
| | ACTIVE        INACTIVE |
| NUMBER OF YEARS BIG 5 | DL7575699 |
| NUMBER OF YEARS PUBLIC | 88 East San Fernando Street, Unit 1308, San Jose CA |
| NUMBER OF YEARS PRIVATE | 0 |
| TYPES OF ASSIGNMENTS REQUESTED | |

PLEASE LIST 3 REFERENCES (preferably direct supervisors):

| Name | Company | Telephone # and Email address |
|---|---|---|
| Previously provided | | |
| Previously provided | | |
| Previously provided | | |

PLAINTIFF  002983

March 9, 2015

**DX1592-3**



# CONSULTANT APPLICATION

Engine Room provides equal employment opportunities (EEO) to all employees and applicants for employment without regard to race, color, religion, sex, national origin, age, disability or genetics.  In addition to federal law requirements, Engine Room complies with applicable state and local laws governing non-discrimination in employment in every location in which the company has facilities.  This policy applies to all terms and conditions of employment, including recruiting, hiring, placement, promotion, termination, layoff, recall, transfer, leaves of absence, compensation and training.

Engine Room expressly prohibits any form of workplace harassment based on race, color, religion, gender, sexual orientation, gender identify or expression, national origin, age, genetic information, disability, or veteran status. Improper interference with the ability of Engine Room's employees to perform their job duties may result in discipline up to and including discharge.

Signature: _____
Mauro Botta (May 20, 2020 13:00 PDT)

Date: May 20, 2020 _____

PLAINTIFF  002984

March 9, 2015

**DX1592-4**

# The Screening Group

P.O. Box 760 Lodi, California 95241. Phone (800) 571-0239. Fax (888) 267-3423

www.thescreeninggroup.com

*Nationwide Pre-Screening Services*

## Authorization and Release for Pre-Employment Screening

Mauro Botta _____ Does hereby authorize **The Screening Group** and its agents to perform a Pre-Employment screening. Applicant does acknowledge and Waive his/her Right to Privacy as provided by California Law. Screening may include, but is not limited to: Criminal History, Driving Record History, Vehicles Registered, Past Civil Litigation, Address Information, Employment Verification and Credit Report. In compliance with F.C.R.A requirements, you the applicant are allowed a copy of all reports pertaining to your background as provided to the Employer.

### Applicant Information

Name of Applicant  Mauro Botta _____.

DOB  10/26/1977 _____.

SSN  99608 _____.

Driver's License Number (Include State  DL7575699 _____.

Previous Addresses for the past Seven- (7) years. Please provide for most recent address first. Please use back of sheet for additional addresses.

1)  88 East San Fernando Street, Unit 1308, San Jose CA

2)  0

3)  Previously provided

4)

5)

6)

7)

PLAINTIFF  002985

**DX1592-5**

**Applicants request for copy of Final Report. Please indicate with Initials.**

Yes ___MB___   No, I do not want a copy of the Pre-Screening Report _____ .

**Applicants Signature** ___*Mauro Botta*___ .
Mauro Botta (May 20, 2020 13:00 PDT)

**Date**   May 20, 2020 _____ .

Employer, Please fill out the following.

**Employers Acknowledgement for applicants waiver of right to privacy.**

**Employer** _____ .

**Date** _____ .

**Name of Manager/Owner/Personnel Officer** _____ .

**Title** _____ .

**Signature (Do not sign until Applicant completes/signs his/her portion).**

PLAINTIFF  002986

**DX1592-6**

# CALIFORNIA CONSUMER CREDIT REPORT DISCLOSURE

I understand that a consumer credit report is being requested as the position for which I am applying falls into the following category:

☑ A managerial position.

☐ A position in the state Department of Justice.

☐ That of a sworn peace officer or other law enforcement position.

☐ A position for which the information contained in the report is required by law to be disclosed or obtained.

☐ A position that involves regular access, for any purpose other than the routine solicitation and processing of credit card applications in a retail establishment, to all of the following types of information of any one person:
    (A) Bank or credit card account information.
    (B) Social security number.
    (C) Date of birth.

☐ A position in which the person is, or would be, any of the following:
    (A) A named signatory on the bank or credit card account of the employer.
    (B) Authorized to transfer money on behalf of the employer.
    (C) Authorized to enter into financial contracts on behalf of the employer.

☐ A position that involves access to confidential or proprietary information, including a formula, pattern, compilation, program, device, method, technique, process or trade secret that (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who may obtain economic value from the disclosure or use of the information, and (ii) is the subject of an effort that is reasonable under the circumstances to maintain secrecy of the information.

☐ A position that involves regular access to cash totaling ten thousand dollars ($10,000) or more of the employer, a customer, or client, during the workday.

By my signature below, I hereby authorize a consumer credit report to be obtained. A copy of this document is the same as the original.

*Mauro Botta (May 20, 2020 13:00 PDT)*

_____
Signature
    Mauro Botta

_____
Printed Name
    Mauro Botta

_____
Social Security Number
May 20, 2020

_____
Date

PLAINTIFF 002987

**DX1592-7**

## CONFIDENTIALITY AND PROPRIETARY RIGHTS AGREEMENT
### ENGINE ROOM CONSULTING SERVICES, INC.

This Employee Confidentiality and Proprietary Rights Agreement (**"Agreement"**) as of the date written below (**"Effective Date"**) is entered into by and between Engine Room Consulting Services, Inc., a California Corporation (the **"Employer"**) and Employee whose name and signature appear below (the **"Employee"**). Employer and Employee are individually referred to as **"Party"** and collectively referred to as the **"Parties"**.

In consideration of Employee's employment or continued employment by Employer, which Employee acknowledges to be good and valuable consideration for his/her obligations hereunder, Employer and Employee hereby agree as follows:

1.  **Duty of Loyalty.** While employed by Employer, Employee agrees at all times to devote his/her best efforts to the business of Employer, to perform conscientiously all duties and obligations required or assigned, and to not usurp for personal gain any opportunities in Employer's line of business.

2.  **Confidentiality.**

    (a)     *Confidential Information.* Employee understands and acknowledges that during the course of employment by Employer, he/she will have access to and learn about confidential, secret and proprietary documents, trade secrets, materials and other information, in tangible and intangible form, of and relating to Employer, its businesses, existing and prospective clients, suppliers, investors, and other associated third parties (**"Confidential Information"**). Employee further understands and acknowledges that this Confidential Information and Employer's ability to reserve it for the exclusive knowledge and use of Employer is of great competitive importance and commercial value to Employer, and that improper use or disclosure of the Confidential Information by Employee might cause Employer to incur financial costs, loss of business advantage, liability under confidentiality agreements with third parties, civil damages, and criminal penalties.

    (b)     For purposes of this Agreement, Confidential Information includes, but is not limited to, all information of Employer, its businesses, any existing or prospective client, supplier, investor, or of any other person or entity that has entrusted information to Employer in confidence not generally known to the public, in spoken, printed, electronic, or any other form or medium, whether intangible or tangible, relating directly or indirectly to: (i) information believed by Employer to be a Trade Secret (as defined below) that ultimately does not qualify as such under California or Federal law but nonetheless was maintained by Employer as confidential; (ii) Trade Secrets; (iii) information concerning the nature of Employer's business and its manner of operation; (iv) the methods and systems used by Employer in soliciting, selling, and providing its services and products to its clients; (v) financial and accounting information, such as cost, pricing, billing information, client profiles, financial policies, procedures, revenues, and profit margins; (vi) sales and marketing information, such as sales strategies and programs; (vii) information concerning Employer's clients and prospective clients; (viii) information concerning Employer's vendors and suppliers; (ix) clients lists; (x) prospective clients lists; (xi) information

CONFIDENTIALITY AND PROPRIETARY RIGHTS AGREEMENT

PLAINTIFF 002988

**DX1592-8**

regarding client habits and special needs; (xii) employment policies and procedures; (xiii) personnel records; (xiv) software developed by or for the benefit of Employer and related data source code and programming information (whether or not patentable or registrable under copyright or similar statutes); (xv) inventions; (xvi) information concerning Employer's business relationships with persons, firms, corporations, and other entities; and (xvii) contracts and agreements.

     (c)    For the purposes of this Agreement, **"Trade Secrets"** shall mean any and all Confidential Information that (i) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy; and (iii) any and all other information that falls within the meaning of a trade secret as defined under California or Federal law.

     (d)    Employee understands that the above list is not exhaustive, and that Confidential Information also includes other information that is marked or otherwise identified as confidential or proprietary, or that would otherwise appear to a reasonable person to be confidential or proprietary in the context and circumstances in which the information is known or used.

     (e)    Employee understands and agrees that Confidential Information developed by him/her in the course of his/her employment by Employer shall be subject to the terms and conditions of this Agreement as if Employer furnished the same Confidential Information to Employee in the first instance. Confidential Information shall not include information that is generally available to and known by the public at the time of disclosure to Employee, provided that such disclosure is through no direct or indirect fault of Employee or person(s) acting on Employee's behalf.

     (f)    *Disclosure and Use Restrictions*. Employee agrees and covenants:

          (i)    to treat all Confidential Information as strictly confidential;

          (ii)    not to directly or indirectly disclose, publish, communicate, or make available Confidential Information, to anyone outside or within Employer except to those who have a need to know the Confidential Information for the purpose of performing his/her duties for Employer; and

          (iii)    not purposefully access, use, copy, or remove any documents, records, files, media, or other resources containing any Confidential Information from the premises or control of Employer, except as required in the performance of Employee's authorized employment duties or with the prior consent of a member of Employer's management, and then, such disclosure shall be made only within the limits and to the extent of such duties or consent.

     (g)    Nothing herein shall be construed to prevent disclosure of Confidential Information as may be required by applicable law or regulation, or pursuant to the valid order of

CONFIDENTIALITY AND PROPRIETARY RIGHTS AGREEMENT

PLAINTIFF 002989

**DX1592-9**

a court of competent jurisdiction or an authorized government agency, provided that the disclosure does not exceed the extent of disclosure required by such law, regulation, or order. Employee shall promptly provide written notice of any such order to an authorized officer of Employer within twenty-four (24) hours of receiving such order, but in any event sufficiently in advance of making any disclosure to permit Employer to contest the order or seek confidentiality protections, as determined in Employer's sole discretion.

(h)    In addition, this Section 2 does not, in any way, restrict or impede Employee from (i) discussing the terms and conditions of his/her employment with co-workers or union representatives; (ii) exercising his/her rights under Section 7 of the National Labor Relations Act; (iii) exercising protected rights to the extent that such rights cannot be waived by agreement; or (iv) otherwise disclosing information as permitted by California or Federal law.

(i)    Further, Employee shall not be held criminally or civilly liable under any Federal, California or other state trade secret law for the disclosure of a Trade Secret that (i) is made in confidence to a Federal, state, or local government official or to an attorney solely for the purpose of reporting or investigating a suspected violation of law; or (ii) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Employer will not retaliate against Employee for disclosure of Confidential Information made in accordance with the law. If Employee files a lawsuit for retaliation by Employer for reporting a suspected violation of law, he/she may disclose the Trade Secret to his/her attorney and use the Trade Secret information in the court proceeding, if Employee (i) files any document containing a Trade Secret under seal; and (ii) does not disclose a Trade Secret, except pursuant to court order.

(j)    *Duration of Confidentiality Obligations*. Employee understands and acknowledges that his/her obligations under this Agreement with regard to any particular Confidential Information shall commence immediately upon Employee first having access to such Confidential Information (whether before or after he/she begins employment by Employer) and shall continue during and after his/her employment by Employer until such time as such Confidential Information has become public knowledge other than as a result of Employee's breach of this Agreement or breach by those acting in concert with Employee or on Employee's behalf.

**3.    Inventions and Work Product.**

(a)    *Disclosure of Inventions*. Employee acknowledges and agrees that, among his/her other duties for Employer, Employee will be employed by Employer in a position that could provide the opportunity for conceiving and/or reducing to practice inventions, improvements, developments, ideas, or discoveries whether patentable or unpatentable (collectively, **"Inventions"** (as defined below)). Accordingly, Employee agrees to promptly disclose to Employer in confidence and in writing all Inventions conceived or reduced to practice by Employee while in Employer's employ, either solely or jointly with others, and whether or not during regular working hours. Employee further agrees to maintain adequate and current written records of such Inventions.

CONFIDENTIALITY AND PROPRIETARY RIGHTS AGREEMENT

PLAINTIFF 002990

**DX1592-10**



May 15, 2020

Mauro Botta

**Re:    Offer of Employment**

Dear Mauro,

Engine Room Consulting Services, Inc. (the "Company") is pleased to offer you the position of Technical Accountant/Controller, subject to the following terms:

**1.    At-Will.** This is an at-will position, meaning that either you or the Company may terminate your employment at any time, for any reason or no reason, with or without cause and with or without notice. Regular employment at the Company is for no specified period of time and the Company makes no guarantee or contract of continued employment. Although your job duties, title, compensation, and benefits, as well as the Company's personnel policies, may change from time to time, the "at will" nature of your employment may not be changed except in an express written agreement signed by you and the President of the Company. This offer of employment sets forth the terms of employment and in no way constitutes a promise of continued employment or employment for any specific length of time.

**2.    Exempt.** This position is exempt, which means that you may not be entitled to overtime pursuant to applicable state and federal laws.

**3.    Employment and Duties.** The Company's main headquarters are located at 4725 First Street, Suite 250, Pleasanton, CA 94566, which is also its mailing address. The Company can be reached at (925) 246-5854. Your position with the Company will be as a Technical Accountant/Controller, in the Company's offices in Pleasanton, California. This position is full-time. In this position you will perform Technical Accountant/Controller duties and you will report to Carole-Lynn Glass. Your position, duties, and responsibilities may be modified from time to time at the sole discretion of the Company.

**4.    Effective Date.**    Your employment with the Company will begin on June 1, 2020.

**5.    Compensation.** You will be paid an annual in the amount of $180,000 to be paid semi-monthly, on the 7th and 22nd of each month and in accordance with the Company's normal payroll practices and applicable wage laws. Overtime rates, if applicable, will be paid in accordance with the Company's normal payroll practices and applicable wage laws. All compensation paid to you will be subject to the usual, required federal, state, and local tax withholdings, employment tax withholdings, and other lawful deductions.

**6.    Benefits.** As a full-time employee, you will be eligible to receive benefits and paid time off in accordance with the Company's policies. Additional information will be provided to you.

PLAINTIFF 002981

**ENGINE ROOM**

**7.     Administration of Wages and Benefits**. The Company has engaged TriNet as its Professional Employer Organization ("PEO") to administer wages and benefits to its personnel. As such, your direct employment, benefits and tax filing will be under the TriNet name. You will be given access to TriNet's employee portal for all wage and employment related actions and activities. TriNet may be reached directly at 1-800-638-0461

**8.     Documents & Eligibility.** Once you accept employment with the Company you will receive a welcome message from TriNet via email. That message will contain a link to the TriNet employee portal where you will be required to perform time sensitive activities such as I-9 certification, direct deposit enrollment, and other orientation actions such as reviewing the TriNet handbook and Company's policy addendum. Please review these carefully and follow the instructions to indicate you have read all the required material. Also, this offer is conditioned on your providing satisfactory proof of your identity and legal authority to work in the United States, a satisfactory background and credit check and signing the Company's Confidentiality and Proprietary Rights Agreement

**9.     Equal Opportunity Employer.** The Company is an equal opportunity employer and makes employment decisions on the basis of merit. The Company does not discriminate against qualified applicants or employees based on race, color, national origin, ancestry, sex, gender, gender identity, gender expression, sexual orientation, age, religion, physical or mental disability, medical condition, pregnancy, marital status, citizenship status, military or veteran status, genetic information, or any other consideration basis protected by law. When necessary, the Company will reasonably accommodate applicants and employees with disabilities if the person is otherwise qualified to safely perform all essential functions of the position.

Please respond to this offer within three (3) days. If you accept the offer, please sign a copy of this letter, acknowledging your acceptance, and present it to me. This offer of employment supersedes and replaces any and all other written or verbal agreements or representations concerning your employment.

We all look forward to your joining the Company. Please feel free to contact me should you have any questions and/or concerns.

Sincerely,

*Michael Rose*

Michael Rose

I acknowledge receipt of the above and have read and accept this employment offer.

May 20, 2020

Dated

*Mauro Botta*
Mauro Botta (May 20, 2020 13:00 PDT)

Mauro Botta

PLAINTIFF 002982

**DX1592-12**



# CONSULTANT APPLICATION

**Please complete each part of the application as accurately as possible. This information is critical for future placements and will be used for interview discussion purposes as well as a source for our candidate database.**

| | |
|---|---|
| NAME: | Mauro Botta |
| STREET ADDRESS: | 88 East San Fernando Street, Unit 1308 |
| CITY, STATE, ZIP | San Jose, CA, 95113 |
| HOME PHONE: | 4082824959 |
| MOBILE | 4084645438 |
| EMAIL: | siskodlg@gmail.com |

ARE YOU ELIGIBLE/AUTHORIZED TO WORK IN THE US?   YES ☑   NO ☐

REFERRAL SOURCE:   Sheryl Andersen

AVAILABLE IMMEDIATELY:   YES ☐   NO ☐   IF NO, DATE AVAILABLE:   10/26/1977

AVAILABLE:   FULL-TIME ☐   PART-TIME ☐

| | |
|---|---|
| IF CPA, CERTIFICATE NO. & STATE | 99608 |
| | ACTIVE          INACTIVE |
| NUMBER OF YEARS BIG 5 | DL7575699 |
| NUMBER OF YEARS PUBLIC | 88 East San Fernando Street, Unit 1308, San Jose CA |
| NUMBER OF YEARS PRIVATE | 0 |
| TYPES OF ASSIGNMENTS REQUESTED | |

**PLEASE LIST 3 REFERENCES** *(preferably direct supervisors):*

| Name | Company | Telephone # and Email address |
|---|---|---|
| Previously provided | | |
| Previously provided | | |
| Previously provided | | |

PLAINTIFF 002983

March 9, 2015

**DX1592-13**

 **CONSULTANT APPLICATION**

Engine Room provides equal employment opportunities (EEO) to all employees and applicants for employment without regard to race, color, religion, sex, national origin, age, disability or genetics. In addition to federal law requirements, Engine Room complies with applicable state and local laws governing non-discrimination in employment in every location in which the company has facilities. This policy applies to all terms and conditions of employment, including recruiting, hiring, placement, promotion, termination, layoff, recall, transfer, leaves of absence, compensation and training.

Engine Room expressly prohibits any form of workplace harassment based on race, color, religion, gender, sexual orientation, gender identify or expression, national origin, age, genetic information, disability, or veteran status. Improper interference with the ability of Engine Room's employees to perform their job duties may result in discipline up to and including discharge.

Signature: _____        Date: _____
Mauro Botta (May 20, 2020 13:00 PDT)                    May 20, 2020

PLAINTIFF 002984

March 9, 2015

**DX1592-14**

## The Screening Group

P.O. Box 760 Lodi, California 95241. Phone (800) 571-0239. Fax (888) 267-3423
www.thescreeninggroup.com
*Nationwide Pre-Screening Services*

# Authorization and Release for Pre-Employment Screening

Mauro Botta _____ Does hereby authorize **The Screening Group** and its agents to perform a Pre-Employment screening. Applicant does acknowledge and Waive his/her Right to Privacy as provided by California Law. Screening may include, but is not limited to: Criminal History, Driving Record History, Vehicles Registered, Past Civil Litigation, Address Information, Employment Verification and Credit Report. In compliance with F.C.R.A requirements, you the applicant are allowed a copy of all reports pertaining to your background as provided to the Employer.

### Applicant Information

Name of Applicant   Mauro Botta _____.

DOB   10/26/1977 _____.

SSN   99608 _____.

Driver's License Number (Include State   DL7575699 _____.

Previous Addresses for the past Seven- (7) years. Please provide for most recent address first. Please use back of sheet for additional addresses.

1)   88 East San Fernando Street, Unit 1308, San Jose CA

2)   0

3)   Previously provided

4)

5)

6)

7)

PLAINTIFF  002985

**DX1592-15**

**Applicants request for copy of Final Report. Please indicate with Initials.**

Yes ____MB____    No, I do not want a copy of the Pre-Screening Report _____.

**Applicants Signature** _____.
Mauro Botta (May 20, 2020 13:00 PDT)

**Date** ___May 20, 2020_____.

Employer, Please fill out the following.

**Employers Acknowledgement for applicants waiver of right to privacy.**

**Employer** _____.

**Date** _____.

**Name of Manager/Owner/Personnel Officer** _____.

**Title** _____.

**Signature (Do not sign until Applicant completes/signs his/her portion).**

PLAINTIFF 002986

**DX1592-16**

# CALIFORNIA CONSUMER CREDIT REPORT DISCLOSURE

I understand that a consumer credit report is being requested as the position for which I am applying falls into the following category:

☑ A managerial position.

☐ A position in the state Department of Justice.

☐ That of a sworn peace officer or other law enforcement position.

☐ A position for which the information contained in the report is required by law to be disclosed or obtained.

☐ A position that involves regular access, for any purpose other than the routine solicitation and processing of credit card applications in a retail establishment, to all of the following types of information of any one person:
    (A) Bank or credit card account information.
    (B) Social security number.
    (C) Date of birth.

☐ A position in which the person is, or would be, any of the following:
    (A) A named signatory on the bank or credit card account of the employer.
    (B) Authorized to transfer money on behalf of the employer.
    (C) Authorized to enter into financial contracts on behalf of the employer.

☐ A position that involves access to confidential or proprietary information, including a formula, pattern, compilation, program, device, method, technique, process or trade secret that (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who may obtain economic value from the disclosure or use of the information, and (ii) is the subject of an effort that is reasonable under the circumstances to maintain secrecy of the information.

☐ A position that involves regular access to cash totaling ten thousand dollars ($10,000) or more of the employer, a customer, or client, during the workday.

By my signature below, I hereby authorize a consumer credit report to be obtained. A copy of this document is the same as the original.

_Mauro Botta (May 20, 2020 13:00 PDT)_

**Signature**
    Mauro Botta

**Printed Name**
    Mauro Botta

**Social Security Number**
May 20, 2020

**Date**

PLAINTIFF 002987

## CONFIDENTIALITY AND PROPRIETARY RIGHTS AGREEMENT
## ENGINE ROOM CONSULTING SERVICES, INC.

This Employee Confidentiality and Proprietary Rights Agreement (**"Agreement"**) as of the date written below (**"Effective Date"**) is entered into by and between Engine Room Consulting Services, Inc., a California Corporation (the **"Employer"**) and Employee whose name and signature appear below (the **"Employee"**). Employer and Employee are individually referred to as **"Party"** and collectively referred to as the **"Parties"**.

In consideration of Employee's employment or continued employment by Employer, which Employee acknowledges to be good and valuable consideration for his/her obligations hereunder, Employer and Employee hereby agree as follows:

**1.      Duty of Loyalty.** While employed by Employer, Employee agrees at all times to devote his/her best efforts to the business of Employer, to perform conscientiously all duties and obligations required or assigned, and to not usurp for personal gain any opportunities in Employer's line of business.

**2.      Confidentiality.**

(a)      *Confidential Information.* Employee understands and acknowledges that during the course of employment by Employer, he/she will have access to and learn about confidential, secret and proprietary documents, trade secrets, materials and other information, in tangible and intangible form, of and relating to Employer, its businesses, existing and prospective clients, suppliers, investors, and other associated third parties (**"Confidential Information"**). Employee further understands and acknowledges that this Confidential Information and Employer's ability to reserve it for the exclusive knowledge and use of Employer is of great competitive importance and commercial value to Employer, and that improper use or disclosure of the Confidential Information by Employee might cause Employer to incur financial costs, loss of business advantage, liability under confidentiality agreements with third parties, civil damages, and criminal penalties.

(b)      For purposes of this Agreement, Confidential Information includes, but is not limited to, all information of Employer, its businesses, any existing or prospective client, supplier, investor, or of any other person or entity that has entrusted information to Employer in confidence not generally known to the public, in spoken, printed, electronic, or any other form or medium, whether intangible or tangible, relating directly or indirectly to: (i) information believed by Employer to be a Trade Secret (as defined below) that ultimately does not qualify as such under California or Federal law but nonetheless was maintained by Employer as confidential; (ii) Trade Secrets; (iii) information concerning the nature of Employer's business and its manner of operation; (iv) the methods and systems used by Employer in soliciting, selling, and providing its services and products to its clients; (v) financial and accounting information, such as cost, pricing, billing information, client profiles, financial policies, procedures, revenues, and profit margins; (vi) sales and marketing information, such as sales strategies and programs; (vii) information concerning Employer's clients and prospective clients; (viii) information concerning Employer's vendors and suppliers; (ix) clients lists; (x) prospective clients lists; (xi) information

CONFIDENTIALITY AND PROPRIETARY RIGHTS AGREEMENT

PLAINTIFF 002988

**DX1592-18**

regarding client habits and special needs; (xii) employment policies and procedures; (xiii) personnel records; (xiv) software developed by or for the benefit of Employer and related data source code and programming information (whether or not patentable or registrable under copyright or similar statutes); (xv) inventions; (xvi) information concerning Employer's business relationships with persons, firms, corporations, and other entities; and (xvii) contracts and agreements.

(c)     For the purposes of this Agreement, **"Trade Secrets"** shall mean any and all Confidential Information that (i) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy; and (iii) any and all other information that falls within the meaning of a trade secret as defined under California or Federal law.

(d)     Employee understands that the above list is not exhaustive, and that Confidential Information also includes other information that is marked or otherwise identified as confidential or proprietary, or that would otherwise appear to a reasonable person to be confidential or proprietary in the context and circumstances in which the information is known or used.

(e)     Employee understands and agrees that Confidential Information developed by him/her in the course of his/her employment by Employer shall be subject to the terms and conditions of this Agreement as if Employer furnished the same Confidential Information to Employee in the first instance. Confidential Information shall not include information that is generally available to and known by the public at the time of disclosure to Employee, provided that such disclosure is through no direct or indirect fault of Employee or person(s) acting on Employee's behalf.

(f)     *Disclosure and Use Restrictions.* Employee agrees and covenants:

(i)     to treat all Confidential Information as strictly confidential;

(ii)     not to directly or indirectly disclose, publish, communicate, or make available Confidential Information, to anyone outside or within Employer except to those who have a need to know the Confidential Information for the purpose of performing his/her duties for Employer; and

(iii)     not purposefully access, use, copy, or remove any documents, records, files, media, or other resources containing any Confidential Information from the premises or control of Employer, except as required in the performance of Employee's authorized employment duties or with the prior consent of a member of Employer's management, and then, such disclosure shall be made only within the limits and to the extent of such duties or consent.

(g)     Nothing herein shall be construed to prevent disclosure of Confidential Information as may be required by applicable law or regulation, or pursuant to the valid order of

CONFIDENTIALITY AND PROPRIETARY RIGHTS AGREEMENT

PLAINTIFF 002989

**DX1592-19**

a court of competent jurisdiction or an authorized government agency, provided that the disclosure does not exceed the extent of disclosure required by such law, regulation, or order. Employee shall promptly provide written notice of any such order to an authorized officer of Employer within twenty-four (24) hours of receiving such order, but in any event sufficiently in advance of making any disclosure to permit Employer to contest the order or seek confidentiality protections, as determined in Employer's sole discretion.

(h)     In addition, this Section 2 does not, in any way, restrict or impede Employee from (i) discussing the terms and conditions of his/her employment with co-workers or union representatives; (ii) exercising his/her rights under Section 7 of the National Labor Relations Act; (iii) exercising protected rights to the extent that such rights cannot be waived by agreement; or (iv) otherwise disclosing information as permitted by California or Federal law.

(i)     Further, Employee shall not be held criminally or civilly liable under any Federal, California or other state trade secret law for the disclosure of a Trade Secret that (i) is made in confidence to a Federal, state, or local government official or to an attorney solely for the purpose of reporting or investigating a suspected violation of law; or (ii) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Employer will not retaliate against Employee for disclosure of Confidential Information made in accordance with the law. If Employee files a lawsuit for retaliation by Employer for reporting a suspected violation of law, he/she may disclose the Trade Secret to his/her attorney and use the Trade Secret information in the court proceeding, if Employee (i) files any document containing a Trade Secret under seal; and (ii) does not disclose a Trade Secret, except pursuant to court order.

(j)     *Duration of Confidentiality Obligations*. Employee understands and acknowledges that his/her obligations under this Agreement with regard to any particular Confidential Information shall commence immediately upon Employee first having access to such Confidential Information (whether before or after he/she begins employment by Employer) and shall continue during and after his/her employment by Employer until such time as such Confidential Information has become public knowledge other than as a result of Employee's breach of this Agreement or breach by those acting in concert with Employee or on Employee's behalf.

**3.     Inventions and Work Product.**

(a)     *Disclosure of Inventions*. Employee acknowledges and agrees that, among his/her other duties for Employer, Employee will be employed by Employer in a position that could provide the opportunity for conceiving and/or reducing to practice inventions, improvements, developments, ideas, or discoveries whether patentable or unpatentable (collectively, **"Inventions"** (as defined below)). Accordingly, Employee agrees to promptly disclose to Employer in confidence and in writing all Inventions conceived or reduced to practice by Employee while in Employer's employ, either solely or jointly with others, and whether or not during regular working hours. Employee further agrees to maintain adequate and current written records of such Inventions.

CONFIDENTIALITY AND PROPRIETARY RIGHTS AGREEMENT

Page 3 of 11

PLAINTIFF 002990

**DX1592-20**

For purposes of this Agreement, Inventions include, but are not limited to, Employer information, ideas, plans, publications, research, strategies, techniques, documents, contracts, terms of agreements, negotiations, know-how, computer programs, computer applications, software design, web design, work in process, databases, manuals, results, developments, reports, graphics, drawings, sketches, market studies, formulae, notes, communications, algorithms, product plans, product designs, styles, models, audiovisual programs, inventions, unpublished patent applications, original works of authorship, discoveries, experimental processes, experimental results, specifications, client information, client information, client lists, marketing information, advertising information, and sales information.

(b)     *Employer Inventions*. The assignment provisions in Section 3(c) shall apply only to **"Employer Inventions"** (as defined herein). Employer Inventions shall mean any Invention that meets any one of the following criteria:

(i)     Relates, at the time of conception or reduction to practice of the Invention to: (A) Employer's business, project, or products, or to the manufacture or utilization thereof; or (B) the actual or demonstrably anticipated research or development of Employer.

(ii)     Results from any work performed directly or indirectly by Employee for Employer.

(iii)     Results, at least in part, from Employee's use of Employer's time, equipment, supplies, facilities, or Confidential Information.

Provided, however, that an Employer Invention shall not include the **"Employee Inventions"** (as defined herein). Employee Inventions shall mean any Invention that meets any of the following criteria:

(iv)     Any Invention which qualifies fully under the provisions of California Labor Code Section 2870 including any idea or Invention which is developed entirely on Employee's own time without using Employer's equipment, supplies, facilities, or Confidential Information, which is not related to Employer's business (either actual or demonstrably anticipated), and which does not result from work performed for Employer; or

(v)     Any ideas, unpatented, but potentially patentable, and Inventions conceived in whole or in part by Employee prior to Employee's employment with Employer.

(vi)     Employee Inventions are listed on **Exhibit A**. If no such Exhibit is attached, Employee represents and warrants that there are no such Employee Inventions as of the Effective Date.

(c)     *Assignment of Employer Inventions*. Employee hereby assigns, and agrees to assign, to Employer, all his/her rights, title, and interest in and to all Employer Inventions, including, but not limited to, copyrights, trade secrets, trademarks (and related goodwill), patents, and other intellectual property rights therein arising worldwide (collectively, **"Intellectual Property Rights"**). Also, Employee hereby assigns, and agrees to assign, to

CONFIDENTIALITY AND PROPRIETARY RIGHTS AGREEMENT

PLAINTIFF 002991

**DX1592-21**

For purposes of this Agreement, Inventions include, but are not limited to, Employer information, ideas, plans, publications, research, strategies, techniques, documents, contracts, terms of agreements, negotiations, know-how, computer programs, computer applications, software design, web design, work in process, databases, manuals, results, developments, reports, graphics, drawings, sketches, market studies, formulae, notes, communications, algorithms, product plans, product designs, styles, models, audiovisual programs, inventions, unpublished patent applications, original works of authorship, discoveries, experimental processes, experimental results, specifications, client information, client information, client lists, marketing information, advertising information, and sales information.

(b)     *Employer Inventions*. The assignment provisions in Section 3(c) shall apply only to **"Employer Inventions"** (as defined herein). Employer Inventions shall mean any Invention that meets any one of the following criteria:

(i)     Relates, at the time of conception or reduction to practice of the Invention to: (A) Employer's business, project, or products, or to the manufacture or utilization thereof; or (B) the actual or demonstrably anticipated research or development of Employer.

(ii)     Results from any work performed directly or indirectly by Employee for Employer.

(iii)     Results, at least in part, from Employee's use of Employer's time, equipment, supplies, facilities, or Confidential Information.

Provided, however, that an Employer Invention shall not include the **"Employee Inventions"** (as defined herein). Employee Inventions shall mean any Invention that meets any of the following criteria:

(iv)     Any Invention which qualifies fully under the provisions of California Labor Code Section 2870 including any idea or Invention which is developed entirely on Employee's own time without using Employer's equipment, supplies, facilities, or Confidential Information, which is not related to Employer's business (either actual or demonstrably anticipated), and which does not result from work performed for Employer; or

(v)     Any ideas, unpatented, but potentially patentable, and Inventions conceived in whole or in part by Employee prior to Employee's employment with Employer.

(vi)     Employee Inventions are listed on **Exhibit A**. If no such Exhibit is attached, Employee represents and warrants that there are no such Employee Inventions as of the Effective Date.

(c)     *Assignment of Employer Inventions*. Employee hereby assigns, and agrees to assign, to Employer, all his/her rights, title, and interest in and to all Employer Inventions, including, but not limited to, copyrights, trade secrets, trademarks (and related goodwill), patents, and other intellectual property rights therein arising worldwide (collectively, **"Intellectual Property Rights"**). Also, Employee hereby assigns, and agrees to assign, to

CONFIDENTIALITY AND PROPRIETARY RIGHTS AGREEMENT

PLAINTIFF 002991

**DX1592-22**

Employer all Inventions and related Intellectual Property Rights conceived or reduced to practice by Employee within one (1) year following his/her termination of employment with Employer (whether voluntary or otherwise), if the Invention is a result of an Employer Invention or Confidential Information obtained by Employee during his/her employment with Employer.

(d)    *License of Employee Inventions*. If, during the course of Employee's employment, such Employee Inventions are incorporated into or used in connection with any product, process, service, technology, or other work by or on behalf of Employer, Employee hereby grants and assigns to Employer (or as directed by it) a nonexclusive, royalty-free, fully paid for, irrevocable, perpetual, worldwide license to the Intellectual Property Rights, with the right to grant and authorize sublicenses, to make, have made, modify, use, import, offer for sale, and sell such Employee Invention as part of or in connection with such product, process, service, technology, or other work.

(e)    *Execution of Necessary Documents*. During and after his/her employment, without compensation, Employee agrees to reasonably cooperate with Employer at Employer's expense to (i) apply for, obtain, perfect, and transfer to Employer Employer Inventions, Work Product (as defined below), and Intellectual Property Rights in the Work Product in any jurisdiction in the world; and (ii) maintain, protect, and enforce the same, including, without limitation, executing, and delivering to Employer any and all applications, oaths, declarations, affidavits, waivers, assignments, other documents, and instruments as shall be requested by Employer.

(f)    Employee hereby irrevocably grants Employer power of attorney to execute and deliver any such documents on Employee's behalf in his/her name and to do all other lawfully permitted acts to transfer Employer Inventions and Work Product to Employer and further the transfer, issuance, prosecution, and maintenance of all Intellectual Property Rights therein, to the full extent permitted by law, if Employee does not promptly cooperate with Employer's request (without limiting the rights Employer shall have in such circumstances by operation of law). The power of attorney is coupled with an interest and shall not be affected by Employee's subsequent incapacity.

(g)    *Work Made for Hire*. Employee acknowledges that, by reason of being employed by Employer at the relevant times, to the extent permitted by law, all writings, works of authorship, technology, inventions, discoveries, ideas, and other work product of any nature whatsoever (collectively, **"Work Product"**) consisting of copyrightable subject matter is "work made for hire" as defined in the Copyright Act of 1976 (17 U.S.C. § 101), and such copyrights are therefore owned by Employer. Nothing contained in this Agreement shall be construed to reduce or limit Employer's rights, title, or interest in any Work Product, Inventions, or Intellectual Property Rights so as to be less in any respect than that Employer would have had in the absence of this Agreement.

(h)    *Moral Rights*. To the extent any copyrights are assigned under this Agreement, Employee hereby irrevocably waives, to the extent permitted by applicable law, any and all claims Employee may now or hereafter have in any jurisdiction to all rights of paternity,

CONFIDENTIALITY AND PROPRIETARY RIGHTS AGREEMENT

PLAINTIFF  002992

**DX1592-23**

integrity, disclosure, withdrawal, and any other rights that may be known as "moral rights" with respect to all Inventions and Work Product therein.

(i)     *No License.* Employee understands that this Agreement does not, and shall not be construed to, grant Employee any license or right of any nature with respect to any Inventions, Work Product, Intellectual Property Rights, any Confidential Information, materials, software, or other tools made available to him/her by Employer, except as required for Employee to perform his/her role.

4.     **Restrictive Covenants.**

(a)     *Non-Solicitation of Employer's Clients.* Employer considers and Employee acknowledges that Employer's clients and all Confidential Information relating to Employer's clients are Trade Secrets as defined in this Agreement. Employee agrees that during his/her employment and following the termination of his or her employment with Employer, whether voluntary or involuntary, Employee shall not, directly or indirectly, solicit or attempt to solicit any business from any of Employer's clients, for the purposes of providing products or services that are competitive with those provided by Employer when such solicitation or attempt at solicitation is done by Employee through the use of Employer's Trade Secrets or Confidential Information.

(b)     *Non-Solicitation of Employer's Personnel.* Employee acknowledges and agrees that Employer has invested substantial time and effort in assembling its current personnel. Therefore, Employee agrees that during his/her employment and for one (1) year following his or her termination of employment with Employer, whether voluntary or involuntary, Employee will not, in regard to any employee, independent contractor, or agent of Employer (collectively, **"Employer Personnel"**) that Employee had "material contact" with, directly or indirectly recruit or attempt to recruit any Employer Personnel or induce or attempt to induce any Employer Personnel to terminate or cease employment with Employer. For purposes of this paragraph, "material contact" shall exist when Employee (i) supervised Employer Personnel; (ii) worked directly with Employer Personnel; or (iii) otherwise received Confidential Information from Employer Personnel. Notwithstanding the foregoing, nothing in this Section shall prevent Employee from receiving and considering any application from any Employer Personnel that is not solicited by Employee or on Employee's behalf.

(c)     *Covenant Not to Compete During Term of Employment.* Employee agrees that, during his or her term of employment with Employer, he or she will not, directly or indirectly, either as an employee, employer, consultant, agent, principal, partner, corporate officer, board member, director, or in any other individual or representative capacity, engage or attempt to engage in any competitive activity relating to the subject matter of his/her employment with Employer or relating to Employer's line of business.

(d)     *Non-disparagement.* Employee agrees and covenants that he/she will not at any time make, publish, or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments, or statements concerning Employer or its businesses, any of its employees, officers, existing and prospective clients, suppliers, investors,

PLAINTIFF 002993

and other associated third parties. This Section does not, in any way, restrict or impede Employee from (i) exercising his/her rights under federal, state, or municipal civil rights or employment discrimination laws, to file or otherwise institute a charge of discrimination, to testify or participate in a hearing or proceeding, or to cooperate with any appropriate federal, state, or municipal government; (ii) exercising his/her rights under Section 7 of the National Labor Relations Act to the extent that such rights cannot be waived by agreement; or (iii) from complying with any applicable law or regulation, or a valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation, or order.

(e)    *Reasonableness of Restrictive Covenants.* **Employee acknowledges that he or she has carefully read and considered Section 4 of this Agreement and agrees that the restrictions set forth therein are fair and reasonable, are supported by valid consideration, and are reasonably required to protect the legitimate business interests of Employer.**

**EMPLOYEE INITIAL HERE** <u>*46*</u>
<sub>MB</sub>

5.    **Exit Obligations.** Upon (a) voluntary or involuntary termination of Employee's employment, or (b) Employer's request at any time during Employee's employment, Employee shall: (i) provide or return to Employer any and all Employer property (as applicable), stored in whatever media, including, but not limited to, keys, key cards, access cards, identification cards, security devices, employer credit cards, network access devices, computers, laptops, cell phones, equipment, manuals, reports, files, books, compilations, work product, e-mail messages, removable information storage devices, hard drives, data, documents, materials, Confidential Information, Trade Secrets, Work Product, and Inventions, that are in the possession or control of Employee, whether they were provided to Employee by Employer or any of its business associates or created by Employee in connection with his/her employment by Employer (collectively, **"Employer Property"**); and (ii) delete or destroy all copies of any Employer Property not returned to Employer that remain in Employee's possession or control, including those stored on any non-Employer devices, flash drives, networks, cloud storage, storage locations, and other media in Employee's possession or control. Employee shall provide written certification that he/she has complied with this Section 5.

6.    **Acknowledgement.** Employee acknowledges and agrees that the services to be rendered by him/her to Employer are of a special and unique character; that Employee will obtain knowledge and skill relevant to Employer's industry, methods of doing business, and marketing strategies by virtue of Employee's employment; and that the terms and conditions of this Agreement are reasonable under these circumstances. Employee further acknowledges that the amount of his/her compensation reflects, in part, his/her obligations and Employer's rights under this Agreement; that he/she has no expectation of any additional compensation, royalties, or other payment of any kind not otherwise referenced in this Agreement; that he/she will not be subject to undue hardship by reason of his/her full compliance with the terms and conditions of this Agreement or Employer's enforcement thereof; and that this Agreement is not a contract of employment and shall not be construed as a commitment by either of the Parties to continue an employment relationship for any certain period of time. **Nothing in this Agreement shall be construed to in any way terminate, supersede, undermine or otherwise modify the "at-will"**

CONFIDENTIALITY AND PROPRIETARY RIGHTS AGREEMENT

PLAINTIFF 002994

**DX1592-25**

status of the employment relationship between Employer and Employee, pursuant to which either Employer or Employee may terminate the employment relationship at any time, with or without cause, with or without notice.

EMPLOYEE INITIAL HERE **46** MB

7.    **Remedies.** Employee acknowledges that Employer's Confidential Information and Employer's ability to reserve it for the exclusive knowledge and use of Employer is of great competitive importance and commercial value to Employer, and that improper use or disclosure of the Confidential Information by Employee will cause irreparable harm to Employer, for which remedies at law will not be adequate. In the event of a breach or threatened breach by Employee of any of the provisions of this Agreement, Employee hereby consents and agrees that Employer shall be entitled to seek, in addition to other available remedies, a temporary or permanent injunction or other equitable relief against such breach or threatened breach from any court of competent jurisdiction, without the necessity of showing any actual damages or that monetary damages would not afford an adequate remedy, and without the necessity of posting any bond or other security. The aforementioned equitable relief shall be in addition to, not in lieu of, legal remedies, monetary damages, or other available forms of relief.

8.    **Successors and Assigns.** Employer may assign this Agreement to any subsidiary, corporate affiliate, successor, or assign (whether direct or indirect, by purchase, merger, consolidation, or otherwise). This Agreement shall inure to the benefit of Employer, permitted successors, and assigns. Employee may not assign this Agreement or any part hereof. Any purported assignment by Employee shall be null and void from the initial date of purported assignment.

9.    **Attorneys' Fees and Costs.** The Parties acknowledge and agree that each of them will bear their own costs, expenses, fees, expert and consultant fees, and attorneys' fees arising out of or connected with the negotiation, drafting, and execution of this Agreement and all matters arising out of or connected therewith, except that, in the event any action or proceeding is brought by any Party to this Agreement to enforce or interpret this Agreement, the prevailing party or parties shall be entitled to recover their reasonable attorneys' fees and costs incurred in that subsequent action or proceeding, in addition to all other relief to which that party or those parties may be entitled.

10.    **Governing Law; Jurisdiction and Venue.** This Agreement, for all purposes, shall be construed in accordance with the laws of the State of California without regard to conflicts-of-law principles. The Parties agree that this Agreement is being entered into in Alameda County, California and that venue for any action to enforce or interpret the terms of this Agreement shall be in Alameda County, California. The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue. The presumption found in California Civil Code Section 1654, that uncertainties in a contract are interpreted against the party causing an uncertainty to exist, is hereby waived by all Parties to this Agreement.

11.    **Entire Agreement.** Unless specifically provided herein, this Agreement contains

CONFIDENTIALITY AND PROPRIETARY RIGHTS AGREEMENT

Page 8 of 11

PLAINTIFF 002995

**DX1592-26**

all the understandings and representations between Employee and Employer pertaining to the subject matter hereof and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter.

**12.    Modification and Waiver.** No provision of this Agreement may be amended or modified unless such amendment or modification is agreed to in writing and signed by Employee and by a duly authorized officer of Employer. No waiver by either of the Parties of any breach by the other Party of any condition or provision of this Agreement to be performed by the other Party shall be deemed a waiver of any similar or dissimilar provision or condition at the same or any prior or subsequent time, nor shall the failure of or delay by either of the Parties in exercising any right, power, or privilege hereunder operate as a waiver thereof to preclude any other or further exercise thereof or the exercise of any other such right, power, or privilege.

**13.    Severability.** Should one or more of the provisions of this Agreement be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions hereof, and if such provision or provisions are not modified as provided below, this Agreement shall be construed as if such invalid, illegal, or unenforceable provisions had not been set forth herein. It is intended that in the event that any provision of this Agreement shall be held invalid because of its scope or duration, the court making such a determination shall have the power to limit the scope or duration of the provision in question and, in its limited form, such provision shall then be enforceable.

**14.    Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument. True and correct copies, including faxed or e-mailed signatures, may be used in lieu of the original.

*[Signatures Follow on the Next Page]*

PLAINTIFF 002996

**DX1592-27**

**IN WITNESS WHEREOF,** the Parties have executed this Agreement as of the Effective Date.

**Engine Room Consulting Services, Inc.**

Signature: _Michael Rose_

Print Name: ___Michael Rose___

Title: _____CEO_____

**EMPLOYEE**

Signature: _Mauro Botta_
Mauro Botta (May 20, 2020 13:00 PDT)

Print Name: Mauro Botta

Effective Date: May 20, 2020

CONFIDENTIALITY AND PROPRIETARY RIGHTS AGREEMENT

PLAINTIFF 002997

**DX1592-28**

**EXHIBIT A**
*Employee Inventions*

CONFIDENTIALITY AND PROPRIETARY RIGHTS AGREEMENT

PLAINTIFF 002998

**DX1592-29**



## Engine Room - Values

1. Provide an excellent client experience
   - Do more than what is expected; achieve an emotional benefit;  offer value (extraordinary service and competitive price)

2. Communication
   - Open and honest communication builds strong relationships; build trust; be a good listener; remember how you make people feel

3. Build a collaborative team environment, with employees and business partners
   - Encourage different ideas, opinions and points of view.  Mangers role is to enable direct reports to succeed, take ownership of issues; and empower team members

4. Operational excellence
   - Operate with the highest integrity, make incremental improvement; increase  efficiency; and strive to do things better

5. Innovation
   - Continuously innovate, stay ahead of the competition, think outside the box

6. Change
   - Embrace it, drive it from the  bottom up, respond quickly, adapt

7. Fun
   - Don't take ourselves too serious, have fun; culture is what makes us successful; be humble

8. Personal and Professional development
   - it's a Joint effort

9. Treat others as you would like to be treated

10. Keep it simple

Acknowledgment of Receipt:

Name: _Mauro Botta (May 20, 2020 13:00 PDT)_

Date: May 20, 2020

PLAINTIFF  002999

# EARNINGS STATEMENT



**Engine Room Consulting Services, Inc.**
**DBA : Engine Room Consulting Service**

4725 First Street
Suite 250
Pleasanton, CA  94566

Check No: 35224618

Check Date: 11/20/2020

Pay Period: 11/01/2020 - 11/15/2020

## Mauro Botta

NON-NEGOTIABLE

88 East San Fernando Street,

Unit 1308

San Jose , CA  95113-

Employee ID : 00002622102

Location: Engine Room Consulting
Serv-HQ

Business Title: Technical
Accountant/Controlle

Department: 95S7OS01

Pay Rate: $190,000.00 Annual

Net Pay

USD **$4,811.38**

### Hours and Earning

| Description | Rate | Hours | Units | Current Earnings | Hours | Units | Year-to-Date |
|---|---|---|---|---|---|---|---|
| Regular | 0.000 | 0.00 | 0.00 | 7,916.67 | 976.00 | 0.00 | 85,355.39 |
| Reimbursement-Non Taxable | 0.000 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 200.00 |
| Holiday | 0.000 | 0.00 | 0.00 | 0.00 | 16.00 | 0.00 | 1,384.62 |
| Commission B | 0.000 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 49.50 |
| Gross Pay | | 0.00 | 0.00 | 7,916.67 | 992.00 | 0.00 | 86,999.51 |
| Fed Taxable Gross | | | | 7,634.65 | | | 83,886.49 |

### Taxes and Deductions

| Taxes | Current | | Year-to-Date |
|---|---|---|---|
| Fed Withholding | 1,486.73 | | 15,780.44 |
| Fed MED/EE | 110.70 | | 1,216.35 |
| Fed OASDI/EE | 473.35 | | 5,200.96 |
| CA Withhol'ding | 626.31 | | 6,723.25 |
| CA OASDI/EE | 76.28 | | 838.15 |
| Total Taxes | 2,773.37 | | 29,759.15 |

| Before-Tax Deductions | Current | Plan Year | Year-to-Date |
|---|---|---|---|
| Blue Shield | 289.30 | 0.00 | 2,993.10 |
| Guardian Dental | 14.09 | 0.00 | 154.99 |
| Aetna Vision | 2.43 | 0.00 | 26.73 |
| Total Before Tax Deductions | 305.82 | 0.00 | 3,174.82 |

| After-Tax Deductions | Current | | Year-to-Date |
|---|---|---|---|
| Aflac Critical Illness | 17.60 | | 193.60 |
| MetLife Legal | 8.50 | | 93.50 |
| Total After Tax Deductions | 26.10 | | 287.10 |
| Total  Deductions | 331.92 | | 3,461.92 |
| Net Pay | 4,811.38 | | 53,778.44 |

### Tax Withholding

| Description | CA State | Federal |
|---|---|---|
| Marital Status | S/M-2 inc | Single |
| Allowance/Credit | 1.00 | 0.00 |
| Addl. Income | 0.00 | 0.00 |
| Deductions | | 0.00 |
| Addl. Amt. | 0.00 | 0.00 |

### Company-Paid Benefits

| Taxable Benefits | Current | Year-to-Date |
|---|---|---|
| Life & AD/D multiple | 6.50 | 71.50 |
| Long Term Disability | 17.30 | 190.30 |
| Total Taxable | 23.80 | 261.80 |

| Non-Taxable Benefits | Current | Year-to-Date |
|---|---|---|
| Blue Shield | 398.70 | 4,122.90 |
| Guardian Dental | 15.76 | 184.36 |
| Aetna Vision | 2.68 | 29.48 |
| Life & AD/D multiple o | 8.02 | 88.22 |
| Short Term Disability | 4.47 | 49.17 |
| Total Non-Taxable | 430.63 | 4,474.13 |
| Total Benefits | 454.43 | 4,735.93 |

### Time Off

| Description | SICK | VAC/PTO |
|---|---|---|
| Start Balance | 0.00 | 0.00 |
| +Earned | 33.03 | 38.15 |
| -Taken | 0.00 | 0.00 |
| +Adjustments | 0.00 | 0.00 |
| End Balance | 33.03 | 38.15 |

### Direct Deposit

| Account Type | Account No. | Deposit Amount |
|---|---|---|
| Checking | 5514 | 4811.38 |
| Total | | 4811.38 |

TriNet HR III, Inc., 1 Park Place, Suite 600, Dublin, CA 94568-7983
For payroll inquiries contact the TriNet Solution Center at (800) 638-0461

PLAINTIFF  003003



**DX1592-31**