# DX1689

Message
_____

**From:**        mauro.x.botta@us.pwc.com [mauro.x.botta@us.pwc.com]
**Sent:**        11/26/2016 9:09:38 PM
**To:**          mauro_botta@libero.it
**Subject:**     mail
**Attachments:** _.png; _.png; _.png; _.png; _.png; _.png; _.png; _.png; _.png; _.png; _.png; _.png; _.png; _.png; _.png; _.png;
                 _.png; _.png; _.png; _.png; _.png; _.png; _.png; _.png; _.png; _.png; _.png; _.png; _.png; _.png

**Mauro Botta**

PwC | Senior Manager
Office  +1 408 464 5438
Email: mauro x botta@us pwc com
PricewaterhouseCoopers LLP
488 Almaden blvd suite 1800 San Jose CA 95110
http://www.pwc.com/us



rec2004.doc  rec2005.doc  rec2006.doc  rec2007.doc  rec2008.doc  rec2009.doc  rec2010.doc  rec2011.doc  rec2012.doc  rec2013.doc



rec2014.doc

      

rec2015.doc  Address Book.xlsx  Attachment D.docx  Attachment.docx



CG Employee Bonus Plan - Client Serving Manager to Sr Manager (2016-2017).pdf  Connor Group - Cost.pdf



Connor Group - CA At-Will Employment, Confidential Information, etc  Argeement.pdf



film.txt  History of Events A.docx  History of Events.docx  Mauro Botta Offer Letter (Locked).pdf  Outline.docx  PB 2.docx  PB.docx

    

Preliminary document.pdf  Signed Letter PDF  Vacation planner.xlsx

    

PerNatale.xls  recensioni.xls  rec2016.doc

Lorne L Marchant, CSR# 10523  RMR, CRR  CCRR  CRC

**EXHIBIT  40**

**WITNESS: Mauro Botta**
**CASE: Botta v. PricewaterhouseCoopers**
**CASE No.: 3:18-CV-02615-RS**
DATE  Tuesday September 25, 2018

**DX1689-1**

History of Events – SEC matter

In 2014 I started noticing signs of a concerning trend involving partners at this firm in my public engagement A. During February 2014 on my public account I advocated paragraph of our guide to express disagreement with my partner on what was our professional judgement on the engagement where I was working on. I presented a summary of my findings involving past 3 years, and the consultation that followed awarded me the point that hadn't we consulted we'd have violated firm policies. Also, I challenged the opinion on internal controls which was able to be issued thanks to me creating a control the day before the filing of the form 10-K which was never documented nor discussed with the Company.

After the episodes narrated above, I started having discussions about our conduct on internal control opinion and I was told that probably many company in our portfolio should have a material weakness opinion, but if we're the only one to do so we'd be out of business.

The other trend that emerged is that our documentation inflates the activities and competence that company A had with the result that upon inspection, it would not be possible for inspectors to actually realize the level of competence and the number of audit adjustments issued in that audit, which were documented as "management findings" which do not need to be evaluated for control implications.

On most non-public jobs we prepare financial statements and assist management with entries that they cannot prepare, and by auditing standard this could constitute a material weakness in their controls within the finance department, yet very few and mostly those that are close to go IPO present such opinion.

Additionally as further concern to the tone at the top in the silicon valley office, when talking to a manager of another public company B, he mentioned that he personally saw a critical memo including a control that did not exist, but that was documented to avoid to have to evaluate a significant control gap. The manager even reported that the memo had all the other controls with links to our documentation, except that single key control which was not linked to anything.

I also several conversations with the team of another public company, C, which involved possible independence violations, first when we performed the valuation of shares for tax purposes, who we then audited (for independence we should not audit our own work), but such company one year later hired the leading manager of the audit team before the cool-off period expired. To go around the independence requirement such company hired the resource by giving him a title that did not seem to belong to the finance department, yet factually such resource had significant involvement during the audit, constituting a possible independence violation. Additionally the independence policy foresees in this case that "a PwC partner not involved in the engagement must review the first annual audit in which the former PwC partner or practice staff member is involved at the audit client to determine whether the engagement team maintained the appropriate level of skepticism when evaluating the representations and work of the former PwC partner or practice staff member" This is the same company where previous managers reported to me that we were being very lenient and for instance there were issues of understaffing that "everyone knows" but no one brings up for concern to lose the account.

Confidential

**DX1689-2**

The concerns continued with the behavior observed also in Company D, where the partner referenced to the fact that we should be careful not to be disruptive of the market by being the only firm to issue material weaknesses and we'd be mindful of who were the board member of the company. The year-end audit of the this public company denoted multiple issues and as a result of lack of of inaccurate auditing procedures occurred in previous years.

Lastly, on another public Company, E, in an internal all hands training, it was advertised as example of good relationship, the fact that the audit team after missing their coach flight, accepted to fly with the CFO private jet back to San Jose to attend the firm internal party, despite this would constitute an independence violation both in fact and in appearance.

The fact that even in trainings the firm refers to the management of the company as "client", led me to the concern that the audit firm in this office has now institutionalized a tone at the top that validates a significant conflict of interest.

The concern I have to which the 4 companies above are examples, is that auditors are paid by management, and in order to keep the account (because each partner is obviously rewarded based on how he managed its portfolio) we arbitrarily describe in our workpapers what should be audit findings as management findings to avoid to have to evaluate the control implications. Furthermore, the fact that companies often hire ex auditors in their finance department before they possess the level of skills needed, results in auditors having to fix items that should not be part of our job (i.e. most financial statements should be audited once management reviews them yet the auditor review and comment on them while they're still in draft form, voiding the possibility to assess management competency). Lastly, given that as shown above to make partner you need to support and not speak up to the leaders or criticize them, it is very common for peers and managers, as emerged in a myriad of day to day conversations, that there is a trend to also sign off or not sign off steps that are deemed not completely correct because in any case is "partner responsibility" and because you "need to keep your head down" if you want to progress.

I'd like to recommend to the SEC to have an enforcement team to inspect a sample of audit jobs in the silicon valley office by conducting subpoena of original company control documents to then compare them with what is documented in the audit workpapers and to also conduct independent interviews to really assess the competence of most of the finance department key figures within such companies. This would hopefully achieve to expose the collusion between partners and management aimed to maintain a successful relationship of management paying us the fees and auditors picking and choosing what to call an audit issue to avoid to upset the very same management that are supposed to audit. Again, by documenting that a finding is noted by management in the workpapers would never allow an inspector to realize that such findings were instead audit adjustments, because is not part of the inspector mandate to subpoena original company documents. An additional example of what I reported is also noticeable in the survey attached in attachment A when a partner wanted to print an audit memo and randomly leaving it on a cube so that management would find it and copy it and make it their own workpaper, rather than noticing the issue that management didn't have the competence to prepare rationale for their position.

Furthermore I'd like the SEC to sanction the firm for a flaw in its quality control program. Currently the firm inspect every partner once every 3 years, however a partner reviews only 25% of each step in an audit, while currently there is no program that regularly inspect the leading manager of the jobs, who

Confidential

PwC_B00000796

**DX1689-3**

are inspected only if they work for the partner who is inspected during that cycle. This has caused extreme disparity in quality control check of the managers (who reviews the remaining 75% of an audit) whereby some are reviewed each year, while others are never inspected or only once every few years.

I raised the concerns of tone at the top to my market assurance leader who in response said he would have escalated them, but to date after 3 months no action nor response has been provided.

Confidential

PwC_B00000797

**DX1689-4**