# JX19

Contract Data                                                                                     Page 1 of 8

New Window | Help | Customize Page

| Contract Status/Content | Approval | Print |

Botta, Mauro                                Employee                            EmplID: 00300178571
Contract Number: AGREEMENT02   Creation Date: 07/01/2010   Contract Status: Active

Contract Data

## PricewaterhouseCoopers LLP Employment Agreement

In consideration of your promotion to the position of Sr Manager at PricewaterhouseCoopers LLP (the "Firm"), and for other good and valuable consideration, the adequacy, sufficiency and receipt of which are hereby acknowledged, you, Mauro Botta, hereby acknowledge and agree that:

1. **Compensation**.

    a. **Salary**. As a Sr Manager in the Firm's San Jose, CA office, you will be compensated at a rate of $9,583.33 per month, payable semi-monthly, which represents $115,000.00 when computed on an annual basis. Your compensation generally will be reviewed once each fiscal year for the purpose of determining whether any adjustment is appropriate; however, the Firm may make changes to or adjust compensation, up or down, at any time during the year for business or other reasons. Merit increases, if any, based on performance generally are made effective July 1.

    b. **Bonus**. You may be eligible to participate in bonus programs applicable to your position, as in effect from time to time. The amount and timing of any bonus are at the sole discretion of the Firm. To be eligible to receive a bonus, you must be actively employed by the Firm on the date such bonus is to be paid.

2. **Benefits**.

    You will remain eligible to participate in the comprehensive benefits program currently offered by the Firm to its employees, subject to the terms and conditions of the respective plans. The benefits currently offered by the Firm are outlined in the Staff Benefits Summary. The Firm reserves the right to change or eliminate these benefits in its sole discretion at any time. Also, the Firm will continue to reimburse you for appropriately documented, reasonable expenses you incur while working on Firm business, in accordance with its business expense reimbursement policies.

3. **Duties and Responsibilities**.

    You agree that you will continue to devote substantially all of your working time and attention to the performance of your assigned duties as required, and will not, without the written consent of the Firm, engage, directly or indirectly, in any other employment, business or professional activity for compensation, profit or financial gain. You also agree that you will not assume any paid or unpaid directorships; however, this restriction does not apply to directorships in non-client charitable, civic, educational, social or other similar nonprofit organizations, provided that such activities do not

https://orbit-usc.nam.pwcinternal.com/psc/HR8PRDC/EMPLOYEE/HRMS/c/ADMINIST...  PLAINTIFF/0058...

conflict with Firm interests, including its independence policy.

4. **Employment-at-Will**.

This Employment Agreement does not constitute, and may not be construed as, a commitment to employment for any specific duration. The duration and terms and conditions of your employment relationship with the Firm will continue to be at-will, which means that the Firm may change the terms and conditions of the employment relationship, and that you may leave the Firm, or the Firm may require you to leave its employ, for any reason or no reason, at any time.

5. **Termination of Employment**.

a. **Termination by the Firm**. If your employment is terminated by the Firm for reasons other than professional, legal, ethical or Firm policy violations, subject to the Firm's Notice/Severance Policy for Certain Employees (the "Severance Plan"), you will be provided with: (i) one month's notice, if you have been employed for more than six months but less than two years; (ii) two months' notice, if you have been employed for two years but less than five years; or (iii) three months' notice, if you have been employed for five or more years. The Firm reserves the right under the Severance Plan to pay your base salary in lieu of continued employment for any or all of the applicable notice period.

b. **Termination by You**. If you resign, you agree to provide the Firm with at least two weeks' notice to allow an orderly transition of your responsibilities. If the Firm chooses not to continue your employment for the two-week minimum notice period, you will be paid your base salary for the remaining portion of such two-week period. If you do not provide at least two weeks' notice, the Firm may choose to terminate your employment earlier than the date specified in your notice and, in any event, you will be paid only through your last day of employment. You agree that, prior to your departure, you will provide the Firm with the name of your subsequent employer or other professional affiliation and the position you intend to assume.

6. **Independence**.

Independence is a professional principle and obligation that must be observed by employees of a firm which provides public accounting services. Independence obligations prohibit, among other things, you, your spouse/cohabitant and your dependents from holding certain positions with or investing in certain audit/attest clients of the Firm and such clients' affiliates. Similarly, a non-dependent close relative's position with or material investment in an audit/attest client of the Firm may impair your compliance with the Firm's independence rules. Your position, job description, office location and client associations determine the applicability of specific provisions of the Firm's independence policy to you. You acknowledge that you are already familiar with the Firm's independence rules and understand that it is important that you continue to comply with those rules. Periodically you will be required to confirm your compliance with the Firm's independence policy.

In connection with your independence obligations, the Firm and/or the Securities and Exchange Commission may request, and you agree to provide, relevant

financial and tax information and up-to-date records of your investment portfolio. You also may be required to maintain a current record of your financial holdings (but not their value) in a Firm database. If an impairment of the Firm's independence or a conflict of interest exists or is likely to occur, you may be required to dispose of securities or resolve other independence issues on short notice and on terms that are disadvantageous to you. The Firm also may require that you relocate to another Firm office or even separate from its employ.

You also have an ongoing obligation to cooperate and comply with the Public Company Accounting Oversight Board (PCAOB). You agree to comply with the requirements of the PCAOB and to provide information to the Firm in support of its PCAOB registration requirements. Your obligations include, but are not limited to, cooperating and complying with any request for testimony or the production of documents made by the PCAOB in furtherance of its authority and responsibilities under the Sarbanes-Oxley Act of 2002.

7. **Confidential and Proprietary Information**.

Information and materials relating to the Firm or its clients, licensors or suppliers that are not publicly available must be treated as confidential and proprietary ("Confidential Information") and may only be used or disclosed for business purposes related to your employment duties with the Firm. You have an obligation to safeguard Confidential Information from unauthorized use and disclosure. Confidential Information shall include, without limitation, the Firm's trade secrets; inventions (whether or not patentable); professional, technical and administrative manuals; associated forms, processes, and computer systems (including hardware, software, databases and information technology systems); other methodologies and systems; sales and other forecasts; marketing and business development plans and strategies; client and prospect files, lists and materials; research materials; investigative materials; and project notes and plans. Information shall not be deemed Confidential Information if it is or becomes generally available to the public other than as a result of an unauthorized disclosure or action by you or at your direction or by any other person who directly or indirectly receives such information from you. Because Confidential Information is extremely valuable, the Firm takes measures to maintain its confidentiality and guard its secrecy. Confidential Information may be copied, disclosed or used by you during your employment with the Firm only as necessary to carry out Firm business and, where applicable, only as required or authorized under the terms of any agreements between the Firm and its clients, licensors and suppliers. You agree not to take or keep any Confidential Information when you leave the Firm, and to return all Confidential Information to the Firm before your departure. If you are ever asked to disclose any information or materials that are subject to these confidentiality restrictions, pursuant to legal process or otherwise, you must contact the leader of your practice unit or the Firm's Office of the General Counsel to seek the Firm's consent prior to any disclosure. These confidentiality restrictions are permanent and do not lapse or cease upon your departure from the Firm.

8. **Insider Information**.

You are prohibited from using or sharing information not publicly disclosed, which you obtain during the course of your work for the Firm, for your personal gain or

advantage in securities transactions, or for the personal gain or advantage of anyone with whom you improperly share this information. This restriction applies to such information related to any company, not just the Firm's clients and their affiliates. The foregoing obligation is in addition to any obligation that you have not to purchase or hold securities of entities with respect to which the Firm must maintain independence.

9. Intellectual Property.

You agree to disclose promptly to the Firm all inventions, discoveries, techniques, technologies, methodologies, writings, software, improvements, and any other works developed, conceived or created by you, either alone or in conjunction with others, at any time during your employment and related to the actual or expected business or activities of the Firm ("Works"), including, without limitation, Works created in connection with services provided to clients. You hereby assign all of your rights, titles and interests (including, without limitation, all copyrights, trademarks, patent rights and other intellectual property rights) therein to the Firm. Whenever requested to do so by the Firm, you agree to cooperate and do all things necessary, including executing all applications, assignments or other instruments that the Firm shall deem necessary to apply for and obtain letters patent or copyrights of the United States or any foreign country, or otherwise protect the Firm's interests therein. If you do not execute such instruments within five days of their being presented to you, you hereby appoint the Firm with limited power of attorney to execute all such instruments. This power of attorney is a right coupled with an interest and is irrevocable. These obligations shall continue beyond the conclusion of your employment, and shall be binding upon your assigns, executors, administrators and other legal representatives. All Works shall be considered Confidential Information.

Notwithstanding the foregoing, pursuant to California Labor Code Section 2870, you shall not be required to assign, nor shall you be deemed to have assigned, any of your rights in any invention or work of authorship that you develop entirely on your own time without using or referring to the Firm's resources, equipment, supplies, facilities, Confidential Information or trade secret information, except for those inventions or works of authorship that either (1) at the time of creation, conception or reduction to practice of the work or invention relate to the Firm's business, or to actual or demonstrably anticipated research or development of the Firm; or (2) result from any work performed by you for the Firm. You acknowledge that you bear the burden of proving that an invention or work of authorship is so exempt from the assignment provisions of this Employment Agreement. You agree to disclose to the Firm, in confidence, all inventions or works of authorship made solely by you or jointly with others at any time during the term of your employment with the Firm, for a review process under which the Firm may determine such issues as may arise, including the Firm's rights and your rights in such inventions or works of authorship.

10. Continuing Obligations.

You represent that you have not taken, and agree that you will not take, in connection with your employment with the Firm, any action that would violate any contractual or other restriction or obligation that is binding on you or any continuing duty you may owe to others.

If you are a former federal government or military employee and are subject to an opinion letter issued by a federal government agency ethics officer, you represent that you have provided a copy of such opinion letter to the Firm. You also represent that you have fully complied, and agree that you will continue to fully comply, with the guidance set forth in such letter, and that you have not, and will not, engage in any activity that reasonably could be perceived as a personal conflict of interest under such letter. You agree to inform the Firm's Ethics and Compliance Office or lawyer in the Office of the General Counsel responsible for the Firm's Washington Federal Practice immediately if a Firm partner, principal or employee requests that you take any action that would cause you to violate the guidance set forth in such opinion letter.

11. **Solicitation of Clients**.

a. **Prohibition on Solicitation**. You acknowledge that, because of the nature of your work for the Firm, you will develop, learn of, have access to, or be provided with trade secret information belonging to the Firm. Trade secret information includes formulas, patterns, compilations, programs, devices, methods, techniques, or processes that derive independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use, and which are the subject of reasonable efforts to maintain their secrecy. You further acknowledge that the unauthorized use or disclosure of the Firm's trade secret information could impair the protectible relationships and goodwill of the Firm with its clients and prospective clients. Accordingly, you agree that you will not use or disclose, or assist others in using or disclosing, the Firm's trade secret information for any reason, including without limitation, for the purposes of directly or indirectly soliciting, accepting as a client, or performing services of any type that the Firm can render ("Services") for, any person or entity. It shall not be relevant that a person or entity desires or prefers that someone other than the Firm render Services or that the person or entity is already served by you or any third party with which you become associated.

b. **Remedies**. You acknowledge and agree that the amount of damages to the Firm resulting from any breach by you of section 11(a) is uncertain and will be difficult to ascertain or calculate with precision. If you breach section 11(a), in addition to any other legal and equitable remedies the Firm may have, you agree to pay to the Firm liquidated damages in an amount equal to 25% of the gross fees paid for Services rendered in, or as a result of, a violation of section 11(a). Such percentage shall be paid with respect to all such Services rendered by you or a third party at any time during a period of three years from the first date of such violation. You agree that such damages are a reasonable and fair estimate and calculation of the amount of damages that the Firm will incur as a result of your breach of section 11(a). You must make the payment to the Firm within 30 days after each such payment of fees has been made by the client.

12. **Solicitation of Partners, Principals and Employees**.

a. **Prohibition on Solicitation**. You agree that, during your employment and for two years following your departure from the Firm for any reason, you will not directly or indirectly solicit or induce, or assist others in soliciting or inducing, Firm partners, principals or employees to become associated with, or perform Services on behalf of, you or any employer or third party, or to otherwise disrupt, impair, damage or interfere

with the Firm's relationship with its partners, principals or employees.

  b. **Remedies**. You acknowledge and agree that the amount of damages to the Firm resulting from any breach by you of section 12(a) is uncertain and will be difficult to ascertain or calculate with precision. If you breach section 12(a), in addition to any other legal and equitable remedies the Firm may have, you agree to pay to the Firm liquidated damages in an amount equal to 30% of the individual's annual compensation (including, without limitation, base salary, commission, bonus and the like) at the time of departure to cover replacement costs, and an additional 10% of such annual compensation to cover costs associated with training his or her replacement. You agree that such damages are a reasonable and fair estimate and calculation of the amount of damages that the Firm will incur as a result of your breach of section 12(a). You must make the payment to the Firm within 30 days from the mailing of a written notice to you advising you of the amount due.

13. **Injunctive Relief**.

  In the event of a breach or threatened breach by you of any provision of sections 7, 9, 11 or 12 of this Employment Agreement, you agree that the Firm, in addition to any other legal and equitable remedies available to it, shall be entitled to provisional and injunctive relief. You further agree that no bond shall be required to be posted by the Firm in connection with any such action for provisional or injunctive relief. The Firm may pursue any remedy available to it (including, without limitation, those remedies set forth in sections 11(b) and 12(b) above), concurrently or consecutively in any order, and the pursuit of one such remedy will not be deemed to be an election of remedies or waiver of the right to pursue any other remedy.

14. **Assignability**.

  You may not assign any of your rights or obligations under this Employment Agreement. This Employment Agreement shall be binding upon and inure to the benefit of the Firm's successors and assigns. Without limiting the foregoing, the Firm may assign its rights and delegate its duties hereunder in whole or in part to any affiliate of the Firm or to any transferee of all or a portion of the assets or business to which this Employment Agreement relates.

15. **Severability**.

  If any term or condition set forth in this Employment Agreement is found by a court or other tribunal to be unenforceable, then the remaining terms and conditions will remain in full force and effect. Terms and conditions, if any, found to be unenforceable, will be modified by the court or tribunal to conform to a provision that most closely expresses the intent of the unenforceable term or condition.

16. **Applicable Law**.

  PricewaterhouseCoopers LLP is a nationwide firm with executive offices in the City of New York; accordingly, this Employment Agreement is governed by the laws of the State of New York regardless of your practice location and irrespective of the

PLAINTIFF 0063

principles of conflicts of law.

### 17. Representations.

You acknowledge that you have not relied on any representations or statements, whether oral or written, regarding your employment with the Firm, other than as contained in this Employment Agreement.

### 18. Modifications.

You acknowledge that this Employment Agreement supersedes all prior oral or written agreements or understandings with the Firm, except for any existing or outstanding agreements with the Firm regarding repayment obligations. This Employment Agreement may be modified only by a writing signed by the leader of your practice unit, or his or her designee; provided, however, that any modification of section 4 of this Employment Agreement must be signed by the Firm's U.S. Human Resources Leader.

### 19. Headings.

Section headings are used herein for convenience of reference and shall not affect the meaning of any provision of this Employment Agreement.

**ACCEPTED AND AGREED**

Name: _____

Signature: _____

Date: _____

PwC GUID:   mbotta002            Contract Signature Date Time:   07/01/2010 11:27PM