INGRID M. EVANS, ESQ. (SBN 179094)
**EVANS LAW FIRM, INC.**
3053 Fillmore Street #236
San Francisco, CA 94123
Phone: (415) 441-8669
Fax: (888) 891-4906
Ingrid@evanslaw.com

ALEXANDER G. CABECEIRAS, ESQ.
**DEREK SMITH LAW GROUP, PLLC**
One Penn Plaza, Suite 4905
New York, New York 10119
Phone: (212) 587-0760
Fax: (212) 587-4169
alexc@dereksmithlaw.com
*Pro Hac Vice*

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| MAURO BOTTA,<br><br>        Plaintiff,<br><br>vs<br><br>PRICEWATERHOUSECOOPERS LLP,<br><br>        Defendant. | Case No. 3:18-cv-02615-AGT<br><br>**PLAINTIFF MAURO BOTTA'S OPPOSITION TO DEFENDANT PWC'S MOTION TO QUASH PLAINTIFF'S TRIAL SUBPOENAS TO FORMERLY CAVIUM, INC. ACQUIRED BY MARVELL TECHNOLOGY, INC. AND PRICEWATERHOUSECOOPERSLLP, TYE THORSON**<br><br>Trial Date: February 22, 2021<br>Time:       8:30AM<br>Courtroom: Courtroom A, 15th Floor, United States District Courthouse, 450 Golden Gate Ave., San Francisco, CA 94102<br>Judge:      The Hon. Alex G. Tse |

## I. INTRODUCTION

Plaintiff issued two noticed, trial subpoenas under Fed. R. Civ. P. 45 for a total of three important documents from Formerly Cavium, Inc., acquired by Marvell Technology Inc. (hereafter "Cavium") and PricewaterhouseCoopers, LLP/Tye Thorson (hereafter "PwC/Thorson").[1] The three documents are:

*(1) Cavium Management Representation Letter for 2014 Audit;*
*(2) Cavium prepared Summary of Aggregated Deficiencies(SAD) for 2014 Audit;  and*
*(3) 2015 Management Test workpapers for control 7.2.6 or other control that sets forth the $10 Million control*

These documents are critical for the following reason:  Defendant claims that Mauro was fired because he fabricated an internal control during the fiscal year 2014 audit of Cavium, specifically the $10 million control threshold. *See* Evans Decl. ¶ 2.  Specifically, the control PwC claimed Mauro "fabricated" was a $10 million control threshold ( "$10 million control") for Cavium's internal accounting procedures.  Evans Dec. ¶ 2.  Plaintiffs believes that the subpoenaed documents will prove that Mauro did not fabricate the $10 million control threshold and that PwC's explanation is not true and is a pretext.  Plaintiff believes that the subpoenaed documents will show that Cavium and PwC discussed the $10 million control, and that Cavium itself internally accepted, adopted, implemented and put in place at Cavium this $10 million control: (1) The Cavium Management Representation Letter for the 2014 Audit will identify the $10 million control as a control for the deficiencies noted as part of the SAD attached to it, and that Cavium implemented it.; (2) The Cavium prepared SAD for 2014 Audit will identify the $10 million control issue and show that the $10 million control was implemented.; and (3) The 2015 Managemoent Test workpapers will show that the $10 million control was implemented and in place.

---

[1] Items (1), (2) and (3) are subpoenaed from Cavium and Items (1) and (2) from PwC/Tye Thorson.

Defendant did not produce these documents in its responses to General Order 71 discovery[2] or subsequent discovery requests, which in numerous places requested documents for which these three documents would be responsive (RPDs **Nos. 2** (documents in the possession or control of Defendants that relate or pertain to the Plaintiff's claims against Defendants), **3** (Mauro's personnel file), **21** (documents relating to Defendant PwC's and Cavium Inc.'s working relationship between 2012 through 2014), **23** (documented complaints, suggestions, memos, written by Mauro Botta pertaining to Defendant PwC's work with Cavium, Inc.), **34** (any document authored by anyone at PwC which refers to, mentions, or alludes to any issues pertaining to the Cavium Inc. audit), **38** (documents produced in response to Plaintiff's memorandum outlining all of Cavium Inc.'s major control deficiencies), **43** (documents reflecting any internal quality inspection Defendant PwC undertook as it relates to: (i) Cavium, Inc..), and **44** (documents relating to the engagement between PwC and Cavium Inc., including but not limited to, formal agreements between the parties, memos drafted and exchanged between the parties, and e-mails exchanged between PwC agents and Cavium Inc. agents). *See* Evans Dec. and Exhibits.

Regardless, the documents Plaintiff seeks are for impeachment and Plaintiff has a right to subpoena these important impeachment documents, critical for his case and not previously produced by Defendant. Further, Defendant's motion to quash is not based on any grounds recognized under Fed. R. Civ. P. 45. Cavium did not serve objections. Evans Dec. ¶ 3. Indeed, Cavium suggested a willingness to produce documents before they heard about the Motion to Quash from defense counsel. Lastly, under Rule 45, Plaintiff has a substantial need for these three documents and it would be an undue hardship on Plaintiff to deny him these materials. Plaintiff needs to show that Cavium itself

---

[2] General Order 71 Part 2(c) ("Documents concerning the formation and termination, if any, of the employment relationship at issue in this lawsuit, irrespective of the relevant time period.") and (f)("Documents relied up to make the employment decision(s) at issue in this lawsuite.").

discussed, approved, adopted and implemented the $10 million threshold and he believes the subpoenaed documents will prove that. Plaintiff has relied on Defendant to produce responsive documents, but as recently as January 22 Plaintiff learned that Defendant had not timely produced all responsive documents in discovery. Therefore, Plaintiff subpoenaed them. Plaintiff would be severely prejudiced if the subpoenaed documents were excluded at trial.

## II. LEGAL ARGUMENT

### A. THE THREE IMPEACHMENT DOCUMENTS SOUGHT BY PLAINTIFF'S TRIAL SUBPOENA ARE IMPORTANT AND CRITICAL TO PLAINTIFF'S CLAIM THAT HE WAS FIRED FOR ENGAGING IN A PROTECTED ACTIVITY.

Defendant PWC terminated Mauro because they allege that Mauro stated/ fabricated an internal control during the fiscal year 2014 audit of Cavium, specifically the $10 million control threshold. Evans Decl. ¶ 4. If the $10M control threshold was approved and implemented by Cavium it would be in the impeachment documents requested, specifically the documents requested in the Cavium and PWC subpoenas (exhibits B (PWC), C (Cavium), and E (addendum):

> (1) Cavium Management Representation Letter for 2014 Audit;
> (2) Cavium prepared Summary of Aggregated Deficiencies (SAD) for 2014 Audit; and
> (3) 2015 Management Test workpapers for control 7.2.6 or other control that sets forth the $10 Million control. *See* Evans Decl. ¶ 4.

If that is true, these are essential impeachment documents to assist Plaintiff in showing that Mauro did not fabricate the $10 million control threshold which PwC gives for his termination. Rather, these documents will impeach the proffered explanation of Mauro's termination by showing a $10 million control was agreed to or implemented by Cavium, discussed with and at Cavium, discussed internally at PwC, discussed between PwC and Cavium, internally accepted by Cavium, adopted by Cavium, and in place at Cavium by 2015 and not a "fabrication" of Mauro's. Mauro needs these impeachment documents to discredit PwC's explanation/pretext for his termination. These documents were not previously produced. For example, documents for March 2, 2015 were produced but not the March 2, 2015 Cavium Management Representation Letter. Further, on January 22, 2021 PWC produced the

2014 engagement letter for Cavium, shortly before trial which is the initiating document for the start of PWC's role for the auditor. Evans Dec. ¶ 5. PwC did not produce the 2014 Cavium representation letter which represents the conclusion of PWC's role as the auditor and documents what controls were approved and put into place for the 2014 fiscal year. Evans Dec. ¶ 5. Plaintiff should not be penalized because PwC did not produce these responsive documents until recently. The subpoenaed documents are important impeachment documents. Plaintiff believes that they will show how $10 million control was in reality implemented, discussed, accepted, adopted, and in place at Cavium: (1) The Cavium Management Representation Letter for the 2014 Audit will identify the $10 million control issue. (2) The Cavium prepared SAD for 2014 Audit will flag the $10 million control issue and show that the $10 million threshold was implemented. (3) The 2015 Management Test workpapers would show that the $10 million control was implemented and in place.

Defendant cannot claim it will be prejudiced by Plaintiff's subpoenas for these impeachment documents. Defendant knows what its own pretext for Mauro's dismissal was. It also knows what documents reflect the controls discussed, considered, and adopted by its clients for its engagements, including by Cavium for and after its 2014 audit. Defendant cannot claim surprise or prejudice by allowing Mauro to subpoena important impeachment records in Defendant's possession, custody or control but not produced in discovery.

## B. DEFENDANT DOES NOT MOVE TO QUASH THE SUBPOENAS ON ANY GROUNDS RECOGNIZED UNDER FED. R. CIV. P. 45

Fed. R. Civ. P. 45 provides specific grounds for quashing a subpoena and Defendant has not raised any of them properly:

> (3) *Quashing or Modifying a Subpoena.*
>   (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>     (i) fails to allow a reasonable time to comply;
>     (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.

None of these grounds are raised in Defendant's motion.  Rather, Defendant's motion is based on the ground that the subpoenaed documents could have been obtained in discovery. This is not an enumerated basis for quashing Plaintiff's subpoenas under Rule 45.  Moreover, Defendant had responded in discovery that all responsive, non-privileged documents would be produced.  *See* true and correct copies of Plaintiff's discovery requests, and Defendant's responses, attached as Exhibits to the Evans Declaration.  For example, on January 22, 2021 ***for the first time in two years after discovery*** closed that the 2014 engagement letter for Cavium was produced.  It is not incumbent on Plaintiff to guess what responsive documents responding party has.  *Horton v. Cavalry Portfolio Sers, LLC*, 2014 U.S. Dist. LEXIS 102572, at *3 (S.D. Cal. Jul. 24, 2014) (propounding party not required to guess whether producing party has produced all responsive documents, or only some and withheld others).  Plaintiff assumed that all responsive, nonprivileged documents had been produced by Defendant going all the way back to the documents required by General Order 71 Part 2(c) ("Documents concerning the formation and termination, if any, of the employment relationship at issue in this lawsuit, irrespective of the relevant time period.") and (f)("Documents relied up to make the employment decision(s) at issue in this lawsuit.").  Plaintiff's subsequent discovery requests were also broad enough to capture all responsive documents regarding the Cavium audit, which also would include the three subpoenaed documents.  *See* Evans Dec. and Exhibits.  Here, given that Defendant produced many responsive documents on January 22, 2021, Plaintiff was only able recently to surmise that the three subpoenaed

documents might exist.  In any event, neither Cavium[3] by objection nor PwC in its motion raise any of the recognized grounds for quashing a subpoena under Fed. R. Civ. P. 45.

### C. PLAINTIFF HAS A SUBSTANTIAL NEED FOR THE SUBPOENAED IMPEACHMENT MATERIALS THAT CANNOT BE OTHERWISE MET WITHOUT UNDUE HARDSHIP.

Plaintiff has a substantial need for the three subpoenaed documents because those documents are critical to impeach the pretext PwC has given for Mauro's termination and to refresh a witness's recollection regarding critical communications with Cavium. *Sight, Inc. v. PeopleSoft, Inc.*, No. 3:04CV3836MMC(MEJ), 2006 WL 988807, at *2 (N.D. Cal. Apr. 13, 2006) (trial subpoenas may be used to secure documents at trial for the purpose of memory refreshment or trial preparation).  The only way Mauro can obtain these critical few impeachment/refreshment documents is by the trial subpoenas to Cavium and PwC.  Importantly, Cavium itself has not objected to the request and in fact expressed its willingness to produce the subpoenaed documents. *See* Evans Dec. ¶ 3. In fact, Cavium suggested a willingness to produce documents until they heard about the Motion to Quash from defense counsel. *Id.*

Importantly, Defendant is in possession of all documents and plaintiff does not have access to these three documents:

*(1) Cavium Management Representation Letter for 2014 Audit;*
*(2) Cavium prepared Summary of Aggregated Deficiencies(SAD) for 2014 Audit;  and*
*(3) 2015 Management Test workpapers for control 7.2.6 or other control that sets forth the $10 Million control*

Defendant had an obligation to produce all responsive documents during discovery.   The three impeachment documents sought here would have been responsive to several of Plaintiff's document requests,  The requests include those from General Order 71 (General Order 71 Part 2(c) ("Documents concerning the formation and termination, if any, of the employment relationship at issue in this

---

[3] Cavium has not filed any objections to the trial subpoena and its counsels phone conversations with Plaintiff's counsel indicate that Cavium did not have any problem with the subpoena.  Evans Decl. ¶ 3.

lawsuit, irrespective of the relevant time period.") and (f)("Documents relied up to make the employment decision(s) at issue in this lawsuit.") and Plaintiff's RPDs **Nos. 2** (documents in the possession or control of Defendants that relate or pertain to the Plaintiff's claims against Defendants), **3** (Mauro's personnel file), **21** (documents relating to Defendant PwC's and Cavium Inc.'s working relationship between 2012 through 2014), **23** (documented complaints, suggestions, memos, written by Mauro Botta pertaining to Defendant PwC's work with Cavium, Inc.), **34** (any document authored by anyone at PwC which refers to, mentions, or alludes to any issues pertaining to the Cavium Inc. audit), **38** (documents produced in response to Plaintiff's memorandum outlining all of Cavium Inc.'s major control deficiencies), **43** (documents reflecting any internal quality inspection Defendant PwC undertook as it relates to: (i) Cavium, Inc..), and **44**(documents relating to the engagement between PwC and Cavium Inc., including but not limited to, formal agreements between the parties, memos drafted and exchanged between the parties, and e-mails exchanged between PwC agents and Cavium Inc. agents). *See* Evans Dec. and Exhibits.  Each of these requests, and all of them collectively, are relevant because they would have included the management representation letter, SAD papers and management working papers that Plaintiff is seeking through subpoena since PwC never produced the documents. It is not incumbent on Plaintiff to guess what responsive documents responding party has.  *Horton v. Cavalry Portfolio Sers, LLC*, 2014 U.S. Dist. LEXIS 102572, at *3 (S.D. Cal. Jul. 24, 2014) (propounding party not required to guess whether producing party has produced all responsive documents, or only some and withheld others).   Yet, following the close of discovery, **Defendant** produced additional documents on January 22, 2021 and February 19, 2021 that had not previously been

produced[2]. Plaintiff realized there were three important documents that could be used for impeachment on the issue of Mauro's termination and refresh witness recollection regarding the pretextual reason for termination. This is not thus an impermissible extension of discovery *by Plaintiff*. Defendant's claims of prejudice are misplaced. To the extent Defendant only recently produced certain responsive documents Defendant cannot rightly claim it is prejudiced by the subpoena requests for impeachment documents.

Lastly, Defendant's two cases do not support its motion to quash under these circumstances. *Muench Photography, Inc. v. Pearson Educ., Inc.*, 2013 U.S. Dist. LEXIS 124064 (N.D. Cal. Aug. 29, 2013) was a case involved a third-party subpoena issued after the close of discovery but it did not involve a trial subpoena. The propounding party did not "aver that it was unaware of the possible existence of the subpoenaed documents before the discovery deadline" and provided no justification for not having sought the records it wanted during the discovery period. *Id.* at *4. Here, however, the tables are turned. Defendants themselves produced certain documents for the first time only a few weeks before trial documents that alerted Plaintiff that three critical documents may exist. *Muench* therefore is inapplicable. *FTC v. Netscape Communications Corp.*, 196 F.R.D. 559 (N.D. Cal. 2000) also fails to support Defendant's motion because it was a ruling on a motion to compel production over a privacy objection again to a pre-trial discovery subpoena. The propounding party in *Netscape* was seeking documents regarding the identity of two of defendant's subscribers, not parties to the lawsuit. Defendant objected on the basis of privacy rights under a federal statute which prohibited sharing subscriber identity except by Court-ordered subpoena. The FTC argued that its subpoena issued in its own administrative proceeding and thus should be deemed a trial subpoena exception under the statute.

---

[2] Defendant has included numerous of these documents produced January 22 in its trial exhibit list. It would be anomalous to allow Defendant to introduce documents produced by it after the close of discovery and yet preclude Plaintiff from subpoenaing three documents suggested by that production.

The Court disagreed. The Court recognized in Netscape that pre-trial discovery subpoenas and trial subpoenas " differ in scope and operation and are easily identifiable [under Rule 45] as separate entities. *FTC v. Netscape, supra*,. at 5601-561. Thus, the issue in Netscape was a statutory privacy objection to a discovery subpoena, not a ruling on a motion to quash a trial subpoena seeking impeachment documents, as here.  The ruling in *Netscape* does not support Defendant's motion to quash.

### IV.  CONCLUSION

For the foregoing reasons, Defendant's motions to quash should be denied.

Dated: February 22, 2021               EVANS LAW FIRM, INC

By: _____
Ingrid M. Evans, Esq. (SBN 179094)
**EVANS LAW FIRM, INC.**
3053 Fillmore Street #236
San Francisco, CA 94123
Phone: (415) 441-8669

Alexander G. Cabeceiras, Esq.
**DEREK SMITH LAW GROUP, PLLC**
*PRO HACE VICE TO BE SUBMITTED*
*alexc@dereksmithlaw.com*
1 Penn Plaza, Suite 4905
New York, New York 10119
Phone: (212) 587-0760

*Attorneys for Plaintiff*