1  John C. Hueston, State Bar No. 164921
   jhueston@hueston.com
2  Moez M. Kaba, State Bar No. 257456
   mkaba@hueston.com
3  Joseph A. Reiter, State Bar No. 294976
   jreiter@hueston.com
4  HUESTON HENNIGAN LLP
   523 West 6th Street, Suite 400
5  Los Angeles, CA 90014
   Telephone:  (213) 788-4340
6  Facsimile:   (888) 775-0898

7  Attorneys for Defendant
   PricewaterhouseCoopers LLP
8

9                      UNITED STATES DISTRICT COURT

10                    NORTHERN DISTRICT OF CALIFORNIA

11

12  MAURO BOTTA,                          Case No. 3:18-CV-2615-AGT

13         Plaintiff,                     **DEFENDANT PWC'S SUPPLEMENTAL BRIEF RE: ATTORNEY-CLIENT PRIVILEGE**

14      v.

15  PRICEWATERHOUSECOOPERS LLP,
                                          Judge: Hon. Alex G. Tse
16         Defendant.                     Date:  March 1, 2021
                                          Time:  8:30 a.m.
17

Pursuant to the Court's February 25, 2021 order, PwC submits this supplemental brief addressing the Court's inquiries concerning Walter Brown's privileged interviews with Plaintiff.

## I. COMMUNICATIONS MADE IN THE COURSE OF WALTER BROWN'S INTERNAL INVESTIGATION ARE PRIVILEGED

The Supreme Court has long held that communications between corporate employees and counsel seeking to render legal advice to the client corporation during an internal investigation are privileged. *See Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981); *see also Admiral Ins. Co. v. District Court*, 881 F.2d 1486, 1492 (9th Cir. 1989) ("[T]he [attorney-client] privilege applies to communications by any corporate employee regardless of position when the communications concern matters within the scope of the employee's corporate duties and the employee is aware that the information is being furnished to enable the attorney to provide legal advice to the corporation"); *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 760 (D.C. Cir. 2014) ("In the context of an organization's internal investigation, if one of the significant purposes of the internal investigation was to obtain or provide legal advice, the privilege will apply."). When the investigation is conducted "by outside counsel rather than in-house counsel, that difference from *Upjohn* strengthens rather than weakens [the company's] claim to the privilege." *Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc.*, 331 F.R.D. 218, 230 (E.D.N.Y. 2019) (citation and quotation marks omitted).

The record is clear that Mr. Brown and his Orrick colleagues interviewed Plaintiff as part of an internal investigation conducted for the purpose of providing legal advice to PwC. In April 2017, the SEC notified PwC's Assistant General Counsel that it had initiated an investigation into PwC's 2013 and 2014 audits of Cavium, Inc. *See* JX 20. In response, PwC retained Orrick to respond to the SEC's inquiries and provide legal advice in connection with the SEC's investigation. (*See* Declaration of Walter Brown ("Brown Decl.") ¶ 2 (Dkt. 85-6); *see also* PX 206 (communications between Orrick and the SEC).) Among other things, the Orrick team

and PwC's Office of General Counsel issued document preservation notices (*see* PX 109), made seven document productions to the SEC (*see, e.g.*, PX 207), and conducted custodial and substantive interviews.

Because Plaintiff served as a Senior Manager on the Cavium audits subject to the SEC's inquiries, Mr. Brown and his team interviewed Plaintiff on two occasions as part of their internal investigation. (Brown Decl. ¶ 3; Trial Tr. Vol. 3 at 409:23–410:1; 436:8–440:19.) At the start of both interviews, Mr. Brown provided Plaintiff with *Upjohn warnings* making clear, among other things, that (i) the interviews were privileged; (ii) Mr. Brown was conducting them for the purpose of assisting PwC in responding to the SEC; (iii) the privilege belonged to PwC; and (iv) Plaintiff was obligated to keep the contents of the interviews confidential. Following those interviews and Plaintiff's termination in August 2017, Mr. Brown and his team continued representing PwC until after the SEC closed its investigation—without taking any enforcement action—in February 2018. *See* DX 1524.

These undisputed facts establish that Mr. Brown's interviews with Plaintiff are privileged. *See, e.g., Cicel (Beijing) Sci. & Tech. Co.*, 331 F.R.D. at 223 (holding that outside counsel's interviews with employees during an internal investigation conducted in anticipation of government investigations were privileged because their purpose was to facilitate legal advice); *In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 527–28 (S.D.N.Y. 2015) ("Here, as in *Upjohn*, the internal investigation and accompanying interviews were conducted 'as part of [the company's] request for legal advice' in light of possible misconduct and accompanying governmental investigations and civil litigation. Here, as in *Upjohn*, the employees interviewed were aware (and, in fact, explicitly told) that the purpose of the interviews was to collect information to assist in providing legal advice to the company, and that the matters discussed were therefore confidential."). Accordingly, Plaintiff is "bound by the attorney-client privilege not to reveal confidential communications between [himself] and counsel." *Dzierbicki v. Twp. of Oscoda*, 2009

WL 1491116, at *2 (E.D. Mich. May 26, 2009).

In response, Plaintiff has argued that Mr. Brown conducted his interviews with Plaintiff not for the purpose of rendering legal advice, but "to figure out a way to fire him." (Dkt. 185 at 3.) As an initial matter, Plaintiff already conceded on summary judgment that Mr. Brown's interviews are privileged. (Dkt. 88-32 at 18:2 (stating, in opposition to PwC's summary judgment motion, "There is no question the communication at issue is subject to the attorney-client privilege"). Regardless, Plaintiff's false assertions are grounded in nothing but his speculations and conspiracy theories. As the evidence laid out above shows—and as Mr. Brown's testimony will conclusively establish at trial—the purpose of Plaintiff's interviews was to assist PwC in responding to the SEC's inquiries. The interviews are therefore privileged. *See Upjohn*, 449 U.S. at 394; *Cicel (Beijing) Sci. & Tech. Co.*, 331 F.R.D. at 223; *In re Gen. Motors*, 80 F. Supp. 3d at 527–28.

In arguing to the contrary, Plaintiff relies on an inapposite case—*Continental Ins. Co. v. Superior Court*, 32 Cal. App. 4th 94 (1995). Plaintiff misrepresents *Continental* to hold that "Plaintiff has the right to testify as a former employee of PwC as to any matters that arose during PwC's inhouse counsel's and outside counsel's interviews of him." (Dkt. 189 at 6-9.) But *Continental* says no such thing. In that case, the court held that counsel did not violate their ethical obligations by making *ex parte* contact with former employees of the other party (who were not then represented). *Continental*, 32 Cal. App. 4th at 119 ("[E]x parte contact with former noncontrol group employees like Fleites did not violate rule 2-100."). The court did not hold—as Plaintiff now argues—that a former employee has the right to waive his former employer's privilege over attorney-client communications that occurred during the employment relationship. At the most, *Continental* shows that Plaintiff's counsel did not violate their ethical obligations. *In re EXDS, Inc.*, 2005 WL 2043020, at *3 (N.D. Cal. Aug. 24, 2005) ("[A]n attorney's ex parte contact with an opposing party's former employee is insufficient grounds for disqualification.").

## II. PWC'S NARROW PRIVILEGE WAIVER EXTENDS ONLY TO THE SUBJECT MATTER OF THE ALLEGED FAKE CONTROL

On February 25, 2021, the Court asked PwC to address whether the "doctrine of fundamental fairness appl[ies] and require[s] disclosures of [] other statements that Mr. Botta made during these interviews with Mr. Brown and the Orrick team." (Trial Tr. Vol. 3 at 441:16-19.) The fundamental fairness doctrine has very limited application. When the fairness doctrine applies, it requires the party waiving privilege to disclose additional privileged information. *See* Fed. R. Evid. 502(a). But the doctrine applies only in those "unusual situations" where "disclosure of related, protected information [is necessary to] prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." *Id.*, advisory committee notes (2011 Amend.). Stated simply, the doctrine compels disclosure of related information on the "same subject matter" *only* when a party engages in "selectiv[e] cherry-picking" of privileged information. *See First Nat'l Bank in Sioux Falls v. Warner Bros. Entm't*, 2011 WL 13213920, at *2 (C.D. Cal. June 28, 2011); Fed. R. Evid. 502(a)(2) ("[T]he disclosed and undisclosed communications or information [must] concern the same subject matter.").

When the undisclosed communications relate to a *different* subject matter than the disclosed communications, courts routinely confine the privilege waiver to "the communication of information disclosed." *See* Fed. R. Evid. 502(a), advisory committee notes (2011 Amend.) For example, in *Sizemore v. City of Madras,* 2004 WL 1318883, at *2 (D. Or. June 10, 2004), the court limited the scope of privilege waiver to the single document "actually disclosed" and rejected the opposing party's efforts to discover related "privileged oral communications." Similarly, in *United States v. Skeddle*, 989 F. Supp. 905, 911 (N.D. Ohio 1997), the court confined waiver to one "distinct subject" discussed at a meeting and found that "privilege has not been waived . . . with regard to any such other matters." *See also Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (finding waiver was limited to documents a

party disclosed to an auditor and not "every document or communication that touched on the more general tax deferral question"); *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) ("Hernandez disclosed only his communications with Ferguson about Tanninen, waiving attorney-client privilege only as to that matter.").

Here, Mr. Brown's interviews with Plaintiff lasted approximately six hours (Brown Decl. ¶ 3) and covered a number of distinct subject matters and topics. One of those topics is the internal control Plaintiff claimed to have created at the end of the 2014 Cavium audit. (*Id.* ¶¶ 4–5.) As discussed in PwC's opening brief on this issue, Plaintiff's memory lapses and evasive discovery responses required PwC to waive privilege over Plaintiff's conversations with Mr. Brown on this distinct subject matter—and only on this subject matter. (Dkt. 184 at 2–5.)

Importantly, PwC did not selectively waive privilege on this topic by "cherry-picking" certain statements Plaintiff made to Mr. Brown that are helpful to PwC, while leaving out other communications on this same topic to create a "misleading presentation of evidence." Fed. R. Evid. 502(a)(2) & advisory committee notes (2011 Amend.). Plaintiff has never argued otherwise. But to the extent Plaintiff believes any "cherry picking" occurred (it did not), he is free to question witnesses at trial (including Mr. Brown) about what he said or did not say concerning the alleged control fabrication. Indeed, Plaintiff has already testified extensively on this subject matter. (Trial Tr. Vol. 3 at 436:8–440:19.)

What the fairness doctrine does not allow, however, is for Plaintiff to elicit privileged information on *other* subject matters that Mr. Brown covered during his interviews. For example, on February 24, 2021, Plaintiff sought to testify about his discussions with Mr. Brown regarding entirely separate issues that arose during the Cavium and Harmonic audits between 2012 and 2015. (*Id.* at 415:22–416:13.) But these privileged communications do not concern the subject matter of PwC's privilege waiver (*i.e.*, Plaintiff's statements that he fabricated an internal control). Plaintiff's express purpose for eliciting this testimony demonstrates the difference. As Plaintiff's

counsel explained during trial, Plaintiff seeks to testify about these privileged communications to show that Mr. Brown allegedly knew Plaintiff had filed an SEC whistleblower complaint.[1] (Trial Tr. Vol. 3 at 415:22–416:13.) But even assuming that Mr. Brown did know of Plaintiff's alleged whistleblowing (and Plaintiff is free to ask Mr. Brown about his knowledge at trial), that fact has nothing to do with whether Plaintiff did or did not tell Mr. Brown that he had created a fake control.

For these reasons, the privileged communications that Plaintiff seeks to invade at trial do not concern the subject matter of PwC's privilege waiver and therefore cannot cure any alleged "cherry picking" or "misleading presentation of evidence." Accordingly, PwC's privilege waiver does not extend to this information and the fundamental fairness doctrine does not apply. *See First Nat'l Bank in Sioux Falls*, 2011 WL 13213920, at *2; S*izemore,* 2004 WL 1318883, at *2; *Skeddle*, 989 F. Supp. at 911.

In response, Plaintiff has argued that PwC's privilege waiver extends to all communications made during Mr. Brown's interviews with Plaintiff because PwC purportedly "has placed the substance of the interviews of Mauro directly at issue in this case." (Dkt. 185 at 5.) As explained above, this is false. PwC waived privilege regarding one specific subject matter discussed during Mr. Brown's interviews—not all subject matters. In these circumstances, PwC's privilege waiver does not extend beyond the communications actually disclosed.

None of the authority Plaintiff cites is to the contrary or even addresses this issue. *See United States v. Graf*, 610 F.3d 1148, 1157 (9th Cir. 2010) (holding that conversations between a company's agent and the company's lawyers were privileged and that the privilege belonged to the company, not the individual agent); *Finjan, Inc*.

---

[1] While Plaintiff seeks to testify at length about this topic, he has admitted that he does not even recall many critical details of his meeting with Mr. Brown. (DX 1596-2 ("I do not recall the exact language used during the interview or the exact questions that I was asked."); Vol. 3 Tr. at 73:22-24 ("Q: Okay. Can you recall any other questions Mr. Brown asked you about the – your suggested tax control? A: No.").)

*v. Sonicwall, Inc.*, 2018 WL 4998149, at *1 (N.D. Cal. Oct. 15, 2018) (holding that "the email communications are privileged and that Finjan did not waive the privilege" and explaining that a "party may not obtain an adversary's privileged communications simply because it believes those communications would bear on—or even contradict—its adversary's allegations"); *Reavis v. Metro. Prop. & Liab. Ins. Co.*, 117 F.R.D. 160, 161 (S.D. Cal. 1987) (holding that interview notes were privileged and not discoverable because their "dominant purpose" was to "be transmitted to an attorney in light of the impending litigation"); *Southern Cal. Gas Co. v. Public Utilities Commission*, 50 Cal. 3d 31, 40 (1990) (examining implied waiver principles under California law; holding that a party did not waive privilege because it had not put its counsel's advice at issue); *Wellpoint Health Networks v. Superior Court*, 59 Cal. App. 4th 110, 128 (1997) (stating that, under California law, an employer may waive privilege over its internal investigation into the plaintiff's discrimination claims if it relies on the adequacy of that investigation to "defend [itself] by establishing that it took reasonable corrective or remedial action"); *Oliver v. Microsoft Corp.*, 2013 WL 1397394, at *2 (N.D. Cal. Apr. 5, 2013) (stating, as in *Wellpoint*, that disclosure of factual investigation may be required if the employer relies on the reasonableness of that investigation as a defense to discrimination claims; stating that privileged communications generated during the investigation need not be disclosed); *Ritchie v. Sempra Energy*, 2015 WL 12912030, at *15 (S.D. Cal. June 11, 2015) (declining to waive privilege because "there is insufficient evidence at this time to show defendant has deliberately injected an advice of counsel defense into this case").

### III. BECAUSE PLAINTIFF HAS NOT DILIGENTLY PURSUED THIS ISSUE, HE CANNOT INVADE PWC'S PRIVILEGE AT TRIAL

Plaintiff apparently believes that the privileged information he seeks to elicit will show that Plaintiff's interviews "were set up" so as "to figure out a way to fire him." (Dkt. 185 at 3.) In other words, Plaintiff seeks license to "explore" whether PwC's outside counsel—Mr. Brown—conspired to unlawfully retaliate against

1  Plaintiff. (Vol. 2 Tr. at 426:15–19 (THE COURT: "[I]s that where you want to go
2  with this, that somehow Walt Brown's decisions were pretextual? MR.
3  CABECEIRAS: I think they absolutely could have been pretextual, Your Honor.").)

4  This accusation is unfounded and problematic for many reasons, not least of
5  which is that Plaintiff failed entirely to pursue it during discovery. Plaintiff did not
6  depose Mr. Brown. Plaintiff did not subpoena Orrick. Plaintiff did not propound
7  requests to PwC regarding Orrick or Mr. Brown. Plaintiff did not file a motion to
8  compel any documents that PwC withheld as privileged. Plaintiff did not even depose
9  PwC's decisionmaker (then-Managing Partner of PwC's Assurance practice, Mark
10 Simon)—whom Plaintiff described at trial as "some guy in New Jersey [called in] to
11 pull the trigger." (Vol. 1 Tr. at 38:19–20.)

12 Thus, even if there were any truth to Plaintiff's theory—which there is not—
13 Plaintiff has no excuse for failing to pursue it earlier. At summary judgment, Judge
14 Seeborg expressed his disbelief with Plaintiff's failures. (MSJ Tr. at 23:15–16 ("I'm
15 still somewhat mystified . . . why you didn't depose Mr. Simon.").) Even Plaintiff's
16 counsel acknowledged the error. (*Id.* at 20:19–20 (Ms. Evans: "I don't want to throw
17 my co-counsel under the bus, but I'm going to.").) Having failed to pursue this issue
18 during discovery, Plaintiff headed to trial with no evidence to support it. (*Id.* at 28:21–
19 24 (THE COURT: "[Y]ou don't have evidence showing me that [Mr. Simon was a
20 front man]. That's my problem.").) Plaintiff has nobody to blame but himself.

21 On this record, Plaintiff's attempt to pierce privilege in the middle of trial fails
22 for three separate and independent reasons.

23 *First*, Plaintiff has waived this argument by waiting to challenge PwC's
24 privilege assertion until the middle of trial. Plaintiff has known PwC's position that
25 his interviews by Mr. Brown are privileged for nearly three years. And he has known
26 since March 2019 that PwC maintained its privilege assertion with the narrow
27 exception of Plaintiff's statements that he fabricated a control. (Dkt. 100 [PwC's
28 March 19, 2019 reply ISO MJS] at 19 (asserting privilege over all "other portion[s] of

- 8 -
PWC'S SUPPLEMENTAL BRIEF RE: ATTORNEY-CLIENT PRIVILEGE
Case No. 3:18-CV-2615-AGT

5635682

Plaintiff's interviews, PwC's investigation, [and] other privileged communications").)

Yet Plaintiff let two years pass before challenging PwC's privilege assertion. Even after this issue came up at summary judgment, Plaintiff did not, for example, seek leave to take depositions of Mr. Brown or Mr. Simon. He did not move to amend the scheduling order. He did not file any pre-trial motion. He did not raise this issue at any of the three pre-trial conferences with Your Honor. He did not even attempt to meet and confer with PwC. Instead, in the middle of Plaintiff's trial examination, Plaintiff's counsel attempted to elicit testimony that he knew PwC claims is privileged. "If [Plaintiff] wished to challenge [PwC's] assertion of privilege, that needed to be done within the discovery process, by way of motion and in a timely fashion. By not timely challenging the privilege issue, [Plaintiff] has waived that challenge." *Sawatzky v. United States*, 2013 WL 3771269, at *4 (D. Colo. July 16, 2013); *Buisson Creative Strategies, L.L.C v. Roberts*, 2017 WL 67527, at *2–3 (E.D. La. Jan. 6, 2017) (rejecting party's attempt to determine whether privilege over a meeting had been waived "because he "should have known about th[e] meeting well before the discovery/deposition deadline" at issue and could have resolved the issue had he "acted with the necessary diligence").

*Second*, Plaintiff's mid-trial attempt to revisit PwC's privilege will severely prejudice PwC. This tactic has already disrupted trial proceedings with lengthy on-record arguments, caused multiple rounds of rushed mid-trial briefing, and injected uncertainty into the scope of witness examinations that are just days away. If Plaintiff is successful, the resulting prejudice will multiply exponentially. PwC prepared for trial on the then-existing record subject to the then-existing objections. It would be unfair to change this landscape at this juncture. *See In re Worldcom, Inc. Sec. Litig.*, 2005 WL 600019, at *1–2 (S.D.N.Y. Mar. 15, 2005) (holding that a party's attempt to change its privilege-waiver position two days before trial was "extraordinarily prejudicial" because the parties "made tactical decisions during the discovery period about whom to depose and how to use their resources").

*Third*, Plaintiff has thus far ignored that the Orrick interviews are protected by an independent work product privilege.[2] Plaintiff's lack of diligence is dispositive on this issue as well. Because Plaintiff failed to develop any evidence to support his speculative theory, he cannot show a compelling need to elicit this privileged information. *See Carolina Power & Light Co. v. 3M Co.*, 278 F.R.D. 156, 159–60 (E.D.N.C. 2011) (holding that "questions posed by [a party's] attorneys" constitute "opinion work product" because they reveal the attorney's "thought processes and legal strategies"); *In re Intuitive Surgical Sec. Litig.*, 2017 WL 5054404, at *3 (N.D. Cal. Apr. 10, 2017) (explaining that opinion work product is discoverable only upon a showing of "compelling need" and rejecting party's attempt to discover pre-litigation interviews). As Judge Seeborg recognized, in "the usual case" when a party "argues that "the decision-maker that has been put forward is just the front person," there would typically be "some evidence of that" *before* allowing the party to explore it. (MSJ Tr. at 28:13–15.) Lacking any evidence, Plaintiff has no need to explore this topic – let alone a compelling one.

## IV.   CONCLUSION

For all these reasons, and those expressed in PwC's opening brief (Dkt. 184), the Court should deny Plaintiff's effort to violate PwC's privilege over Mr. Brown's interviews beyond the statements Plaintiff made to Mr. Brown concerning his alleged fabrication of an internal control and falsification of audit work papers.

Dated: February 26, 2021

HUESTON HENNIGAN LLP

By: /s/ John C. Hueston
John C. Hueston
Attorneys for Defendant

---

[2] *Hall v. Hall*, 2014 WL 12703289, at *4 (D.V.I. Oct. 21, 2014) ("Defendant posits that Attorney Simpson has waived any attorney-client privilege by virtue of his testimony . , , but does not make the same argument with respect to work product. . . . [While] Attorney Simpson explained in as much detail as possible all of his communications with Ethlyn Hall and his observations of her as they bore on the issues of undue influence and testamentary capacity, Attorney Simpson was quite careful with respect to refusing to talk about his work product.").